UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
ADREA, LLC,                          :

                  Plaintiff,         :

          -v-                        :          13 Civ. 4137(JSR)
                                     :
BARNES & NOBLE, INC.,                :          MEMORANDUM ORDER
BARNESANDNOBLE.COM LLC, and NOOK     :
MEDIA LLC,                           :
                                     :
                  Defendants.        :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     ADREA, LLC sues Barnes & Noble, Inc., barnesandnoble.com llc, and

Nook Media LLC (collectively, "B&N") for patent infringement. ADREA

alleges that B&N's e-reader Nook infringes U.S. Patent Nos. 7,298,851

("the '851 patent"), 7,299,501 ("the '501 patent"), and 7,620,703

("the '703 patent"). On November 1, 2013, following full briefing, the

Court conducted a "Markman" hearing on how to construe certain

disputed terms in the claims of these three patents. See Markman v.

Westview Instruments, Inc., 517 U.S. 370, 372 (1996). This Memorandum

Order defines the disputed terms and supplements the reasoning

provided from the bench during oral argument. See Transcript of Nov.

1, 2013, ECF No. 57.

     The '851 patent describes systems and methods of securely

distributing electronic books and other digital content to a portable

viewing device, discloses an operations center for storing and

transmitting electronic books and a device for viewing books, and

1

further describes encryption processes for securing those electronic books. The '501 patent describes systems and methods of controlling access to electronic books, essentially a fixed-time rental system. The '703 patent describes devices and methods for retrieving information related to the usage context of devices and discusses embodiments where the device is configured to retrieve information about the usage context of the device without a web browser.

The parties consent to four claim constructions but contest construction of twenty-four claim terms across the three patents: fourteen in the '851 patent, five in the '501 patent, and five in the '703 patent. The principles guiding such construction are well established. Unless a patent adopts its own special definition of a term, courts interpret a term in a claim according to its "ordinary and customary meaning," i.e., "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313.

In undertaking such construction, "the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and . . . the prosecution history." Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir.

1996). However, courts should not construe a claim to protect only those examples recited in the specification, which may merely be illustrative. See Phillips, 415 F.3d at 1323; see also Acumed LLC v. Stryker Corp., 483 F.3d 800, 807 (refusing to read a feature into a claim even though every embodiment disclosed included the feature). Additionally, courts may consider "extrinsic evidence," such as dictionaries and treatises, "as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Phillips, 415 F.3d at 1324.

Applying these principles, the Court construes the disputed claim terms of the '851 patent as follows:

The term "electronic book" means "an electronic version of textual or graphical information." This construction reflects the Court's conclusion that a "book" may be textual or graphical or both, as ADREA urges. However, including a list of examples of books, as ADREA proposes, would add needless verbiage. See Harris Corp. v. IXYS Corp., 114 F.3d 1149, 1152 (Fed. Cir. 1997).

There is an order required in arranging and construing the claim terms "selecting a title from the transmitted list of titles" and "supplying a selected electronic book corresponding to the selected title to be encrypted": "Selecting" must be performed before "supplying." Although it is true that "[u]nless the steps of a method actually recite an order, the steps are not ordinarily construed to require one," Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2001), "if, as a matter of logic or

3

grammar, they must be performed in the order in which they are written," an ordered construction is required. Altiris Inc. v. Symantec Corp., 318 F.3d 1363, 1369-70 (Fed. Cir. 2001). Here, the electronic book that is supplied is not just any book but the "selected electronic book"; accordingly, it must have already been selected, implying as a matter of logic and grammar that "selecting" must be performed before "supplying."

Similarly, there is an order required with respect to the claim terms "selecting a title from the transmitted list of titles" and "encrypting the selected electronic book using the encryption key": "Selecting" must be performed before "encrypting." As in the above dispute concerning the order of "selecting" and "supplying," here too the book to be encrypted is the "selected electronic book," requiring that "selecting" be performed before "encrypting."

The term "selecting a title from the transmitted list of titles" need not, as B&N urges, be "performed by the recipient of the electronic book." Accordingly, the term requires no further construction. See Philips, 415 F.3d at 1323.

The term "supplying the encrypted selected electronic book" need not, as B&N urges, be construed to require transmission "to the recipient." Accordingly, the term requires no further construction. See id.

The term "supplying a decryption key" need not, as B&N urges, be transmitted "from the supplier" "to the recipient." Accordingly, the term requires no further construction. See id.

