```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ :
ADREA, LLC,                          :
                                     :
               Plaintiff,            :
                                     :
          -v-                        :        13 Civ. 4137(JSR)
                                     :
BARNES & NOBLE, INC.,                :        MEMORANDUM ORDER
BARNESANDNOBLE.COM LLC, and NOOK     :
MEDIA LLC,                           :
                                     :
               Defendants.           :
------------------------------------ :
```

JED S. RAKOFF, U.S.D.J.

In this case, Adrea, LLC sues Barnes & Noble, Inc., barnesandnoble.com llc, and Nook Media LLC (collectively, "B&N"), alleging that B&N's e-reader Nook infringes U.S. Patent Nos. 7,298,851 ("the '851 patent"), 7,299,501 ("the '501 patent"), and 7,620,703 ("the '703 patent"). The '851 patent describes systems and methods of securely distributing electronic books and other digital content to a portable viewing device, discloses an operations center for storing and transmitting electronic books and a device for viewing books, and further describes encryption processes for securing those electronic books. The '501 patent describes systems and methods of controlling access to electronic books, essentially a fixed-time rental system. The '703 patent describes devices and methods for retrieving information related to the usage context of devices and discusses embodiments where the device is configured to retrieve information about the usage context of the device without a web browser.

1

Both parties now bring motions for summary judgment. Defendants move for summary judgment principally asserting non-infringement with respect to the asserted claims against each of the three patents in suit. Defendants further move for summary judgment asserting that each of the asserted claims of the patent in suit are invalid in view of prior art, that claim 1 of the '851 patent is invalid because the claim allegedly is directed to nothing more than an abstract idea, that B&N cannot be held to have wilfully infringed the patents in suit, and that Adrea's failure to comply with the requirements of 35 U.S.C. § 287(a) precludes recovery of any damages suffered before March 29, 2012. Finally, defendants move for a summary judgment of no infringement with regards to all products and theories originally raised in Adrea's Complaint and infringement contentions, Chow. Decl. Ex. A ¶¶ 18, 25, 32; Chow Decl. Ex. T at 2, but for which admittedly no evidence or expert opinion has been provided at the end of discovery, Plaintiff's Rule 56.1 Counterstatement ¶¶ 33-35. Plaintiff cross-moves for partial summary judgment declaring that B&N infringes claim 18 of the '501 patent, that B&N infringes claim 1 of the '703 patent, and that the '501 patent is not invalid.

In no particular order, the Court now rules on these motions as follows:

First, the Court grants defendants summary judgment of "no infringement" for the following products and theories raised in Adrea's Complaint and infringement contentions, Chow. Decl. Ex. A ¶¶ 18, 25, 32; Chow Decl. Ex. T at 2, but for which Adrea has at this

2

post-discovery stage, provided no evidence or expert opinion: 1) no infringement of any kind as to the NOOK applications; 2) no infringement of any kind as to the B&N website; 3) no indirect infringement as to the asserted claims of the '703 and '501 patents; 4) no direct or contributory infringement as to claims 1, 34, and 35 of the '851 patent; and 5) no indirect infringement as to claims 96 and 108 of the '851 patent. This is because "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case as to which that party will bear the burden of proof at trial." *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).

Second, the Court grants defendants summary judgment precluding damages incurred prior to March 29, 2012, for alleged infringement of the '851 patent. The Patent Act requires patentees to give notice to the public by marking the patented article (or packaging) with the identifying patent number. 35 U.S.C. § 287(a). Here, Adrea's licensees (such as Amazon)[1] produced devices (such as the Kindle) that qualified as "patented articles," which should have been, but were not, so marked. In response, plaintiff argues that its licensees' products did not constitute "patented articles" with respect to the '501, '703, and '851 patents. But it bases this assertion chiefly on the fact that in a prior litigation with *Amazon*, Adrea did not claim infringement of

---

[1] The Amazon license, dated November 10, 2011, lists the '851 and '501 patents, and refers to a two-year covenant not to sue on the '703 patent. *See* Transcript dated April 10, 2014 ("Tr."), at 6.

the '501 and '703 patents, because, Adrea asserts, there is no evidence that Amazon's licensed products infringe the '501 and '703 patents. However, in that very same litigation, Adrea took the position that Amazon infringed the '851 patent. Moreover, in the instant litigation, Adrea's own infringement expert Brian A. Berg states that it is likely impossible for an e-reader manufacturer to design around the '851 patent. Declaration of Yue-Han Chow, dated January 31, 2014 ("Chow Decl."), Exhibit ("Ex.") EE ¶ 62. Given all this, and given that it is the patentee who bears the burden in pleading and proving compliance with the marking statute. *See, e.g., Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996), the Court finds that Adrea has totally failed to provide adequate evidence from which a reasonable fact finder could find that Adrea complied with the marking statutes with respect to, at least, the '851 patent.

"In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring *after* such notice." 35 U.S.C. § 287(a) (emphasis added). Adrea contends that the date of notice occurred as early as October of 2010 when Adrea's Vice President of Licensing and Business Development, Shawn Ambwani, wrote to B&N and identified Adrea's "portfolio of over 300 patents related to eBooks," and stated that Adrea is "currently in litigation with Amazon related to the Discovery Networks eBook patents which Adrea now

owns," one of which was the '851 Patent. Declaration of Micah Miller ("Miller Decl."), dated February 21, 2014, Ex. EE at 71-72. Plaintiff would have the Court find that this email correspondence, which constituted the very first email ever sent to defendants, somehow satisfied the notification of infringement requirement because it referenced the Amazon litigation. However, "[f]or purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Adrea's communications with defendants in October of 2010 cannot reasonably constitute communication of a specific charge against a specific device, given that the communication mentioned no charge, no device, and indeed, no patent.

