# Proskauer»

Proskauer Rose LLP   2049 Century Park East, 32nd Floor   Los Angeles, CA 90067-3206

July 22, 2014

By Email

Hon. Jed S. Rakoff
Room 1340
United States Courthouse
500 Pearl Street
New York, NY 10007

Colin G. Cabral
Senior Counsel
d 310.284.5611
f 310.557.2193
ccabral@proskauer.com
www.proskauer.com

*Docket as Plaintiff's Letter*

Re:   ADREA, LLC v. Barnes & Noble, Inc. et al., 13-CV-4137 (JSR) (S.D.N.Y.)

Dear Judge Rakoff:

Pursuant to the Court's July 8, 2014 Order, Plaintiff submits this letter in opposition to the request by Barnes & Noble ("B&N") to: (i) amend its invalidity contentions; (ii) supplement its expert report on invalidity; and (iii) file a second summary judgment motion arguing that one of the three patents-in-suit—U.S. Patent No. 7,299,501 ("the '501 patent")—is invalid under 35 U.S.C. § 101 ("Section 101").

B&N's request is based on a false premise—namely, that the Supreme Court's decision in *Alice v. CLS Bank*[1] created "new law" that B&N could not have anticipated until after the decision issued. (B&N letter at 2.) In fact, *Alice* could not be clearer: the Supreme Court did not change the law, but rather applied the "*Mayo* test," a legal framework for invalidity challenges under Section 101 that has been in place since 2012. B&N relied on the same *Mayo* framework when, earlier in the case, it asserted a §101 defense against a different patent-in-suit—U.S. Patent No. 7,298,851 ("the '851 patent")—and moved for summary judgment that the '851 patent is invalid under Section 101—a motion denied by this Court (Dkt. No. 85). Indeed, B&N made the same argument pre-*Alice* that it now seeks to raise against the '501 patent post-*Alice*. B&N does not explain why it was able to assert a timely §101 defense against the '851 patent before the discovery cutoff when, according to B&N, the law was too "unsettled" to raise the same defense against the '501 patent. (*See* B&N letter at 3.)

| B&N's Pre-*Alice* Contention re '851 Patent | B&N's Post-*Alice* Contention re '501 Patent |
| --- | --- |
| "Claims 1, 34, and 35 of the '851 Patent are invalid under § 101 because they add nothing more than trivial steps to the abstract idea of using encryption to provide electronic information." | "B&N's proposed supplemental expert disclosures will confirm that the claims of the '501 patent add no meaningful restrictions to the abstract idea of providing limited-time access to books." |
| (Dkt. No. 63, B&N Op. SJ Br. at 43.) | (B&N letter at 2.) |

---

[1] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 572 U.S. __ (2014).

Proskauer»

Hon. Jed S. Rakoff
July 22, 2014
Page 2

In *Alice*, the Supreme Court wrote: "In [*Mayo v. Prometheus*], 566 U. S. __ (2012), we set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. __ (slip op. at 7). The analysis involves a two-part test. The court first determines whether the claims-at-issue are directed to a patent-ineligible concept, and second, the court asks what else is in the claims—*i.e.*, whether there is an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* (citing *Mayo*, 566 U. S. __ (slip. op. at 3, 9)).

Since the Supreme Court issued its decision, courts have been uniform in confirming that *Alice* did not change the analysis for determining patent validity under Section 101. Earlier this month, the Federal Circuit wrote that, in *Alice*, the Supreme Court "reaffirmed that fundamental concepts, by themselves, are ineligible abstract ideas." *Digitech Image Technologies v. Electronics for Imaging, Inc.*, No. 2013-1600, 2014 U.S. App. LEXIS 13149, *11 (Fed. Cir. Jul. 11, 2014). The Federal Circuit referenced the "*Mayo* test." *Id.* at *14 ("We therefore need not decide whether tying the method to an image processor would lead us to conclude that the claims are directed to patent eligible subject matter in accordance with the Supreme Court's *Mayo* test."). Similarly, in this District, Judge Engelmayer recently characterized the Supreme Court's approach in *Alice* as applying the framework set forth in the *Mayo* case: "To determine whether the patent claimed a patent-eligible process, the [Supreme] Court applied the two-step framework articulated in *Mayo*." *Dietgoal Innovations LLC v. Bravo Media LLC*, No. 13-cv-8391 (PAE), 2014 U.S. Dist. LEXIS 92484, *26 (S.D.N.Y Jul. 8, 2014).

