# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

July 15, 2014

### VIA E-MAIL [SHISHENE_JING@NYSD.USCOURTS.GOV] (BY PERMISSION)

Chambers of The Honorable Jed S. Rakoff
United States District Court, S.D.N.Y.
500 Pear Street, Room 1340
New York, NY 10007

*Docket as Deft's Letter*

Re:   *Adrea v. Barnes & Noble et al.*, 13-CV-4137 (JSR)

Dear Judge Rakoff:

We represent Defendants ("B&N") in the above entitled action. B&N respectfully requests leave to supplement its defenses and file an additional summary judgment motion on the grounds that one of the three patents in suit, U.S. Patent No. 7,299,501 (the "'501 Patent"), is not patent-eligible in light of a recent U.S. Supreme Court decision.

On June 19, 2014 the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298, 573 U.S. __ (2014), clarifying the test for patentability under §101 for claims involving abstract ideas. That was only days before this Court had indicated it would rule on B&N's then-pending summary judgment motion, which was potentially case-dispositive with respect to the '501 Patent. On July 1, 2014, this Court's summary judgment ruling held that issues of fact remain regarding all three patents in suit, including the '501 Patent. On Wednesday, July 2, 2014, per the Court's individual rules, B&N contacted Adrea to discuss the implications of the summary judgment ruling and request a joint call to the Court on any issues the parties could not resolve by agreement.[1] The parties had discussions on these issues on Thursday and Monday (Friday was Independence Day) and jointly called the Court on Tuesday, July 8, to discuss, among other issues, B&N's request for leave to amend its invalidity disclosures and to file an additional summary judgment motion with respect to patentability of the asserted claims of the '501 Patent in light of *Alice*. Adrea opposed this request and the Court directed the Parties to file letter briefs on this issue.

---

[1] B&N also sought leave to amend its invalidity disclosures regarding claim 96 of the '851 patent in light of *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. __ (June 2, 2014). Adrea did not oppose and the Court already granted this request. Adrea also indicated that in the wake of the Court's summary judgment order it will be supplementing its expert disclosures regarding damages, which B&N agrees is appropriate.

The '501 patent fails to claim patentable subject matter under the newly explained *Alice* test. As explained in *Alice*, to determine whether a claim covers patent-eligible subject matter, a court should first look at whether it is directed to a patent-ineligible concept—a law of nature, natural phenomena, or abstract idea. *See id.* at 7. Second, if the answer is yes, a court should look at each element of the claims at issue and determine whether the patentee has claimed "significantly more than" the underlying abstract idea. *See id.* at 7, 11. As for what constitutes "significantly more," *Alice* makes clear that claims for abstract ideas cannot be saved through artful drafting. *See, e.g., id.* at 11, 13-14, 16. Adding "purely functional and generic" computer components that "[n]early every computer will include" (*e.g.*, those that perform "basic calculation, storage, and transmission functions") does not suffice. *See id.* at 16.

Prior to *Alice*, claims directed to abstract ideas had to include "additional features" to be patentable, but it was unclear whether and under what circumstances the recitation of a computer or computer components was enough. Indeed, in *Alice*, the petitioner's principal contention was that the claims at issue were patent eligible because they required "a substantial and meaningful role for the computer." *Id.* at 14. Ultimately, the Court found that the asserted claims in *Alice* were directed to the abstract idea of intermediated settlement, and that "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Id.* at 1, 7.

When the approach articulated and given new meaning by the Court in *Alice* is applied to the asserted claims of the '501 patent, it is clear that those claims are not patent-eligible. That is ultimately a question of law for the Court. In addition, B&N's proposed supplemental expert disclosures will confirm that the claims of the '501 patent add no meaningful restrictions to the abstract idea of providing limited-time access to books—a concept that libraries have been implementing for centuries. *See* '501 Patent, Claims 7-9, 18-19.

