UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

ADREA, LLC,

           Plaintiff,

   - against -                      ECF Case

BARNES & NOBLE, INC.,           13-CV-4137 (JSR)
BARNESANDNOBLE.COM LLC, and
NOOK MEDIA LLC,

           Defendants.
_____

# MEMORANDUM OF LAW IN SUPPORT OF

# DEFENDANTS' MOTION TO SEAL

Defendants and Counterclaim-Plaintiffs Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC (collectively, "B&N") respectfully submit this Memorandum of Law in Support of their Motion to Seal.[1]  B&N seeks an Order to seal the courtroom during the presentation of certain highly sensitive B&N financial information, and to have unredacted copies of the documents containing such information available for the Court and the jury, but to have redacted copies placed in the public record.

On October 7, 2014, trial will commence in this case.  In assessing damages, experts for both Adrea and B&N rely on certain highly sensitive sales information and other financial data produced by B&N in this case (on an Outside Attorneys' Eyes Only basis, subject to the Court's Protective Order (Dkt. No. 30)), that B&N has never publicly-disclosed.  Such information includes, for example, financial information as to the number of NOOK units sold on a monthly and by-device basis (Exs. B, C, F, & G),[2] as well as the revenue generated from such sales (*id.*).  Based on its proposed trial exhibit list and damages expert's reports, Adrea intends to introduce such documents and financial data, and also intends to rely on other sensitive B&N financial information, including the costs associated with manufacturing the NOOK devices (Ex. H), the amount of royalties B&N has paid on certain technology licenses related to the NOOK (Ex. I), the number of NOOK Apps downloaded on an annual basis by operating systems (Ex. J), the number of eBooks associated with the Apps on an annual basis by operating systems (*id.*), the revenues and profits made by B&N on eContent[3] and NOOK accessories on a monthly basis (Ex.

---

[1] In a telephone conference with the Court on September 26, 2014, counsel for Plaintiff Adrea, LLC ("Adrea") stated that his client does not intend to oppose this Motion.

[2] The term "Ex. __" refers to exhibits attached to the Declaration of Yue-Han Chow in Support of Defendants' Motion to Seal, filed concurrently with this Memorandum of Law on September 29, 2014.

[3] "eContent" is defined here as eBooks, electronic magazine subscriptions, and apps.

D), as well as the units sold and revenues realized on various categories of eContent sales, on a monthly basis and by point of purchase (i.e., from B&N's website, from the NOOK device, etc…) (Ex. E).[4]

B&N does not publicly report any of the foregoing information, and, in fact, closely guards it internally, as its disclosure would result in severe competitive harm to B&N. B&N's SEC Filings only report revenues made on sales more generally for the entire NOOK business segment, which consists of sales of NOOK devices, eContent, and NOOK accessories, among other things. Declaration of Richard Nagle ("Nagle Decl.") ¶ 3; *see, e.g.,* Ex. A at BN-ADREA 047459, BN-ADREA047461). The SEC Filings do not report on a granular level, that is, as on a monthly basis, or by device, eContent, or accessories. Nagle Decl. ¶ 4. B&N also has never reported the number of units it has sold by device, eContent, or accessories, in any format, or the costs of manufacturing the NOOK devices by component or otherwise, *id.* ¶ 5, and with good reason.

Disclosure of this information would cause B&N competitive harm because it would allow competitors and suppliers access to extremely detailed financial information that B&N, like its competitors, closely maintains, thereby providing them with a strategic and competitive advantage against B&N in the marketplace. The information at issue constitutes B&N's trade secrets, which the company does not disclose publicly and in fact restricts within the company. *Id.* ¶ 6. B&N's competitors in the eReader and eContent industry also do not publicly report such detailed information about their sales, costs, and revenues. *Id.* ¶ 7. To reveal such detailed information about B&N's NOOK business segment publicly would allow B&N's competitors and suppliers in the eReader/eContent industry to use the information competitively against

---

[4] The last four documents are the subject of Defendants' pending Motions *In Limine*.

B&N in direct competition and negotiations, while at the same time B&N would lack access to the same or similar information from its competitors. *Id.* ¶ 8.  Accordingly, B&N would be placed at a severe competitive disadvantage in the marketplace.

Although there is a presumption of access to judicial documents, courts will balance against it countervailing factors, including "the privacy interests of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006).  Courts will not only consider the sensitivity of the information involved, but also how a person seeking access intends to use the information.  *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).  The disclosure interests of "[c]ommercial competitors seeking an advantage over rivals need not be indulged." *Id.*

Here, B&N has a strong privacy interest in the sealing of its most highly sensitive confidential financial information.  It has never released this information to the public and doing so will certainly put it at a strong competitive disadvantage.  *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1977) (noting that right to copy and inspect judicial records is not absolute and that courts have refused to allow their records to serve "as sources of business information that might harm a litigant's competitive standing"); *see also Bank of New York v. Meridien*, 171 F.R.D. 135, 143-44 (S.D.N.Y. 1997) (in determining whether to issue a protective order against production of sensitive business documents, the considerations include the extent to which the information is known outside the business and the value of the information to the business's competitors); *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (noting that categories of documents commonly sealed include ones containing revenue information and pricing information).  Further, it is Adrea, not B&N, which seeks to

introduce and rely on much of this highly sensitive financial and business information, and this also militates in favor of a sealing order.

