**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADREA, LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>BARNES & NOBLE, INC.,<br>BARNESANDNOBLE.COM LLC, and<br>NOOK MEDIA LLC,<br><br>       *Defendants.* | Civil Action No. 13-cv-4137 (JSR) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

## MOTION NO. I

1. **OPPOSITION TO MOTION *IN LIMINE* NO. I-A: THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT INTRODUCE EVIDENCE OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS WITH RESPECT TO THE "SELECTS A TITLE" AND "SINGLE USER INPUT" ELEMENTS OF THE ASSERTED CLAIMS.**.................1

2. **OPPOSITION TO MOTION *IN LIMINE* NO. I-B: THE MOTION SHOULD BE DENIED BECAUSE IT DOES NOT RELATE TO THE ADMISSIBILITY OF EVIDENCE AND INSTEAD CONSTITUTES AN IMPROPER ATTEMPT BY B&N TO RELITIGATE ITS MOTION FOR SUMMARY JUDGMENT.** ........................................................................2

3. **OPPOSITION TO MOTION *IN LIMINE* NO. I-C: THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT ELICIT DIRECT TESTIMONY ON "REVERSE-ENGINEERED" SOURCE CODE, AND MR. BERG PROPERLY DISCLOSED THE "DEVICE LOGS" IN DISCOVERY.**..........................................................................................4

4. **OPPOSITION TO MOTION *IN LIMINE* NO. I-D: THE MOTION SHOULD BE DENIED BECAUSE DR. WANG WILL NOT OPINE OUTSIDE THE SCOPE OF HIS EXPERT REPORT AND DEPOSITION TESTIMONY.** ......................................................................................5

5. **OPPOSITION TO MOTION *IN LIMINE* NO. I-E: THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT PRESENT A NEW OR DIFFERENT ROYALTY RATE AT TRIAL.**................................6

## MOTION NO. II

1. **OPPOSITION TO MOTION *IN LIMINE* NO. II-A: THE MOTION SHOULD BE DENIED BECAUSE THE COMPLETENESS OF B&N'S SOURCE CODE PRODUCTION IS RELEVANT TO THE EXTENT B&N CHALLENGES MR. BERG'S SOURCE CODE ANALYSIS ON CROSS-EXAMINATION.**.......................................................................................7

2. **OPPOSITION TO MOTION *IN LIMINE* NO. II-B: THE MOTION SHOULD BE DENIED AS MOOT BECAUSE THE PARTIES HAVE STIPULATED THAT THE RELEVANT PERIOD FOR WILLFUL INFRINGEMENT BEGINS ON MARCH 29, 2012.**................................8

3.      OPPOSITION TO MOTION *IN LIMINE* NO. II-C: THE MOTION
        SHOULD BE DENIED BECAUSE PLAINTIFF MAY RELY ON
        EVIDENCE PRODUCED BY DEFENDANTS TO ESTABLISH
        WILLFULNESS.................................................................................................8

4.      OPPOSITION TO MOTION *IN LIMINE* NO. II-D: THE MOTION
        SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT INTRODUCE
        B&N'S LACK OF RELIANCE ON COUNSEL TO THE JURY................................9

5.      OPPOSITION TO MOTION *IN LIMINE* NO. II-E: THE MOTION
        SHOULD BE DENIED BECAUSE DEFENDANTS' LICENSES FOR
        NOOK-RELATED TECHNOLOGIES ARE SUFFICIENTLY
        COMPARABLE TO THE HYPOTHETICAL LICENSE. .........................................10

6.      OPPOSITION TO MOTION *IN LIMINE* NO. II-F: THE MOTION
        SHOULD BE DENIED BECAUSE THE EFFECT OF THE INVENTION
        OF THE '703 PATENT IN PROMOTING SALES OF DIGITAL CONTENT
        IS RELEVANT TO DAMAGES ISSUES AND PLAINTIFF WILL ONLY
        MENTION SALES MADE USING THE ACCUSED NOOK DEVICES.................11

7.      OPPOSITION TO MOTION *IN LIMINE* NO. II-G: THE MOTION
        SHOULD BE DENIED BECAUSE THE PROPOSED TRIAL EXHIBITS
        ARE RELEVANT TO SUPPORT PROF. MAGEE'S REASONABLY
        ROYALTY ASSESSMENT UNDER *GEORGIA-PACIFIC*........................................13

8.      OPPOSITION TO MOTION *IN LIMINE* NO. II-H: THE MOTION
        SHOULD BE DENIED BECAUSE DEFENDANTS MISCONSTRUE
        *GEORGIA-PACIFIC* FACTOR NO. 12.................................................................14

9.      OPPOSITION TO MOTION *IN LIMINE* NO. II-I:  THE MOTION
        SHOULD BE DENIED BECAUSE THE INTERTRUST ANALYSIS IS
        HIGHLY PROBATIVE EVIDENCE REGARDING THE OUTCOME OF
        THE HYPOTHETICAL NEGOTIATION AND CREATES NO RISK OF
        CONFUSING THE JURY. ................................................................................15

10.     OPPOSITION TO MOTION *IN LIMINE* NO. II-J: THE MOTION
        SHOULD BE DENIED BECAUSE DEFENDANTS' DISAGREEMENT
        WITH PLAINTIFF'S DAMAGES IS NOT A BASIS TO PRECLUDE
        EVIDENCE AND ARGUMENT CONCERNING THOSE DAMAGES.................17

11.     OPPOSITION TO MOTION *IN LIMINE* NO. II-K: THE MOTION
        SHOULD BE DENIED AS MOOT.......................................................................19

12.     OPPOSITION TO MOTION *IN LIMINE* NO. II-L: THE MOTION
        SHOULD BE DENIED BECAUSE EVIDENCE CONCERNING
        DEFENDANTS' REVENUES, PROFITS, AND INVESTMENTS ARE
        RELEVANT TO THE HYPOTHETICAL NEGOTIATION ANALYSIS,
        AND ARE NOT UNDULY PREJUDICIAL. ..........................................................19

## MOTION NO. III

1.      OPPOSITION TO MOTION *IN LIMINE* NO. III: THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT INCLUDED MR. BERG'S EXPERT REPORT ON ITS EXHIBIT LIST AND AGREES TO USE CLEAN, UNMARKED VERSIONS OF MR. BERG'S EXHIBITS FOR DEMONSTRATIVE PURPOSES ONLY. ................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Babcock v. Rezak*,
   No. 96-cv-0394E, 2002 WL 31654995 (W.D.N.Y. Nov. 6, 2002)............................................5

