# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADREA, LLC,<br><br>            Plaintiff,<br><br>    - v -<br><br>BARNES & NOBLE, INC.,<br>BARNESANDNOBLE.COM LLC, and<br>NOOK MEDIA LLC,<br><br>            Defendants. | 13-CV-4137 (JSR) |

## **DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY INSTRUCTIONS (PRE-TRIAL) .......................................................................... 1

    Prelim. Instruction No. 1 ............................................................................................ 2

    Prelim. Instruction No. 2 WHAT A PATENT IS AND HOW ONE IS
        OBTAINED ............................................................................................ 5

    Prelim. Instruction No. 3 PATENTS AT ISSUE ........................................................ 8

    Prelim. Instruction No. 4 SUMMARY OF CONTENTIONS .................................... 9

    Prelim. Instruction No. 5 OVERVIEW OF APPLICABLE LAW .......................... 13

    Prelim. Instruction No. 6 OUTLINE OF TRIAL ...................................................... 16

    Prelim. Instruction No. 7 PROVINCE OF THE JUDGE AND JURY ...................... 19

    Prelim. Instruction No. 8 JURY CONDUCT............................................................. 20

    Prelim. Instruction No. 9 EVIDENCE IN THE CASE.............................................. 22

    Prelim. Instruction No. 10 NOTETAKING ............................................................... 24

    Prelim. Instruction 11 STIPULATED FACTS .......................................................... 25

FINAL INSTRUCTIONS (POST-TRIAL) ................................................................................. 26

    Final Instruction No. 1 DUTY OF THE COURT ...................................................... 27

    Final Instruction No. 2 DUTY OF THE JURY .......................................................... 28

    Final Instruction No. 3 DUTY OF IMPARTIALITY.................................................. 31

    Final Instruction No. 4 DIRECT AND CIRCUMSTANTIAL
        EVIDENCE............................................................................................ 32

    Final Instruction No. 5 INFERENCES ...................................................................... 33

    Final Instruction No. 6 WITNESS CREDIBILITY ................................................... 34

    Final Instruction No. 7 EXPERT WITNESS ............................................................. 36

    Final Instruction No. 8 SUMMARY OF CONTENTIONS ........................................ 37

    Final Instruction No. 9 THE ROLE OF THE CLAIMS OF A PATENT .................. 39

    Final Instruction No. 10 HOW A CLAIM DEFINES WHAT IT
        COVERS................................................................................................ 40

i

Final Instruction No. 11 INDEPENDENT AND DEPENDENT CLAIMS ................................................................ 42

Final Instruction No. 12 INFRINGEMENT GENERALLY ...................................... 43

Final Instruction No. 13 INFRINGEMENT BY "LITERAL INFRINGEMENT".................................................. 44

Final Instruction No. 14 INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS" ........................................ 45

Final Instruction No. 15  LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS".................................... 47

Final Instruction No. 16 INVALIDITY -- BURDEN OF PROOF .......................... 50

Final Instruction No. 17 PRIOR ART ......................................................... 51

Final Instruction No. 18 ANTICIPATION ................................................... 52

Final Instruction No. 19 OBVIOUSNESS .................................................. 54

Final Instruction No. 20 LEVEL OF ORDINARY SKILL ........................................ 57

Final Instruction No. 21 SCOPE AND CONTENT OF THE PRIOR ART...................................................................... 58

Final Instruction No. 22 WRITTEN DESCRIPTION REQUIREMENT ................... 59

Final Instruction No. 23 DEFINITENESS REQUIREMENT .................................... 61

Final Instruction No. 24 ENABLEMENT ................................................... 62

Final Instruction No. 25 WILLFUL INFRINGEMENT.................................... 64

Final Instruction No. 26 DAMAGES—INTRODUCTION ....................................... 67

Final Instruction No. 27 REASONABLE ROYALTY—DEFINITION ................... 69

Final Instruction No. 28 REASONABLE ROYALTY—RELEVANT FACTORS ............................................................... 71

Final Instruction No. 29 DATE OF COMMENCEMENT OF DAMAGES.................................................................... 74

Final Instruction No. 30 DUTY TO DELIBERATE .................................... 77

Final Instruction No. 31 ELECTION OF FOREPERSON .......................................... 78

Final Instruction No. 32  COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS ............................ 79

## **PRELIMINARY INSTRUCTIONS (PRE-TRIAL)**

**Prelim. Instruction No. 1**

We are about to begin the trial of the case you heard about during the jury selection. Before trial begins, I am going to give you instructions that will help you evaluate what will be presented to you during the trial. During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common terms to you.

The party who sues is called the plaintiff. In this action, the plaintiff is ADREA.

The parties being sued are called the defendants. In this action, the defendants are Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC. While there are three defendants, I will refer to them collectively as "Barnes & Noble." Barnes & Noble is a national retail store that sells books, both in stores and online. Barnes & Noble also sells e-reader and tablet devices called NOOKs.

As I will explain to you in more detail later, this is a patent case. ADREA alleges that Barnes & Noble's NOOK devices infringe three patents owned by ADREA.

You may also sometimes here me refer to "counsel." "Counsel" are the lawyers for the parties, ADREA and Barnes & Noble. I will also sometimes refer to myself as the "Court."

Sometimes the lawyers will raise objections to something that is occurring in the trial. When I "sustain" an objection, I may decide that certain statements should not be made or certain documents should not be shown to you. When this happens, it is generally to ensure a fair and just trial. When you hear that I have "overruled" an objection, I am permitting statements or documents into evidence.

When I say "admitted into evidence" or "received into evidence," I mean that this particular statement or the particular exhibit may be considered by you in making the decisions you are charged with making at the end of the case.

By your verdict, you will decide the issues of fact that are disputed by the parties. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply in making these decisions.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented. Keep in mind that I will instruct you at the end of the trial about determining the credibility or "believability" of the witnesses. During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

While the trial is in progress, you must not discuss the case in any manner among yourselves or with anyone else, including through comments on social media such as Facebook or twitter. In addition, you should not permit anyone to discuss the case in your presence. You should avoid reading any news articles that might be published about the case. You should also avoid watching or listening to any television, radio, or internet comments about the trial.

From time to time during the trial, I may make rulings on objections or motion made by the lawyers. It is a lawyer's duty to object when the other side offers testimony or other evidence that the lawyer believes is not admissible. You should not be unfair or partial against a lawyer or the lawyer's client because the lawyer has made objections. If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not

draw any inferences or conclusions from the question.  You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other.  I do not favor one side or the other.

The trial lawyers are not allowed to speak with you during this case.  When you see them at recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but you should remember the importance of the matter you are here to determine and should be patient even though the case may seem to go slowly.

(Adapted from O'Malley, Grenig & Lee, Fed. Jury Prac. & Instr. (Civil) § 101:01 ("Opening Instructions").)

