# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADREA, LLC, | |
| _Plaintiff,_ | |
| v. | Civil Action No. 13-cv-4137 (JSR) |
| BARNES & NOBLE, INC., BARNESANDNOBLE.COM LLC, and NOOK MEDIA LLC, | |
| _Defendants._ | |

## PLAINTIFF'S PROPOSED JURY CHARGES

**TABLE OF CONTENTS**

SECTION A. PRELIMINARY INSTRUCTIONS..........................................................................1

    A.1     WHAT A PATENT IS AND HOW ONE IS OBTAINED ....................................1

    A.2     SUMMARY OF CONTENTIONS........................................................................4

    A.3     PATENTS AT ISSUE...........................................................................................6

    A.4     OVERVIEW OF APPLICABLE LAW.................................................................9

    A.5     OUTLINE OF TRIAL ........................................................................................11

SECTION B. FINAL JURY CHARGE.....................................................................................16

    B.1     GENERAL INTRODUCTION............................................................................16

    B.2     EVIDENCE IN THE CASE ...............................................................................21

    B.3     DIRECT AND CIRCUMSTANTIAL EVIDENCE .............................................22

    B.4     CREDIBILITY OF WITNESSES ......................................................................23

    B.5     IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT.............25

    B.6     EFFECT OF PRIOR INCONSISTENT STATEMENT OR CONDUCT............26

    B.7     EXPERT WITNESSES ......................................................................................27

    B.8     SUMMARY OF CONTENTIONS......................................................................28

    B.9     THE ROLE OF THE CLAIMS OF A PATENT ...................................................30

    B.10   CLAIM CONSTRUCTION................................................................................31

    B.11   INFRINGEMENT...............................................................................................34

    B.12   WILLFUL INFRINGEMENT ...........................................................................37

    B.13   INVALIDITY ....................................................................................................38

    B.14   ANTICIPATION ...............................................................................................39

    B.15   OBVIOUSNESS ................................................................................................41

    B.16   LACK OF WRITTEN DESCRIPTION...............................................................44

i

B.17    ENABLEMENT ................................................................................................. 45

B.18    DAMAGES ...................................................................................................... 47

**SECTION A. PRELIMINARY INSTRUCTIONS**

**A.1        WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to three United States patents.[1] Before summarizing the positions of the parties and the issues involved in the dispute, let me explain what a patent is and how one is obtained.

The United States Constitution grants Congress the powers to enact laws "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries." Using this power, Congress enacted the patent laws.[2]

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A valid United States patent gives the patent holder the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United

---

[1] Unless otherwise indicated, the source for these instructions is The Federal Circuit Bar Association Model Patent Jury Instructions, s A.1 (2012).

[2] Additional resource: The National Jury Instruction Project's Model Patent Jury Instructions, s 1.1 (2009).

States, during the term of the patent without the patent holder's permission.[3] This right lasts for up to 20 years from the date the patent application was filed. A violation of the patent holder's rights is called infringement. The patent holder may enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these

---

[3] Additional resource: Model Patent Jury Instructions for the Northern District of California (2014).

2

instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the Examiner informs the applicant in writing of what the Examiner has found and whether the Examiner considers any claim to be patentable and, thus, would be "allowed." This writing from the Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth for some time until the Examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers generated during these communications between the Examiner and the applicant are called the "prosecution history."

**A.2**          **SUMMARY OF CONTENTIONS**[4]

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are ADREA LLC ("ADREA") and Barnes & Noble, Inc., Barnesandnoble.com LLC, and Nook Media LLC (collectively "B&N"). The case involves three patents.  The first is United States Patent No. 7,298,851, and John S. Hendricks, Michael L. Asmussen, and John McCoskey are named as the inventors.  For your convenience, the parties and I will often refer to this patent 7,298,851 by the last three numbers of the patent number, namely, as the "'851 patent."  The title of the '851 patent is "ELECTRONIC BOOK SECURITY AND COPYRIGHT PROTECTION SYSTEM."  The '851 patent issued on November 20, 2007.

The second patent is United States Patent No. 7,299,501, and John S. Hendricks is named as the inventor.  The parties and I will often refer to this patent 7,299,501 as the "'501 patent."  The title of the '501 patent is "ELECTRONIC BOOK SELECTION AND DELIVERY SYSTEM HAVING ENCRYPTION AND SECURITY FEATURES."  The '501 patent issued on November 20, 2007.

The third patent is United States Patent No. 7,620,703, and Yevgeniy Shteyn is named as the inventor.  The parties and I will often refer to this patent 7,620,703 as the "'703 patent."  The title of the '703 patent is "TOPICAL SERVICE PROVIDES CONTEXT INFORMATION FOR A HOME NETWORK."  The '703 patent was issued on November 17, 2009.

