

# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

ADREA, LLC,

      *Plaintiff,*

v.

BARNES & NOBLE, INC.,
BARNESANDNOBLE.COM LLC, and
NOOK MEDIA LLC,

      *Defendants.*

Civil Action No. 13-cv-4137 (JSR)

~~FILED UNDER SEAL~~
~~PURSUANT TO~~
~~PROTECTIVE ORDER~~

~~CONFIDENTIAL (UNREDACTED)~~

 **[~~PROPOSED~~] PRETRIAL CONSENT ORDER**

Pursuant to Rule 4(b) of the Court's individual rules of practice, plaintiff ADREA, LLC ("ADREA") and defendants Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC (collectively "B&N") jointly submit this proposed pretrial consent order.

## I.     JOINT OVERVIEW OF THE CASE

This is a patent infringement case.  ADREA alleges that B&N infringes: (i) claim 96 of U.S. Patent No. 7,298,851 ("the '851 patent"); (ii) claims 7, 8, 9, 18, and 19 of U.S. Patent No. 7,299,501 ("the '501 patent"); and (iii) claims 1, 2, 3, 13, and 15 of U.S. Patent No. US 7,620,703 ("the '703 patent") (collectively, "the Asserted Claims").  ADREA also alleges that B&N's infringement is willful.

ADREA alleges that B&N and the following devices infringe the Asserted Claims: NOOK Classic (a/k/a NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch,

NOOK Simple Touch with GlowLight, NOOK HD, NOOK HD+, and NOOK GlowLight[1] (collectively, "the NOOK Devices").

Defendants deny that B&N or the NOOK Devices infringe the Asserted Claims and allege that the Asserted Claims are invalid. Defendants further deny that any alleged infringement is willful.

ADREA denies that any of the Asserted Claims are invalid.

## II.    PARTICULARIZED DESCRIPTION OF EACH PARTY'S REMAINING CLAIMS AND COUNTERCLAIMS

### A.    ADREA's Remaining Claims

1.    B&N has infringed claim 96 of the '851 patent by using, offering to sell, and selling within the United States, and/or importing into the United States, the NOOK Devices without authority during the term of the '851 patent.

2.    B&N has infringed claims 7, 8, 9, 18, and 19 of the '501 patent, literally and under the doctrine of equivalents, by using, offering to sell, and selling within the United States, and/or importing into the United States, the NOOK Devices, and by performing the claimed methods of the '501 patent, without authority during the term of the '501 patent.

3.    B&N has infringed claims 1, 2, 3, 13, and 15 of the '703 patent, literally and under the doctrine of equivalents, by using, offering to sell, and selling within the United States, and/or importing into the United States, the NOOK Devices, and by performing the claimed methods of the '703 patent, without authority during the term of the '703 patent.

4.    Since March 29, 2012, B&N's infringement of the '851 patent, the '501 patent, and the '703 patent has been willful, as B&N has acted despite an objectively high likelihood

---

[1] The Nook Glowlight is not accused of infringing the '851 patent.

that its actions constitute infringement of a valid patent, and B&N had knowledge (or should have known) of this risk.

5.      ADREA's claim for damages is no less than a reasonable royalty for the use made of the inventions of the '851 patent, the '501 patent, and the '703 patent by B&N, together with interest and costs as fixed by the Court, under 35 U.S.C. § 284, subject to increase by the Court by up to three times the amount of damages found or assessed by the jury, due to B&N's willful infringement.

6.      This case is an exceptional case and ADREA is entitled to its costs and reasonable attorneys' fees under 35 U.S.C. § 285 because this case stands out from others with respect to the substantive strength of ADREA's litigation position.

**B.      B&N's Remaining Claims**

1.      B&N disputes each and every one of ADREA's remaining Claims.

2.      <u>COUNTERCLAIM ONE</u>:  In Counterclaim One of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that it has not infringed (directly or indirectly), literally or under the doctrine of equivalents, willfully or otherwise, any claim of the expired '851 patent.

3.      <u>COUNTERCLAIM TWO</u>:  In Counterclaim Two of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that it has not infringed (directly or indirectly), literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '501 patent.

4.      <u>COUNTERCLAIM THREE</u>:  In Counterclaim Three of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that it has not

infringed (directly or indirectly), literally or under the doctrine of equivalents, willfully or otherwise, any claim of the '703 patent.

     5.     <u>COUNTERCLAIM FOUR</u>:  In Counterclaim Four of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that the claims of the '851 patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

     6.     <u>COUNTERCLAIM FIVE</u>:  In Counterclaim Five of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that the claims of the '501 patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

     7.     <u>COUNTERCLAIM SIX</u>:  In Counterclaim Six of its Answer to Complaint, Affirmative Defenses, and Counterclaims, B&N seeks a declaratory judgment that the claims of the '703 patent are invalid for failure to comply with one or more of the requirements of Title 35, United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

## III.    PARTICULARIZED STATEMENT OF THE SPECIFIC FACTS, STIPULATIONS, ADMISSIONS, AND OTHER MATTERS ON WHICH THE PARTIES AGREE[2]

### A.    The Parties

     1.     ADREA is a Delaware limited liability company with a principal place of business at 920 Stewart Drive, Sunnyvale, California 94085.

     2.     Barnes & Noble, Inc. is a Delaware corporation with a principal place of business at 122 Fifth Avenue, New York, New York 10011.

---

[2] The headings contained in this section are not stipulations and should not be used to interpret the stipulations.

3.     barnesandnoble.com LLC is a Delaware limited liability company with a principal place of business at 76 Ninth Avenue, 9th Floor, New York, New York 10011.

4.     NOOK Media LLC is a Delaware limited liability company with offices at 76 Ninth Avenue, 9th Floor, New York, NY 10011.

