COURT EXHIBIT

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ADREA, LLC,                                  :
                                             :
                    Plaintiff,               :
                                             :
            v.                               :            13-cv-4137 (JSR)
                                             :
BARNES & NOBLE, INC.,                        :
BARNESANDNOBLE.COM LLC, and                  :
NOOK MEDIA LLC,                              :
                                             :
                    Defendants.              :
-------------------------------------------------------------x

10/22/14

## THE COURT'S INSTRUCTIONS OF LAW TO THE JURY

# TABLE OF CONTENTS

## I. GENERAL INSTRUCTIONS

1. Duty of the Court

2. Duty of the Jury

3. Duty of Impartiality

4. Burden of Proof

5. Direct and Circumstantial Evidence

6. Witness Credibility

7. Specialized Testimony

## II. LIABILITY

8. Patent Infringement

9. Patent Invalidity

10. Novelty

11. Obviousness

## III. DAMAGES

12. Compensatory Damages

13. Willful Infringement

## IV. CONCLUDING INSTRUCTIONS

14. Selection of Foreperson; Right to See Exhibits and Hear Testimony; Communications with the Court

15. Verdict; Need for Unanimity; Duty to Consult

## I. GENERAL INSTRUCTIONS

### INSTRUCTION NO. 1

#### Duty of the Court

We are now approaching the most important part of this case, your deliberations. You have heard all of the evidence in the case, as well as the final arguments of the lawyers for the parties. Before you retire to deliberate, it is my duty to instruct you as to the law that will govern your deliberations. These are the final and binding instructions, which entirely replace the preliminary instructions I gave you earlier. As I told you at the start of this case, and as you agreed, it is your duty to accept my instructions of law and apply them to the facts as you determine them.

Regardless of any opinion that you may have as to what the law may be or ought to be, it is your sworn duty to follow the law as I give it to you. Also, if any attorney or other person has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

Because my instructions cover many points, I have provided each of you with a copy of them not only so that you can follow them as I read them to you now but also so that you can have them with you for reference throughout your deliberations. In listening to them now and reviewing them later, you should not single out any particular instruction as alone stating the law, but you should instead consider my instructions as a whole.

1

INSTRUCTION NO. 2

Duty of the Jury

Your duty is to decide the fact issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you determine them.

In determining the facts, you must rely upon your own recollection of the evidence. To aid your recollection, we will send you all the exhibits at the start of your deliberations, and if you need to review particular items of testimony, we can also arrange to provide them to you in transcript or read-back form.

Please remember that none of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence.

Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the deposition excerpts that were placed in evidence. Please remember that questions, although they may provide the context for answers, are not themselves evidence; only answers are evidence, and you should therefore disregard any question to which I sustained an objection. Also, you may not consider any answer that I directed you to disregard or that I directed be stricken from the record. Likewise, you may not consider anything you heard about the contents of any exhibit that was not received in evidence.

2

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible. Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury. All such questions of law must be decided by me. You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

Finally, I also ask you to draw no inference from my rulings or from the fact that upon occasion I asked questions of certain witnesses. My rulings were no more than applications of the law, and my questions were only intended for clarification or to expedite matters. You are expressly to understand that I have no opinion as to the verdict you should render in this case.

3

## INSTRUCTION NO. 3

### Duty of Impartiality

You are to perform your duty of finding the facts without bias or prejudice or sympathy as to any party, for all parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartiality. You are not to be swayed by rhetoric or emotional appeals.

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. So do not be guided by anything except clear thinking and calm analysis of the evidence.

INSTRUCTION NO. 4

Burden of Proof

As you know, this is a civil case. In order to prevail in a civil case, a party who is making a claim against another party has what we call the "burden of proof," which is the burden of establishing each of the essential elements of the claim. There will be two burden-of-proof standards by which you must weigh the evidence in this case: "preponderance of the evidence" and "clear and convincing evidence."