4

The terms "communicating," "transmitting," "supplying," "transmitted," and "shipment" need not be done, as B&N urges, "over a video signal," nor should these different terms be conflated into one meaning. "[W]e must presume that the use of these different terms in the claims connotes different meanings." CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG, 224 F.3d 1308, 1317 (Fed. Cir. 2000). Accordingly, no further construction is needed.

The term "providing the decryption key with the encrypted electronic book" requires no further construction. See Philips, 415 F.3d at 1323.

The term "receives a decryption key with the electronic book" requires no further construction. See id.

The term "packaging the non-secure and the secure headers with the electronic book" requires no further construction. See id.

The term "to create an electronic book distribution file" requires no further construction. See id.

The term "key generator that generates encryption and decryption keys" requires no further construction. See id.

The term "allows encryption and decryption" requires no further construction. See id.

The term "sends encryption information to the sending party, wherein the encryption information includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys" requires no further construction. See id.

5

Finally, the Court agrees with and adopts three constructions of this patent that the parties have jointly proposed:

The term "non-secure metadata header" means "unencrypted metadata or information about an electronic book."

The term "secure metadata header" means "encrypted data or information about an electronic book."

The term "title" means "the actual title assigned by an author to a book, or any other designation (including a graphical symbol or icon) indicating a particular group, portion, or category of textual information."

Turning to the '501 patent, the Court construes its disputed claim terms as follows:

There is no order required by the claim terms "storing an electronic book on a viewer" and "associating a predetermined amount of time after the electronic book is stored on the viewer." Accordingly, no construction is required. See Interactive Gift Express, 256 F.3d at 1342.

The term "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" means "associating with the electronic book a predetermined amount of time that begins when the electronic book is stored on the viewer." The Court here prefers ADREA's grammatical construction, which is that the claim covers the "associating" of a thing "with the electronic book," and that the thing is the "predetermined amount of time." B&N attempts to read in an ordering, placing great emphasis on "after."

6

But this effort to impose an order where none is required is inappropriate. See id.

The term "restricting access to the electronic book" requires no further construction. See Philips, 415 F.3d at 1323.

The remainder of the term "a processor that operates under control of the instructions and is capable of: storing an electronic book on the viewer; associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book; allowing access to and display of the electronic book for the predetermined amount of time; and restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed" requires no further construction. See id.

Finally, as in the '851 patent, see supra, the term "electronic book" means "an electronic version of textual or graphical information."

Turning lastly to the '703 patent, the Court construes the remaining disputed claim terms as follows:

The term "consumer appliance" means "a device that may send or receive information." Both parties agreed at oral argument that "device" is an adequate noun and that adding "apparatus" or "instrument" would be needless. See Transcript of Nov. 1, 2013. Further, the proposed construction from B&N, which would require that the consumer appliance be "not capable of generally accessing and retrieving content from the Internet," is inconsistent with the

7

intrinsic evidence, including specifications that refer to an "Internet-enabled device." See Declaration of Micah Miller ("Miller Decl."), Ex. C ('703 patent, at col. 2:43-49).

The term "identifier" means "[a] sequence of bits or characters that identifies a program, device, or system to another program, device, or system." This is the ordinary and customary meaning of the term. See Miller Decl., Ex. M (IBM Dictionary of Computing (1987), at 323-24 (defining "identifier" as "[a] sequence of bits or characters that identifies a program, device, or system to another program, device, or system")); Gracenote, Inc. v. Musicmatch, Inc., No. 02 Civ. 3162 (N.D. Cal. Feb. 2, 2004) (adopting same construction).

The terms "a predetermined URL . . . associated with the consumer appliance" and "an identifier associated with the consumer appliance" require no further construction. B&N proposes adding the modifier "particular" before "consumer appliance," but that would inappropriately rewrite the claim language. See K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee.").

The term "web browser" requires no further construction. While it may have once been an unfamiliar term, it had become commonplace by the time the patent was filed and, accordingly, "web browser" should be construed in its ordinary and customary meaning. See Phillips, 415 F.3d at 1312-13.

The term "stored on the home network" requires no further construction. B&N urges a construction that would require that the home network exclude the consumer appliance itself, but that limitation does not appear in the claim. See K-2 Corp., 191 F.3d at 1364.

Finally, the Court agrees with and adopts the construction jointly proposed by the parties whereby the term "home network" means "a collection of interconnected apparatus in and around the home."

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        November 27, 2013