In contrast, on March 29, 2012, Adrea notified defendants' counsel of infringement via attachment of a detailed claim chart, noting both the relevant charges and the relevant devices. *See* Chow. Decl., Ex. HHH at ADREA016951 ("we have prepared sample claim illustrations regarding the Adrea portfolio and B&N devices for your review"). Thus, the Court determines that failure to mark precludes damages for the '851 patent prior to March 29, 2012, the date of actual notice.

Third, the Court grants defendants summary judgment that defendants' e-reader does not literally infringe claim 1 of the '851

5

patent. This is because B&N encrypts books *before* they are selected. When publishers provide electronic books to B&N for sale via their e-reader, B&N uses Adobe ACS4 technology to DRM-encrypt the book using an encryption key, leaving B&N with an encrypted book and a decryption key for that book. *See* Defendants' 56.1 Statement ("Def.'s 56.1") ¶ 42; Plaintiffs' 56.1 Counterstatement ("P.'s 56.1") ¶ 42 (citing as rebuttal evidence Chow Decl., Ex. EE (Berg. Expert Report) ¶ 341 ("My opinion is that B&N indirectly infringes claim 1 of the '851 patent.")). B&N then stores the decryption key in its servers and provides a copy of the DRM-encrypted book to Akamai. Def.'s 56.1 ¶ 43; P.'s 56.1 ¶ 43 (undisputed). Akamai provides B&N with a URL link to the location of the encrypted book. *Id.* The book is then made available for purchase and after a user selects and purchases a book from B&N, the Nook device retrieves the book from Akamai's servers. Def.'s 56.1 ¶ 45; Chow Decl. Ex. II (Berg. Report, Ex. CC-1 at 55). Thus the encrypting step by B&N occurs sequentially before the selecting step.

However, claim 1 requires that the books be encrypted *after* being selected. Indeed, the Court's claim construction order states very clearly "[t]here is an order required in arranging and construing the claim terms [in claim 1] 'selecting a title from the transmitted list of titles' and 'encrypting the selected electronic book using the encryption key': 'Selecting' must be performed before 'encrypting.'" Markman Order, dated November 27, 2013 ("Markman Order"), at 4. Thus

the accused devices do not literally infringe claim 1 of the '851 Patent.

Plaintiff proposes that there remains a question as to whether there is induced infringement by the defendants via Akamai in the encryption-decryption process. This is because after the consumer purchase, the already DRM-encrypted e-book file located on Akamai's servers is encrypted for a *second* time, in a process called TLS-encryption, thus allegedly satisfying the selection before encryption claim construction. Declaration of Brian Berg, dated February 14, 2014 ("Berg Decl.") ¶ 16-24. However, the actor in TLS encryption, which occurs post-selection, is Akamai, not the defendants, and thus the defendants do not literally infringe. Furthermore, as to whether there is induced infringement, on the theory that to the extent defendants do not perform the steps of claim 1, they induce Akamai to do so, no induced infringement exists for two reasons. First, the Supreme Court recently held in *Limelight Networks, Inc. v. Akamai Technologies, Inc.* that when no individual defendant executes all the steps of a method patent, though the steps of two businesses do, when taken as a whole, execute all the steps of the method, one of the two businesses cannot be held liable for inducing the infringement of the other, where there is no direct infringement to begin with. 134 S.Ct. 2111 (2014). Second, induced infringement requires the inducer to possess not merely knowledge of the activities constituting infringement, but also specific intent to induce another's infringement, for which there

7

exists no evidence in the record. *See, e.g., DSU Med Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed Cir. 2006).

Finally, plaintiffs argue that there is still infringement under the doctrine of equivalents, under the theory that encrypting electronic books during ingestion and then providing the encrypted electronic books at the time of request performs substantially the same function as encrypting the electronic books at the time of request, because both functionally encrypts books for provision on demand. *See* Summary Judgment Hearing Presented by Plaintiff Slides, April 10, 2014, at 106 ("While the Court's claim construction resolves the issue of literal infringement of B&N's DRM process, there is still infringement under the DOE"); Berg. Decl. ¶ 25. However, the prosecution history estoppel for this patent involved amending its claims to include the concept of selection of a list prior to encryption (where the underlines indicate addition of language to the previously applied for claim):

1. (Currently amended): A method for encrypting<u>, sending and receiving</u> electronic books <u>upon demand</u>, comprising:
   <u>creating a list of titles of available electronic books;</u>
   <u>transmitting the list of titles of available electronic books</u>
   <u>selecting a title from the transmitted title to an electronic book source;</u>
   supplying [[an]] <u>a selected</u> electronic book <u>corresponding</u>

8

>       <u>to the selected title</u> to be encrypted;
>
>       supplying an encryption key;
>
>       encrypting the **selected** electronic book using the encryption key;
>
>       supplying the **encrypted selected** electronic book;
>
>       supplying a decryption key; and
>
>       decrypting the encrypted <u>selected</u> electronic book using the decryption key

Def.'s 56.1 ¶ 182 (emphasis added); P.'s 56.1 ¶ 182. Here, the amendment specifies in several instances (e.g., by adding the word "selected" to the phrase "encrypting the electronic book") that there must be encryption of an already selected electronic book. Thus, there is no infringement of claim 1 of the '851 patent under the doctrine of equivalents.

Apart from the three rulings set forth above, all the other summary judgment motions of both sides are denied in light of the many factual disputes enumerated at length during oral argument on April 10, 2014, see Transcript dated 4/10/14. Accordingly, the Court grants defendants summary judgment in the three respects detailed above, and otherwise denies all pending summary judgment motions of both sides.

SO ORDERED.

Dated:   New York, NY
         June 30, 2014

                                          _____
                                          JED S. RAKOFF, U.S.D.J.