Put simply, *Alice* is not "new law" with respect to "patents involving computer software and hardware," as B&N argues.[2] (B&N letter at 2.) B&N does not identify any way in which *Alice* changed the law with respect to patent eligibility under Section 101. Although B&N argues that before *Alice* "it was unclear whether and under what circumstances the recitation of a computer or computer components was enough" (B&N letter at 2), it was well-settled that "simply implementing a mathematical principle [*i.e.*, an abstract idea] on a physical machine, namely a computer, was not a patentable application of that principle." *Mayo*, 566 U.S. __, 132 S.Ct. 1289, 1301 (2012) (citing *Gottschalk v. Benson*, 409 U.S. 63, 71–72, 93 S.Ct. 253 (1972)).

---

[2] On June 25, 2014, the United States Patent Office issued Preliminary Examination Instructions in view of the *Alice* decision ("PTO Instructions"). Available at http://www.uspto.gov/patents/announce/alice_pec_25jun2014.pdf. The PTO Instructions observe that "[t]he Supreme Court made clear in *Alice Corp.* that it applies the framework set forth in *Mayo* . . . to analyze all claims directed to laws of nature, natural phenomena, and abstract ideas for subject matter eligibility under 35 U.S.C. § 101." (PTO Instructions at 1.) The PTO Instructions note that *Alice* "neither creates a per se excluded category of subject matter, such as software or business methods, nor imposes any special requirements for eligibility of software or business methods." (*Id.*) The Patent Office concluded that "the basic inquiries to determine subject matter eligibility remain the same." (*Id.* at 2.)

**Proskauer**

Hon. Jed S. Rakoff
July 22, 2014
Page 3

Moreover, in cases dealing with computerized methods, the Supreme Court has repeatedly endorsed the proposition that "the prohibition against patenting abstract ideas cannot be circumvented to limit the use of [the idea] to a particular technological environment." *See Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010) (internal quotation marks omitted); *see also Alice*, 573 U.S. __ (slip op. at 11-13) (discussing the holdings of *Mayo*, *Flook*, and *Diehr*).

  B&N argues that it has "good cause" to amend its invalidity contentions and file an additional summary judgment motion because "[it] could not have asserted this [§101] defense before the scheduling order's deadline." (B&N letter at 3). But this is not true. B&N could have easily raised a §101 defense against the '501 patent, as it did with respect to the '851 patent, when B&N supplemented its invalidity contentions, with this Court's permission, before the discovery cutoff in November 2013. B&N's failure to do so until now demonstrates a complete lack of diligence.

  Finally, B&N's request is not only untimely, but also disruptive to this Court's schedule. The Court held its final pre-trial conference on April 10, 2014, and the case is scheduled for trial on October 6, 2014. Additional expert discovery and another round of summary judgment briefing at this late stage would substantially interfere with trial preparation, forcing the parties to expend a significant amount of additional resources.[3] There is no justification for this imposition on ADREA and the Court, particularly where B&N has already moved for summary judgment on virtually every issue in this case (including the validity of the '851 patent under Section 101), in what this Court called a "vastly over-litigated motion," and in which "[B&N], having been given 50 pages instead of 25, with the Court's permission, submitted a brief that instead of having double spacing, had 1.75 spacing." (04/10/14 Hearing Transcript at 3, 22.) B&N has been given more than a fair opportunity to raise defenses and make a case for summary judgment.

  For these reasons, ADREA respectfully asks that the Court deny B&N's request.

Respectfully submitted,

*/s/*

Colin Cabral

---

[3] B&N's suggestion that Plaintiff would suffer no prejudice because it is "already amending [its] expert disclosures on multiple issues, including damages and invalidity" is inaccurate. ADREA has not asked for leave to supplement its expert report on damages because all that remains is a matter of simple accounting based on B&N's updated financial information. Moreover, while B&N intends to supplement its current expert disclosures on indefiniteness, which comprise only one-half of one page in B&N's expert report on invalidity, it remains to be seen whether a response from ADREA's expert will be necessary.