Adrea has indicated that it opposes B&N's request on the grounds that *Alice* allegedly is not truly intervening case law. In fact, although *Alice* purports to be consistent with prior Supreme Court precedent on the issue of patentable subject matter, it is new law—it clarifies the standard to be applied to patents involving computer software and hardware, especially in light of the Federal Circuit's prior decisions on this issue.

During the entire pendency of this case, the Federal Circuit's interpretation of Supreme Court precedent as to patent eligibility has been unclear. The Federal Circuit decision on appeal in *Alice* was issued one month before this action was filed. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1273 (Fed. Cir. 2013) (*en banc*). That decision, itself, was an *en banc* reversal of a Federal Circuit panel decision finding all asserted claims valid under §101 pursuant to the panel's interpretation of the Supreme Court's ruling in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) (*see CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 685 F.3d 1341, 1347-52 (Fed. Cir. 2012)). Ten judges wrote seven conflicting opinions, many citing *Prometheus* as support. *See. e.g., CLS Bank*, 717 F.3d at 1277, 1282, 1297-1304, 1310, 1314-16, 1323). Judge Newman aptly described the *en banc* decision as "judicial deadlock": "[W]e have propounded at least three incompatible standards, devoid of consensus, serving simply to add to the unreliability and cost of the system of patents as an incentive for innovation." *Id.* at 1321 (Newman, J., concurring in part, dissenting in part).

Prior to the Supreme Court's resolution of this judicial deadlock, B&N had good reason not to expend judicial and its own resources on a patent-eligibility challenge as to the mixed

system and method claims of the '501 Patent, which contain some computer limitations. *Alice* has now made clear that these claims are not patentable. Beyond the underlying abstract idea, the additional elements require nothing more than implementation on a computer having generic components, such as memory, a display, and a processor. *See* '501 Patent, Claims 7-9, 18-19. These limitations contain no unique algorithms, no specialized computer programming, and no non-generic hardware; they are insufficient under *Alice* to confer patent-eligibility on the abstract idea of providing limited-time access to books.

B&N has good cause for seeking leave to file amendments and an additional summary judgment motion past the scheduling order's deadline (*see* Dkt. #20). See Fed. R. Civ. P. 16(b)(4). When considering good cause, "the primary consideration is whether the moving party can demonstrate diligence." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). A court may also consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies . . ., undue prejudice to the opposing party [and] futility of the amendment." *Villante v. VanDyke*, 93 Fed. App'x 307, 309 (2d Cir. 2004); *see Kassner*, 496 F.3d at 244.

As discussed above, B&N has been diligent. The Supreme Court issued its opinion in *Alice* less than one month ago. A party is diligent where, as here, it quickly seeks leave to add a new argument based on a change in applicable law. *See Villante*, 93 Fed. App'x at 311. B&N could not have asserted this defense before the scheduling order's deadline since, "at the time [of the deadline] ..., the law ... was unsettled." *See Villante*, 93 Fed. App'x at 311. For this reason, there has been no undue delay. There is also no bad faith, dilatory motive, or repeated failure to cure deficiencies.

Further, Plaintiffs cannot claim prejudice. The parties are already amending their expert disclosures on multiple issues, including damages and validity. An amendment is prejudicial if the opposing party must "expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *Salomon v. Adderley Industries, Inc.*, 960 F. Supp. 2d 502, 508 (S.D.N.Y. 2013). Here, expert discovery is already reopening on a limited basis, and further fact discovery is not necessary. The requested relief need have no effect on the case schedule. Because patent eligibility is a question of law, the Court could decide this issue as a supplemental issue of summary judgment or otherwise at its convenience.

For these reasons, B&N respectfully requests leave to amend its Answer, Invalidity Contentions, and Expert's Report, and to file an additional summary judgment motion, to assert a §101 defense to the asserted claims of the '501 Patent. We thank the Court for its consideration, and would be pleased to address any questions.

Respectfully,

ARNOLD & PORTER LLP

By: /s/ Louis S. Ederer
Louis S. Ederer

cc: All Counsel

3