Courts have sealed the courtroom in civil cases where confidential trade secret information would be revealed. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 600 n.5 (1980) (Stewart, J., concurring) (noting that "[t]he preservation of trade secrets…might justify the exclusion of the public from at least some segments of a civil trial"); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 541 F. Supp. 1273, 1276-78 (S.D.N.Y. 1982) (holding that sealed testimony given during preliminary injunction hearing should remain sealed because it contained trade secret information not available to general public). In *Encyclopedia Brown Productions, Ltd. v. Home Box Office, Inc.*, 26, F. Supp. 2d 606, 612-15 (S.D.N.Y. 1998), the court held that for the forthcoming trial, information about the licensing fees that HBO paid to the plaintiff in a copyright infringement case were confidential trade secrets and should be sealed, because otherwise HBO would suffer irreparable harm. The court relied on Section 757 of the Restatement of Torts to define trade secrets as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." 26 F. Supp. 2d at 613 (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns*, 118 F.3d 955, 968 (2d Cir. 1997)).

Courts have consistently found company sales, revenues, costs, and profit information to constitute trade secrets that may be sealed in summary judgment motions, pretrial submissions, and trial transcripts. *See, e.g., Erwin v. Waller Capital Partners LLC*, No. 10-3283, 2012 WL 3528976, at *2 (D.N.J. Aug. 14, 2012) (sealing portions of trial transcript regarding defendant's revenues, expenses, profits, and losses); *Bauer Bros. LLC v. Nike, Inc.*, No. 09-cv-500, 2012 WL 1899838, at *2-4 (S.D. Cal. May 24, 2012) (sealing non-public financial data, sales, costs, cost

4

of goods sold, royalty costs, sales and accounting data, and revenues as part of summary judgment motion); *Bean v. John Wiley & Sons, Inc.*, No. cv-11-8028, 2012 WL 1078662, at *5-6 (D. Ariz. Mar. 30, 2012) (sealing chart of unit and revenues sales filed as part of summary judgment motion); *TriQuint Semiconductor, Inc. v. Avago Technologies Ltd.*, No. CV-09-1531, 2011 U.S. Dist. LEXIS 143942, at *8, *20-21 (D. Ariz. Dec. 13, 2011) (sealing volume of sales and profit margin information filed as part of summary judgment motion); *Bracco Diagnostics, Inc. v. Amersham Health Inc.*, C.A. No. 03-6025, 2007 WL 2085350, at *5-8 (D.N.J. July 18, 2007) (sealing cost and profit information in final pretrial order and other pretrial motions and filings). Here, B&N's breakdown of sales information, manufacturing costs, and use of its NOOK App—which is not even an accused product at issue in this case—all constitute confidential trade secrets that it uses to guide its business decisions, and to maintain a competitive advantage over others who do not have this information.

After determining that certain categories of documents should be sealed, the court in *Encyclopedia Brown* directed the parties to discuss the least restrictive means of protecting this confidential information at trial, such as "closure [of the courtroom] only during the testimony of certain witnesses, selective exclusion of persons who may have an interest in appropriating the information or, possibly, having those in attendance take an oath to maintain the confidentiality of the information." 26 F. Supp. 2d at 614-15 (citing *Stamicarbon, N.V. v. Am. Cyanamid Co.*, 506 F.2d 532, 541 (2d Cir. 1974)). Bearing in mind that sealing orders should be narrowly tailored, *Lugosch*, 435 F.3d at 124, B&N therefore requests that the courtroom only be sealed at the time the fact and expert witnesses are testifying about the particular documents that concern B&N's sales information, manufacturing costs, and use of its NOOK Apps. Such sealing would

only require the removal of persons from the courtroom who are not counsel or corporate representatives for the parties.[5]

Regardless of whether the Court seals the courtroom during the testimony of the parties' damages experts pertaining to B&N's sensitive financial information, B&N also requests that redacted versions of the trial exhibits containing sensitive and confidential financial information be placed in the public record. Courts have allowed unredacted copies of documents to be made available to the court and the jury, but redacted versions to be placed in the public record. *NAACP v. A.A. Arms Inc.*, Nos. 99 CV 3999, 99 CV 7037, 2003 WL 21135579 (E.D.N.Y. May 8, 2003) (confidential spreadsheets prepared for litigation containing sales volume by model number permitted to submit proposed order for such redaction). In this way, the public will still have access to the most germane parts of the damages case: the damages experts' methodology, what they considered for each *Georgia-Pacific* Factor in arriving at a reasonable royalty (including the categories of information considered without identification of the actual figures used), whether such factor(s) had an upward or downward effect on their royalty rate, and the means by which each expert calculated his damages. All that would be missing is the actual figures used to perform the royalties calculations.

For the foregoing reasons, Defendants respectfully request the Court to enter a pretrial Order granting Defendants' Motion to Seal.

---

[5] The parties have agreed that their respective corporate representatives may remain in the courtroom during such testimony, to avoid inconvenience and delay, subject to mutually agreeable restrictions on the use either party will make with respect to the other's confidential information presented at trial.

Dated:  September 29, 2014        **Arnold & Porter LLP**

*/s/  Yue-Han Chow*
Louis S. Ederer
Susan Shin
Yue-Han Chow
Maxwell Preston
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael Berta (*pro hac vice*)
Willow Noonan (*pro hac vice*)
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc., barnesandnoble.com llc, and Nook Media LLC*

**CERTIFICATE OF SERVICE**

I, hereby certify that on September 29, 2014, copies of the foregoing were caused to be served upon the following via ECF and FTP:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
krubenstein@proskauer.com
bvinti@proskauer.com

Steven Michael Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
sbauer@proskauer.com
kmottley@proskauer.com
mmiller@proskauer.com
pniedermeier@proskauer.com
estaab@proskauer.com

Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067
ccabral@proskauer.com

       */s/ Yue-Han Chow*
       Yue-Han Chow