*Broadcom Corp. v. Emulex Corp. et al.*,
   No. 09-01058-JVS, 2011 WL 11025895 (C.D. Cal. Dec. 13, 2011)......................................11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   535 U.S. 722 (2002)............................................................................................................2

*Gabel v. Richards Spears Kibbe & Orbe, LLP*,
   No. 07-cv-11031, 2009 WL 1856631 (S.D.N.Y. June 26, 2009) ..........................................15

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
   318 F. Supp. 1116 (S.D.N.Y. 1970)................................................................................. passim

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *Cert. granted on other grounds*, 131 S. Ct. 647
   (2010) ...............................................................................................................................9, 10

*In re Seagate*,
   497 F.3d 1360, (Fed. Cir. 2007)..............................................................................................9

*Jung v. Neschis*,
   No. 01-6993, 2007 WL 5256966 (S.D.N.Y Oct. 23, 2007)....................................................14

*Lesse v. Lockheed Martin Corp.*,
   No. 11-cv-5091, 2014 WL 1092406 (D.N.J. Mar. 18, 2014) .................................................17

*Luce v. U.S.*,
   469 U.S. 38 (1984)..................................................................................................................8

*Lucent Tech., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009).................................................................................10, 11, 19

*Malletier v. Dooney & Bourke, Inc.*,
   525 F. Supp. 2d 558 (S.D.N.Y. 2007).............................................................................14, 15

*Mirror Worlds, LLC v. Apple, Inc.*,
   784 F. Supp. 2d 703 (E.D. Tex. 2011) ....................................................................................7

*Miteva v. Third Point Mgmt. Co.*,
   218 F.R.D. 397 (S.D.N.Y. 2003) .........................................................................................1, 4

*NIC Holding Corp. v. Lukoil Pan Ams.*,
   No. 05-cv-9372, 2009 WL 996408 (S.D.N.Y. Apr. 14, 2009) ..................................................2

*Pfizer, Inc. v. Apotex, Inc.*,
   480 F. 3d 1348 (Fed. Cir. 2007)..........................................................................................6

*Positive Techs., Inc. v. Sony Elecs., Inc.*,
   No. 11-cv-2226, 2013 WL 707914 (N.D. Cal. Feb. 26, 2013) ..................................................13

*Spectralytics, Inc. v. Cordis Corp.*,
   649 F.3d 1336 (Fed. Cir. 2011).............................................................................................9

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*,
   279 F.3d 1357 (Fed. Cir. 2002)............................................................................................6

*Torah Soft Ltd. v. Drosnin*,
   No. 00-civ-0676, 2003 WL 22024074 (S.D.N.Y. Aug. 28, 2003) .......................................1, 4

*U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*,
   No. 02-cv-4182, 2006 WL 3146422 (S.D.N.Y. Oct. 30, 2006)...............................................2

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie*,
   293 F. Supp. 2d 397 (S.D.N.Y. 2003)...................................................................................5

*Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*,
   609 F.3d 1308 (Fed Cir. 2010)...........................................................................................10

### STATUTES

35 U.S.C. § 298...................................................................................................................9

Plaintiff ADREA, LLC ("ADREA") submits this memorandum of law in opposition to the motions *in limine* made by defendants Barnes & Noble, Inc., barnesandnoble.com LLC, and/or Nook Media LLC (collectively "Defendants" or "B&N") to exclude certain testimony, arguments and exhibits from admission at trial.

| OPPOSITIONS TO MOTION *IN LIMINE* NOS. I-A THROUGH I-E |
| --- |

1.     **OPPOSITION TO MOTION *IN LIMINE* NO. I-A:  THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT INTRODUCE EVIDENCE OF INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS WITH RESPECT TO THE "SELECTS A TITLE" AND "SINGLE USER INPUT" ELEMENTS OF THE ASSERTED CLAIMS.**

Plaintiff has no intention of introducing opinions or evidence that B&N's accused devices meet either the "single user input" limitation of claim 13 of the '703 patent, or the "selects a title" limitation of claim 96 of the '851 patent under the doctrine of equivalents.   B&N's apparent belief that Plaintiff will attempt to do so is unfounded.  The motion should be denied as premature.  *See*, *e.g. Torah Soft Ltd. v. Drosnin*, No. 00-civ-0676, 2003 WL 22024074, at *2 (S.D.N.Y. Aug. 28, 2003) (denying motion *in limine* as premature where adversary "has disclaimed any intention to introduce any findings of fact from the copyright fee decision"); *Miteva v. Third Point Mgmt. Co.*, 218 F.R.D. 397, 398 (S.D.N.Y. 2003) (denying motion *in limine* as premature where adversary disavowed any intention to introduce certain evidence at trial, and noting that the moving party could renew its request "[s]hould the matter arise and become relevant to trial at a later point").

2.    **OPPOSITION TO MOTION *IN LIMINE* NO. I-B:    THE MOTION SHOULD BE DENIED BECAUSE IT DOES NOT RELATE TO THE ADMISSIBILITY OF EVIDENCE AND INSTEAD CONSTITUTES AN IMPROPER ATTEMPT BY B&N TO RELITIGATE ITS MOTION FOR SUMMARY JUDGMENT.**

B&N's motion does not relate to the admissibility of evidence relating to the "associating" element of claims 7 and 18 of the '501 patent and the doctrine of equivalents. Rather, the motion improperly seeks to relitigate B&N's summary judgment argument that prosecution history estoppel bars application of the doctrine of equivalents to the '501 patent. *Compare* Dkt. No. 63, Defendants' Memo. of Law in Support of Mot. for Summary Judgment, at 22-23 ("Adrea is now barred from relying on the doctrine of equivalents"), *with* B&N MIL No. I-B (same).  Courts routinely deny such thinly-veiled attempts to relitigate summary judgment arguments through *in limine* motions.  *See NIC Holding Corp. v. Lukoil Pan Ams.*, No. 05-cv-9372, 2009 WL 996408, *2 (S.D.N.Y. Apr. 14, 2009) (declining to "indulge [a party's] efforts to revive its unsuccessful summary judgment arguments" by motion *in limine*); *U.S. Underwriters Ins. Co. v. Falcon Constr. Corp.*, No. 02-cv-4182, 2006 WL 3146422, *3 (S.D.N.Y. Oct. 30, 2006) (denying motion *in limine* attempting to "relitigate an issue already decided by the Court," on the grounds that "[i]f [the party] wanted to contest the legal conclusions in the Court's [order], it should have filed a timely motion for reconsideration").