**Prelim. Instruction No. 2**

**WHAT A PATENT IS AND HOW ONE IS OBTAINED**

As I noted, this case involves a dispute relating to three United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, I want to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention stating what the invention is, how it works, how to make it, and how to use it. The specification then concludes with one or more numbered sentences at the very end of the patent document. These are the patent "claims." When a patent is eventually granted by the PTO, each claim defines a specific invention that the inventor is allowed to protect. The claims give notice to the public of the boundaries of the patent rights given to the inventor.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are appropriate for patent protection and whether or not the specification adequately describes the invention claimed.  In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed.  The Examiner searches for and reviews information that is publicly available or that is submitted by the applicant.  This information is called "prior art."  Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art.  However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed.  For patents that ultimately issue, the patent itself lists the prior art that the Examiner considered towards the front of the document; this list is called the "cited references."

The Examiner reviews this prior art to attempt to determine whether or not the applicant's submitted claims are truly an invention.  After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed."  This writing from the Examiner is called an "Office Action."  If the Examiner rejects the claims in the application, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, or to change the claims or submit new claims.  This process, which takes place only between the Examiner and the patent applicant, may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue.  The papers

generated during these communications between the Examiner and the applicant are called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. One or more claims may, in fact, not be patentable under the law. For example, the PTO may not have had available to it some of the prior art that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Barnes & Noble has proven that any or all of the three patents are invalid.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Preliminary Instruction A.1 ("What a Patent Is and How One is Obtained").)

**Prelim. Instruction No. 3**

**PATENTS AT ISSUE**

Let's take a moment to look at one of the patents in this case.  The cover page of the patent identifies the date the patent was granted and the patent number along the top, as well as the inventor's name and the filing date.  It also contains the list of the prior art references that were in front of the Examiner that I mentioned before.

The patent cover page also has an abstract, which is a brief statement about the subject matter of the invention.  Next come the drawings.  The drawings illustrate various aspects or features of the technology relevant to the invention.  The written description of the invention appears next and is organized into two columns on each page.  This is the specification, which is what I referred to before.  The specification then ends with numbered paragraphs.  These are the patent claims I mentioned before.

(Adapted from The National Jury Instruction Project, Model Patent Jury Instructions, June 17, 2009, Preliminary Instruction 1.2 ("The Patent Involved in this Case"); *see also* The Federal Circuit Bar Association, Model Patent Jury Instructions, Preliminary Instruction A.3 ("Patent at Issue").)

**Prelim. Instruction No. 4**

**SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The case involves three patents. The first is United States Patent No. 7,298,851, obtained by John S. Hendricks, Michael L. Asmussen, and John McCoskey, and transferred by the inventors to Discovery Communications, which transferred it to ADREA. For your convenience, the parties and I will often refer to this patent number 7,298,851 by the last three numbers of the patent number, namely, as the "'851 patent." The title of the '851 patent is "ELECTRONIC BOOK SECURITY AND COPYRIGHT PROTECTION SYSTEM." The '851 patent issued on November 20, 2007, and it expired on December 9, 2012.

The second patent is United States Patent No. 7,299,501, obtained by Johns S. Hendricks, and transferred by Mr. Hendricks to Discovery Communications, which transferred it to ADREA. The parties and I will often refer to this patent number 7,299,501 as the "'501 patent." The title of the '501 patent is "ELECTRONIC BOOK SELECTION AND DELIVERY SYSTEM HAVING ENCRYPTION AND SECURITY FEATURES." The '501 patent issued on November 20, 2007, and it will expire on December 1, 2015.

The third patent is United States Patent No. 7,620,703, obtained by Yevgeniy Shteyn, and transferred by Mr. Shteyn to Koninklijke Phillips Electronics N.V., which transferred it to ADREA. The parties and I will often refer to this patent number 7,620,703 as the "'703 patent." The title of the '703 patent is "TOPICAL SERVICE PROVIDES CONTEXT

INFORMATION FOR A HOME NETWORK."  The '703 patent was issued on November 17, 2009, and it will expire on March 18, 2026.

ADREA filed suit in this court seeking money damages from Barnes & Noble for allegedly infringing certain claims of the '851 patent, the '501 patent, and the '703 patent by making, importing, using, selling, offering for sale, supplying or causing to be supplied in or from the United States certain Barnes & Noble NOOK products.  Specifically, ADREA is claiming infringement of claim 96 of the '851 patent, claims 7, 8, 9, 18 and 19 of the '501 patent and claims 1, 2, 3, 13 and 15 of the '703 patent.  I will sometimes refer to these as the "Asserted Claims."

The products that are alleged to infringe the three patents are the Barnes & Noble eReader and tablet products known as the NOOK Classic (a/k/a NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch, NOOK Simple Touch with GlowLight, NOOK HD, and NOOK HD+.  ADREA also alleged that the NOOK GlowLight infringes the '501 and '703 patents.  The parties and I may refer to these products collectively as the "NOOK devices" or the "NOOKs."

Barnes & Noble denies that it has infringed any claims of the three patents.  Barnes & Noble also argues that the claims ADREA is asserting are invalid.  Invalidity is a recognized legal claim that can be made in response to a patent infringement claim.  I will instruct you later as to the ways in which a patent may be invalid.  In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

Your job will be to decide whether or not each of the Asserted Claims has been infringed, and whether or not those claims are invalid.  If you decide that any of the

Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ADREA to compensate it for the infringement of that claim.  If, on the other hand, you decide that any of the Asserted Claims has not been infringed, or one or more claims is invalid, then the case is over with respect to those claims, and no damages are to be awarded on those claims.

You will also need to make a finding as to whether any infringement of a valid claim was willful.  I will explain willfulness later, but if you decide that any infringement was willful, that decision should not affect any damages decisions you make.

Before you decided whether Barnes & Noble has infringed any of the Asserted Claims or whether any of the Asserted Claims are invalid, you will need to understand what the patent claims mean and what inventions they cover.  As I mentioned, the patent claims are numbered sentences at the end of each patent that describe the boundaries of the patent's protection.  It is my job as judge to explain to you the meaning of any language in the claims that need interpretation.

I have already determined the meaning of some of the terms in some of the claims in these patents.  You have been given a document reflecting those meanings.  For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning.  You must accept my interpretations of the language as correct and apply them throughout the case.  However, my interpretation of the language of the claims should not be taken as an indication that I have a view, one way or the other, as to whether that claim has been infringed or is invalid.  Those issues are yours to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Preliminary Instructions A.2 ("Summary of Contentions") and A.3 ("Patent at Issue").)

**<u>Prelim. Instruction No. 5</u>**

**<u>OVERVIEW OF APPLICABLE LAW</u>**

In deciding the issues I just discussed, you will be asked to consider specific legal standards that apply to the decisions you will be asked to make.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Barnes & Noble has infringed the Asserted Claims of the '851 patent, the '501 patent, or the '703 patent.  Infringement is considered on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.

I will explain the requirements for infringement to you in detail at the conclusion of the case.  In general, however, Barnes & Noble may infringe a specific claim of the '851 patent, the '501 patent, or the '703 patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product that meets all the requirements of that claim.

Another issue you will be asked to decide is whether the asserted claims of the '851 patent, the '501 patent, or the '703 patent are invalid.  A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious.  For a claim to be invalid because it is not new, Barnes & Noble must show, by clear and convincing evidence, that all of the elements of a claim are present in a previous device or method, or are sufficiently described in a previous printed publication or patent.  We call materials like this "prior art."  If a claim is not new, it is said to be anticipated, and the claim is invalid and cannot be enforced.