---

[4] Unless otherwise indicated, the source for these instructions is: The Federal Circuit Bar Association Model Patent Jury Instructions, s A.2 (2012).

ADREA filed suit in this court seeking money damages from B&N for allegedly infringing the '501, '703, and '851 Patents by making, importing, selling, or offering for sale within the United States products which ADREA argues are covered by claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent.

The products that are alleged to infringe are: Nook 1st Edition, the Nook Color, the Nook Tablet, the Nook Simple Touch/Simple Touch GlowLight, the Nook HD, the Nook HD+, and the Nook GlowLight.

B&N denied that it has infringed claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent. B&N also argues that each of these claims is invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

Your job will be to decide whether or not the asserted claims of the '501 Patent, the '703 Patent, or the '851 Patent have been infringed and whether or not those claims are valid. If you decide that any claim of the '501, '703, or '851 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ADREA to compensate it for the infringement. You will also need to make a finding as to whether the infringement by B&N was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

## A.3        PATENTS AT ISSUE[5]

Let's take a moment to review the '501 patent, one of the patents at issue in this case. The cover page of the patent identifies the date the patent was granted and the patent number along the top, as well as the inventor's name, the filing date, earlier related applications on which the patent is based, and a list of the references considered in the PTO.

The specification of the patent begins with an abstract, also found on the cover page. The abstract is a brief statement about the subject matter of the invention. Next come the drawings. The drawings illustrate various aspects or features of the invention. The written description of the invention appears next and is organized into two columns on each page. The specification ends with numbered sentences. These are the patent claims. A single patent can have several claims.

As I've indicated, five claims—claims 7, 8, 9, 18 and 19—of the '501 Patent are in dispute. To determine whether infringement of these claims has occurred and whether the claims are valid, you will need to understand what each claim covers. A claim's words define what a patent covers.

Sometimes the words a claim uses are difficult to understand. It is my role to define the claim terms. Your role is to apply my definitions to the issues of the case. I will provide you with my definitions of the claim terms; you must accept my definition of the terms. If I do not provide

---

[5] Unless otherwise indicated, the sources for these instructions are: The Federal Circuit Bar Association Model Patent Jury Instructions, s A.3 (2012); The National Jury Instruction Project Model Patent Jury Instructions (2009).

you with a definition of a claim term, use your plain understanding of the term. My interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide.

A claim is a set of requirements contained in a single sentence. Often, these requirements are called "limitations" or "elements." If a product meets all of the requirements of a claim, the product has infringed that claim and the patent that includes that claim. If you find that the Nook 1st Edition, the Nook Color, the Nook Tablet, the Nook Simple Touch/Simple Touch GlowLight, the Nook HD, the Nook HD+, or the Nook GlowLight satisfies each of the requirements of claims 7, 8, 9, 18, or 19, then the product has infringed that claim of the '501 Patent.

Claims 7 and 18 of the '501 Patent, claims 1 and 13 of the '703 Patent, and claim 96 of the '851 Patent are independent claims. This means that all requirements of these claims are contained within the claims. It is not necessary to look at any other claim to determine what any of these claims cover. The remainder of the claims asserted in each patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers.

Claims 7 and 18 of the '501 Patent, claims 1, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent use the word "comprising." This means these claims are open claims.[6] "Comprising" means "including" or "containing but not limited to."[7] An open claim is infringed as long as every requirement in the claim is present in B&N's Nook products. This is true even if the Nook products include components in addition to those requirements.

For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

---

[6] Model Patent Jury Instructions for the Northern District of California (2014).

[7] The National Jury Instruction Project Model Patent Jury Instructions (2009)

**A.4**          **OVERVIEW OF APPLICABLE LAW[8]**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether B&N has infringed claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.

In general, however, B&N may infringe the '501 Patent, the '703 Patent, and/or the '851 Patent by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product or by using a method meeting all the requirements of claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, or claim 96 of the '851 Patent.

Another issue you will be asked to decide is whether the '851 Patent, the '703 Patent, and/or the '501 Patent is invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious. For a claim to be invalid because it is not new, B&N must show, by clear and convincing evidence, that all of the elements of a claim are

---

[8] Unless otherwise indicated, the source for these instructions is: The Federal Circuit Bar Association Model Patent Jury Instructions, s. A.4 (2012).

present in a single previous device or method, or sufficiently described in a single previous printed publication or patent. This is called "prior art." If a claim is not new, it is said to be anticipated.

Another way that a claim may be invalid is that it may have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the inventions claimed in the '501 Patent, the '703 Patent, and the '851 Patent are invalid. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the '501 Patent, the '703 Patent, and/or the '851 Patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ADREA to compensate it for the infringement. A damages award should put ADREA in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what ADREA would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate ADREA and not to punish B&N. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate ADREA for the infringement, in order to punish B&N. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

10

## A.5       OUTLINE OF TRIAL[9]

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, i.e., that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

---

[9] Unless otherwise indicated, the source for these instructions is The Federal Circuit Bar Association Model Patent Jury Instructions, s. A.5 (2012).