**B.     Procedural Background**

5.     On June 14, 2013, ADREA filed a Complaint against B&N in the Southern District of New York.

6.     The Complaint alleges infringement of the '851 patent, the '501 patent, and the '703 patent under 35 U.S.C. § 271 and willful infringement of the same three patents.

7.     B&N filed an Answer, Affirmative Defenses, and Counterclaims on August 9, 2013.  In its Answer, B&N denies that it infringes the '851 patent, the '501 patent, or the '703 patent.  The Counterclaims seek a declaratory judgment that B&N does not infringe the '851 patent, the '501 patent, or the '703 patent and that the '851 patent, the '501 patent, and the '703 patent are invalid.

**C.     The '851 Patent**

8.     The '851 patent issued on November 20, 2007.

9.     The title of the '851 patent is "ELECTRONIC BOOK SECURITY AND COPYRIGHT PROTECTION SYSTEM."

10.    The '851 patent issued from U.S. Patent Application No. 09/400,296, which was filed on September 21, 1999.

11.    Claim 96 of the '851 patent is the asserted claim and is entitled to a priority date of September 21, 1999.

12. The named inventors on the '851 patent are John S. Hendricks, Michael L. Asmussen, and John S. McCoskey.

13. Hendricks, Asmussen, and McCoskey assigned all their rights and interests in the '851 patent to Discovery Communications, Inc. in November and December 1999.

14. On May 14, 2007, Discovery Communications, Inc. changed its name to Discovery Communications, LLC.  On July 12, 2010, Discovery Communications, LLC assigned all its rights and interests in the '851 patent to Discovery Patent Holdings, LLC.

15. On August 24, 2010, Discovery Patent Holdings, LLC changed its name to ADREA, LLC.

16. ADREA owns the '851 patent.

17. The '851 patent expired on December 9, 2012.

**D.    The '501 Patent**

18. The '501 patent issued on November 20, 2007.

19. The title of the '501 patent is "ELECTRONIC BOOK SELECTION AND DELIVERY SYSTEM HAVING ENCRYPTION AND SECURITY FEATURES."

20. The '501 patent issued from U.S. Patent Application No. 09/964,882, which was filed on September 28, 2001.

21. The '501 patent claims priority to U.S. Patent Application No. 08/336,247, which was filed on November 7, 1994.

22. Claims 7, 8, 9, 18, and 19 of the '501 patent are the asserted claims and are entitled to a priority date of November 7, 1994.

23. The named inventor on the '501 patent is John S. Hendricks.

6

24.     Hendricks assigned his interest in the '501 patent to Discovery Communications, Inc. on December 7, 1994.  On July 12, 2010, Discovery Communications, LLC assigned its interest in the '501 patent to Discovery Patent Holdings, LLC.

25.     On August 24, 2010, Discovery Patents Holdings, LLC changed its name to ADREA, LLC.

26.     ADREA owns the '501 patent.

27.     The '501 patent will expire on December 1, 2015.

**E.      The '703 Patent**

28.     The '703 patent issued on November 17, 2009.

29.     The title of the '703 patent is "TOPICAL SERVICE PROVIDES CONTEXT INFORMATION FOR A HOME NETWORK."

30.     The '703 patent issued from U.S. Patent Application No. 09/635,549, which was filed on August 10, 2000.

31.     Claims 1, 2, 3, 13 and 15 of the '703 patent are the asserted claims and are entitled to a priority date of August 10, 2000.

32.     The named inventor on the '703 patent is Yevgeniy Eugene Shteyn.

33.     Shteyn assigned all his rights and interests in the '703 patent to Koninklijke Philips Electronics N.V.

34.     Koninklijke Philips Electronics N.V. assigned all its rights and interest in the '703 patent to Philips Electronics North America Corporation (PENAC) on August 24, 2010.

35.     PENAC assigned all its rights and interests in the '703 patent to ADREA, LLC on August 25, 2010.

36.     ADREA owns the '703 patent.

7

37.    The '703 patent will expire on March 18, 2026.[3]

**F.    ADREA and its Members**

38.    ADREA was formed in August 2010 as a joint venture between Discovery Communications, Inc. ("Discovery"); Intertrust Technologies Corporation ("Intertrust"); Koninklijke Philips Electronics, N.V. ("Philips"); and Sony Corporation of America ("Sony").

**G.    The NOOK Devices**

39.    ADREA has accused the following devices of infringing the '501 patent and the '703 patent: NOOK Classic (a/k/a NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch, NOOK Simple Touch with GlowLight, NOOK HD, NOOK HD+, and NOOK GlowLight (collectively, the "NOOK Devices").

40.    ADREA has accused the following devices of infringing the '851 patent: NOOK Classic (a/k/a NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch, NOOK Simple Touch with GlowLight, NOOK HD, and NOOK HD+.

41.    B&N's first sale of the NOOK Classic (a/k/a NOOK 1st Edition) within the United States was in November 2009.

42.    B&N has sold and offered to sell the NOOK Devices within the United States from November 2009 to the present, at least during the period that each specific device was available for purchase by consumers.

43.    The NOOK Devices are manufactured outside of the United States.

---

[3] The parties acknowledge that the '703 patent may expire before March 18, 2026 in the event required maintenance fees are not timely paid. However, the parties agree this qualification need not be read to the jury.

44.     B&N has imported the NOOK Devices into the United States from November 2009 to the present, at least during the period that each specific device was available for purchase by consumers.

**H.     B&N's Sales of the NOOK Devices**

45.     From November 22, 2009 through April 2010, B&N has sold a total of 308,697 units of the NOOK Devices within the United States.

46.     From May 2010 through April 2011, B&N has sold a total of 2,704,383 units of the NOOK Devices within the United States.

47.     From May 2011 through April 2012, B&N has sold a total of 3,855,885 units of the NOOK Devices within the United States.

48.     From May 2012 through April 2013, B&N has sold a total of 2,925,785 units of the NOOK Devices within the United States.