The plaintiff here is ADREA LLC. The defendants here are three related companies — Barnes & Noble, Inc., barnesandnoble.com LLC, and Nook Media LLC. However, for all of your purposes, these parties can be treated as one entity and are therefore referred to here simply as "B&N" or "defendants."

ADREA claims that the defendants infringed one or more of ADREA's patents. To prevail on this claim, ADREA must prove such infringement by a preponderance of the credible evidence. The "credible evidence" means such testimony, exhibits, or other evidence that you find worthy of belief. To establish a claim by a "preponderance" of the credible evidence means to prove that that claim is more likely true than not true. It does not mean the greater number of witnesses, or how much time either side employs in the trial. The phrase refers to the quality of the evidence, its persuasiveness in convincing you of its truth.

If you find that ADREA has proved that the defendants infringed one or more of ADREA's patents, then you must also consider whether, nonetheless, the defendants are not liable because they have proved, by clear and convincing evidence, that the relevant patent is invalid. Clear and convincing evidence is a more exacting standard than proof by a

5

preponderance of the evidence.  Clear and convincing evidence is proof that establishes in your mind that the proposition at issue is highly probable.

Finally, if you find that the defendants have infringed one or more of ADREA's patents and that that patent is not invalid, you must decide whether the infringement by defendants was "willful," which, as I will explain later, means intentional or reckless. If ADREA shows, again by clear and convincing evidence, that B&N's infringement was willful, then ADREA may be entitled to increased damages from defendants, but the amount will be determined by me and should not concern you in any respect.

INSTRUCTION NO. 5

Direct and Circumstantial Evidence

In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.

Direct evidence is evidence that proves a fact directly. For example, where a witness testifies to what he or she saw, heard, or observed, that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, someone walked in with a dripping wet umbrella and, soon after, somebody else walked in with a dripping wet raincoat. Now, on our assumed facts, you cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of the facts about the umbrella and the raincoat, it would be reasonable for you to infer that it had begun raining.

That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other fact. Please note, however, it is not a matter of speculation or guess; it is a matter of logical inference.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence, and you may consider either or both, and may give them such weight as you conclude is warranted.

INSTRUCTION NO. 6

Witness Credibility

It must be clear to you by now that counsel for the opposing parties are asking you to draw very different conclusions about various factual issues in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. How did the witness appear to you? Was the witness candid, frank and forthright; or, did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct examination compare with how the witness testified on cross-examination? Was the witness consistent, or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some interest, incentive, loyalty, or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice, or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to?

8

You should also consider whether the witness had an opportunity to observe the facts he or she testified about, and whether the witness's recollection of the facts stands up in light of the other evidence in the case.

In other words, what you must try to do in deciding credibility is to size up a person just as you would in any important matter where you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.

INSTRUCTION NO. 7

Specialized Testimony

The law permits parties to offer opinion testimony from witnesses who were not involved in the underlying events of the case but who by education or experience profess to expertise in a specialized area of knowledge. In this case, Ned Barnes, Brian Berg, Clifford Neuman, and Xin Wang were offered as such witnesses. (Stephen Magee also testified, but the opinions he offered were subsequently stricken and may not be considered by you in any respect, although the exhibits that were received during his testimony, and any non-opinion facts he testified to, may be considered.) Specialized testimony is presented to you on the theory that someone who is learned in the field may be able to assist you in understanding specialized aspects of the evidence.

However, your role in judging credibility and assessing weight applies just as much to these witnesses as to other witnesses. When you consider the specialized opinions that were received in evidence in this case, you may give them as much or as little weight as you think they deserve. For example, a specialized witness necessarily bases his or her opinions, in part or in whole, on what that witness learned from others, and you may conclude that the weight given the witness's opinions may be affected by how accurate or inaccurate that underlying information is. More generally, if you find that the opinions of a specialized witness were not based on sufficient data, education, or experience, or if you should conclude that the trustworthiness or credibility of such a witness is questionable, or if the opinion of the witness is outweighed, in your judgment, by other evidence in the case, then you may, if you wish, disregard the opinions of that witness, either entirely or in part. On the other hand, if you find that a specialized witness is credible, and that the witness's opinions are based on sufficient data, education, and

10

experience, and that the other evidence does not give you reason to doubt the witness's conclusions, you may, if you wish, rely on that witness's opinions and give them whatever weight you deem appropriate.