To the extent the Court (re)considers B&N's summary judgment argument by way of the instant motion *in limine*, the argument fails because prosecution history estoppel does not preclude B&N's liability for infringement of the '501 patent under the doctrine of equivalents. As set forth in Plaintiff's opposition to summary judgment (Dkt. No. 66 (sealed)), prosecution history estoppel does not apply where "the rationale underlying the amendment … bear[s] no more than a tangential relation to the equivalent in question." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).  Here, the rationale underlying Plaintiff's

amendment of claim 7 of the '501 patent (then claim 16) bears no relation whatsoever to the equivalent at issue in this case.  The original claim language only required "associating a *time parameter* with the electronic book."  *See* Cox Ex. A[1], Aug. 22, 2006 Applicant Response, at ADREA 58716-17 (emphasis added).  The Patent Office found this element in the prior art because two references associated a basic time parameter (*i.e.*, the time of a pay-per-view television broadcast) with electronic data (*i.e.*, the pay-per-view television program).  However, the Patent Office withdrew the rejection and allowed the claims over the prior art following an amendment to require "a predetermined amount of time after an electronic book is stored in the viewer that is associated with the electronic book."  *See* Cox Ex. B., Nov. 20, 2006 Notice of Allowability, (noting that the communication was responsive to "Applicants [sic] Remarks and Amendments August 22, 2006").

The purpose of the amendment did not relate to the precise starting point of the predetermined lending period.  Rather, the amendment established the lending period *in the first place*, as opposed to having a broader element requiring only a basic "time parameter."  Based on these facts, Plaintiff did not surrender the relevant equivalent concerning whether the lending period begins when the electronic book is stored on the viewer, as the claims require, or a few seconds before, as B&N contends.   Therefore, the prosecution history of the '501 patent does not estop Plaintiff from relying on the doctrine of equivalents at trial to show infringement of the "associating" element of claims 7 and 18 of the '501 patent.

---

[1] The term "Cox Ex. __" is used to refer to exhibits attached to the Declaration of Brendan Cox in Support of Plaintiff ADREA, LLC's Opposition to Defendants' Motions in Limine, filed September 30, 2014.

3.     **OPPOSITION TO MOTION *IN LIMINE* NO. I-C:   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT ELICIT DIRECT TESTIMONY ON "REVERSE-ENGINEERED" SOURCE CODE, AND MR. BERG PROPERLY DISCLOSED THE "DEVICE LOGS" IN DISCOVERY.**

With respect to "reverse-engineered source code," Plaintiff will not directly examine Mr. Berg on his reverse-engineering or decompiling of B&N's source code.[2]  Plaintiff also will not introduce the decompiled source code as an exhibit at trial.  The motion therefore should be denied as premature.  *See Torah Soft Ltd.*, 2003 WL 22024074 at *2 (denying motion *in limine* as premature where adversary "disclaimed any intention to introduce any findings of fact from the copyright fee decision"); *Miteva,* 218 F.R.D. at 398 (denying motion *in limine* as premature where adversary disclaimed any intention to introduce certain evidence, and noting that the moving party could renew its request "[s]hould the matter arise and become relevant to trial at a later point").

With respect to the "device logs," Mr. Berg disclosed the logs and has every right to opine on their existence and significance at trial.  B&N argues—without a single citation to supporting authority—that because Mr. Berg "did not contend that he relied on this evidence, it is *per se* irrelevant."  This bald conclusion lacks merit, as there is no doubt, as B&N concedes, that Mr. Berg disclosed the logs in his expert report (upon which he plainly relies).  Moreover, B&N expressly declined to ask Mr. Berg any questions about the logs:

---

[2] Mr. Berg's reverse-engineering analysis was not used to support his opinions on infringement, but rather to show that B&N's source code production was incomplete. *See* Dkt. No. 113, Ex. 5 (Berg Rpt.) at ¶ 317 ("The missing source code was found by way of my having reverse-engineered files downloaded from the Simple Touch GlowLight, including LibraryDao.java (which implements queryLibraryItem) and LibraryItemCursor.java (which defines LibraryItemCursor). These two files were amongst those that were missing during both source code inspections").

Q.  … These were a series of exhibits labeled Exhibit Log 1 through 7; is that correct?  …

A.  Okay.

Q.  And I'm just going to hand you copies.  Again, ***I don't have any substantive question per se.***  Just why don't you take a look and let me know if they appear to be the log exhibits included with your report.

Cox Ex. C, Deposition of Brian Berg, at 24:6-22 (emphases added).  Mr. Berg has no obligation to volunteer testimony regarding exhibits properly identified in his expert report.  B&N therefore cannot demonstrate the "clear inadmissibility" of Mr. Berg's opinions concerning the logs and/or of the logs themselves.  *See Weiss v. La Suisse, Societe D'Assurances Sur La Vie* , 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) ("[E]vidence should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all possible grounds").

**4.      OPPOSITION TO MOTION *IN LIMINE* NO. I-D:   THE MOTION SHOULD BE DENIED BECAUSE DR. WANG WILL NOT OPINE OUTSIDE THE SCOPE OF HIS EXPERT REPORT AND DEPOSITION TESTIMONY.**

Plaintiff will not elicit on direct examination any opinion from Dr. Wang that was not previously disclosed in discovery.  Thus, with respect to "whether Dr. Neuman's references and combinations disclosed or rendered obvious … the limitations of the asserted claims," Dr. Wang will confine his opinions to those set forth in his rebuttal report and at deposition.[3]  Insofar as B&N's motion is limited to Dr. Wang's testimony at trial, the motion should be denied as premature.  *See Babcock v. Rezak*, No. 96-cv-0394E, 2002 WL 31654995, *2 (W.D.N.Y. Nov. 6, 2002) (denying motion *in limine* "inasmuch as it is premature.  If and when defendant offers such evidence at trial, plaintiff may object to its admissibility at the appropriate time").