13

Another way that a claim may be invalid is that it may have been "obvious."  What this means is that even though every element of the claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether any of the claims in the '851 patent, the '501 patent, or the '703 patent are obvious.  I will provide you detailed instructions on these questions at the conclusion of the case.

A patent may also be invalid if its description in the specification does not meet certain requirements.  In particular, in order to be valid, a patent must meet the "written description" requirement.  In order to meet this requirement, the description of the invention in the specification portion of the patent must be detailed enough to show that the applicant actually possessed the invention as broadly as claimed in the claims of the issued patent.

A patent must also meet the "enablement" requirement.  To meet this requirement, the description contained in the patent has to be sufficiently full and clear so that persons of ordinary skill in the field of technology of the patent would have been able to make and use the invention, without engaging in undue experimentation, at the time the patent application was originally filed.

I am going to give you a brief instruction regarding damages for patent infringement.  Even though I am instructing you about damages, you should not assume that this means that you will be awarding damages.  But, if you decide that any claim of the '851 patent, the '501 patent, or the '703 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ADREA to compensate it for the infringement.  A damages award should put ADREA in approximately the same financial position that it

14

would have been in had the infringement not occurred.  Here, ADREA is seeking a

reasonable royalty.  I will instruct you later on the meaning of a reasonable royalty.  The

damages you award are meant to compensate ADREA and not to punish Barnes & Noble.

You may not include in your award any additional amount as a fine or penalty, above what

is necessary to compensate ADREA for the infringement, in order to punish Barnes &

Noble.  I will give you more detailed instructions on the calculation of any damages at the

conclusion of the case.


(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions,

Feb. 2013, Preliminary Instruction A.4 ("Overview of Applicable Law").)

**Prelim. Instruction No. 6**

**OUTLINE OF TRIAL**

The trial will begin shortly.  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

The presentation of evidence will then begin.  Witnesses will take the stand and documents will be offered and admitted into evidence.  There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding.  On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence.  A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor.  On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, *i.e.*, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.  On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

The order in which you will receive the evidence will be as follows.  After the opening statements, ADREA will present its evidence in support of its contention that some of the claims of the '851 patent, the '501 patent, and the '703 patent have been infringed by

16

Barnes & Noble and that the infringement has been willful.  These witnesses will be questioned by ADREA's counsel in what is called direct examination.  After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness.

To prove infringement of any claim, ADREA must persuade you that it is more likely than not that Barnes & Noble has infringed that claim.  To persuade you that any infringement was willful, ADREA must prove that the infringement was willful by clear and convincing evidence.

After ADREA has presented its witnesses, Barnes & Noble will call its witnesses, who will also be examined and cross-examined.  Barnes & Noble will present its evidence that the Asserted Claims of the '851 patent, the '501 patent, and the '703 patent are invalid. To prove invalidity of any claim, Barnes & Noble must persuade you by clear and convincing evidence that the claim is invalid.  In addition to presenting its evidence of invalidity, Barnes & Noble will put on evidence responding to ADREA's proof of infringement and willfulness.

ADREA may then put on additional evidence responding to Barnes & Noble's evidence that the Asserted Claims of the '851 patent, the '501 patent, and the '703 patent are invalid and to offer any additional evidence of infringement and willfulness.  This is referred to as "rebuttal" evidence.  ADREA's "rebuttal" evidence may respond to any evidence offered by Barnes & Noble.

Finally, Barnes & Noble may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of some of the claims of the '851 patent, the '501 patent, and the '703 patent by responding to any evidence offered by ADREA on that issue.

The parties may present the testimony of a witness by playing a videotape of the witness's deposition testimony or by reading from his or her deposition transcript.  A deposition is the sworn testimony of a witness taken before trial, and it is entitled to the same consideration as if the witness had testified at trial.

Because the evidence is presented piecemeal, you need to keep an open mind as the evidence comes in and consider all the evidence before you make any decisions.  In other words, you should keep an open mind throughout the entire trial.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  These closing arguments by the attorneys are not evidence.  After the closing arguments and instructions, you will then decide the case.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Preliminary Instruction A.5 ("Outline of Trial"); Model Patent Jury Instructions for the Northern District of California, Nov. 2, 2011, Preliminary Instruction A.5 ("Outline of Trial").)

**Prelim. Instruction No. 7**

**PROVINCE OF THE JUDGE AND JURY**

After all the evidence has been heard and arguments and instructions are finished,
you will meet to make your decision.  You will determine the facts from all the testimony
and other evidence that is presented.  You are the sole and exclusive judge of the facts.  I
must stress that you are required to accept the rules of law that I give you, whether or not
you agree with them.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. § 101.10 ("Province of
the Judge and Jury") (6th ed.).)

**Prelim. Instruction No. 8**

**JURY CONDUCT**

To insure fairness, you must obey the following rules:

1.       Do not talk to each other about this case or about anyone involved with this case until the end of the trial when you go to the jury room to decide on your verdict.

2.       Do not talk with anyone else about this case or about anyone involved with this case until the trial has ended and you have been discharged as jurors.  "Anyone else" includes members of your family and your friends.  You may tell people you are a juror, but do not tell them anything else about the case.

3.       Outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it until the trial has ended.  If someone should try to talk to you about the case during the trial, please report it to me immediately.

4.       During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

5.       Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

6.       Do not do any research, including online research, or make any investigation about the case on your own.

20

7.     Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.

8.     If you need to tell me something, simply give a signed note to the clerk to give to me.

I know that many of you use cell phones, Blackberries, the Internet and other tools of technology.  You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, Blackberry, iPhone, text messaging, or on Twitter, through any blog or website, including Facebook, Google+, My Space, LinkedIn, or YouTube.  You may not use any similar technology of social media, even if I have not specifically mentioned it here.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §§ 101.11 ("Jury Conduct"), 101.13 ("Juror Use of Electronic Technology") (6th ed.).)

**Prelim. Instruction No. 9**

**EVIDENCE IN THE CASE**

The evidence in the case will consist of the following:

1.      The sworn testimony of the witnesses, no matter which party called the witnesses.

2.      All exhibits received in evidence, regardless of who may have produced the exhibits.

3.      All facts that may have been judicially noticed and that you must take as true for purposes of this case.

As I mentioned, depositions may also be received into evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or even, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken that evidence must be entirely ignored.

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witness.  In other words, you are not limited solely to what you see and hear as the witnesses testified.  You may draw from the facts that you find have been proved, such reasonable inferences or conclusions as you feel are justified in light of your experience.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr., § 101:40 ("Evidence in the case") (6th ed.).)

**Prelim. Instruction No. 10**

**NOTETAKING**[1]

During this trial, I will permit you to take notes. You are not required to take notes. If you do not take notes, you should not be influenced by another juror's notes, but should rely upon your own recollection of the evidence.

Because many courts do not permit notetaking by jurors, a word of caution is in order. You must not allow your notetaking to distract you from the proceedings.

Frequently, there is a tendency to attach too much importance to what a person writes down. Some testimony that is considered unimportant at the time presented and not written down may take on greater importance later in the trial in light of all the evidence presented, the final arguments, and my instructions on the law.