After the opening statements, ADREA will present its evidence in support of its contention that some of the claims of the '501, '703, and '851 Patents have been and continue to be infringed by B&N and that the infringement has been and continues to be willful. To prove infringement of any claim, ADREA must persuade you that it is more likely than not that B&N has infringed that claim. To persuade you that any infringement was willful, ADREA must prove that the infringement was willful by clear and convincing evidence.

B&N will then present its evidence that the claims of the '501, '703, and '851 Patents are invalid. To prove invalidity of any claim, B&N must persuade you by clear and convincing evidence that the claim is invalid. In addition to presenting its evidence of invalidity, B&N will put on evidence responding to ADREA's proof of infringement and willfulness.

ADREA may then put on additional evidence responding to B&N's evidence that the claims of the '501, '703, and '851 Patents are invalid, and to offer any additional evidence of infringement and willfulness. This is referred to as "rebuttal" evidence. ADREA's "rebuttal" evidence may respond to any evidence offered by B&N.

Finally, B&N may have the option to put on its "rebuttal" evidence to support its contentions as to the validity of some of the claims of the '501, '703, and '851 Patents by responding to any evidence offered by ADREA on that issue.

The parties may present the testimony of a witness by playing a videotape of the witness's deposition testimony or by reading from his or her deposition transcript.  A deposition is the sworn testimony of a witness taken before trial, and it is entitled to the same consideration as if the witness had testified at trial.

12

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

**A.6          EVIDENCE IN THE CASE[10]**

The evidence in the case will consist of the following:

1.          The sworn testimony of the witnesses, no matter which party called the witnesses.

2.          All exhibits received in evidence, regardless of who may have produced the exhibits.

3.          All facts that may have been judicially noticed and that you must take as true for purposes of this case.

As I mentioned, depositions may also be received into evidence.  Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions.  Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Statements of the lawyers are not evidence in the case, unless made as an admission or stipulation of fact.  A "stipulation" is an agreement between both sides that certain facts are true.  When the lawyers on both sides stipulate or agree to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard that fact as proved.

I may take judicial notice of certain facts or events.  When I declare that I will take judicial notice of some fact or event, you must accept that fact as true.

If I sustain an objection to any evidence or if I order evidence stricken, that evidence must be entirely ignored.

---

[10] Unless otherwise indicated, the source for this instruction is: O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr., § 101:40 ("Evidence in the case") (6th ed.).

Some evidence is admitted for a limited purpose only.  When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the statements of the witness.  In other words, you are not limited solely to what you see and hear as the witnesses testified.  You may draw from the facts that you find have been proven such reasonable inferences or conclusions as you feel are justified in light of your experience.

**SECTION B. FINAL JURY CHARGE**

**B.1          DUTY OF THE COURT[11]**

We are now approaching the most important part of the case, your deliberations.  You have heard

all of the evidence in the case, as well as the final arguments of the lawyers for the parties.

Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your

deliberations.  As I told you at the start of this case, and as you agreed, it is your duty to accept

my instructions of law and apply them to the facts as you determine them.

Regardless of any opinion that you may have as to what the law may or ought to be, it is your

sworn duty to follow the law as I give it to you.  Also, if any attorney or other person has stated a

legal principle different from any that I state to you in my instructions, it is my instructions that

you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them not

only so that you can follow them as I read them to you now but also so that you can have them

with you for reference during your deliberations.  In listening to them now and reviewing them

later, you should not single out any particular instruction as alone stating the law, but you should

instead consider my instructions as a whole.

---

[11] Unless otherwise indicated, the source for this instruction is: Court's Instructions of Law to the Jury, *Cognex Corp. v. Microscan Systems, Inc.*, No. 1:13-cv-02027-JSR (S.D.N.Y.), Dkt. No. 203.

**B.2**            **DUTY OF THE JURY**[12]

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict.  You, the

members of the jury, are the sole and exclusive judges of the facts.  You pass upon the weight of

the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there

may be in the testimony; and you draw whatever reasonable inferences you decide to draw from

the facts as you determine them.

In determining the facts, you must rely on your own recollection of the evidence.  To aid your

recollection, we will send you all of the exhibits at the start of your deliberations, and if you need

to review particular items of testimony, we can also arrange to provide them to you in transcript

or read-back form.  But please remember that none of what the lawyers have said in their

opening statements, in their closing arguments, in their objections, or in their questions, is

evidence.  Nor is anything I may have said evidence.