49.     From May 2013 through April 2014, B&N has sold a total of 2,052,193 units of the NOOK Devices within the United States.

50.     From May 2014 through June 2014, B&N has sold a total of 105,521 units of the NOOK Devices within the United States.

51.     From November 22, 2009 through March 29, 2012, B&N has sold 3,294,456 units of the electronic paper display (EPD) NOOK devices (the NOOK Classic, the NOOK Simple Touch, the NOOK Simple Touch Glowlight, and the NOOK Glowlight) within the United States.

52.     From March 29, 2012 through June 30, 2014, B&N has sold 1,577,972 units of the electronic paper display (EPD) NOOK devices (the NOOK Classic, the NOOK Simple Touch, the NOOK Simple Touch Glowlight, and the NOOK Glowlight)  within the United States.

9

53.     From November 22, 2009 through March 29, 2012, B&N has sold 3,425,991 units of the liquid crystal display (LCD) NOOK devices (the NOOK Color, NOOK Tablet, NOOK HD, and NOOK HD+) within the United States.

54.     From March 29, 2012 through June 30, 2014, B&N has sold 3,654,044 units of the liquid crystal display (LCD) NOOK devices (the NOOK Color, NOOK Tablet, NOOK HD, and NOOK HD+) within the United States.

55.     From November 2009 through June 30, 2014, B&N has sold 11,952,463 units of the NOOK Devices in the United States.

56.     From March 29, 2012 through June 30, 2014, B&N has sold 5,232,016 units of the NOOK Devices in the United States.

57.     From March 29, 2012 through December 9, 2012, B&N has sold 2,280,192 units of the NOOK Devices in the United States. This figure does not include the NOOK Glowlight, which is not accused of infringing the '851 patent.

   I.     **Notice of the Patents-In-Suit**

58.     On March 29, 2012, B&N received a document from ADREA titled, "Claim Illustrations for Barnes & Noble," bearing Bates number ADREA 117167-17207.

59.     ADREA first provided actual notice to B&N of the '851 patent, the '501 patent, and the '703 patent on March 29, 2012.

60.     On September 5, 2012, Talal Shamoon, Jeff McDow, and Shawn Ambwani as representatives of ADREA had an in-person meeting with Elizabeth Brannen from B&N in Menlo Park, California.

   J.     **ADREA's Claims for Damages and Willful Infringement**

10

61.   With respect to the '851 Patent, the damages period begins on March 29, 2012 and ends on December 9, 2012.

62.   B&N's conduct prior to March 29, 2012 is not at issue for purposes of determining willful infringement and B&N is not accused of willfully infringing prior to March 29, 2012.

### K.   Hypothetical Negotiation

63.   The date of the hypothetical negotiations for purposes of calculating potential damages was in November 2009.

## IV.   PARTICULARIZED CONTENTIONS AS TO THE SPECIFIC FACTS THAT ARE DISPUTED

### A.   ADREA's Contentions as to Disputed Facts

#### 1.   Infringement

##### a.   The '851 Patent

1.   B&N has infringed claim 96 of the '851 patent by selling and offering for sale in the United States, and importing into the United States, the NOOK Devices.[4]

###### i.   Claim 96

2.   The NOOK Devices comprise a receiver that selects a title from a transmitted list of titles.

3.   The NOOK Devices receive transmitted text associated with the selected title as encrypted electronic books and encryption information.

4.   The NOOK Devices have a memory coupled to the receiver that stores the encrypted electronic books and the encryption information.

---

[4] The Nook Glowlight device was released after the expiration of the '851 patent and therefore is not accused of infringing the '851 patent.

5.    The NOOK Devices have a processor that comprises a key generator that generates encryption and decryption keys.

6.    The NOOK Devices have a transmitter coupled to the processor that sends encryption information to the sending party, wherein the encryption information includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys.

**b.    The '501 Patent**

7.    B&N has infringed and continues to infringe claims 7, 8, and 9 by performing each step of the patented methods. B&N has also infringed and continues to infringe claims 18 and 19 of the '501 patent by selling and offering for sale the NOOK devices in the United States, and importing the NOOK Devices into the United States.

**i.    Claim 7**

8.    B&N stores an electronic book on the NOOK Devices.

9.    B&N associates with the electronic book a predetermined amount of time that begins when the electronic book is stored on the viewer.

**ii.    Claim 18**

10..    The NOOK Devices include a processor that operates under the control of instructions and is capable of associating with an electronic book a predetermined amount of time that begins when the electronic book is stored on the NOOK Device.

**iii.    Doctrine of Equivalents**

11.    The NOOK Devices also infringe under the doctrine of equivalents because, with respect to the "associating" step, the NOOK Devices perform substantially the same function, in substantially the same way, to achieve substantially the same result as the invention in claims 7,

12

8, 9, 18, and 19 of the '501 patent. In addition, the asserted equivalents represent an insubstantial difference from the "associating" element of claims 7, 8, 9, 18, and 19.

### c.   The '703 Patent

12.     B&N has infringed and continues to infringe claims 1, 2, and 3 of the '703 patent by selling and offering for sale the NOOK devices in the United States, and importing the NOOK Devices into the United States. B&N has also infringed and continues to infringe claims 13 and 15 by performing each step of the patented methods.

### i.   Claim 1

13.     The NOOK Devices include an input component responsive to a user-input for initiating retrieval of data by the NOOK Devices from a server based on a predetermined URL or an identifier associated with the NOOK Device.

14.     The NOOK Devices do not require a user to access a web browser or other device in order for the NOOK Devices to initiate retrieval of the data.

### ii.   Claim 13

15.     B&N enables the user by a single user input to the NOOK Devices to have the NOOK Devices initiate sending a request with an identifier representative of a type of the NOOK Device to a server on the Internet through the home network.

16.     Based on the identifier, B&N's servers initiate access to a web page with content information about a context of using the NOOK Devices.