## II.  LIABILITY

## INSTRUCTION NO. 8

### Patent Infringement

With these preliminary instructions in mind, we now turn to the specific charges in this case.  Plaintiff asserts that defendants have infringed certain Claims of three of plaintiff's patents: U.S. Patent No. 7,298,851 (referred to as "the '851 patent"), which is Joint Exhibit 1 in evidence; U.S. Patent No. 7,299,501 (referred to as "the '501 patent"), which is Joint Exhibit 2 in evidence; and U.S. Patent No. 7,620,703 (referred to as "the '703 patent"), which is Joint Exhibit 3 in evidence.  Plaintiff asserts that such infringement extended to eight devices sold by defendants: the NOOK Classic (also referred to as the NOOK 1st Edition), NOOK Color, NOOK Tablet, NOOK Simple Touch, NOOK Simple Touch with GlowLight, NOOK HD, NOOK HD+, and NOOK GlowLight.  Together, these devices will be referred to as "the NOOK Devices."

In order to encourage useful inventions, the laws of the United States give an inventor a temporary monopoly over his or her invention.  This is called a patent, and once it is issued, anyone who, during the period of the patent's protection, makes, uses, or sells the patented invention without the permission of the owner of the patent is said to have "infringed" the patent.  Here, ADREA claims that the NOOK Devices, which are made, used, and sold by defendants, infringe Claim 96 of the '851 patent, Claims 7, 8, 9, 18, and 19 of the '501 patent, and Claims 1, 2, 3, 13, and 15 of the '703 patent.

These Claims will be referred to collectively as "the asserted Claims."  To make your job easier, I am attaching as an appendix to the written copies of this set of instructions a copy of each of these asserted Claims.  As you will see, the asserted Claims contain both ordinary English words and specialized terms.  One of my jobs is to determine, before trial, the meaning

12

of the specialized terms. In particular, the Court has already determined the meanings of the following terms:

For the '851 patent, the term "electronic book" means an electronic version of textual or graphical information. The term "title" means the actual title assigned by an author to a book, or any other designation (including a graphical symbol or icon) indicating a particular group, portion, or category of textual information.

For the '501 patent, the term "associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book" means associating with the electronic book a predetermined amount of time that begins when the electronic book is stored on the viewer.

For the '703 patent, the term "consumer appliance" means a device that may send or receive information. The term "identifier" means a sequence of bits or characters that identifies a program, device, or system to another program, device, or system. The term "home network" means a collection of interconnected apparatus in and around the home.

As you look at the Claims themselves, these definitions will become clearer. Also, please bear in mind that you must be consistent in the meaning you give to the terms of any given Claim for purposes of your analysis of both infringement issues and validity issues.

To prove that defendants have infringed a given Claim, ADREA must prove, by a preponderance of the evidence, that the NOOK Devices made use of each of the elements of that Claim. For a Claim that covers a so-called "method," ADREA must prove that defendants performed all of the steps of the method.

There are two types of infringement relevant to this case: (1) literal infringement and (2) infringement under the doctrine of equivalents.

13

In order to determine whether a NOOK Device literally infringed any of the Claims, you must compare the NOOK Device to the elements of the Claim you are considering. This means not just looking at the preferred embodiment of that Claim but at the language of the Claim itself, since every embodiment of a Claim is protected. If the NOOK Device duplicates every element of a Claim, then it literally infringes that Claim. This statement is true even if the NOOK Device includes other elements. If, however, the NOOK Device fails to duplicate every element of a Claim, then it does not infringe that Claim.