---

[3] For example, though not in the body of his rebuttal report, Dr. Wang testified at deposition that he had opinions on two additional issues on which he faced cross examination.  *See* Cox Ex. D, Deposition of Xin Wang, at 31:23-32:9 (providing opinion regarding the Crisp reference); 57:13-58:7 (providing opinion regarding the Munyan reference).

Importantly, however, to the extent B&N argues more broadly that the Court should preclude Plaintiff from ever arguing that B&N has not met its burden of proving that the elements of the asserted claims are disclosed by prior art, the motion should be denied as unsupported and contrary to law.  B&N bears the burden to establish invalidity by clear and convincing evidence.  *See Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002) ("Our law requires patent challengers to prove invalidity by clear and convincing evidence").  This burden exists regardless of whether Plaintiff's expert, Dr. Wang, took issue with a particular limitation.  *See Pfizer, Inc. v. Apotex, Inc.*, 480 F. 3d 1348, 1359 (Fed. Cir. 2007) ("Since we must presume a patent valid, the patent challenger bears the burden of proving the factual elements of invalidity by clear and convincing evidence. ***That burden of proof never shifts to the patentee to prove validity***") (emphases added).  B&N cites no authority for the bold proposition that expert discovery somehow limits a patentee's ability to argue that an accused infringer has not met its burden of proving that the claimed elements were disclosed in the prior art.  As no such authority exists, the motion should be denied.

5.     **OPPOSITION TO MOTION *IN LIMINE* NO. I-E:**   **THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT PRESENT A NEW OR DIFFERENT ROYALTY RATE AT TRIAL.**

Prof. Magee will not present a new or different royalty rate at trial, nor has he ever stated any intention to do so.  B&N's motion to preclude Prof. Magee "from testifying about any per-patent royalty rate" is based on a single sentence in Plaintiff's opposition to B&N's recently-filed *Daubert* motion.  The statement—that "Prof. Magee has made clear that he is prepared to provide a per-patent royalty assessment at trial if any of the accused patents are found not to be infringed"—relates to revising his ***damages base*** in the event that B&N is found not to be liable for infringement of one or more of the patents-at-issue.  *See, e.g.*, Dkt. No. 107, Ex. A (Magee Rpt.) at 4 n.1 ("If it is determined that certain accused patents are found not to be infringed, the

calculation of royalties owed based on the number of units still at issue considering the expiration date(s) of the remaining patents can be calculated before or at trial").

This preparedness distinguishes Prof. Magee from the expert in *Mirror Worlds, LLC v. Apple, Inc*., 784 F. Supp. 2d 703, 725 (E.D. Tex. 2011).  There, after finding two of three asserted patents invalid as a matter of law following plaintiff's case-in-chief (*i.e*., where only one asserted patent remained for the jury's consideration), the district court found insufficient evidence for the jury to determine a reasonable royalty based solely on infringement of the remaining patent.  *See id*. ("[T]he evidence is insufficient to show how inclusion of sales for the system claims of the [remaining] '427 patent but not the [dismissed] '227 and '313 patents affected Mr. Bractic's damages calculation").  Prof. Magee's willingness to provide a per-patent royalty assessment in the event that one or more of the asserted patents is removed from his current analysis does not affect his intent to opine on damages using the same per-unit royalty rate included in his expert reports.

---

**OPPOSITIONS TO MOTION *IN LIMINE* NOS. II-A THROUGH II-L**

---

1. <u>**OPPOSITION TO MOTION *IN LIMINE* NO. II-A**</u>**:  THE MOTION SHOULD BE DENIED BECAUSE THE COMPLETENESS OF B&N'S SOURCE CODE PRODUCTION IS RELEVANT TO THE EXTENT B&N CHALLENGES MR. BERG'S SOURCE CODE ANALYSIS ON CROSS-EXAMINATION.**

Plaintiff will not offer any argument or evidence concerning the completeness of B&N's source code production on direct examination.  Importantly, however, Mr. Berg relied on B&N's source code in providing his infringement analysis.  *See* Dkt. No. 113, Ex. 5 (Berg Rpt.) at ¶ 328 ("Where appropriate, I cite to source code as additional evidence to support my conclusions").  To the extent B&N challenges Mr. Berg on his source code review—for example, regarding whether specific portions of the source code relate to the accused functionality—testimony regarding the completeness of B&N's source code production may become relevant during

cross-examination or on re-direct.  The motion should be denied as premature.  *See generally Luce v. U.S.*, 469 U.S. 38, 41 (1984) (finding that a court's ruling on a motion *in limine* is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer").

2.  **OPPOSITION TO MOTION *IN LIMINE* NO. II-B:  THE MOTION SHOULD BE DENIED AS MOOT BECAUSE THE PARTIES HAVE STIPULATED THAT THE RELEVANT PERIOD FOR WILLFUL INFRINGEMENT BEGINS ON MARCH 29, 2012.**

B&N's motion should be denied as moot.  The parties have stipulated that the period for willful infringement begins on March 29, 2012—*i.e.*, the date B&N received claim charts mapping the patents-in-suit to the accused Nook devices.

3.  **OPPOSITION TO MOTION *IN LIMINE* NO. II-C:   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF MAY RELY ON EVIDENCE PRODUCED BY DEFENDANTS TO ESTABLISH WILLFULNESS.**

B&N deposed Plaintiff's designated Rule 30(b)(6) witness on the issue of "willfulness." When asked for facts that support willful infringement, the witness provided testimony as a corporate representative regarding the extent of the Plaintiff's knowledge, which included: (i) the claim charts that Plaintiff sent to B&N; (ii) Plaintiff's infringement contentions served in this case; and (iii) "previous notice of the patents and Barnes & Noble's continued use of the patents."

B&N now seeks an order that precludes Plaintiff from "presenting evidence or argument that conflicts with the testimony of its Rule 30(b)(6) witness."  Dkt. No. 112, B&N Mot. at 10-11.[4]  B&N fails to identify any evidence that actually "conflicts" with the deposition testimony. Nor does B&N cite any cases in support of its motion.

---

[4] The term "B&N Mot." is used to refer to Dkt. No. 112, "Memorandum of Law in Support of Defendants' Motions in Limine," filed September 22, 2014.

Plaintiff's corporate representative can only be expected to testify regarding the company's knowledge at the time of his deposition. Yet, B&N's motion seeks to exclude evidence of willfulness provided *by B&N* during discovery, including testimony of B&N witnesses that was not available to Plaintiff's corporate representative for confidentiality reasons, and testimony provided after the 30(b)(6) deposition. The testimony of Plaintiff's designated 30(b)(6) witness is simply not a valid basis to exclude unspecified evidence, particularly evidence obtained through discovery from other sources. B&N remains free to make arguments based on the actual evidence concerning willfulness that gets admitted during trial.