Accordingly, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Your memory should be your greatest asset when it comes time to deciding this case.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §101:15 ("Notetaking--Permitted") (6th ed.).)

---

[1]   To be given only if the Court permits jurors to take notes.

24

## **Prelim. Instruction 11**

## **STIPULATED FACTS**

As I mentioned, some facts can be agreed to between the parties.  Here, the parties have agreed to the following facts:

[INSERT]

Because the parties have stipulated to these facts and do not dispute them, you are to take these facts as true for purposes of this case.


(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr., § 101:48 ("Admissions in stipulations") (6th ed.).)

**FINAL INSTRUCTIONS (POST-TRIAL)**

## General Instructions

## Final Instruction No. 1

## DUTY OF THE COURT

We are now approaching the most important part of the case, your deliberations.  You have heard all of the evidence in the case, as well as the final arguments of the lawyers for the parties.  Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations.  As I told you at the start of this case, and as you agreed, it is your duty to accept my instructions of law and apply them to the facts as you determine them.

Regardless of any opinion that you may have as to what the law may or ought to be, it is your sworn duty to follow the law as I give it to you.  Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them not only so that you can follow them as I read them to you now but also so that you can have them with you for reference during your deliberations.  In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

(Adapted from *Court's Instructions of Law to the Jury*, 1:13-cv-02027-JSR, Dkt. 203).

## Final Instruction No. 2

## DUTY OF THE JURY

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict.  You, the members of the jury, are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely on your own recollection of the evidence.  To aid your recollection, we will send you all of the exhibits at the start of your deliberations, and if you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form.  But please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence.  Nor is anything I may have said evidence.

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the Internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.

The evidence before you consists of just three things:  the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the deposition excerpts that were placed in evidence.  Please remember that questions, although they may provide context for the answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection.  Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record.  Likewise, you may not consider anything you heard about the contents of any exhibit that was not received in evidence.

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All such questions of law must be decided by me.  You

29

should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask you draw no inference from my rulings or from the fact that upon occasion I asked questions of certain witnesses.  My rulings were no more than applications of the law, and my questions were only intended for clarification or to expedite matters.  You are expressly to understand that I have no opinion as to the verdict you should render in this case.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §104.04 ("Juror use of electronic communication techniques") (6th ed.); *Court's Instructions of Law to the Jury*, 1:13-cv-02027-JSR, Dkt. 203).

## Final Instruction No. 3

## DUTY OF IMPARTIALITY

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law.  You are to perform your final duty in an attitude of complete fairness and impartiality.  You are not to be swayed by rhetoric or emotional appeals.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict.  So do not be guided by anything except clear thinking and calm analysis of the evidence.

(Adapted from *Court's Instructions of Law to the Jury*, 1:13-cv-02027-JSR, Dkt. 203).

## Final Instruction No. 4

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Generally speaking, there are two types of evidence presented during a trial—direct evidence and circumstantial evidence.  "Direct evidence" is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness.  "Indirect or circumstantial" evidence is proof of a chain of facts and circumstances indicating the existence or nonexistence of a fact.

The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence.  A greater degree of certainty is not required of circumstantial evidence.  You are required to find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §104:05 (6th ed.))

## Final Instruction No. 5

## INFERENCES

You are to consider only the evidence in the case.  However, you are not limited to the statements of the witnesses.  You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience.

"Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case.


(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §104:20 (6th ed.))

### Final Instruction No. 6

### WITNESS CREDIBILITY

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank and forthright; or, did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

**Final Instruction No. 7**

**EXPERT WITNESS**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  There is an exception to this rule for "expert witnesses."  An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling.  Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's is outweighed by other evidence, you may disregard the opinion entirely.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §104:40 (6th ed.))

## II.  Liability

## Final Instruction No. 8

## SUMMARY OF CONTENTIONS

With these preliminary instructions in mind, we now turn to the specific claims in this case.

ADREA claims that Barnes & Noble has infringed the Asserted Claims of the '851, '501, and '703 patents by making, importing, using, selling, and offering for sale NOOK devices that ADREA argues are covered by the Asserted Claims.

The Asserted Claim of the '851 patent is claim 96.  The Asserted Claims of the '501 patent are claims 7, 8, 9, 18, and 19.  The Asserted Claims for the '703 patent are claims 1, 2, 3, 13, and 15.

The products and processes that are claimed to infringe are the NOOK Classic (a/k/a NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch, NOOK Simple Touch with GlowLight, NOOK HD, and NOOK HD+.  ADREA also alleged that the NOOK GlowLight infringes the '501 and '703 patents.

ADREA bears the burden of proving infringement by a preponderance of the credible evidence.

Barnes & Noble denies that it has infringed any of the Asserted Claims and argues that, in addition, each of the Asserted Claims is invalid.  Barnes & Noble has the burden of proving invalidity by clear and convincing evidence.

For each Asserted Claim, your job is to decide whether Barnes & Noble has infringed that claim, and whether that claim is invalid.  If you decide that any of the asserted claims has been infringed and is not invalid, you will then need to decide any money

damages to be awarded to ADREA to compensate it for the infringement.  ADREA bears the burden of establishing damages by a preponderance of the evidence.

You will also need to make a finding as to whether the infringement was willful. ADREA bears the burden of establishing willful infringement by clear and convincing evidence.  If you decide that any infringement was willful, that decision should not affect any damages award you make.  I will take willfulness into account later.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Summary of Contentions B.1.)

## Final Instruction No. 9

## THE ROLE OF THE CLAIMS OF A PATENT

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  As I told you at the beginning of the case, the patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims themselves that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the specific scope of the patent's coverage.  Each claim of a patent is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims specifically covers.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Claim Construction 2.1.)

## Final Instruction No. 10

## HOW A CLAIM DEFINES WHAT IT COVERS

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence.  If a device or a process satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements.  The coverage of a patent is considered claim-by-claim.  In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  When an accused device or process meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product or process must meet in order to be covered by that claim, you will be able to understand what each claim specifically covers.  Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

Sometimes the words in a patent claim are specialized terms that have a particular meaning, and it can be difficult to determine what requirements these words impose.  It is my job to explain to you any special meaning for the words in the claims and the requirements these words impose.  As I mentioned to you at the start of the case, I have determined a specific meaning for some of the words in the claims and I have provided to

you my definitions of certain claim terms.  For any words in the claim for which I have not provided you with a definition, you should apply their common meaning.

You must accept my definitions of these words in the claims as being correct.  You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity.  These issues are yours to decide.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

For the '851 patent, the term "electronic book" means "an electronic version of textual or graphical information."  The term "title" means "the actual title assigned by an author to a book, or any other designation (including a graphical symbol or icon) indicating a particular group, portion, or category of textual information."

For the '501 patent, the term "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" means "associating with the electronic book a predetermined amount of time that begins when the electronic book is stored on the viewer."

For the '703 patent, the term "computer appliance" means "a device that may send or receive information."  The term "identifier" means "a sequence of bits or characters that identifies a program, device, or system to another program, device, or system."  The term "home network" means "a collection of interconnected apparatus in and around the home."


(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Claim Construction 2.2; 2.3.)

## Final Instruction No. 11

## INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 96 of the '851 patent, claims 7 and 18 of the '501 patent, and claims 1 and 13 of the '703 patent are each independent claims.