During your deliberations, you must not communicate with or provide any information to anyone

by any means about this case.  You may not use any electronic device or media, such as the

telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet

service, any text or instant messaging service, any Internet chat room, blog, or website such as

Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information

about this case or to conduct any research about this case until I accept your verdict.  In other

words, you cannot talk to anyone on the phone, correspond with anyone, or electronically

---

[12] Unless otherwise indicated, the sources for this instruction are: Court's Instructions of Law to
the Jury, *Cognex Corp. v. Microscan Systems, Inc.*, No. 1:13-cv-02027-JSR (S.D.N.Y.), Dkt. No.
203, and O'Malley, Grenig & Lee, 3 Fed. Jury Prac. & Instr. §104.04.

communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom.  Information on the Internet or available through social media might be wrong, incomplete, or inaccurate.  You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have.  In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom.  Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case.  This would unfairly and adversely impact the judicial process.

The evidence before you consists of just three things:  the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the deposition excerpts that were placed in evidence.  Please remember that questions, although they may provide context for the answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection.  Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record.  Likewise, you may not consider anything you heard about the contents of any exhibit that was not received in evidence.

18

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All such questions of law must be decided by me.  You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask that you draw no inference from my rulings or from the fact that upon occasion I asked questions of certain witnesses.  My rulings were no more than applications of the law, and my questions were only intended for clarification or to expedite matters.  You are expressly to understand that I have no opinion as to the verdict you should render in this case.

19

**B.3          DUTY OF IMPARTIALITY**[13]

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law.  You are to perform your final duty in an attitude of complete fairness and impartiality.  You are not to be swayed by rhetoric or emotional appeals.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict.  So do not be guided by anything except clear thinking and calm analysis of the evidence

---

[13] Unless otherwise indicated, the sources for this instruction are: Court's Instructions of Law to the Jury, *Cognex Corp. v. Microscan Systems, Inc.*, No. 1:13-cv-02027-JSR (S.D.N.Y.), Dkt. No. 203.

**B.2**          **EVIDENCE IN THE CASE**[14]

Unless you are otherwise instructed, the evidence in the case consists of the sworn testimony of the witnesses regardless of who called the witness, all exhibits received in evidence regardless of who may have produced them, and all facts and events that may have been admitted or stipulated to and all facts and events that may have been judicially noticed.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. However, when the lawyers on both sides stipulate or agree on the existence of a fact, unless otherwise instructed, you must accept the stipulation and regard that fact as proved.

I may have taken judicial notice of certain facts or events. When I declared that I will take judicial notice of some fact or event, unless otherwise instructed you must accept my declaration as evidence and regard as proven the fact or event that has been judicially noticed. Any evidence to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.

---

[14] Unless otherwise indicated, the source for this instruction is: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil), 3 Fed. Jury Prac. & Instr. S. 103:30 (6th ed) (2012).

**B.3**          **DIRECT AND CIRCUMSTANTIAL EVIDENCE**[15]

Generally speaking, there are two types of evidence presented during a trial – direct evidence and circumstantial evidence.

"Direct evidence" is evidence that proves a disputed fact directly, such as testimony by a witness about what the witness said or heard or did.

"Circumstantial evidence" is evidence that tends to prove a disputed fact by proof of other facts. Using your reason and experience, you may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience. "Inferences" are deductions or conclusions that reason and common sense lead you to draw from facts established by the evidence in the case. The law generally makes no distinction between the weight or value to be given to either direct or circumstantial evidence. A greater degree of certainty is not required of circumstantial evidence. You are required to find the facts in accordance with the evidence in the case, both direct and circumstantial.

---

[15] Unless otherwise indicated, the source for this instruction is: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil), 3 Fed. Jury Prac. & Instr. ss.104:05 and 104:20 (6th ed.) (2012).

**B.4**  **CREDIBILITY OF WITNESSES**[16]

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you.  How did the witness appear to you?  Was the witness candid, frank and forthright; or, did the witness seem to be evasive or suspect in some way?  How did the way the witness testified on direct examination compare with how the witness testified on cross-examination?  Was the witness consistent, or contradictory?  Did the witness appear to know what he or she was talking about?  Did the witness strike you as someone who was trying to report his or her knowledge accurately?  These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified?  Does the witness have some interest, incentive, loyalty, or motive that might

---

[16] Unless otherwise indicated, the source for this instruction is: Court's Instructions of Law to the Jury, *Cognex Corp. v. Microscan Systems, Inc.*, No. 1:13-cv-02027-JSR (S.D.N.Y.), Dkt. No. 203.

cause him or her to shade the truth?  Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

**B.5**          **IMPEACHMENT—INCONSISTENT STATEMENT OR CONDUCT**[17]

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness's other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

---

[17] Unless otherwise indicated, the source for this instruction is: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil), 3 Fed. Jury Prac. & Instr. 105:04 (6th ed.) (2012)

**B.6**            **EFFECT OF PRIOR INCONSISTENT STATEMENT OR CONDUCT**[18]

Evidence that, at some other time while not under oath a witness who is not a party to this action has said or done something inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness. However, such evidence may never be considered as evidence of proof of the truth of any such statement.