### 2.   Willful Infringement

### a.   The '851 Patent

17.     B&N has willfully infringed claim 96 of the '851 patent.

18.     Since March 29, 2012, B&N has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent—namely, claim 96 of the '851 patent.

19.     Since March 29, 2012, the objectively high risk of infringing claim 96 was known or should have been known by B&N.

20.     Since March 29, 2012, B&N has made no effort to design around or avoid infringement of claim 96 of the '851 patent.

### b.     The '501 Patent

21.     B&N has willfully infringed claims 7, 8, 9, 18, and 19 of the '501 patent.

22.     Since March 29, 2012, B&N has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent—namely, claims 7, 8, 9, 18, and 19 of the '501 patent.

23.     Since March 29, 2012, the objectively high risk of infringing claims 7, 8, 9, 18, and 19 of the '501 patent was known or should have been known by B&N.

24.     Since March 29, 2012, B&N has made no effort to design around or avoid infringement of claims 7, 8, 9, 18, or 19 of the '501 patent.

### c.     The '703 Patent

25.     B&N has willfully infringed claims 1, 2, 3, 13, and 15 of the '703 patent.

26.     Since March 29, 2012, B&N has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent—namely, claims 1, 2, 3, 13, and 15 of the '703 patent.

27.     Since March 29, 2012, the objectively high risk of infringing claims 1, 2, 3, 13, and 15 of the '703 patent was known or should have been known by B&N.

14

28.     Since March 29, 2012, B&N has made no effort to design around or avoid infringement of claims 1, 2, 3, 13, and 15 of the '703 patent.

### 3.     Validity

#### a.     The '851 Patent

29.     The Gifford Patent does not anticipate or render obvious claim 96 of the '851 patent.

30.     The Haas Patent does not anticipate or render obvious claim 96 of the '851 patent.

31.     The Sachs' Softbook does not anticipate or render obvious claim 96 of the '851 patent.

32.     S-HTTP does not anticipate or render obvious claim 96 of the '851 patent.

33.     The Gifford Patent in combination with S-HTTP does not render obvious claim 96 of the '851 patent.

34.     The Siefert Patent in combination with S-HTTP does not render obvious claim 96 of the '851 patent.

35.     Sachs' Softbook in combination with S-HTTP does not render obvious claim 96 of the '851 patent.

36.     Sachs' Softbook in combination with Choudhury and/or S-HTTP does not render obvious claim 96 of the '851 patent.

37.     Claim 96 of the '851 patent is not invalid due to a lack of written description.

#### b.     The '501 Patent

38.     The Saigh Patent and the Saigh Publication do not anticipate claims 7, 8, 9, 18 and/or 19 of the '501 patent.

15

39.     The MacPhail Patent does not anticipate or render obvious claims 7, 8, 9, 18 and/or 19 of the '501 patent.

### c.     The '703 Patent

40.     The Bolas Patent does not anticipate or render obvious claims 1, 2, 3, 13, and/or 15 of the '703 patent.

41.     The Nachinson Patent does not anticipate or render obvious claims 1, 2, 3, 13, and/or 15 of the '703 patent.

42.     The Morgan Patent does not anticipate or render obvious claims 1, 2, 3, 13, and/or 15 of the '703 patent.

43.     The Crisp Patent does not anticipate or render obvious claims 1, 2, 3, 13, and/or 15 of the '703 patent.

44.     The Kraftsow Publication does not anticipate or render obvious claims 1, 2, 3, 13, and/or 15 of the '703 patent.

45.     The Nachinson Patent in combination with the Kraftsow Publication does not anticipate or render obvious claim 13 of the '703 patent.

46.     The Munyan Patent in combination with the Morgan Patent does not render obvious claims 1, 2, or 13 of the '703 patent.

47.     The Crisp Patent in combination with the Morgan Patent does not render obvious claim 1 of the '703 patent.

48.     Claims 13 and 15 of the '703 patent are not invalid due to a lack of written description or a lack of enablement.

### 4.     Damages

49.     ADREA is owed no less than a reasonable royalty, plus interest and costs.

16

50.     B&N owes ADREA a reasonable royalty of $0.50 for each NOOK Device sold, with volume-based reduction to $0.25 per-unit after 20 million units sold.

51.     Damages for infringement of the '501 and '703 patents should be calculated as of the date infringement began on December 1, 2009.

B.      **B&N's Contentions as to Disputed Facts**

1.      **Non-infringement**

a.      **The '851 Patent**

1.      B&N does not infringe the asserted claim of the '851 patent because the Accused NOOK Devices do not meet every limitation of the asserted apparatus claim of the '851 patent (either literally or under the doctrine of equivalents).

2.      The Accused NOOK Devices do not infringe asserted claim 96 of the '851 patent literally or under the doctrine of equivalents:

a.      The Accused NOOK Devices do not meet the "a receiver, wherein the receiver: receives a created, transmitted list of titles of available electronic books, wherein an electronic book is available if text associated with the electronic book is available for transmission; selects a title from the transmitted list of titles; communicates the selected title" as required in claim 96.

b.      Neither ACS4 nor SSL/TLS by themselves satisfy the encryption and decryption requirements of claim 96.

c.      The Accused NOOK Devices do not meet the "receives transmitted text associated with the selected title as encrypted electronic books and encryption information" limitation of claim 96.

17

    d.    The Accused NOOK Devices do not meet the "a memory coupled to the receiver that stores the encrypted electronic books and the encryption information" limitation of claim 96.

    e.    The Accused NOOK Devices do not meet the "a key generator that generates encryption and decryption keys" limitation of claim 96.

    f.    The Accused NOOK Devices do not meet the "a transmitter coupled to the processor that sends encryption information to the sending party, wherein the encryption information includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys" limitation of claim 96.