Even if the NOOK Devices do not literally infringe a particular element of a Claim you are considering, there can still be infringement if the NOOK Device meets that element under the "doctrine of equivalents." This can happen if the product contains an element that you determine is equivalent to the element of the patent claim, in the sense that any differences are insubstantial. ADREA asserts a doctrine of equivalents argument only with respect to the "associating" element of Claims 7, 8, 9, 18, and 19 of the '501 patent. One way to decide whether the "associating" element of any of those Claims and the allegedly corresponding part of the NOOK Devices are equivalent is to consider whether the corresponding part of the NOOK Devices performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement of the Claim.

If you find that plaintiff has failed to prove that the NOOK Devices infringed any of the asserted Claims, you must find the defendants not liable and your work is over. But if you find that plaintiff has proved that the defendants infringed one or more of the asserted Claims, then you must turn to the issue of invalidity.

14

INSTRUCTION NO. 9

Patent Invalidity

Even if the NOOK Devices infringed one or more of the asserted Claims, the defendants would still not be liable if those Claims were invalid. The fact that the patents were approved by the U.S. Patent Office makes the asserted Claims "presumptively" valid, but defendants may still prove that those Claims are invalid if they can establish such invalidity by clear and convincing evidence, that is, by proving that it is highly probable that the Claims in question are invalid.

To be valid, a claimed invention must satisfy certain conditions of patentability, of which the two here relevant are (1) novelty and (2) non-obviousness.  Specifically, defendants contend that all of the asserted Claims are invalid because they lack novelty and/or are obvious.  If defendants establish one of more of these contentions of invalidity as to a given Claim, that Claim is invalid.

## INSTRUCTION NO. 10

### Novelty

Let's first consider the issue of lack of novelty.  To qualify for a patent, an invention must be new or novel.  Defendants argue that all the asserted Claims are invalid for lack of novelty because they were anticipated by prior art.  "Prior art" is the term for any previously-filed patents, publicly known publications, or products offered for sale that described the claimed invention and were filed or published more than one year before the effective filing date of the patent applications here at issue.  In this case, the parties are agreed that the effective filing date of the patent applications here at issue was September 21, 1999 for the '851 patent, November 7, 1994 for the '501 patent, and August 10, 2000 for the '703 patent.

The prior patent, product, or publication need not use the same words as any of the asserted Claims.  However, to find that an asserted Claim was not novel, you must find that each and every element of that Claim was either inherent or expressly disclosed in a single prior invention or in a single prior art reference. You may not combine two or more items of prior art to make out an anticipation.

INSTRUCTION NO. 11

Obviousness

Let's next discuss the issue of obviousness. Even if an invention is novel in the sense that no one has previously made it, a patent claim is invalid if the invention was "obvious," that is, would have been obvious to a person skilled in the relevant field at the time the invention was made. Defendants contend that all the asserted Claims were obvious in this sense.

In order to determine whether a Claim was obvious, you need to ask yourself, as of September 21, 1999 for the '851 patent, November 7, 1994 for the '501 patent, and August 10, 2000 for the '703 patent:

1. What was the "prior art" respecting that Claim, that is, what patents, printed publications, and/or products were publicly available prior to the effective filing date that bore on the subject matter of the Claim?

2. What were the differences between the Claim you are considering and the prior art?

3. Given the foregoing, would someone reasonably familiar with the prior art and reasonably skilled in the relevant field have considered the invention embodied in the claim you are considering obvious in view of that prior art?

In addition, you must also consider, in evaluating obviousness, objective considerations (to the extent that they have been the subject of credible evidence) that may indicate that the invention was not obvious, such as commercial success, long-felt need, failure of others to make the invention, copying of the invention by others, unexpected results achieved by the invention, and praise of the invention by others in the field.