4.   **OPPOSITION TO MOTION *IN LIMINE* NO. II-D:   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF WILL NOT INTRODUCE B&N'S LACK OF RELIANCE ON COUNSEL TO THE JURY.**

Plaintiff will not present evidence or argument to the jury that B&N did not obtain an opinion of counsel.[5]  However, Plaintiff reserves the right to rely on B&N's failure to obtain an opinion of counsel should the Court consider whether (and by what amount) to enhance damages upon a finding of willful infringement. *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011) (noting that *Seagate*[6] "did not hold that after willful infringement is established, it is improper to consider whether the infringer exercised adequate investigation of any adverse patents"); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010) ("Although a finding of willfulness is a prerequisite for enhancing damages under § 284, the standard for deciding whether—and by how much—to enhance damages is set forth in *Read*

---

[5] B&N's citation to 35 U.S.C. § 298 is misleading, as that statute does not apply to patents issued before September 16, 2012 (such as the patents-in-issue).

[6] *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

[*Corp. v. Portec*, 970 F.2d 816 (Fed. Cir. 1992)], not *Seagate* … Under the *Read* factors, the district court properly considered … whether Microsoft investigated the scope of the patent").[7]

**5.      OPPOSITION TO MOTION *IN LIMINE* NO. II-E:   THE MOTION SHOULD BE DENIED BECAUSE DEFENDANTS' LICENSES FOR NOOK-RELATED TECHNOLOGIES ARE SUFFICIENTLY COMPARABLE TO THE HYPOTHETICAL LICENSE.**

B&N seeks to preclude Prof. Magee from relying on B&N's "technology" licenses to calculate a hypothetically negotiated royalty.  Notably, B&N takes no issue with Prof. Magee's reliance on "true" patent licenses.

B&N argues that evidence and arguments relating to "technology" licenses should be excluded because, unlike "true" patent licenses, B&N's so-called technology licenses include the right to use both patent rights ***and*** actual technology.  B&N Mot. at 12 ("[T]echnology licenses include not just the right to use a patented idea, but also include <u>actual</u> technology into NOOK devices.") (emphasis in original).  B&N cites no legal authority to support this proposition.

B&N further argues that, with one exception, Prof. Magee relies on licenses that "do not relate to any technology that is comparable to any of the patents-in-suit, and therefore cannot form the basis of a damages calculation." *See* B&N Mot. at 12 (citing *Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1331 (Fed. Cir. 2009) and *Wordtech Sys., Inc. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed Cir. 2010)).  B&N misstates the law.

The issue of comparability relates to the second *Georgia-Pacific* factor—that is, "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." *Lucent*, 580 F.3d at 1325.  The Federal Circuit has stated that "[t]his factor examines whether the licenses relied on by the patentee in proving damages are sufficiently comparable to the hypothetical license at issue in suit." *Id.*  According to the Federal Circuit, "[s]ubsumed within

---

[7] *Cert. granted on other grounds*, 131 S. Ct. 647 (2010).

this factor is the question of whether the licensor and licensee would have agreed to a lump-sum payment or instead to a running royalty based on ongoing sales or usage." *Id.* at 1326.

The licenses at issue in B&N's motion relate to technologies utilized by the accused Nook devices.  Plaintiff's damages expert, Prof. Magee, considered these agreements: (i) to determine the appropriate royalty structure of the hypothetical license; and (ii) to determine what per-unit royalty rates would be consistent with rates that B&N has agreed to in the past.  Specifically, Prof. Magee found that B&N's licensing history showed that B&N typically uses a running royalty rate structure with decreases based on sales volume and, in the context of litigation, typically agrees to one-time lump-sum payments.  Dkt. No. 107, Ex. A (Magee Rpt.) at ¶ 67, 80.

B&N is wrong to argue that the licenses at issue here cannot be mentioned at trial because the licensed technology is not comparable to the patents-in-suit.  As an initial matter, B&N makes no effort to establish that the technologies are actually dissimilar.  Moreover, the license agreements reflect per-unit royalties paid on the same Nook devices at issue in this case.  *See Broadcom Corp. v. Emulex Corp. et al.*, No. 09-01058-JVS, 2011 WL 11025895, at **4-6 (C.D. Cal. Dec. 13, 2011) (rejecting the view that "'comparable' means technologically comparable or similar," and permitting reliance on a license under *Georgia-Pacific* Factor No. 2, where the technology "admittedly was not similar" and the license was "comparable in contribution to the performance of the overall product at issue").

6.     **OPPOSITION TO MOTION *IN LIMINE* NO. II-F:   THE MOTION SHOULD BE DENIED BECAUSE THE EFFECT OF THE INVENTION OF THE '703 PATENT IN PROMOTING SALES OF DIGITAL CONTENT IS RELEVANT TO DAMAGES ISSUES AND PLAINTIFF WILL ONLY MENTION SALES MADE USING THE ACCUSED NOOK DEVICES.**

*Georgia-Pacific* Factor No. 6 relates to "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee."  Here, the invention of the '703 patent allows

users to view "content information about a context of usage" for a consumer device at the press of a button.  The accused Nook devices meet this element by providing the user with product recommendations in the form of available electronic books for purchase when the user presses the "Shop" button on the menu bar.  *See* Dkt. No. 66 (Plaintiff's Op. SJ. Br.; sealed) at 19-27 (arguing B&N infringes claim 1 of the '703 patent because "[t]he Nook Devices allow a user to view product recommendations—*e.g.*, lists of recommended or best-selling books—with the simple touch of a button").  The effect of the invention of the '703 patent in promoting the sales of "other products" sold by B&N—namely, e-books and other digital content—via product recommendations is directly relevant to *Georgia-Pacific* Factor No. 6 and the damages issues in this case.

B&N does not take issue with Prof. Magee's consideration of B&N's digital content sales, in general.  Rather, B&N argues only that reference to ***total*** "eContent"[8] sales figures would be "unfairly prejudicial" because not all of B&N's revenue from digital content sales is the result of purchases made using the accused Nook devices.  *See* B&N Mot. at 13 ("Magee's reliance on <u>all</u> eContent revenue as a 'plus' factor to increase his damages figures would be unfairly prejudicial.") (emphasis in original).  In fact, data provided by B&N show that approximately two-thirds of B&N's digital content revenue comes from purchases made while using the accused Nook devices.