The remainder of the claims asserted in each patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.

To help you remember the claims involved in this case, you have been given a chart of all the claims that have been asserted by ADREA in this case.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Claim Construction 2.2a.)

## Final Instruction No. 12

## INFRINGEMENT GENERALLY

I will now instruct you how to decide whether or not Barnes & Noble has infringed the listed specific claims of the patents involved in this case.

In order to prove infringement of one of the specific asserted claims, ADREA must prove that each of the requirements of that claim are met by a particular Barnes & Noble NOOK device or by a process performed by Barnes & Noble. ADREA must show this by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of the particular claim are present in the accused product or process.

As I mentioned, because infringement is considered on a claim-by-claim basis, there may be infringement as to one claim but no infringement as to another. You must determine, separately for each asserted claim, whether or not there is infringement. There is one exception to this rule. If you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that depends on that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether a NOOK device meets the additional requirements of any claims that depend on that independent claim. As I said earlier, a dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Infringement 3.1)

## Final Instruction No. 13

## INFRINGEMENT BY "LITERAL INFRINGEMENT"

There are two types of infringement relevant to this case: (1) "literal infringement" and (2) "infringement under the doctrine of equivalents."[2]

In order to prove infringement by literal infringement, ADREA must prove by a preponderance of the evidence, *i.e.*, that it is more likely than not, that a specific Barnes & Noble NOOK device meets each of the requirements of a claim.  You must compare the NOOK device with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are present in the device or performed by the device exactly.[3]

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Infringement 3.1a)

---

[2]   B&N's instruction regarding infringement under the doctrine of equivalents is pending B&N's motions in limine.

[3]   *See Southwall Techs., Inc v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly."); *Lantech, Inc. v. Kelp Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994) ("For literal infringement, each limitation of the claim must be met by the accused device exactly, any deviation from the claim precluding a finding of infringement.").

## Final Instruction No. 14

## INFRINGEMENT "UNDER THE DOCTRINE OF EQUIVALENTS"

If a company makes, uses, sells, offers to sell within, or imports into the United States, a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product still satisfies the elements of the claim "under the doctrine of equivalents."

Under the doctrine of equivalents, a product can infringe a claim even if the product does not literally meet one of the elements of the patent claim at issue. This can happen if the product contains an element or performs a step that is determined by you to be equivalent to the element of the patent claim.

You may find that an element or step is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between the element of the claim and the element in the accused product to be "insubstantial." You may also find that an element or step in an accused product is equivalent to a literal requirement of a claim if a person of ordinary skill would have found that the accused element in the product: (1) performs substantially the same function, and (2) works in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim.

In order for the element of the product to be considered interchangeable or the differences between them to be considered insubstantial, the element that is in the accused product must have been known at the time of the alleged infringement to a person having ordinary skill in the field of technology of the patent. Interchangeability at the present time

is not sufficient.  In order to prove infringement by "equivalents," ADREA must prove the equivalency of the accused feature to a claim element by a preponderance of the evidence.

The two specific claim elements for which ADREA is permitted to attempt to establish equivalence by a preponderance of the evidence are:[4]

(1)    the element of "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" as stated in claims 7 and 18 of the '501 patent; and

(2)    the "web page" element of claim 13 of the '703 patent.

For any remaining claim elements of these or any claims at issue in this matter, ADREA cannot rely on the doctrine of equivalents and can only show infringement with respect to all other claim elements by showing literal infringement.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Infringement 3.1c)

---

[4]    This instruction is pending B&N's MIL seeking to preclude ADREA from asserting a doctrine of equivalents argument on these two elements.

46

**Final Instruction No. 15**

**LIMITATIONS ON DIRECT INFRINGEMENT UNDER THE "DOCTRINE OF EQUIVALENTS"**

The prior art may preclude a finding of infringement under the doctrine of equivalents. I discussed prior art at the start of this trial, and will provide more specifics later, but, generally speaking, "prior art" is things that were already known or done before the invention. In reaching your decisions in this case, you must use the definition of "prior art" that I provide to you.

To determine whether the prior art precludes a finding of infringement under the doctrine of equivalents for a particular product that is accused of infringing a particular claim, you must determine what products are in the "prior art" as well as what products would have been obvious from the "prior art" to a person having an ordinary level of skill in the field of technology of the patent at the time of the invention.

If Barnes & Noble establishes that a product that was in the prior art (1) meets the same claim requirements as an accused Nook device and (2) has the same allegedly "equivalent" alternative feature(s) as an accused Nook device, or that requirement or feature would have been obvious from the prior art to a person having ordinary skill in the field of technology of the invention at the time of the invention, you must find that the claim has not been infringed. Barnes & Noble has the burden of proving that the product with the claimed equivalent feature was within the prior art by a preponderance of the evidence.

I would also like to explain some other limitations on your application of the doctrine of equivalents in considering the issue of direct infringement. First, you may not find that a product infringes a claim under the doctrine of equivalents if you find that the allegedly

"equivalent" alternative feature(s) of that product was/were described somewhere in the patent.

Second, you may not find that a product infringes a claim under the doctrine of equivalents if you find that, during the patent application process, the applicant for the patent distinguished the unmet claim requirement from the allegedly "equivalent" alternative aspect of that product or process. This concept is referred to as prosecution history estoppel.

Barnes & Noble has argued that statements that the applicants for the '703 and '501 patents made to the PTO in order to get the claims allowed in the first place prohibit ADREA from relying on a claim of equivalence for the specific elements I mentioned above.

In order to find a NOOK device to be equivalent with respect to one of the specific missing elements discussed above, you must also make certain findings regarding the statements the applicants made to the PTO in the course of seeking their patent. Specifically, in order to find equivalence, you must first find one or more of the following: (1) that any amendments that the applicant made to the specific claim element that ADREA is asserting is eligible for a claim of equivalence substituted a broader requirement for a narrower requirement or replaced a requirement of equal scope; (2) the reason for making the amendment was not related to obtaining the patent from the PTO; (3) a person having ordinary skill in the field of technology of the patent at the time of the amendment would not have foreseen the potential substitution of the allegedly "equivalent" alternative for the unmet claim requirement; (4) the reason for the amendment is tangential or relates to some issue other than the assertion of equivalence at issue; or (5) some other reason, such as the

shortcomings of language, prevented the applicant from using claim language that included the allegedly "equivalent" alternative.  You may not find that the alternative feature of the accused product is an equivalent to an unmet requirement of a claim if that requirement was added to the claim (or to any claim of the patent) by amendment during the prosecution of the applications that led to issuance of the patent, unless you also find that at least one of these factors that I have identified to you was also present.

      You may also not determine that an alternative aspect of a product is equivalent to an unmet requirement of a claim if a finding of infringement under the doctrine of equivalents would effectively eliminate that requirement.  Specifically, the alleged equivalent cannot eliminate or ignore an element or requirement of the claim.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Infringement 3.1d)

**Final Instruction No. 16**

**INVALIDITY -- BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether or not

Barnes & Noble has proven that the claims of the asserted patent are invalid.  To prove that

any claim of a patent is invalid, Barnes & Noble must persuade you by clear and convincing

evidence, *i.e.*, you must be left with a clear conviction that the claim is invalid.