Where the witness is a party to the case, and by such statement or other conduct admits some fact or facts against the witness's interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.

---

[18] Unless otherwise indicated, the source for this instruction is: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil), 3 Fed. Jury Prac. & Instr. S. 105:09 (6th ed.) (2012).

**B.7**          **EXPERT WITNESSES[19]**

An expert witness is a person who by education and experience has become expert in some art, science, profession, or calling. Expert witnesses give their opinions as to matters in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves. If you should decide the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude the reasons given in support of the opinion are not sound, or if you feel the expert's opinion is outweighed by other evidence, you may disregard the opinion entirely.

---

[19] Unless otherwise indicated, the source for this instruction is: K. O'Malley, J. Grenig, W. Lee, Federal Jury Practice and Instructions (Civil), 3 Fed. Jury Prac. & Instr. S. 104:40 (6th ed.) (2012).

## B.8        SUMMARY OF CONTENTIONS[20]

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, ADREA seeks money damages from B&N for allegedly infringing the '501, '703, and '851 Patents by making, importing, using, selling, and offering for sale products or methods that ADREA argued are covered by claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent. These are the asserted claims of the '501, '703, and '851 Patents, respectively. The products that are alleged to infringe are: the Nook 1st Edition, the Nook Color, the Nook Tablet, the Nook Simple Touch/Simple Touch GlowLight, the Nook HD, the Nook HD+, or the Nook GlowLight. We will call these the accused Nook products.

B&N denies that it has infringed the asserted claims of the '501, '703, and '851 Patents and argues that, in addition, claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent are invalid.

Your job is to decide whether B&N has infringed the asserted claims of the '501, '703, and '851 Patent and whether any of the asserted claims of the '501, '703, and '851 Patents are invalid. If you decide that any claim of the '501, '703, and '851 Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to ADREA to

---

[20] Unless otherwise indicated, the source for this instruction is: The Federal Circuit Bar Association Model Patent Jury Instructions s. B.1 (2012).

28

compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**B.9**          **THE ROLE OF THE CLAIMS OF A PATENT**[21]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and I will provide to you my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

---

[21] Unless otherwise indicated, the source for this instruction is: The Federal Circuit Bar Association Model Patent Jury Instructions s. B.2 (2012).

**B.10          CLAIM CONSTRUCTION[22]**

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. Claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent each use the word "comprising." This means both claims are open claims. A patent claim that uses the word "comprising" is a claim that includes all listed requirements, elements, or limitations, but *could* include additional elements.[23] In other words, an accused device could contain all claim requirements, elements, or limitations, plus additional features, and still infringe a claim.

---

[22] Unless otherwise indicated, the source for this instruction is: The Federal Circuit Bar Association Model Patent Jury Instructions ss. B.2.2, 2.3 (2012)

[23] Model Patent Jury Instructions for the Northern District of California (2014).

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes those requirements, even if the table also included additional requirements such as wheels on the table's legs.[24]

Sometimes the words in a claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose. If I do not provide you with a definition of a claim term, use your plain understanding of the term.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

"Electronic book" means "an electronic version of textual or graphical information."

"Selecting a title from the transmitted list of titles" must occur before "supplying a selected electronic book corresponding to the selected title to be encrypted."

"Selecting a title from the transmitted list of titles" must also occur before "encrypting the selected electronic book using the encryption key."

The parties agree that "title" means "the actual title assigned by an author to a book, or any other designation (including a graphical symbol or icon) indicating a particular group, portion, or category of textual information."

---

[24] The National Jury Instruction Project Model Patent Jury Instructions (2009).

The term "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" means "associating with the electronic book a predetermined amount of time that begins when the electronic book is stored on the viewer."

The term "consumer appliance" means "a device that may send or receive information."

The term "identifier" means "a sequence of bits or characters that identifies a program, device, or system to another program, device, or system."

The parties agree that "home network" means "a collection of interconnected apparatus in and around the home."

**B.11**        **INFRINGEMENT**[25]

Plaintiff alleges that Defendants have directly infringed claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent.

To prove infringement, Plaintiffs must prove by a preponderance of evidence that infringement occurred. A "preponderance of evidence" means that it is more likely than not that infringement occurred.

There are two types of direct infringement applicable to this case: literal infringement and infringement under the doctrine of equivalents.

You must decide literal infringement for each asserted claim separately. To decide whether the Nook products literally infringe claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent, you must compare the Nook products with each patent claim and determine whether every requirement of that claim is included in the Nook products.