### b.    The '501 Patent

3.    B&N does not infringe the asserted claims of the '501 patent because the Accused NOOK Devices do not meet every limitation of the asserted apparatus claims of the '501 patent (either literally or under the doctrine of equivalents), and because B&N does not perform every step of the asserted method claims of the '501 patent (either literally or under the doctrine of equivalents).

4.    B&N does not infringe asserted claim 7 of the '501 patent (and all asserted dependent claims) literally or under the doctrine of equivalents:

    a.    B&N does not perform the step of "storing an electronic book on a viewer" as required by claim 7 of the '501 patent.

    b.    B&N does not perform the step of "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" as required by claim 7 of the '501 patent.

i.      B&N also does not perform this limitation under the doctrine of equivalents because this limitation is subject to prosecution history estoppel and is not entitled to any range of equivalents. Even if entitled to a range of equivalents, B&N does not perform this limitation because it does not perform substantially the same function, in substantially the same way, to achieve substantially the same result, and there is a substantial difference between what B&N performs and this limitation.

c.      B&N does not perform the step of "allowing access to and display of the electronic book for the predetermined amount of time" as required by claim 7 of the '501 patent.

5.      B&N does not infringe asserted claim 8 of the '501 patent literally or under the doctrine of equivalents:

a.      B&N does not perform the step of "deleting the electronic book from the viewer" as required by claim 8 of the '501 patent.

6.      B&N does not infringe asserted claim 9 of the '501 patent literally or under the doctrine of equivalents:

a.      B&N does not perform the step of "automatically erasing the electronic book from the viewer" as required by claim 9 of the '501 patent.

7.      The Accused NOOK Devices do not infringe asserted claim 18 of the '501 patent (and the asserted dependent claim) literally or under the doctrine of equivalents:

a.      The Accused NOOK Devices do not include "a processor that operates under control of the instructions and is capable of … associating a predetermined amount

of time after the electronic book is stored on the viewer with the electronic book" as required by claim 18 of the '501 patent.

b.    ADREA and its expert on infringement issues have failed to identify within the Accused NOOK Devices any "instructions" under whose control a "processor" operates which "is capable of … associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book," as required by claim 18 of the '501 patent.

c.    The Accused NOOK Devices do not "associat[e] a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" as required by claim 18 of the '501 patent.

i.    The Accused NOOK Devices also do not meet this limitation under the doctrine of equivalents because this limitation is subject to prosecution history estoppel and is not entitled to any range of equivalents. Even if entitled to a range of equivalents, the Accused NOOK Devices do not meet this limitation because they do not perform substantially the same function, in substantially the same way, to achieve substantially the same result, and any differences between the Accused NOOK Devices and the limitation are substantial.

d.    The Accused NOOK Devices do not include "a processor that operates under control of the instructions and is capable of … allowing access to and display of the electronic book for the predetermined amount of time" as required by claim 18 of the '501 patent.

20

e.     The Accused NOOK Devices do not "allow[] access to and display of the electronic book for the predetermined amount of time" as required by claim 18 of the '501 patent.

### c.     The '703 Patent

8.     B&N does not infringe the asserted claims of the '703 patent because the Accused NOOK Devices do not meet every limitation of the asserted apparatus claims of the '703 patent (either literally or under the doctrine of equivalents), and because B&N does not perform every step of the asserted method claims of the '703 patent (either literally or under the doctrine of equivalents).

9.     The Accused NOOK Devices do not infringe asserted claim 1 of the '703 patent (and all asserted dependent claims) literally or under the doctrine of equivalents:

a.     The Accused NOOK Devices do not "initiat[e] retrieval of data … from a server based on … an identifier" as required by claim 1 of the '703 patent.

b.     The Accused NOOK Devices do not include a "predetermined URL … associated with the consumer appliance" as required by claim 1 of the '703 patent.

c.     The Accused NOOK Devices do not meet the limitation "the consumer appliance does not require a user to access a web browser or other device in order for the consumer appliance to initiate retrieval of the data," as required by claim 1 of the '703 patent.

10.    The Accused NOOK Devices do not infringe asserted claim 2 of the '703 patent literally or under the doctrine of equivalents:

a.     As made, used, sold, offered for sale or imported into the United States by B&N, the Accused NOOK Devices are not "configured for use on a home network and

21

having an Internet-access functionality through the home network," as required by claim 2 of the '703 patent.

11.     B&N does not infringe asserted claim 13 of the '703 patent (and the asserted dependent claim) literally or under the doctrine of equivalents:

      a.     More than a "single user input" is required for a "user … to have the [Accused NOOK Devices] initiate sending a request … to a server on the Internet through the home network" as required by claim 13 of the '703 patent.

      b.     B&N does not perform the step of "enabling the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request … to a server on the Internet through the home network" as required by claim 13 of the '703 patent.

      c.     B&N does not perform the step of "enabling the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request … to a server on the Internet through the home network" as required by claim 13 of the '703 patent in the United States.

      d.     B&N does not perform the step of, "based on the identifier, the server initiating access to a web page" as required by claim 13 of the '703 patent.

12.     B&N does not infringe asserted claim 15 of the '703 patent literally or under the doctrine of equivalents:

      a.     B&N does not perform the step of "creating a data base of URLs or identifiers per user" as required by claim 15 of the '703 patent.

    **2.     Willful Infringement**

        **a.     The '851 Patent**

13.     B&N has not willfully infringed any valid and enforceable asserted claim of the '851 patent.

      a.     B&N has not infringed asserted claim 96 of the '851 patent.

      b.     B&N's actions have not created any risk of infringement because, among other reasons, asserted claim 96 of the '851 patent is invalid.

      c.     B&N has not acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Accordingly, there was also no risk that any objectively high likelihood of infringement was known or so obvious that it should have been known to B&N.

      d.     B&N has advanced objectively reasonable defenses to infringement in this case, including objectively reasonable non-infringement and in validity defenses.

      e.     B&N's non-infringement positions are susceptible to a reasonable conclusion that asserted claim 96 of the '851 patent is not infringed.

      f.     B&N's invalidity positions are susceptible to a reasonable conclusion that asserted claim 96 of the '851 patent is invalid.