17

## III. DAMAGES

## INSTRUCTION NO. 12

### Compensatory Damages

If you find that defendants have infringed one or more valid Claims, you must then determine how much money defendants should pay plaintiff in order to reasonably compensate plaintiff for its losses attributable to such infringement. These are called "compensatory damages," and plaintiff bears the burden of proving the amount of such damages by a preponderance of the credible evidence.

Specifically, compensatory damages are the amount of money that defendants hypothetically would have paid ADREA as a fee, or "royalty," for using ADREA's patented invention in the NOOK Devices. The first step in calculating the fee is to determine what rate (as a percentage or fixed amount per unit of NOOK Devices sold) the parties would have reasonably agreed to in a hypothetical negotiation taking place in November, 2009. In determining the reasonable royalty, you should consider such factors as:

1. whether the patent holder had an established royalty for the particular invention;

2. the rates paid by defendants for the use of other patents comparable to ADREA's patent;

3. the nature, scope, and term of the license;

4. ADREA's established policy, if any, to maintain its patent monopoly by not licensing others;

5. the commercial relationship between plaintiff and defendants, if any;

6. the effect of selling the patented device on the sales of other products of the defendants;

18

7. the duration of the patent;

8. the established profitability of the product made under the patent; its commercial success; and its current popularity;

9. the utility and advantages of the patented features over prior methods and devices;

10. the nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;

11. the extent to which defendants used the invention, and any evidence probative of the value of that use;

12. the portion of the realized profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

You have previously heard these (and a few other) factors referred to as "Georgia-Pacific" factors, but the list I have just given you replaces the earlier list you received. No one factor is dispositive. However, you may also consider any other factor that in your mind would have increased or decreased the royalty the parties would have agreed to, acting as normally prudent businesses.

Once you have considered these factors, you then multiply that royalty rate by the corresponding figure in evidence for the number of NOOK Device units sold during the "relevant periods." The result is the reasonable royalty, or the amount of compensatory damages ADREA is entitled to.

The relevant periods for purposes of those calculations varies according to the patent you are considering. For the '851 patent, damages may only be awarded for the period of March 29,

2012 through December 9, 2012. For the '501 and '703 patents, however, damages should run from March 29, 2012 through the date of your verdict.

INSTRUCTION NO. 13

Willful Infringement

If you find the defendants liable for infringement, there is one last thing you need to determine bearing on damages, which is whether the infringement by the defendants was "willful." The determination of whether defendants' infringement was willful will not affect the specific amount of compensatory damages that you will assess, which are not intended to punish defendants but simply to compensate plaintiff; but it will aid the Court in determining whether any additional damages must be assessed.

To prove willful infringement, plaintiff must prove, by clear and convincing evidence, that defendants either actually knew they were infringing plaintiff's patents or, once they were put on notice of plaintiff's patents, recklessly disregarded the fact that their actions constituted an unjustifiably high risk of infringement of that patent. To determine whether defendants' infringement was willful, you should consider all relevant facts (to the extent they are supported by credible evidence), including, for example, (i) whether or not defendants intentionally copied a product of plaintiff; (ii) whether or not defendants acted in accordance with the standards of commerce for its industry; (iii) whether or not defendants made a good faith effort to avoid infringing the asserted Claims; (iv) whether or not there was a reasonable basis to believe that defendants did not infringe or had a reasonable defense to infringement; and (v) whether or not defendants tried to cover up any infringement.

## III. CONCLUDING INSTRUCTIONS

### INSTRUCTION NO. 14

#### Selection of Foreperson; Right to See Exhibits and Hear Testimony;

#### Communications with the Court

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of law, and a verdict form on which to record your verdict. In addition, we will send into the jury room all of the exhibits that were admitted into evidence. If you want any of the testimony, that can also be provided, either in transcript or read-back form. But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony.