At trial, Plaintiff's damages expert will limit his discussion of *Georgia-Pacific* Factor No. 6 to sales of digital content made while using the accused Nook devices.  These "other products" sold by B&N have a direct relationship to the functionality accused of infringing the '703 patent,

---

[8] B&N defines "eContent" to mean "electronic books, electronic magazine subscriptions, and third-party apps."  B&N Mot. at 13 n.7.

which provides Nook users with recommendations of digital content for purchase at the press of the "Shop" button.  B&N's motion should be denied for this reason.

7.  **OPPOSITION TO MOTION *IN LIMINE* NO. II-G:  THE MOTION SHOULD BE DENIED BECAUSE THE PROPOSED TRIAL EXHIBITS ARE RELEVANT TO SUPPORT PROF. MAGEE'S REASONABLY ROYALTY ASSESSMENT UNDER *GEORGIA-PACIFIC*.**

B&N's e-book lending feature, called "LendMe," is at issue in this case.  One issue relevant to potential damages is the value of providing users with free access to digital content on a temporary basis.  The available evidence will show that B&N believed that free e-book lending would increase user activity on the accused Nook devices and, as result, ultimately lead to increased revenue.  This reasoning applies not only to the accused "LendMe" feature, but also to non-accused products and apps offered by B&N (*e.g.*, Library apps) that achieve the same end—that is, increasing user activity on the Nook devices by offering free access to digital content on a temporary basis.

Evidence concerning the three unaccused products identified in B&N's motion[9] is relevant to Professor Magee's reasonable royalty assessment under *Georgia-Pacific*.[10]  *See generally Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-2226, 2013 WL 707914, at *2 (N.D. Cal. Feb. 26, 2013) (where patentee claimed that certain e-reader devices infringed its patents by use of a controller drive scheme, the district court granted discovery related to unaccused content and accessories as relevant to reasonable royalty assessment under *Georgia-Pacific*); *see id.* at *4 (finding that sales of the unaccused products were highly relevant where patentee argued that accused infringers made the bulk of their revenue from sales of content,

---

[9] The three unaccused products identified in B&N's motion are: (i) a third-party public library lending app; (ii) information about consumer use of B&N's Nook apps; and (iii) the library function on the Nook device.

[10] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

which they induced customers to purchase by keeping the price of the devices low).  As B&N does not cite authority to the contrary, its motion lacks support and should be denied.

8.     **OPPOSITION TO MOTION *IN LIMINE* NO. II-H:  THE MOTION SHOULD BE DENIED BECAUSE DEFENDANTS MISCONSTRUE *GEORGIA-PACIFIC* FACTOR NO. 12.**

*Georgia-Pacific* Factor No. 12 relates to "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions."  Prof. Magee addressed this factor in his report, citing to testimony from Plaintiff's corporate 30(b)(6) representative, Talal Shamoon, who "testified about his understanding of typical licensing rates for technology similar to the patents-in-issue"—namely, "audio and video codecs" used to play audio and video.[11]  *See* Dkt. No. 107, Ex. A (Magee Rpt.) at 60.  Prof. Magee ultimately concluded that this factor had a "neutral" effect on his determination of a royalty rate in this matter.

Nonetheless, B&N challenges Prof. Magee's opinion on the grounds that Mr. Shamoon was offering his "opinion" and that he "was never offered by Adrea, much less qualified, as an expert on audio/video codec technology, much less someone who is qualified to opinion on the similarity of that technology to the technology at issue in this case."  B&N Mot. at 16.  Yet, B&N cites no relevant authority to support the exclusion of evidence on this basis.[12]  Indeed,

---

[11]  A codec is a device or computer program capable of encoding or decoding a digital data stream or signal.

[12]  B&N's reliance on *Jung v. Neschis*, No. 01-6993, 2007 WL 5256966, at *16 (S.D.N.Y Oct. 23, 2007), is misplaced.  The court in *Jung* precluded the plaintiffs' substitute experts from relying upon the opinions of the plaintiffs' former expert because it would prejudice defendants by subjecting them to the testimony of an expert witness they cannot cross-examine, while also bolstering the testimony of the substitute experts who will be able to claim that another expert agrees with them.  By contrast, Plaintiff's Rule 30(b)(6) witness is not an expert witness, and B&N cross-examined him at his deposition (and will have the opportunity to do so again at trial).  Nor does *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 644 (S.D.N.Y. 2007),

B&N misstates the nature of *Georgia-Pacific* Factor No. 12 by suggesting that it requires: (i) the opinion of a qualified expert (*cf. Georgia-Pacific* Factor No. 14 regarding "[t]he opinion of qualified experts"); and (ii) "similarity" of the technology, when, in fact, the factor refers to "analogous inventions."  Because B&N's motion is not tied to any legal authority or the relevant standard, it lacks support and should be denied.  *See, e.g.*, *Gabel v. Richards Spears Kibbe & Orbe, LLP*, No. 07-cv-11031, 2009 WL 1856631, *1 (S.D.N.Y. June 26, 2009) (denying motion *in limine*, in part on the grounds that movant's citation to legal authority "is entirely inapposite").

9.  **OPPOSITION TO MOTION *IN LIMINE* NO. II-I:  THE MOTION SHOULD BE DENIED BECAUSE THE INTERTRUST ANALYSIS IS HIGHLY PROBATIVE EVIDENCE REGARDING THE OUTCOME OF THE HYPOTHETICAL NEGOTIATION AND CREATES NO RISK OF CONFUSING THE JURY.**

B&N moves to exclude evidence and arguments related to a document created by Intertrust, titled "eBook Market Venture: Revenue Model Overview & Discussion," dated November 11, 2009.  B&N asserts that "the jury should not be allowed to examine this document, as it will only confuse them to no end."  B&N Mot. at 18.  B&N further states that confusing the jury is "the entire reason why Adrea wants this document in evidence."  *Id.*  B&N has no basis to make such an accusation and, frankly, it is disrespectful.