(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions,

Feb. 2013, Validity 4.1)

## Final Instruction No. 17

## PRIOR ART

Now I'm going to give you instruction on some terms that are important in your consideration of the issues of patent invalidity.  Prior art may include items that were publicly known or that have been used or offered for sale, publications, or patents that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have existed or been made, known, used, published, or patented before the priority date for the patent.  In this case, the priority date for the '851 patent is September 21, 1999, the priority date for the '501 patent is November 7, 1994, and the priority date for the '703 patent is August 10, 2000.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-The Claims 4.3a)

**Final Instruction No. 18**

**ANTICIPATION**

In order for someone to be entitled to a patent, the invention must actually be "new,"

and the inventor must not have delayed the filing of an application claiming the invention.

In general, inventions are new when the identical product or process has not been made,

used, or disclosed before.  Inventions that are not new are called "anticipated."  Anticipation

must be determined on a claim-by-claim basis.

For the claim to be invalid because it is not new, Barnes & Noble must show that all

of the requirements of that claim were present in a single previous device or process that

was known, used, or described in a previous printed publication or patent.  We call this

"anticipating prior art."  To be considered "anticipating prior art," the prior art does not have

to use the same words as the claim, but all of the requirements of the claim must have been

disclosed, either expressly or impliedly, to a person having ordinary skill in the art in the

technology of the invention, so that looking at that one reference, that person could have

made and used the claimed invention.

Barnes & Noble contends that each of the asserted claims is invalid because the

claimed inventions are anticipated by the prior art.  Barnes & Noble must convince you of

this by clear and convincing evidence, *i.e.*, that the evidence highly probably demonstrates

that the claim(s) is/are anticipated.  Here is a list of ways that Barnes & Noble can show that

a patent claim was not new or that the patentee lost the right to patent the claim(s):

(1)      An invention is not new if it was known to or used by others in the United

States before the priority date. An invention is known when the information about it was

reasonably accessible to the public on that date.

52

(2)      An invention is not new if it was already patented or described in a printed publication, anywhere in the world, before the priority date.

(3)      An invention is not new if it was described in a published patent application filed by another person in the United States before the priority date.

(4)      An invention is not new if the claimed invention was described in a patent granted on an application for patent filed by another person in the United States, and the application was filed before the priority date.

(5)      ADREA is not entitled to the patent if the named inventors did not themselves invent the invention.

(6)      An invention is not new if the invention was made by someone else in the United States before the invention was made by named inventors and the other person did not abandon, suppress, or conceal the invention.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-The Claims 4.3b)

**Final Instruction No. 19**

**OBVIOUSNESS**

Even though an invention may not have been anticipated, the invention must also not have been "obvious" to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Specifically, Barnes & Noble may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of electronic book readers.

The determination of obviousness depends on several factors. In determining whether a claimed invention is obvious, you must consider (1) the level of ordinary skill in the field of electronic book readers that someone would have had at the time the claimed invention was made; (2) the scope and content of the prior art; and (3) any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of electronic book readers to combine the known elements in a way the claimed invention does, taking into account such factors as

(1)     whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

54

(2)      whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3)      whether the prior art teaches or suggests the desirability of combining together the elements claimed in the invention;

(4)      whether the prior art teaches away from combining elements in the claimed invention;

(5)      whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6)      whether the change resulted more from design incentives or other market forces.

You may also consider whether the invention claims a combination of previously known elements that would have occurred in the ordinary course without real innovation.[5]

In determining whether the claimed invention was obvious, consider each claim separately.  Also, do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on whether or not the claimed invention was obvious, such as:

_____

[5]   *KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1741 (2007) ("Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility.").

a.      Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of some other factors such as design needs or market-pressure advertising or similar activities);

b.      Whether the invention satisfied a long-felt need;

c.      Whether others had tried and failed to make the invention;

d.      Whether others invented the invention at roughly the same time;

e.      Whether others copied the invention;

f.      Whether there were changes or related technologies or market needs contemporaneous with the invention;

g.      Whether the invention achieved unexpected results;

h.      Whether others in the field praised the invention;

i.      Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

j.      Whether others sought or obtained rights to the patent from the patent holder; and

k.      Whether the inventor proceeded contrary to accepted wisdom in the field.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-The Claims 4.3c)

**Final Instruction No. 20**

**LEVEL OF ORDINARY SKILL**

As I mentioned, one question that is important to the determination of obviousness is the level of ordinary skill that a person had in the field of electronic book readers at the time of the claimed inventions of the different patents at issue here.  In deciding what the level of ordinary skill in the field of electronic book readers is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.


(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-The Claims 4.3c(i))

**Final Instruction No. 21**

**SCOPE AND CONTENT OF THE PRIOR ART**

And, as I also mentioned, in the determination of obviousness of any of the asserted claims, you must determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was obvious includes prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill in the art using common sense might combine so as to solve the problem, like fitting together the pieces of a puzzle.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-The Claims 4.3c(ii))

58

**Final Instruction No. 22**

**WRITTEN DESCRIPTION REQUIREMENT**

Aside from anticipation or obviousness, an additional way in which a patent claim can be determined to be invalid is if it does not meet the written description requirement. The patent law contains certain requirements for the part of the patent called the specification.  Barnes & Noble contends that each of the claims asserted by ADREA is invalid because the specification of the relevant patent does not contain an adequate written description of the invention.  To succeed, Barnes & Noble must show by clear and convincing evidence that the specification fails to meet the law's requirements for the adequacy of the written description of the invention.

In the patent application process, the applicant may keep the originally filed claims, or amend the words of the claims between the time the patent application is first filed and the time a patent is issued.  An applicant may amend the claims or add new claims.  These changes may narrow or broaden the scope of the claims.  The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application.  The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of technology of the patent at the time of filing would have understood that the full scope or missing requirement was in the written description in the patent application.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-Adequacy of Patent Specification 4.2a)

**Final Instruction No. 23**

**DEFINITENESS REQUIREMENT**

Another invalidity issue for you to consider is the issue of indefiniteness.  Because the claims of a patent define precisely what the patent covers, the patent law contains a requirement that the scope of the claims be sufficiently clear.  This is referred to as the definiteness requirement, and a patent claim that fails to meet this requirement is invalid for indefiniteness.

A patent claim is invalid for indefiniteness if the claim, when read in light of the patent's specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty.[6]  Recall that the patent's specification consists of the entire patent document, including the written description and figures.  Also recall that the prosecution history of the patent is the written history of the patent created when the patent was being obtained from the Patent Office.

It is Barnes & Noble's position that claim 96 of the '851 Patent is indefinite.  To succeed, Barnes & Noble must show by clear and convincing evidence that claim 96, when read in light of the patent's specification and prosecution history, fails to inform those skilled in the art about the scope of the invention with reasonable certainty.  You must make this determination based on upon all of the evidence presented to you.

---

[6] *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. ____,134 S. Ct. 2120, 2124 (2014) ("[W]e hold that a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."); *id.* at 2129–30 (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 389, for the proposition that interpretation of patent claims "may turn on evaluations of expert testimony").