Literal infringement of any of these asserted claims has occurred if ADREA proves it is more likely than not that any one of the accused Nook products have every requirement, limitation, or element of any of the asserted claims.

If the accused Nook products have all of the requirements, limitations, or elements of any of claims 7, 8, 9, 18 and 19 of the '501 Patent, then the accused Nook products have infringed the

---

[25] Unless otherwise indicated, the sources for this instruction are: The Federal Circuit Bar Association Model Patent Jury Instructions ss. B.3.1, 3.1a, and 3.1c (2012), and the Model Patent Jury Instructions for the Northern District of California (2014).

'501 Patent. If the accused Nook products have all of the requirements, limitations, or elements of claims 1, 2, 3, 13, and 15 of the '703 Patent, then the accused Nook products have infringed the '703 Patent. If the accused Nook products have all of the requirements, limitations, or elements of claim 96 of the '851 Patent, then the accused Nook products have infringed the '851 Patent.

An accused product, such as the accused Nook products, that does not literally meet every requirement, limitation, or element of a patent claim can still infringe the '501, '703, or '851 Patents under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that are equivalent to, even though not literally met by, the accused product. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claims and decide whether the accused Nook products has either an identical or equivalent part to that individual claim requirement.

A part of a product is equivalent to a requirement of an asserted claim if a person of ordinary skill in the field would think that the differences between the part and the requirement were not substantial as of the time of the alleged infringement.

One way to decide whether any difference between a requirement of an asserted claim and a part of the accused Nook products is not substantial is to consider whether, as of the time of the alleged infringement, the part of the accused Nook product performed substantially the same

function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and a part of the accused Nook products is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the art would have known that the part was interchangeable with the claimed requirement. Whether persons of ordinary skill in the art would have known the part was interchangeable is not necessary to find infringement under the doctrine of equivalents. However, the fact that persons of ordinary skill in the art would have known the part was interchangeable could support the conclusion that the difference in the claimed requirement and the part in the accused Nook products is not substantial.

To prove infringement under the doctrine of equivalents, ADREA must prove the equivalency of the structure to a claim element by a preponderance of the evidence. In other words, ADREA must prove that it is more likely than not that the part of the accused Nook products is equivalent to the claimed requirement.

36

## B.12        WILLFUL INFRINGEMENT[26]

There is one last thing you need to determine if you find the defendants liable, which is whether the infringement by B&N was willful. The determination of whether B&N's infringement was willful will not affect the amount of damages that you will assess, but it will aid the Court in determining whether any additional damages must be assessed against B&N. To prove willful infringement, ADREA must prove by clear and convincing evidence that B&N either actually knew it was infringing ADREA's patents or recklessly disregarded the fact that its actions constituted an unjustifiably high risk of infringement of those patents. To determine whether B&N's infringement was willful, you should consider all relevant facts, including, for example, first, whether or not B&N acted in accordance with the standards of commerce for its industry; second, whether or not B&N made a good faith effort to avoid infringing the '501, '703, and '851 Patents; and third, whether or not B&N tried to cover up any infringement.

---

[26] Unless otherwise indicated, the source for this instruction is: Court's Instructions of Law to the Jury, *Cognex Corp. v. Microscan Systems, Inc.*, No. 1:13-cv-02027-JSR (S.D.N.Y.), Dkt. No. 203.

**B.13**           **INVALIDITY**[27]

B&N defends against ADREA's infringement charges by arguing that the '501, '703, and '851 Patents are invalid. An invalid patent cannot be infringed.

I will now instruct you on the rules you must follow in deciding whether or not B&N has proven that claims 7, 8, 9, 18 and 19 of the '501 Patent, claims 1, 2, 3, 13 and 15 of the '703 Patent, and claim 96 of the '851 Patent are invalid. B&N must persuade you by clear and convincing evidence that any of these claims is invalid. In other words, you must be left with a clear conviction that the claim is invalid.

"Clear and convincing" is a higher standard than the "preponderance" standard that ADREA must meet. Again, a "preponderance" standard is when ADREA proves a fact is more likely than not. If B&N reaches a "clear and convincing" standard, it has left you with a clear conviction that any of the claims is invalid. B&N must also overcome the presumption that all patents issued by the UPSTO are valid.[28]

In determining whether B&N has proven invalidity, you must consider each of the asserted claims individually. Finding that one claim is invalid does not necessarily mean the other is invalid.

---

[27] Unless otherwise indicated, the source for this instruction is: The Federal Circuit Bar Association Model Patent Jury Instructions ss. B.4.1, 4.3(a) (2012).

[28] *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315 (Fed. Cir. 2002).