      **b.     The '501 Patent**

14.     B&N has not willfully infringed any valid and enforceable asserted claim of the '501 patent.

      a.     B&N has not infringed any asserted claim of the '501 patent.

      b.     B&N's actions have not created any risk of infringement because, among other reasons, the asserted claims of the '501 patent are invalid.

      c.     B&N has not acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Accordingly, there was also no risk that any

objectively high likelihood of infringement was known or so obvious that it should have been known to B&N.

      d.      B&N has advanced objectively reasonable defenses to infringement in this case, including objectively reasonable non-infringement and in validity defenses.

      e.      B&N's non-infringement positions are susceptible to a reasonable conclusion that the asserted claims of the '501 patent are not infringed.

      f.      B&N's invalidity positions are susceptible to a reasonable conclusion that the asserted claims of the '501 patent are invalid.

      **c.**      **The '703 Patent**

15.      B&N has not willfully infringed any valid and enforceable asserted claim of the '703 patent.

      a.      B&N has not infringed any asserted claim of the '501 patent.

      b.      B&N's actions have not created any risk of infringement because, among other reasons, the asserted claims of the '501 patent are invalid.

      c.      B&N has not acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. Accordingly, there was also no risk that any objectively high likelihood of infringement was known or so obvious that it should have been known to B&N.

      d.      B&N has advanced objectively reasonable defenses to infringement in this case, including objectively reasonable non-infringement and in validity defenses.

      e.      B&N's non-infringement positions are susceptible to a reasonable conclusion that the asserted claims of the '501 patent are not infringed.

24

f.      B&N's invalidity positions are susceptible to a reasonable conclusion that the asserted claims of the '501 patent are invalid.

### 3.      Invalidity

#### a.      The '851 Patent

16.    A person of ordinary skill in the art to which the'851 patent pertains would have been an engineer or similar professional having at least a bachelor's degree or graduate level work in computer science or a related discipline, and at least two years of software development and/or system design experience in distributed systems or networking and a familiarity with computer security techniques.

17.    Asserted claim 96 of the '851 patent is invalid in view of prior art as:

a.      Anticipated by U.S. Patent No. 4,845,658 to David K. Gifford (the "Gifford patent").

b.      Obvious in view of the Community Information System created by David K. Gifford (the Gifford CIS) – described in the Gifford patent and "An Architecture for Large Scale Information Systems" authored by David K. Gifford, Robert W. Baldwin, Stephen T. Berlin, and John M. Lucassen (the "Gifford ACM paper") – and the knowledge of a person of ordinary skill in the art.

c.      Anticipated by U.S. Patent No. 5,719,938 to Zygmunt Haas *et ano.* (the "Haas patent").

d.      Obvious in view of the Haas patent and the knowledge of a person of ordinary skill in the art.

    e.       Anticipated by the Softbook System developed by James Sachs in the 1990s (the Sachs' Softbook) – described in U.S. Patent Nos. 6,331,865 and 5,956,034, both to James Sachs.

    f.       Obvious in view of Sachs's Softbook.

    g.       Anticipated by S-HTTP, an internet protocol described in an Internet-Draft (i.e., a working document of the Internet Engineering Task Force) dated February 1996 and attributed to E. Rescorla and A. Schiffman.

    h.       Obvious in view of S-HTTP and the knowledge of a person of ordinary skill in the art.

    i.       Obvious in view of the combination of the Gifford patent with S-HTTP and the knowledge of a person of ordinary skill in the art.

    j.       Obvious in view of the combination of U.S. Patent No. 5,564,043 to David M. Siefert (the "Siefert patent") with S-HTTP.

    k.       Obvious in view of the combination of Sachs's Softbook with S-HTTP.

    l.       Obvious in view of the combination of Sachs's Softbook with U.S. Patent No. 5,509,074 to Abhijit K. Choudhury and/or S-HTTP.

18.     Asserted claim 96 of the '851 patent is invalid due to the lack of sufficient written description in the patent for:

    a.       "encryption information . . . that allows encryption and decryption . . . ."

    b.       SSL with video signal carrier.

    c.       encryption of an encrypted book.

19.     Asserted claim 96 of the '851 patent is invalid due to indefiniteness:

      a.      To the extent the term "encryption information" is read to mean information from different encryption schemes.

      b.      To the extent it is read to cover undisclosed, inoperable embodiments, including a combination of SSL with content distribution using a video signal carrier.

20.      Asserted claim 96 of the '851 patent is invalid because it is directed to non-patent eligible subject matter.

21.      There are no objective evidence of non-obviousness (i.e., secondary considerations) that show the asserted claim of the '851 patent is not obviousness.

22.      To the extent there are any objective evidence of non-obviousness (i.e., secondary considerations), that evidence does not overcome a conclusion that the asserted claim of the '851 patent is obvious.

**b.      The '501 Patent**

23.      A person of ordinary skill in the art to which the '501 patent pertains would have been an engineer or similar professional having at least a bachelor's degree or graduate level work in computer science or a related discipline, and at least two years of software development and/or system design experience in distributed systems or networking and a familiarity with computer security techniques.

24.      Each of asserted claims 7, 8, 9, 13 and 15 of the '501 patent is invalid in view of prior art.

      a.      The asserted claims of the '501 patent are anticipated by PCT Publication No. WO 93/09490 ("the Saigh publication").

      b.      The asserted claims of the '501 patent are anticipated by U.S. Patent No. 5,734,891 ("the Saigh patent").