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations. After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

INSTRUCTION NO. 15

Verdict; Need for Unanimity; Duty to Consult

You should not, however, tell me or anyone else how the jury stands on any issue until you have reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case; and your verdict must be unanimous. In deliberating, bear in mind that while each juror is entitled to his or her opinion, each should exchange views with his or her fellow jurors. That is the very purpose of jury deliberation — to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion which, after discussion with your fellow jurors, now appears to you erroneous.

In short, your verdict must reflect your individual views and it must also be unanimous. This completes my instructions of law.

23

# APPENDIX

| Claim | '851 Patent |
|-------|-------------|
| 96 | An electronic book viewer for receiving an electronic book from a sending party, and for storing and displaying the electronic book, comprising: a receiver, wherein the receiver: receives a created, transmitted list of titles of available electronic books, wherein an electronic book is available if text associated with the electronic book is available for transmission; selects a title from the transmitted list of titles; communicates the selected title; and receives transmitted text associated with the selected title as encrypted electronic books and encryption information; a memory coupled to the receiver that stores the encrypted electronic books and the encryption information; a processor coupled to the memory that processes the encryption information using an encryption/decryption algorithm, wherein the processor comprises: a key generator that generates encryption and decryption keys; and a transmitter coupled to the processor that sends encryption information to the sending party, wherein the encryption information includes information that allows encryption and decryption of the electronic book and encryption and decryption of encryption and decryption keys. |

| Claim | '501 Patent |
|-------|-------------|
| 7 | A method for restricting access to electronic books displayed on a viewer, the method comprising: |
| | storing an electronic book on a viewer; |
| | associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book; |
| | allowing access to and display of the electronic book for the predetermined amount of time; and |
| | restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed. |

| Claim | '501 Patent |
|-------|-------------|
| 8 | The method of claim 7, further including deleting the electronic book from the viewer based upon the time parameter. |

| Claim | '501 Patent |
|-------|-------------|
| 9 | The method of claim 8 wherein the deleting step includes automatically erasing the electronic book from the viewer upon expiration of a particular time period. |

| Claim | '501 Patent |
|-------|-------------|
| 18 | A portable viewer for displaying electronic books, comprising:<br>a memory for storing instructions;<br>a memory for storing electronic books;<br>a display for displaying the electronic books; and<br>a processor that operates under control of the instructions and is capable of:<br>storing an electronic book on the viewer;<br>associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book;<br>allowing access to and display of the electronic book for the predetermined amount of time; and<br>restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed. |

| Claim | '501 Patent |
|-------|-------------|
| 19 | The portable viewer of claim 18, wherein the processor is further capable of deleting the electronic book from the viewer based upon the time parameter. |

| Claim | '703 Patent |
|-------|-------------|
| 1 | A consumer appliance, comprising: <br><br> an input component responsive to a user-input for initiating retrieval of data by the consumer appliance from a server based on a predetermined URL or an identifier associated with the consumer appliance, the data representing content information about the context of usage of the consumer appliance, wherein the consumer appliance does not require a user to access a web browser or other device in order for the consumer appliance to initiate retrieval of the data. |

| Claim | '703 Patent |
|-------|-------------|
| 2 | The consumer appliance of claim 1, wherein the consumer appliance configured for use on a home network and having an Internet-access functionality through the home network, the predetermined URL or the identifier being stored on the home network. |

| Claim | '703 Patent |
|-------|-------------|
| 13 | A method of enabling a service provider to provide a service via the Internet to a user of a consumer appliance having a predetermined identifier, the identifier being stored on a home network that includes the consumer appliance, the method comprising: <br><br> enabling the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request with the identifier representative of a type of the consumer appliance to a server on the Internet through the home network; and <br><br> based on the identifier, the server initiating access to a web page with content information about a context of using the consumer appliance. |

| Claim | '703 Patent |
|-------|-------------|
| 15 | The method of claim 13, further comprising creating a data base of URLs or identifiers per user. |