The Intertrust e-book revenue model overview is highly probative evidence regarding the outcome of the hypothetical negotiation in this case.  The document coincides exactly with the

---

support B&N's position.  In *Malletier*, the defendant allegedly infringed the plaintiff's trademark by using a similar multicolor mark on handbags.  A critical issue for the jury was whether ordinarily prudent purchasers were likely to be misled or confused as to the source of the goods in question.  The defendant sought to exclude opinion testimony based on the expert's use of highly sophisticated techniques.  The court excluded the opinion on the ground that it would not assist the jury.  It explained that "ordinarily prudent purchasers do not come armed with digital photography, CIELAB, technical jargon and colorimeter approximation in evaluating and comparing product."  The ruling in *Malletier* in no way supports exclusion of the testimony by Plaintiff's 30(b)(6) witness regarding his understanding of typical licensing rates for technology similar to the patents-in-issue.

date of the hypothetical negotiation in this case (*i.e.*, November-December 2009), and reflects

how the investors in ADREA viewed the e-book market in mid-November 2009.  The revenue

model was prepared by Mike Manente, Vice President of Intellectual Property and Corporate

Development at Intertrust,[13] and discussed with other ADREA investors prior to the formation of

the company.  In fact, ADREA's corporate representative testified that one of Mr. Manente's job

responsibilities was to value markets:

> Q.      [Mr. Manente] doesn't hold a title with Adrea, correct?
>
> A.      Not that I'm aware of.
>
> Q.      But he's provided services from time to time, if you will, to Adrea?
>
> [A.]    Yes, and primarily in the formation. What Mr. Manente helped -- ***one of the many very precious things Mr. Manente does is help us value markets.***

Cox Ex. E (Deposition of Talal Shamoon ("Shamoon Tr.")), at 107:16-108:1 (emphasis added)

(objection omitted).

Without any factual support, B&N characterizes this document as a "shameless business

pitch," which, according to B&N, was shown to Discovery and Sony "in an effort to obtain their

business."  B&N Mot. at 18.  B&N fails to inform the Court that the same email cited in its

motion[14] reveals that Sony asked Intertrust for this revenue model.  *See* Dkt. No. 113, Ex. 36 at

ADREA 65432 (email to Mike Manente from a Sony employee, asking "Where are we on a

business model/valuation?").  Moreover, the purpose of the Intertrust market evaluation and

---

[13] Intertrust develops and licenses technologies related to digital rights management and trusted computing.  *See generally* http://www.intertrust.com/technologies/.

[14] B&N cites to the email correspondence between Mr. Manente and Sony to argue that the November 2009 Intertrust document is not a valuation of the relevant patents.  B&N quotes the email in part but omits the most pertinent language.  The email states "You have to take out expenses, taxes, risk associated with the lawsuit, etc to get a valuation . . . ." Dkt. No. 113, Ex. 36 at ADREA 65432.

revenue model was not to "obtain . . . business" from Sony and Discovery, as B&N argues.  To the contrary, Intertrust **paid** a significant amount of money—millions of dollars, in fact—to participate in the e-book joint venture that became ADREA.  *See* Cox Ex. E, Shamoon Tr. 123:23-126:2.

B&N unfairly criticizes the document as "totally unsupported" and for a "total lack of reliability."  B&N Mot. at 17-18.  Yet B&N fails to point out that the document's device forecast and estimate of average selling price are based on multiple sources, including reports from the Forrester Research firm and iSuppli—a source cited by B&N's own expert in his damages report.  *See* Dkt. No. 113, Ex. 38 (Intertrust Revenue Model) at ADREA 141117-8; *see also* Dkt. No. 93, Ex. A. (Barnes Rpt.) at 71 n. 270 (citing iSuppli).

The revenue model document provides highly relevant insight into at least one side of the hypothetical negotiation in late 2009 and presents no risk of confusing the jury.  The document may not be helpful to B&N's case.  But that is not grounds for exclusion.  B&N's claim of prejudice is not backed by any legal authority[15] or any factual support in the record.  Accordingly, the motion should be denied.

10.  **OPPOSITION TO MOTION *IN LIMINE* NO. II-J:  THE MOTION SHOULD BE DENIED BECAUSE DEFENDANTS' DISAGREEMENT WITH PLAINTIFF'S DAMAGES IS NOT A BASIS TO PRECLUDE EVIDENCE AND ARGUMENT CONCERNING THOSE DAMAGES.**

B&N seeks an order precluding Prof. Magee from offering damages opinions based on a single royalty rate for all three patents-in-suit.  Referring to its *Daubert* motion, in which B&N

---

[15] B&N cites to one case without any explanation—*Lesse v. Lockheed Martin Corp.*, No. 11-civ-5091, 2014 WL 1092406, **6-7 (D.N.J. Mar. 18, 2014).  In that case, the District of New Jersey found an expert's "cost-to-cure" valuation unreliable where it was based on another individual's "unsupported, subjective analysis of what remedial measures are 'required' on the property."  *Id.* at *7.  Here, in contrast, the Intertrust e-book revenue model presented an overview of the investors' view on the relevant market, based on a number of objective sources whose credibility cannot be reasonably disputed.

(erroneously) argues that the law requires royalty rates to be "apportioned" on a per-patent basis, B&N now contends that "[i]t would be unfairly prejudicial to B&N if Magee were allowed to present his inflated damage amounts, as this would confuse the jury and push up the royalty or lump sum amounts."  B&N Mot. at 19.  Put another way, B&N argues it will suffer prejudice because it believes Prof. Magee's damages number is too high.  This is not a legitimate basis to exclude evidence.

The Court should deny this motion *in limine* for three reasons.  First, as pointed out at pages 5-15 of Plaintiff's opposition to B&N's *Daubert* motion, apportionment principles do not apply here.  *See* Dkt. No. 106 (sealed).  B&N does not cite a single case that supports the proposition that damages experts must "apportion" their royalty rates and offer a separate rate for each asserted patent.[16]  For the reasons set forth in Plaintiff's opposition to B&N's *Daubert* motion, the Court should deny this motion *in limine*.

Second, Plaintiff has no intention of seeking damages for unit sales made after the expiration of the patents-in-suit, as B&N contends.  *See* B&N Mot. at 19 ("It would also constitute per-se [sic] patent misuse if Adrea is permitted to present a damages opinion with respect to any patent that is based on unit sales made or projected to be made after the patent's expiration").  This is precisely why Prof. Magee wrote that "[i]f it is determined that certain accused patents are found not to be infringed, the calculation of royalties owed based on the number of units still at issue ***considering the expiration date(s) of the remaining patents*** can be calculated before or at trial."  *E.g.*, Dkt. No. 107, Ex. A (Magee Rpt.) at 4 n.1 (emphasis added).