**Final Instruction No. 24**

**ENABLEMENT**

One final invalidity issue for you to consider is the issue of enablement. Barnes & Noble contends that each of the claims asserted by ADREA is invalid because the specification does not meet the enablement requirement.

To succeed, Barnes & Noble must show by clear and convincing evidence that the patent does not contain a sufficiently full and clear description of the full scope of the claimed invention.

To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

The full scope of the invention includes the scope of the invention as it is currently being claimed by ADREA for purposes of its claims of infringement of Barnes & Noble Nook devices. In other words, the patent claim must be enabled with respect to the specific Barnes & Noble Nook features that ADREA is asserting infringe the claim.

In order to be enabling, the patent must permit persons having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time of original filing without having to conduct undue experimentation. However, some amount of experimentation to make and use the invention is allowable. In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

(1)    the time and cost of any necessary experimentation;

(2)    how routine any necessary experimentation is in the field of electronic book readers;

(3)    whether the patent discloses specific working examples of the claimed invention;

(4)    the amount of guidance presented in the patent;

(5)    the nature and predictability of the field of electronic book readers;

(6)    the level of ordinary skill in the field of electronic book readers; and

(7)    the scope of the claimed invention.

No one or more of these factors is alone dispositive.  Rather, you must make your decision whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether or not, in the context of this invention and the state of the art at the time of the original application, a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Validity-Adequacy of Patent Specification, 4.2b)

## Final Instruction No. 25

## WILLFUL INFRINGEMENT

One last liability issue for you to decide in this case is the issue of willfulness.  The parties agree that B&N's conduct prior to March 29, 2012 is not at issue for purposes of determining willful infringement and B&N is not accused of willfully infringing prior to March 29, 2012.

To prove willful infringement, ADREA must first persuade you that Barnes & Noble infringed a valid claim of one or more of ADREA's patents.  The requirements for such infringement were discussed in my prior instructions.  If you do not find that Barnes & Noble infringed a particular claim, or if you find a claim to be invalid, you should not make a determination on willfulness for that claim.

To prove willful infringement, ADREA must persuade you that it is highly probable – that is, by clear and convincing evidence – that Barnes & Noble acted with reckless disregard that it was infringing the claims of ADREA's patents.

To prove that Barnes & Noble acted with reckless disregard, ADREA must prove two things by clear and convincing evidence:

The first part of the test is objective: ADREA must persuade you that Barnes & Noble acted despite an objectively high likelihood that Barnes & Noble's actions constituted infringement of a valid and enforceable patent.  In making this determination, you may not consider Barnes & Noble's state of mind.  Rather, the appropriate inquiry is whether the defenses put forth by Barnes & Noble fail to raise any substantial question with regard to infringement or validity.  Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of reckless disregard.  Only if you conclude that

64

Barnes & Noble's defenses fail to raise any substantial question with regard to infringement or validity, do you need to consider the second part of the test.

The second part of the test does depend on the state of mind of Barnes & Noble. In making this determination, you must determine whether and when Barnes & Noble had knowledge of the patents at issue. Barnes & Noble must be specifically aware of the existence of the patent in question in order to willfully infringe it.[7] It is important for you to understand that Barnes & Noble does not have a duty to independently search for patents to determine if its actions are infringing. However, after Barnes & Noble had knowledge of the patents at issue, ADREA must persuade you that Barnes & Noble actually knew, or that it was so obvious that Barnes & Noble should have known, that its actions constituted an unjustifiably high risk of infringement of a valid patent, and nonetheless continued to do what it was doing such that it acted with reckless disregard.

To determine whether Barnes & Noble had this state of mind, consider all facts which may include, but are not limited, to:

(1)     Whether or not Barnes & Noble acted in accordance with the standards of commerce for its industry;

(2)     Whether or not Barnes & Noble independently developed versus intentionally copied a product of ADREA that is covered by the '851 patent, the '501 patent, or the '703 patent;

(3)     Whether or not there is a reasonable basis to believe that Barnes & Noble did not infringe or had a reasonable defense to infringement;

---

[7]     *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999).

(4)     Whether or not Barnes & Noble made a good-faith effort to avoid infringing the '851 patent, the '501 patent, or the '703 patent, for example, whether Barnes & Noble attempted to design around the patents; and

(5)     Whether or not Barnes & Noble tried to cover up its infringement.

(Adapted from Model Patent Jury Instructions for the Northern District of California, Nov. 3, 2011, Infringement 3.10, Willful Infringement; *see also* The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Infringement 3.10)[8]

---

[8]   35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Crystal Semiconductor Corp. v. Tritech Microelectronics, Int'l, Inc.*, 246 F3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness); *WMS Gamin Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999) (knowledge of the patent necessary to show willfulness); *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992) (identifying factors that may show willfulness); *Gustafason, Inc. v. Intersystems, Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (history of Fed. Cir. decisions on willfulness).

**Final Instruction No. 26**

**DAMAGES—INTRODUCTION**

I will now instruct you about how to measure damages.  You will only be called upon to measure damages, if any, if you find that any of the patents have been infringed, and, if so, that those patents are not invalid.  It is also very important to understand that by instructing you on damages, I am not suggesting that Barnes & Noble has committed patent infringement.  That is for you to decide, and only if you decide that should you consider the issue of damages.

If you find that Barnes & Noble infringed any valid Asserted Claim of the '851 patent, the '501 patent, or the '703 patent, you must then consider what amount of damages to award to ADREA.  I will now instruct you about the measure of damages.

The damages you award must be adequate to compensate ADREA for the infringement for a particular patent.  Damages are not meant to punish an infringer.  Your damages award, if you reach this issue, should put ADREA in approximately the same financial position that it would have been in had the infringement not occurred.  If ADREA proves infringement of a valid and enforceable patent, ADREA is entitled to recover no less than a reasonable royalty that Barnes & Noble would have paid in order to get a license to use that patent.

ADREA has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that ADREA establishes that it more likely than not to have suffered.  While ADREA is not required to

prove its damages with mathematical precision, it must prove them with reasonable certainty. ADREA is not entitled to damages that are remote or speculative.[9]

In this case, ADREA seeks a reasonable royalty that Barnes & Noble would have paid for a hypothetical negotiation that would have taken place just before Barnes & Noble started selling its NOOK eReader device.  For the '851 patent and the '501 patent, a reasonable royalty is defined as the money amount that Discovery, who owned the patents at the time, and Barnes & Noble would have agreed upon as a fee for use of the inventions in each of those patents at the time prior to when infringement began.  For the '703 patent, a reasonable royalty is defined as the money amount Philips, who owned the patent at the time, and Barnes & Noble would have agreed upon as a fee for the use of the invention at the time prior to when infringement began.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Patent Damages 6.1; *see also* Model Patent Jury Instructions for the Northern District of California, Nov. 3, 2011, Patent Damages 5.1)

---

[9]  *See Lucent Techs., Inc. v. Gaetway, Inc.*, 580 F.3d 1301, 1340 (Fed. Cir. 2009) (holding that patent owner is not entitled to damages that are remote or speculative); *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360 (damages must be proven with a reasonable certainty).