**B.14**         **ANTICIPATION**[29]

For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, such previous device, method, publication or patent is called a "prior art reference." If a patent claim is not new we say it is "anticipated" by a prior art reference. B&N must prove that it is highly probable that the claim was anticipated.

Here is a list of ways that B&N can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1) An invention is not new if it was already patented or described in a printed publication, anywhere in the world before November 7, 1994 for the '501 Patent, August 10, 2000 for the '703 Patent, and September 21, 1999 for the '851 Patent.

(2) An invention is not new if it was known to or used by others in the United States before November 7, 1994 for the '501 Patent, August 10, 2000 for the '703 Patent, and September 21, 1999 for the '851 Patent. An invention is known when the information about it was reasonably accessible to the public on that date.

(3) ADREA has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world by ADREA or anyone else, more than a year

---

[29] Unless otherwise indicated, the sources for this instruction are: The National Jury Instruction Project Model Patent Jury Instructions (2009) and the Federal Circuit Bar Association Model Patent Jury Instructions ss. B.4.3b (2012).

before November 7, 1994 for the '501 Patent, August 10, 2000 for the '703 Patent, and

September 21, 1999 for the '851 Patent.

(4) ADREA has lost its rights if the claimed invention was publicly used, sold, or offered for

sale in the United States more than one year before November 7, 1994 for the '501

Patent, August 10, 2000 for the '703 Patent, and September 21, 1999 for the '851 Patent.

An invention was publicly used when it was either accessible to the public or

commercially exploited. An invention was sold or offered for sale when it was offered

commercially and what was offered was ready to be patented, i.e., a description to one

having ordinary skill in the field of the technology could have made and used the claimed

invention, even if it was not yet reduced to practice.

**B.15**          **OBVIOUSNESS**[30]

Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

B&N may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of technology of the patent to combine the known elements in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art

---

[30] Unless otherwise indicated, the source for this instruction is: the Federal Circuit Bar Association Model Patent Jury Instructions ss. B.4.3c (2012).

41

elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and (6) whether the change resulted more from design incentives or other market forces. To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

(1)     Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure, advertising or similar activities);

(2)     Whether the invention satisfied a long-felt need;

(3)     Whether others had tried and failed to make the invention;

(4)     Whether others invented the invention at roughly the same time;

42

(5)     Whether others copied the invention;

(6)     Whether there were changes or related technologies or market needs

        contemporaneous with the invention;

(7)     Whether the invention achieved unexpected results;

(8)     Whether others in the field praised the invention;

(9)     Whether persons having ordinary skill in the art at the time of the invention

        expressed surprise or disbelief regarding the invention;

(10)    Whether others sought or obtained rights to the patent from the patent holder; and

(11)    Whether the inventor proceeded contrary to accepted wisdom in the field.

## B.16          LACK OF WRITTEN DESCRIPTION[31]

The patent law contains certain requirements for the part of the patent called the specification. B&N contends that claims 13 and 15 of the '703 Patent and claim 96 of the '851 Patent are invalid because the specification of the '703 and '851 Patents, respectively, do not contain an adequate written description of the invention. To succeed, B&N must show by clear and convincing evidence that the specification fails to meet the law's requirements for written description of the invention. In the patent application process, the applicant may keep the originally filed claims, or change the claims between the time the patent application is first filed and the time a patent is issued. An applicant may amend the claims or add new claims. These changes may narrow or broaden the scope of the claims. The written description requirement ensures that the issued claims correspond to the scope of the written description that was provided in the original application.

The written description requirement is satisfied if a person of ordinary skill in the field, reading the patent application as originally filed, would recognize that the patent application described the invention of these claims, even though the description might not use the exact words found in the claim. The written description is adequate if it shows that the inventor was in possession of each claim of the invention at the time the application for the patent was filed, even though the claim may have been changed or new claims added during the prosecution of the application. It is not necessary that each and every aspect of the claim be explicitly discussed, as long as a

---

[31] Unless otherwise indicated, the sources for this instruction are: The National Jury Instruction Project Model Patent Jury Instructions (2009) and the Federal Circuit Bar Association Model Patent Jury Instructions ss. B.4.2a (2012).

person of ordinary skill would understand that any aspect not expressly discussed is implicit in the patent application as originally filed. If you find that one or more of the claims challenged by B&N lacked an adequate written description, you must find each such claim invalid.

**B.17**          **ENABLEMENT**[32]

The patent law contains certain requirements for the part of the patent called the specification. B&N contends that claims 13 and 15 of ADREA's '703 Patent are invalid because the specification does not contain a sufficiently full and clear description of how to make and use the full scope of the claimed invention. To succeed, B&N must show by clear and convincing evidence that the '703 Patent does not contain a sufficiently full and clear description of the claimed invention. To be sufficiently full and clear, the description must contain enough information to have allowed a person having ordinary skill in the field of technology of the patent to make and use the full scope of the claimed invention at the time the original patent application was filed. This is known as the "enablement" requirement. If a patent claim is not enabled, it is invalid.