27

c.    The asserted claims of the '501 patent are obvious in view of the Saigh publication and the knowledge of a person of ordinary skill in the art.

d.    The asserted claims of the '501 patent are obvious in view of the Saigh patent and the knowledge of a person of ordinary skill in the art.

e.    The asserted claims of the '501 patent are obvious in view of U.S. Patent No. 4,899,299 ("the MacPhail patent") and the knowledge of a person of ordinary skill in the art.

25.    There  are no objective evidence of non-obviousness (i.e., secondary considerations) that show the asserted claims of the '501 patent are not obviousness.

26.    To the extent there are any objective evidence of non-obviousness (i.e., secondary considerations), that evidence does not overcome a conclusion that the asserted claims of the '501 patent are obvious.

27.    The asserted claims of the '501 patent are invalid because they are directed to non-patent eligible subject matter.

### c.    The '703 Patent

28.    A person of ordinary skill in the art to which the '703 patent pertains would have been an engineer or similar professional having at least a bachelor's degree or graduate level work in computer science or a related discipline, and at least two years of software development and/or system design experience in distributed systems or networking and a familiarity with computer security techniques.

29.    Each of asserted claims 1, 2, 3, 13 and 15 of the '703 patent is invalid in view of prior art.

28

      a.      Asserted claims 1 and 3 of the '703 patent are anticipated by U.S. Patent No. 5,761,485 ("the Munyan patent").

      b.      The asserted claims of the '703 patent are obvious in view of the Munyan patent and the knowledge of a person of ordinary skill in the art.

      c.      The asserted claims of the '703 patent are obvious in view of the combination of the Munyan patent with U.S. Patent No. 7,143,141 ("the Morgan patent").

      d.      Asserted claims 1, 2, 3 and 13 of the '703 patent are anticipated by U.S. Patent No. 6,389,463 ("the Bolas patent").

      e.      The asserted claims of the '703 patent are obvious in view of the Bolas patent and the knowledge of a person of ordinary skill in the art.

      f.      Asserted claims 1, 2 and 3 of the '703 patent are anticipated by U.S. Patent No. 6,037,928 ("the Nachinson patent").

      g.      The asserted claims of the '703 patent are obvious in view of the Nachinson patent and the knowledge of a person of ordinary skill in the art.

      h.      The asserted claims of the '703 patent are obvious in view of the combination of the Nachinson patent with PCT Publication No. WO 98/03923 ("the Kraftsow publication").

      i.      Asserted claims 1, 2, 3 and 13 of the '703 patent are anticipated by the Morgan patent.

      j.      The asserted claims of the '703 patent are obvious in view of the Morgan patent and the knowledge of a person of ordinary skill in the art.

      k.      Asserted claims 1, 2 and 3 of the '703 patent are anticipated by U.S. Patent No. 6,751,525 ("the Crisp patent").

l.  The asserted claims of the '703 patent are obvious in view of the Crisp patent and the knowledge of a person of ordinary skill in the art.

m.  The asserted claims of the '703 patent are obvious in view of the combination of the Crisp patent with the Morgan patent.

n.  Asserted claims 1, 2, 3 and 13 of the '703 patent are anticipated by the Kraftsow publication.

o.  The asserted claims of the '703 patent are obvious in view of the Kraftsow patent and the knowledge of a person of ordinary skill in the art.

30.  Asserted claims 13 and 15 of the '703 Patent are invalid due to the lack of sufficient written description in the patent.

31.  Asserted claims 13 and 15 of the '703 Patent are invalid due to the lack of enabling disclosure in the patent.

32.  There are no objective evidence of non-obviousness (i.e., secondary considerations) that show the asserted claims of the '703 patent are not obviousness.

33.  To the extent there are any objective evidence of non-obviousness (i.e., secondary considerations), that evidence does not overcome a conclusion that the asserted claims of the '703 patent are obvious.

### 4.   **Damages**

34.  ADREA can only recover damages for the '501 patent and '703 patent beginning with actual notice to Barnes & Noble on March 29, 2012 because its licensees failed to mark their licensed e-readers with the '501 patent or the '703 patent.

35.  Acceptable non-infringing design alternatives were available to the asserted claims of the '703 patent at the time of the hypothetical negotiation.

36.     Acceptable non-infringing design alternatives were available to the asserted claim

of the '851 patent at the time of the hypothetical negotiation.

## V.     PARTICULARIZED STATEMENT OF THE INJUNCTIVE RELIEF, DECLARATORY RELIEF, AND/ OR DAMAGES CLAIMED (INCLUDING AMOUNTS) FOR EACH CLAIM, COUNTERCLAIM, CROSS-CLAIM, OR THIRD-PARTY CLAIM

### A.     ADREA's Statement

1.     ADREA has incurred damages as a result of B&N's infringement of the '851

patent, the '501 patent, and the '703 patent.  ADREA seeks a reasonable royalty, plus interest

and costs.  As set forth in the Expert Report of Professor Stephen P. Magee, dated December 11,

2013, and the Supplemental Expert Report of Stephen P. Magee, dated August 13, 2014, a

reasonable royalty in this case is $0.50 per unit sold of the NOOK Devices, with a volume-based

reduction of the royalty rate to $0.25 per unit after 20 million units sold.   Applying this per-unit

rate to historical and projected future unit sales and discounting that amount, for risk and time

value of money, to the date of the hypothetical negotiation in November 2009 to determine a

lump sum royalty payment would result in total royalties of $7,687,598.   Applying the same per-

unit rate to B&N's infringing sales through June 2014 would result in royalties totaling

$5,976,232, which does not include pre-judgment interest and costs.

2.     ADREA also seeks treble damages under 35 U.S.C. § 284 for B&N's willful

infringement.

3.     ADREA also seeks to recover attorneys' fees and costs under 35 U.S.C. § 285

because this case is exceptional.