Last, B&N's criticism of Prof. Magee for assuming that all of the patents-in-suit are infringed and valid when calculating damages is essentially a critique of Plaintiff's expert for

---

[16] Notably, B&N's damages expert proposes a single royalty rate of $0.08 per unit both for infringement of the '851 patent alone and for infringement of the '851 and '501 patents together.

doing what the law requires. *See Lucent*, 580 F.3d.at 1325 ("The hypothetical negotiation . . . assumes that the asserted patent claims are valid and infringed"). Here again, B&N cites no legal authority to support exclusion of expert testimony on this basis. B&N's motion lacks support and should be denied for this reason.

**11.    OPPOSITION TO MOTION *IN LIMINE* NO. II-K:   THE MOTION SHOULD BE DENIED AS MOOT.**

B&N's motion should be denied as moot. The parties have agreed to factual stipulations regarding B&N's knowledge of the patents-in-suit and receipt of claim charts that eliminate the need for Plaintiff to call any B&N attorneys to testify at trial. Accordingly, no B&N attorneys will appear on Plaintiff's witness list.

**12.    OPPOSITION TO MOTION *IN LIMINE* NO. II-L:   THE MOTION SHOULD BE DENIED BECAUSE EVIDENCE CONCERNING DEFENDANTS' REVENUES, PROFITS, AND INVESTMENTS ARE RELEVANT TO THE HYPOTHETICAL NEGOTIATION ANALYSIS, AND ARE NOT UNDULY PREJUDICIAL.**

B&N notes that Prof. Magee's report refers to: (i) B&N's reported sales totaling $26.8 billion; and (ii) investments made by Microsoft and Pearson in Nook Media, LLC. B&N seeks to exclude any reference to this information because, in its view, the information is unduly prejudicial.

First, Plaintiff will not mention or introduce any evidence regarding B&N's reported total sales of $26.8 billion.

Second, evidence of investments by Microsoft and Pearson is relevant to the issue of projected Nook sales in the future. To arrive at a lump-sum damages estimate, Prof. Magee projects flat sales through the expiration of the last patent-in-suit based on B&N's most recent fiscal year of sales data. By contrast, B&N's expert projects a dramatic drop in sales of the accused devices during the same time period. Evidence of the investments by Microsoft and Pearson is relevant to rebut the notion that sales of the accused devices will continue to decline

in perpetuity.  Plaintiff should be allowed to argue that, among other things, the substantial investments by Microsoft and Pearson support Prof. Magee's projection of flat sales through the life of the patents-in-suit.

B&N further complains that, during his deposition, Prof. Magee noted that B&N profited from sales of Nook devices at the device level.  Prof. Magee's consideration of such information concerning profits relates to *Georgia-Pacific* Factor No. 13—that is, "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer."  Prof. Magee only relies on the profit data associated with Nook devices to conclude that such profits "should be sufficient to account for any undetermined or difficult to value contributions to the accused products."  Dkt. No. 107, Ex. A (Magee Rpt.) at p. 61, ¶ 87. This information is relevant to damages and Prof. Magee should be able to explain it to the jury, if necessary.  B&N's motion should be denied.

---

**OPPOSITIONS TO REMAINING MOTIONS *IN LIMINE***

---

1.  **OPPOSITION TO MOTION *IN LIMINE* NO. III:   THE MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT INCLUDED MR. BERG'S EXPERT REPORT ON ITS EXHIBIT LIST AND AGREES TO USE  CLEAN, UNMARKED VERSIONS OF MR. BERG'S EXHIBITS FOR DEMONSTRATIVE PURPOSES ONLY.**

Plaintiff will not seek to introduce Mr. Berg's expert report into evidence, and it has never indicated any intention to do so.  In fact, Mr. Berg's expert report has never been on Plaintiff's exhibit list.  Moreover, Plaintiff agrees to withdraw Trial Exhibit Nos. PTX-100 through PTX-115, which include Mr. Berg's so-called "commentary," and use clean, unlabeled versions of these documents for demonstrative purposes only.  Finally, to the extent this motion relates to Mr. Berg's log files, the admissibility of the log files is addressed above.  *See supra* at Response to Motion I.C.

Dated:  September 30, 2014                              Respectfully submitted,


                                                        /s/ *Colin Cabral*
                                                        Steven M. Bauer
                                                        Kimberly A. Mottley (*pro hac vice*)
                                                        Patrick J. Niedermeier (*pro hac vice*)
                                                        Micah Miller (*pro hac vice*)
                                                        Brendan Cox (*pro hac vice*)
                                                        Erin Staab (*pro hac vice*)
                                                        PROSKAUER ROSE LLP
                                                        One International Place
                                                        Boston, Massachusetts 02110
                                                        (617) 526-9600 (telephone)
                                                        (617) 526-9800 (facsimile)
                                                        sbauer@proskauer.com
                                                        kmottley@proskauer.com
                                                        pniedermeier@proskauer.com
                                                        mmiller@proskauer.com
                                                        estaab@proskauer.com

                                                        Colin Cabral
                                                        PROSKAUER ROSE LLP
                                                        2049 Century Park East, Suite 3200
                                                        Los Angeles, CA 90067
                                                        (310) 284-5611 (telephone)
                                                        (310) 557-2193 (facsimile)
                                                        ccabral@proskauer.com

                                                        Kenneth Rubenstein
                                                        Baldassare Vinti
                                                        PROSKAUER ROSE LLP
                                                        11 Times Square
                                                        New York, NY 10036
                                                        (212) 969-3000 (telephone)
                                                        (212) 969-2900 (facsimile)
                                                        krubenstein@proskauer.com
                                                        bvinti@proskauer.com

                                                        *Attorneys for Plaintiff ADREA, LLC*

21

## CERTIFICATE OF SERVICE

I certify that on September 30, 2014, I caused a copy of the forgoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com LLC, and Nook Media LLC by electronic mail.

Louis S. Ederer
Susan Lee Shin
Yue-Han Chow
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael A. Berta, Jr. (*pro hac vice*)
Willow W. Noonan (*pro hac vice*)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415)-471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*Barnesandnoble.com LLC, and Nook Media LLC*

/s/ Colin Cabral
Colin Cabral