## Final Instruction No. 27

## REASONABLE ROYALTY—DEFINITION

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention in a particular patent.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to pay to license the particular patent that has been infringed in a hypothetical negotiation taking place at a time just prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid, and would be infringed, and the patent holder and infringer were willing to enter into an agreement.  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.  Here, the determination of a reasonable royalty is to be made on a patent-by-patent basis, for only those patents for which you have found infringement of a valid claim.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions,

Feb. 2013, Patent Damages 6.6.)

**Final Instruction No. 28**

**REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty to be paid for a license to use a particular patent, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of that patent, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of other patents comparable to that patent.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     Whether the licensor has an established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

71

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)    The opinion and testimony of qualified experts.

(15)    The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay for a license for a particular patent and the patent holder would have been willing to accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions, Feb. 2013, Patent Damages 6.7)

**Final Instruction No. 29**

**DATE OF COMMENCEMENT OF DAMAGES**

In calculating the amount of damages, you must determine when the damages began.

For the '851 patent, the Court has already determined that damages cannot be awarded before March 29, 2012.[10]  Because the '851 patent has already expired, damages may only be award for the period of March 29, 2012 through December 9, 2012.

For the '501 patent and '703 patent, the earliest date that damages would commence if there is infringement depends on certain additional factual determinations that you must make, as I will now explain.

ADREA and Barnes & Noble agree that ADREA does not make or sell any products covered by the Asserted Claims.[11]  When a patent owner does not make or sell a product that uses the claimed inventions, damages ordinarily begin when infringement begins.  If, however, the patent owner licenses the patent to someone else and they make or sell a product that utilizes the patent, the patent owner cannot recover damages for certain time periods unless Adrea proves that other requirements, called "marking" requirements, are satisfied.[12]

---

[10]   Dkt. 85, Memorandum Order, July 1, 2014, at 5.

[11]   *See* ADREA's Resp. to Defs.' Requests for Admission 43, 45, 47; *see also* ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 5 (undisputed that "Adrea does not produce its own e-Readers or any other product.").

[12]   35 U.S.C. § 287(a); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).

Here, ADREA and Barnes & Noble agree that ADREA has licensed all three of the patents at issue to Amazon.[13]  ADREA and Barnes & Noble agree that Amazon makes and sells e-reader devices, called Kindles, pursuant to this license.[14]

ADREA and Barnes & Noble agree that Discovery has licensed the '501 patent to Sony.[15]  ADREA and Barnes & Noble agree that Sony makes and sells e-reader devices pursuant to this license.[16]

Because ADREA has licensed the patents at issue to Amazon and Sony, and because Amazon and Sony make e-reader devices pursuant to those licenses, you must determine whether the Amazon or Sony e-readers utilize the claimed inventions in the '501 and '703 patents.  Because the e-readers are sold under a license that includes the patents at issue, ADREA has the burden of proving that the Amazon and Sony e-readers do not utilize the claimed inventions.  If you are not certain whether the Amazon and Sony e-readers use the claimed inventions, you must decide that they do use those inventions.[17]

If you find that Amazon or Sony sold a product that includes the claimed inventions in the '501 patent or the '703 patent, you must determine whether Amazon or Sony has "marked" that product with the patent number.  "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the

---

[13]  ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 249-252.

[14]  ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 253.

[15]  ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 243-244.

[16]  ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 245.

[17]  *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998) (patent holder must prove compliance with marking statute by preponderance of evidence); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (patentee bears burden of proving compliance with marking requirements); *WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) (burden to show no patented articles is on patent holder).

products that include the patented invention.  ADREA has the burden of establishing that its

licensees – Amazon and Sony – substantially complied with the marking requirement.  This

means ADREA must show that its licensees – Amazon and Sony – marked substantially all

of the products it made, offered for sale, or sold under the '501 patent or the '703 patent, and

that ADREA made reasonable efforts to ensure that its licensees who made, offered for sale,

or sold products under the '501 patent and the '703 patent marked the products.

ADREA and Barnes & Noble agree that the Amazon license does not require that

Amazon mark its Kindle e-readers with the '501 patent or the '703 patent.[18]

ADREA and Barnes & Noble agree that the Sony license does not require that Sony

mark its e-readers with the '501 patent.[19]

If you determine that Amazon or Sony e-readers utilize the '501 or '703 patents, and

that they have not marked their e-readers with the patent numbers, damages only begin from

the date of actual notice of infringement from ADREA to Barnes & Noble, which the Court

determined to be March 29, 2012.

If you find that neither Amazon nor Sony sells a product covered by the '501 patent

or the '703 patent, damages begin without the requirement for actual notice.  Damages should

be calculated as of the date you determine that the infringement began.

(Adapted from The Federal Circuit Bar Association, Model Patent Jury Instructions,

Feb. 2013, Patent Damages 6.8)

_____

[18]   ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 255.

[19]   ADREA's Resp. to Defs.' 56.1 Statement of Undisputed Facts 246.

**Final Instruction No. 30**

**DUTY TO DELIBERATE**

The verdict must represent the considered judgment of each of you.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §106:01 (6th ed.))

## Final Instruction No. 31

## ELECTION OF FOREPERSON

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesperson here in court.

A special verdict form has been prepared for your convenience. You will take this form to the jury room.

[*Read special verdict form.*]

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §106:05 (6th ed.))

### Final Instruction No. 32

### COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS

If it becomes necessary during your deliberations to communicate with me, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me by any means other than a signed writing.  I will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open court.

From the oath about to be taken by the bailiffs you will note that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are never to reveal to any person—not even to me—how the jury stands, numerically or otherwise, on the questions before you, until after you have reached a unanimous verdict.

(Adapted from O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §106:08 (6th ed.))

Respectfully submitted,


Dated:  September 30, 2014                    **Arnold & Porter LLP**

                                              */s/ Yue-Han Chow*
                                              Louis S. Ederer
                                              Susan Shin
                                              Yue-Han Chow
                                              Maxwell Preston
                                              399 Park Avenue
                                              New York, NY 10022-4690
                                              Telephone:  (212) 715-1000
                                              Facsimile:  (212) 715-1399
                                              louis.ederer@aporter.com
                                              susan.shin@aporter.com
                                              yue-han.chow@aporter.com
                                              maxwell.preston@aporter.com

                                              Ali R. Sharifahmadian  (*pro hac vice*)
                                              Sarah Brackney Arni (*pro hac vice*)
                                              555 Twelfth Street, NW
                                              Washington, DC  20004-1206
                                              Telephone:  (202) 942-5000
                                              Facsimile:  (202) 942-5999
                                              ali.sharifahmadian@aporter.com
                                              sarah.arni@aporter.com

                                              Michael Berta (*pro hac vice*)
                                              Willow Noonan (*pro hac vice*)
                                              Three Embarcadero Center
                                              10th Floor
                                              San Francisco, CA 94111-4024
                                              Telephone: (415) 471-3100
                                              Facsimile: (415) 471-3400
                                              michael.berta@aporter.com
                                              willow.noonan@aporter.com

                                              *Attorneys for Defendants Barnes & Noble, Inc.,*
                                              *barnesandnoble.com llc, and Nook Media LLC*

80

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2014, copies of Defendants' Proposed Jury

Instructions were caused to be served upon the following via ECF:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036


Steven Michael Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110


Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067


                                                    */s/ Yue-Han Chow*
                                                    Yue-Han Chow