In considering whether a patent claim satisfies the enablement requirement, you must keep in mind that patents are written for persons of skill in the field of the invention. Thus, a patent need not expressly state information that skilled persons would be likely to know or could obtain. B&N bears the burden of establishing lack of enablement by showing that it is highly probable that a person skilled in the art, upon reading the patent document, would not be able to make the invention work without undue experimentation. The fact that some experimentation may be required for a skilled person to make or use the claimed invention does not mean that a patent's

_____

[32] Unless otherwise indicated, the sources for this instruction are: The National Jury Instruction Project Model Patent Jury Instructions (2009) and the Federal Circuit Bar Association Model Patent Jury Instructions ss. B.4.2b (2012).

46

written description fails to meet the enablement requirement. Factors you may consider in determining whether making the invention would require undue experimentation include:

(1) The quantity of experimentation necessary;

(2) The amount of direction or guidance disclosed in the patent;

(3) The presence or absence of working examples in the patent;

(4) The nature of the invention;

(5) The state of the prior art;

(6) The relative skill of those in the art;

(7) The predictability of the art; and

(8) The breadth of those claims.

If you find that claim 13 or claim 15 of the '703 Patent does not comply with the enablement requirement, you must find that claim invalid.

**B.18**             **DAMAGES**[33]

If you find that B&N infringed any valid claims of the '501 Patent, the '703 Patent, or the '851 Patent, you must then consider what amount of damages to award to ADREA. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be enough to compensate ADREA for the infringement. You should not award damages to punish the infringer. Any damages you award should put ADREA in the same financial position it would have been in had the infringement not occurred.

ADREA must establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that ADREA establishes that it more likely than not suffered.

In this case, ADREA seeks a reasonable royalty. A reasonable royalty is defined as the money amount ADREA and B&N would have agreed upon as a fee for use of the invention at the time prior to when infringement began. Please note that ADREA is entitled to recover no less than a reasonable royalty for each infringing sale.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should

---

[33] Unless otherwise indicated, the source for this instruction is: Federal Circuit Bar Association Model Patent Jury Instructions ss. B.6.1b, 6.6, 6.7 (2012).

focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known or available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by the licensee for the use of the other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

49

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special condition designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)    The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)    The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

50

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

In determining the amount of damages, you must determine when the damages began.  Damages for infringement of the '851 patent begin on March 29, 2012 and end on December 9, 2012.

51

Since ADREA does not sell a product covered by the '501 patent or the '703 patent, then damages should be calculated as of the date you determine that infringement began.  The calculation of damages for infringement of method claims should also begin as of the date that infringement began.[34]

_____

[34] Model Patent Jury Instructions for the Northern District of California (2014).

Dated:  September 30, 2014                    Respectfully submitted,


                                              */s/ Colin Cabral*
                                              Steven M. Bauer
                                              Kimberly A. Mottley (*pro hac vice*)
                                              Patrick J. Niedermeier (*pro hac vice*)
                                              Micah Miller (*pro hac vice*)
                                              Brendan Cox (*pro hac vice*)
                                              Erin Staab (*pro hac vice*)
                                              PROSKAUER ROSE LLP
                                              One International Place
                                              Boston, Massachusetts 02110
                                              (617) 526-9600 (telephone)
                                              (617) 526-9800 (facsimile)
                                              sbauer@proskauer.com
                                              kmottley@proskauer.com
                                              pniedermeier@proskauer.com
                                              mmiller@proskauer.com
                                              estaab@proskauer.com

                                              Colin Cabral
                                              PROSKAUER ROSE LLP
                                              2049 Century Park East, Suite 3200
                                              Los Angeles, CA 90067
                                              (310) 284-5611 (telephone)
                                              (310) 557-2193 (facsimile)
                                              ccabral@proskauer.com

                                              Kenneth Rubenstein
                                              Baldassare Vinti
                                              PROSKAUER ROSE LLP
                                              11 Times Square
                                              New York, NY 10036
                                              (212) 969-3000 (telephone)
                                              (212) 969-2900 (facsimile)
                                              krubenstein@proskauer.com
                                              bvinti@proskauer.com

                                              *Attorneys for Plaintiff ADREA, LLC*

                                              53

## CERTIFICATE OF SERVICE

I certify that on September 30, 2014, I caused a copy of the forgoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com LLC, and Nook Media LLC by electronic mail.

Louis S. Ederer
Susan Lee Shin
Yue-Han Chow
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael A. Berta, Jr. (*pro hac vice*)
Willow W. Noonan (*pro hac vice*)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415)-471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*Barnesandnoble.com LLC, and Nook Media LLC*

                              */s/ Colin Cabral*