### B.     B&N's Statement

1.     ADREA is not entitled to any damages with respect to the '703 patent.

31

      a.     If B&N is found to have infringed at least one valid asserted claim of the '703 patent, a reasonable running royalty would consist of a rate of no more than $0.02 per Accused NOOK Device found to have been infringing.

      b.     If B&N is found to have infringed at least one valid asserted claim of the '703 patent, a reasonable lump sum payment royalty would consist of no more than $227,000.

      c.     If B&N is found to have infringed at least one valid asserted claim of the '703 patent, the period for calculating damages starts no earlier than March 29, 2012.

2.     ADREA is not entitled to any damages with respect to the '501 patent.

      a.     If B&N is found to have infringed at least one valid asserted claim of the '501 patent, a reasonable running royalty would consist of a rate of no more than $0.04 per Accused NOOK Device found to have been infringing.

      b.     If B&N is found to have infringed at least one valid asserted claim of the '501 patent, a reasonable lump sum payment royalty would consist of no more than $566,000.

      c.     If B&N is found to have infringed at least one valid asserted claim of the '501 patent, the period for calculating damages starts no earlier than March 29, 2012.

3.     ADREA is not entitled to any damages with respect to the '851 patent.

      a.     If B&N is found to have infringed at least one valid asserted claim of the '851 patent, a reasonable running royalty would consist of a rate of no more than $0.04 per Accused NOOK Device found to have been infringing during the period between March 29, 2012 and December 9, 2012.

b.      If B&N is found to have infringed at least one valid asserted claim of the '851 patent, a reasonable lump sum payment royalty for the period between March 29, 2012 and December 9, 2012 would consist of no more than $566,000.

4.      Should any asserted claim of the '703 patent, '501 patent and/or the '851 patent be found valid and infringed, B&N denies that ADREA is entitled to recover any increased damages as that term is used in 35 U.S.C. § 284.

5.      B&N denies that ADREA's claims render this an exceptional case as that term is used in 35 U.S.C. § 285.

6.      B&N denies that ADREA is entitled to recover any costs and disbursements it has incurred in this action, including any attorneys' fees.

7.      ADREA is not entitled to any injunctive relief or an ongoing royalty.

8.      B&N seeks a finding that ADREA's conduct in commencing and pursuing this action renders this case exceptional under 35 U.S.C. § 285 and further seek an award of its attorneys' fees and costs.

9.      B&N further seeks an award of any such other and further relief as the Court may deem just and proper.

## VI.   WITNESS LIST

### A.   ADREA's Witnesses

1.      Talal Shamoon

2.      William Rainey

3.      John Hendricks

4.      Yevgeniy Eugene Shteyn

5.      Deepak Mulchandani

33

6.    Sudeep Narain

7.    Brian Berg

8.    James Hilt

9.    Richard Nagle

10.    Stephen Magee

11.    Xin Wang

**B.    B&N's Witnesses**

1.    James Hilt

2.    Deepak Mulchandani

3.    Sudeep Narain (may call - deposition designation)

4.    Vrinda Mushran (may call if Mulchandani unavailable)

5.    Bharath Kalyan

6.    John Hendricks

7.    Michael Asmussen (deposition designation)

8.    John McCoskey (deposition designation)

9.    Eugene Shteyn

10.    Clifford Neuman

11.    Richard Nagle (may call)

12.    Talal Shamoon

13.    Jeffrey McDow (live or by deposition designation if necessary)

14.    Shawn Ambwani (live or by deposition designation if necessary)

15.    William Rainey (live or by deposition designation if necessary)

16.    Records Custodian - Discovery Communications

17.    James Rosenstock (live or by deposition designation if necessary)

18.    Records Custodian - Philips

19.    Records Custodian - Amazon

20.    Ned Barnes

21.    Persons identified on Plaintiff's trial witness list

## VII.    EXHIBIT LISTS

### A.    Joint Exhibit List

The parties' joint exhibit list is attached as Exhibit A.

### B.    ADREA's List of Exhibits

ADREA's exhibit list and with B&N's objections is attached as Exhibit B.

### C.    B&N's List of Exhibits

B&N's exhibit list and with ADREA's objections is attached as Exhibit C.

## VIII.    ESTIMATED LENGTH OF TRIAL

The parties estimate that the trial of this matter will take approximately 8 days, with each

side using no more than 4 days.

Dated: September 30, 2014

Respectfully submitted,

/s/ Colin Cabral

Steven M. Bauer
Kimberly A. Mottley (*pro hac vice*)
Brendan Cox
Patrick J. Niedermeier (*pro hac vice*)
Micah Miller (*pro hac vice*)
Erin Staab (*pro hac vice*)

/s/ Ali R. Sharifahmadian

Louis S. Ederer
Susan Shin
Yue-Han Chow
Maxwell Preston
Arnold & Porter LLP
399 Park Avenue

35

PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
(617) 526-9600 (telephone)
(617) 526-9800 (facsimile)
sbauer@proskauer.com
kmottley@proskauer.com
bcox@proskauer.com
pniedermeier@proskauer.com
mmiller@proskauer.com
estaab@proskauer.com

Colin Cabral
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067
(310) 284-5611 (telephone)
(310) 557-2193 (facsimile)
ccabral@proskauer.com

Kenneth Rubenstein
Baldassare Vinti
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
(212) 969-3000 (telephone)
(212) 969-2900 (facsimile)
krubenstein@proskauer.com
bvinti@proskauer.com

*Attorneys for Plaintiff ADREA, LLC*

New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian (pro hac vice)
Sarah Brackney Arni (pro hac vice)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael Berta (pro hac vice)
Willow Noonan (pro hac vice)
Arnold & Porter LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and NOOK Media LLC*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2014, I caused a copy of the forgoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC by electronic mail.

Louis S. Ederer
Susan Lee Shin
Yue-Han Chow
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael A. Berta, Jr. (*pro hac vice*)
Willow W. Noonan (*pro hac vice*)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415)-471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and NOOK Media LLC*

37