# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| ADREA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | ) ECF Case |
| | ) |
| BARNES & NOBLE, INC., | ) 13-CV-4137 (JSR) |
| BARNESANDNOBLE.COM LLC, and | ) |
| NOOK MEDIA LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

_____

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT THAT THE ASSERTED CLAIMS OF THE '501 PATENT ARE INVALID BECAUSE THEY ARE DIRECTED TO NON-PATENTABLE SUBJECT MATTER PURSUANT TO 35 U.S.C. § 101**

**TABLE OF CONTENTS**

Page(s)

I.  INTRODUCTION ................................................................................................................. 1

II. LEGAL STANDARD ........................................................................................................... 1

III. THE ASSERTED CLAIMS OF THE '501 PATENT ARE
     DIRECTED TO NON-PATENTABLE SUBJECT MATTER ............................................ 4

     A.  The '501 Patent Claims an Abstract Idea ................................................................ 4

     B.  The Asserted Claims of the '501 Patent Do Not Add
         "Significantly More" And Are Not a Patent-Eligible
         Application of an Abstract Idea ................................................................................ 8

     C.  Unclaimed Features Are Irrelevant to the Subject Matter
         Eligibility Analysis ................................................................................................ 13

IV. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013) ....................................................................................12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014) ..........................................................................................passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
 __ F.Supp.3d __, 2014 WL 5430956 (E.D. Va. Oct. 24, 2014) ..............................4, 10, 13, 14

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
 687 F.3d 1266 (Fed. Cir. 2012) ..........................................................................5, 7, 8

*Bilski v. Kappos*,
 561 U. S. 593 (2010) .......................................................................................2, 9

*buySAFE, Inc. v. Google, Inc.*,
 765 F.3d 1350 (Fed. Cir. 2014) ..................................................................................3

*CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*,
 __ F.Supp.2d. __, 2014 WL 4922349 (C.D. Cal. Aug. 29, 2014)................................4

*Cogent Medicine, Inc. v. Elsevier Inc.*,
 __ F.Supp.3d. __, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) ...................passim

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*,
 __ F.Supp.2d __, 2014 WL 3542055 (D. Del. July 16, 2014)....................................4

*Dealertrack, Inc. v. Huber*,
 674 F.3d 1315 (Fed. Cir. 2012) ................................................................................13

*Diamond v. Diehr*,
 450 U.S. 175 (1981) .................................................................................................14

*DietGoal Innovations LLC v. Bravo Media LLC*,
 2014 WL 3582914 (S.D.N.Y. July 8, 2014) (Engelmayer, J.) ..........................3, 9, 12

*Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*,
 758 F.3d 1344 (Fed. Cir. 2014) ..................................................................................4

*Eclipse IP LLC v. McKinley Equipment Corp.*,
 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) .............................................................4

*Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*,
 2014 WL 4540319 (M.D. Fla. Sept. 11, 2014)......................................................4, 14

*Genetic Technologies Ltd. v. Lab. Corp. of America Holdings*,
2014 WL 4379587 (D. Del. Sept. 3, 2014) ...................................................................4

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ...................................................................................................1, 12

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009) ..................................................................................14

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
__ F.Supp.2d __, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) .............................. 4, 9, 10, 12

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
132 S. Ct. 1289 (2012) .............................................................................................9, 11

*McRO, Inc. v. Atlus U.S.A.*,
2014 WL 4772196 (C.D. Cal. Sept. 22, 2014) ............................................................4

*Open Text S.A. v. Alfresco Software Ltd.*,
2014 WL 4684429 (N.D. Cal. Sept. 19, 2014) ........................................... 3, 4, 7, 8, 9

*Peter Wolf v. Capstone Photography, Inc.*,
No. 2:13-cv-09573, slip op. (C.D. Cal. Oct. 28, 2014) ................................. 3, 7, 8, 14

*Planet Bingo, LLC v. VKGS LLC*,
576 Fed. App'x 1005 (Fed. Cir. 2014) .....................................................................3, 11

*Rubber-Tip Pencil Co. v. Howard*,
87 U.S. (20 Wall.) 498 (1874) ..................................................................................1, 3

*Salesforce.com, Inc. v. VirtualAgility, Inc.*,
Case CBM2013–00024, slip op. (P.T.A.B. Sept. 16, 2014) .......................................4

*Seachange Int'l, Inc. v. C-COR, Inc.*,
413 F.3d 1361 (Fed. Cir. 2005) ..................................................................................14

*Tuxis Tech., LLC v. Amazon.com, Inc.*,
No. 13-1771-RGA, slip op. (D. Del. Sept. 3, 2014) ...................................................4

*U.S. Bancorp v. Retirement Capital Access Mgmt. Co.*,
2014 WL 4229953 (P.T.A.B. Aug. 22, 2014) .............................................................4

*UbiComm, LLC v. Zappos IP, Inc.*,
No. CV 13-1029-RGA, 2013 WL 6019203 (D. Del. Nov. 13, 2013).....................10, 11

*Walker Digital, LLC v. Google, Inc.*,
__ F.Supp.2d. __, 2014 WL 4365245 (D. Del. Sept. 3, 2014) ...................................4

**STATUTES**

35 U.S.C. § 101 ................................................................................................................................passim

# I.     INTRODUCTION

Defendants Barnes & Noble, Inc., barnesandnoble.com, llc, and NOOK Media LLC (collectively, "B&N") have an unresolved legal defense that remains for the Court to decide. The question is relatively simple: are the asserted claims of U.S. Patent No. 7,299,501 (the "'501 patent") nothing more than computerized implementations of the centuries-old idea of providing access to books for a limited period of time?  The answer is "yes."

No rule is more fundamental to our system of patent laws than "[t]he longstanding rule that '[a]n idea of itself is not patentable'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. (20 Wall.) 498, 507 (1874)).  That has been the law for over a century and — as a unanimous Supreme Court ruled this year — it has no less force in the digital age.  Abstract ideas are not rendered patentable merely by implementing them on generic computers.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358 (2014).

Accordingly, B&N respectfully requests that the Court enter judgment that the asserted claims of the '501 patent are invalid as a matter of law under § 101 because they are directed to non-patentable subject matter.

# II.     LEGAL STANDARD

Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101.  The Supreme Court has long made clear, however, that this section includes an "implicit exception" for "[l]aws of nature, natural phenomena, and abstract ideas," which are "the basic tools of scientific and technological work." *Alice Corp.*, 134 S. Ct. at 2354. Permitting patents to claim these "'buildin[g] block[s]' of human ingenuity" might "thwart[] the primary object of the patent laws" by "tend[ing] to impede innovation more than it would tend to

promote it." *Id.*. Because such patents "'would risk disproportionately tying up the use of the underlying' ideas, … [they] are therefore ineligible for patent protection." *Id.* at 2354-55.

In the landmark 2014 *Alice Corp.* decision, the Supreme Court clarified the test for identifying which patent claims are directed to ineligible subject matter pursuant to this exception in the context of computerized inventions — an issue upon which the Federal Circuit, sitting en banc, had failed to provide a majority opinion. The test has two parts. In the first step, a court "must determine whether the claims at issue are directed to one of those patent-ineligible concepts," *i.e.*, a natural law or phenomenon, or an abstract idea. *Id.* at 2355. If so, then the court must proceed to the second step, where it "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citation omitted).

In the first step, courts have concluded that claims are directed to an abstract idea when they implement a basic concept, or a fundamental or familiar practice, such as a long-familiar commercial transaction. For example, in *Alice Corp.*, the Supreme Court found that the claims at issue were drawn to an abstract idea because the concept that they implemented — intermediated settlement — was "a fundamental economic practice long prevalent in our system of commerce." *Id.* at 2356 (noting that the same applied in *Bilski v. Kappos*, 561 U. S. 593 (2010)).

In the second step, the court must look for "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to *significantly more* than a patent upon the [ineligible concept] itself.'" *Id.* at 2355 (emphasis added). Where, however, a claim's limitations "add nothing of substance to the underlying abstract idea," that claim is not patentable subject matter under Section 101. *See id.* at 2361. It is not sufficient to simply apply an abstract idea in a particular technological environment, such as on a generic computer or

using generic computer components. *Id.* at 2358-60. Just as "[a]n idea of itself is not patentable," *Rubber-Tip Pencil Co.*, 87 U.S. (20 Wall.) at 507, *Alice Corp.* made clear that a "wholly generic computer implementation" of an idea is ineligible for patent protection. *Alice Corp.,* 134 S. Ct. at 2358. Thus, it is not enough for a patent to recite an abstract principle and to instruct the public to "apply it with a computer." *Id.* Ultimately, since the claims at issue in *Alice Corp.* simply recited a computerized manner of implementing a fundamental economic practice, they were not patentable. *Id.* at 2356-60.

After *Alice Corp.*, the Federal Circuit and district courts have reached similar conclusions based on the same reasoning applied by the Supreme Court, finding claims to be directed to patent ineligible abstract ideas when they recited, for example:

- computer-aided methods and systems for managing the game of bingo, *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1007 (Fed. Cir. 2014) (affirming grant of summary judgment based upon "straightforward application of the Supreme Court's recent holding in *Alice*");

- an online "'transaction performance guaranty'—that is beyond question of ancient lineage…." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming grant of judgment on pleadings that patent claims were directed to abstract idea, and therefore invalid as unpatentable);

- a computerized manner of "maintaining and searching a library of information" that "is little different than the basic concept of organizing a physical library so that an individual can search for information," *Cogent Medicine, Inc. v. Elsevier Inc.*, __ F.Supp.3d. __, 2014 WL 4966326, at *4 (N.D. Cal. Sept. 30, 2014);

- a computerized meal-planning process, where meal-planning is a "long prevalent," "venerable," and "well known" practice, *DietGoal Innovations LLC v. Bravo Media LLC*, 2014 WL 3582914, at *10 (S.D.N.Y. July 8, 2014) (Engelmayer, J.);

- a computer-automated version of the selection and ordering of event photographs, which is traditionally performed manually by event photographers, *Peter Wolf v. Capstone Photography, Inc.*, No. 2:13-cv-09573, slip op. at 17-20 (C.D. Cal. Oct. 28, 2014) (attached as Exhibit ("Ex.") 1 to the Declaration of Maxwell C. Preston, dated Nov. 7, 2014); and

- a computerized version of a "commonplace," "time-honored," "basic," and "widely-understood" method of interacting with customers to promote marketing and sales,

*Open Text S.A. v. Alfresco Software Ltd.*, 2014 WL 4684429, at *4 (N.D. Cal. Sept. 19, 2014).

In the several months since the Supreme Court decided *Alice Corp.*, numerous other courts have also invalidated patent claims as directed to non-patentable subject matter under Section 101.[1]  The asserted claims of the '501 patent are similarly invalid for being directed to non-patentable subject matter.

## III.  THE ASSERTED CLAIMS OF THE '501 PATENT ARE DIRECTED TO NON-PATENTABLE SUBJECT MATTER

### A.  The '501 Patent Claims an Abstract Idea

The asserted claims of the '501 patent are directed to the abstract idea of providing access to books (e.g., lending books) for a limited period of time.  This idea is nothing new.  Physical libraries have long permitted patrons to obtain books for a period of time for reading, after which the patron was required to return the borrowed book.  By 1994 — the priority date of the asserted

---

[1] *See, e.g.*, *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350-51 (Fed. Cir. 2014) (device profile and a method for creating a device profile within a digital image processing system); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, __ F.Supp.3d __, 2014 WL 5430956, at **5-11 (E.D. Va. Oct. 24, 2014) (creation of query-able databases, and correlation of information to enhance other information); *Every Penny Counts, Inc. v. Wells Fargo Bank, N.A.*, 2014 WL 4540319, at **4-6 (M.D. Fla. Sept. 11, 2014) (method and system of automated saving or charitable giving by segregating small quantities for accumulation); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, __ F.Supp.2d __, 2014 WL 4364848, at **7-14 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by designation) (currency/loyalty award credit exchange); *U.S. Bancorp v. Retirement Capital Access Mgmt. Co.*, 2014 WL 4229953, at **6-12 (P.T.A.B. Aug. 22, 2014) (advancing funds based on future retirement payments); *see also McRO, Inc. v. Atlus U.S.A.*, 2014 WL 4772196, at **7-13 (C.D. Cal. Sept. 22, 2014) (abstract animation practice); *Salesforce.com, Inc. v. VirtualAgility, Inc.*, Case CBM2013–00024, slip op. at 17-26 (P.T.A.B. Sept. 16, 2014) (attached at Ex. 2) (creation and use of models to aid in processing management information); *Eclipse IP LLC v. McKinley Equipment Corp.*, 2014 WL 4407592, at **6-12 (C.D. Cal. Sept. 4, 2014) (asking people to do things or go places); *Walker Digital, LLC v. Google, Inc.*, __ F.Supp.2d. __, 2014 WL 4365245, at **4-10 (D. Del. Sept. 3, 2014) (exchanging information between anonymous parties); *Genetic Technologies Ltd. v. Lab. Corp. of America Holdings*, 2014 WL 4379587, at **10-14 (D. Del. Sept. 3, 2014) (correlations in genetic variations); *Tuxis Tech., LLC v. Amazon.com, Inc.*, No. 13-1771-RGA, slip op. at 5-10 (D. Del. Sept. 3, 2014) (attached as Ex. 3) (upselling); *CMG Fin. Servs., Inc. v. Pac. Trust Bank, F.S.B.*, __ F.Supp.2d. __, 2014 WL 4922349, at **17-19 (C.D. Cal. Aug. 29, 2014) (paying down a mortgage when funds are available and borrowing as needed to reduce overall interest); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, __ F.Supp.2d __, 2014 WL 3542055, at **2-6 (D. Del. July 16, 2014) (conditional decision-making).

claims — libraries had been lending books for centuries. The first lending library in Scotland, for example, was founded around the year 1680. *See* The Library of Innerpeffray, http://www.innerpeffraylibrary.co.uk/about.php (last visited Nov. 7, 2014). Fifty years later, in 1731, Benjamin Franklin founded the first successful lending library in the United States. *See* The Library Company of Philadelphia, http://www.librarycompany.org/%5C/about/ (last visited Nov. 7, 2014). In short, this basic concept has long been understood and practiced across the world, and is fundamental to sharing and distributing knowledge.

The asserted claims of the '501 patent take this fundamental concept and apply it in the context of electronic books on a generic computer (i.e., a "viewer").[2] Claims 7, 8, 9, 18, and 19 of the '501 patent are at issue here. Independent claim 7 is directed to a method by which an electronic book may be stored and accessed on a "viewer" for a predetermined amount of time, after which access to the book is restricted. Claim 8 depends from claim 7, and adds that the book is also deleted after access is restricted. Claim 9 depends from claim 8, and adds that the deleting step includes erasing the book. Independent claim 18 is directed to a portable viewer device comprised of generic computer memories, display and processor for implementing the method of claim 7. Claim 19 depends from claim 18, and is directed to the same portable viewer, but for implementing the method of claim 8.

---

[2] B&N does not concede infringement; rather the asserted claims implement the abstract idea of lending books in the technological environment of a computerized *device-based* lending system where the time begins to run when the book is stored on the device, as opposed to a server-based system such as in the case of B&N's LendMe feature where the time begins to run when the server processes the loan acceptance, and as such B&N does not infringe the asserted claims as properly applied. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1280 (Fed. Cir. 2012) (asserting non-infringement "does not detract from [B&N's] affirmative defense of invalidity under § 101"). While B&N disagrees with the jury's determination that the accused LendMe feature infringes when loans are initiated and accepted using NOOK devices to communicate with B&N's servers, and reserves all rights to move for JMOL and/or appeal this ruling should that be necessary, the jury's finding of infringement despite the differences between B&N's technology and the device-based patent claims only strengthens the argument that the claims are directed to an abstract idea and risk preempting the entire field of using computers to lend books.

As demonstrated by the chart below, claim 18 is directed to nothing more than a portable viewer comprised of generic computer components that implement the method of claim 7.

| Claim 7 | Claim 18 |
|---|---|
| A method for restricting access to electronic books displayed on a viewer, the method comprising: | A portable viewer for displaying electronic books, comprising: |
| – | a memory for storing instructions; |
| – | a memory for storing electronic books; |
| – | a display for displaying the electronic books; and |
| – | a processor that operates under control of the instructions and is capable of: |
| storing an electronic book on a viewer; | storing an electronic book on the viewer; |
| associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book; | associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book; |
| allowing access to and display of the electronic book for the predetermined amount of time; and | allowing access to and display of the electronic book for the predetermined amount of time; and |
| restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed. | restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed. |

The steps recited by the above claims of the '501 patent mirror those required when borrowing a physical book from a library (or another person for that matter): obtaining a book, keeping that book for a limited period of time, being able to read the book during that time period, and then losing access to the book at the end of the lending period. Deleting and erasing the book — as the dependent claims add — falls within the ambit of the abstract idea, as a person who returns a physical book does not keep a copy. The only difference between the asserted

claims and borrowing a physical book is that, here, the book and the steps to implement this idea

have been computerized. In other words, the viewer in the asserted claims "simply performs

more efficiently what could otherwise be accomplished manually." *Bancorp Servs.*, 687 F.3d at

1279; *see Peter Wolf*, slip op. at 18 ("The patents in suit merely implement basic computer

technology to perform the same process, with computer systems automating much of the work

previously done manually.") (Ex. 1); *Cogent Medicine*, 2014 WL 4966326, at *4 ("using a

computer … merely automates what was previously done manually"); *Open Text*, 2014 WL

4684429, at *4 (the claims "recite a very simple computer-driven method to engage in [a]

commonplace and time-honored practice").

Not surprisingly, at least one court has already found invalid claims that computerized a

basic and longstanding practice of physical libraries. *See Cogent Medicine, Inc. v. Elsevier, Inc.*,

2014 WL 4966326, at *4 (N.D. Cal. Aug. 29, 2014). In *Cogent Medicine*, the Northern District

of California found the asserted claims to be drawn to "the abstract idea of maintaining and

searching a library of information." *Id.* The court explained:

> Given a database of information, the alleged invention catalogues
> the information and sets aside particular information that may be
> especially relevant based on the particular user. This idea is little
> different than the basic concept of organizing a physical library so
> that an individual can search for information by going to the
> relevant portion of the library and picking a book. Should
> someone want preselected books, she can ask a librarian.

*Id.*

As in *Cogent Medicine*, the asserted claims of the '501 patent are "little different than the

basic concept" of lending in a physical library. *Id.* They merely recite a computerized version of

that fundamental practice, and are therefore squarely directed at an abstract idea. *See, e.g.*, *Peter*

*Wolf*, slip op. at 17-20 (Ex. 1); *Cogent Medicine*, 2014 WL 4966326, at **4-6; *Open Text*, 2014

WL 4684429, at **4-5.

**B.    The Asserted Claims of the '501 Patent Do Not Add "Significantly More" And Are Not a Patent-Eligible Application of an Abstract Idea**

As the asserted claims of the '501 patent are directed to an abstract idea — i.e., providing access to books (e.g., lending books) for a limited period of time — the next question is whether the claims cover "significantly more" than that idea such that there is an "inventive concept" sufficient to limit the scope of the claims to a patent-eligible application. *Alice Corp.*, 134 S. Ct. at 2355. They do not, for the same reason that the Supreme Court found the claims at issue in *Alice Corp.* to be invalid: the asserted claims, "which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention." *Id.* at 2357; *see id.* at 2360.

"To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not." *Bancorp Servs.*, 687 F.3d at 1278. But loaning a book for a predetermined amount of time is an age-old technique that can be done manually using pen and paper, as librarians historically did when they recorded the due date for a book on a slip of paper inserted into the book and loaned it to a patron. Computerizing this process is not patent eligible under *Alice Corp.* and its progeny. *See, e.g., Peter Wolf*, slip op. at 18 (finding patents invalid where they "merely implement basic computer technology to perform [a] process [for selecting photographs and making them available for ordering], with computer systems automating much of the work previously done manually" by event photographers) (Ex. 1); *Cogent Medicine*, 2014 WL 4966326, at *4 (finding claims invalid where they "us[e] a computer [to] … merely automate[] [the maintenance and searching of a library of information that] … was previously done manually by assistants or librarians"); *Open Text*, 2014 WL 4684429, at *4 (finding claims

invalid that computerized "the most basic and widely-understood principle of marketing: identify potential or current customers and engage with them to improve their customer experience").

The steps required by the asserted method claims (claims 7, 8, and 9) are the basic functions required to implement the abstract idea on a generic computer, which these claims term a "viewer." A borrower obtains a book, for example, when his viewer "stor[es] an electronic book." The time that the borrower may retain the book is set when the viewer "associat[es] a predetermined amount of time after the electronic book is stored on the viewer with the electronic book." The borrower is then able to read that book during the lending period when the viewer "allow[s] access to and display of the electronic book for the predetermined amount of time." And the borrower loses access to the book at the end of the lending period when the viewer "restrict[s] access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed."[3]

When considered individually, it is apparent that "each step [of the asserted claims] does no more than require a generic computer to perform generic computer functions." *Alice Corp.*, 134 S. Ct. at 2359. Storing, calculating, manipulating, displaying, and deleting data are among the most basic and conventional functions of a computer. *See, e.g.*, *id.* at 2359; *Loyalty Conversion*, 2014 WL 4364848, at *7; *DietGoal*, 2014 WL 3582914, at *13. Nothing in the asserted claims suggests that, for example, any special form of "storing" or "restricting access" is

---

[3] The "deleting" step recited by claims 8 and 19, or the "erasing" step recited in claim 9, does not impact the analysis in the slightest. Initially, it fits in with the computerization of traditional book lending. Before any "deleting" or "erasing" ever occurs, the user's access has already been "restricted." It is therefore entirely natural (though redundant) to also delete the book from the viewer. After all, a person who returns a physical book to the library does not retain a copy of the book, even if that copy cannot be accessed. Moreover, deleting or erasing information from a computer's memory is a trivial, conventional step that has been implemented since computers were first invented and do not render the idea any less abstract. These limitations amount to the kind of "token postsolution components" or "field of use" limitations that are insufficient to confer patent eligibility. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1300-01 (2012); *Bilski*, 561 U.S. at 610-12.

required; rather, the steps "appear to be routine functions that can readily be performed by a generic computer with conventional programming." *Loyalty Conversion*, 2014 WL 4364848, at *7; *see Alice Corp.*, 134 S. Ct. at 2359; *Amdocs (Israel) Ltd.*, 2014 WL 5430956, at *9 ("conventional computer functions operating in a conventional manner" do not render an abstract idea patentable).

Considering these steps as an ordered combination leads to the same conclusion, as they do not combine to effect an improvement in the functioning of the computer itself or in any other technology. *See Alice Corp.*, 134 S. Ct. at 2359 (finding no "inventive concept" where the purely conventional steps in a claim do not effect a technological improvement); *Loyalty Conversion*, 2014 WL 4364848, at *9 (same). Instead, the asserted method claims merely apply the abstract idea of providing access to books for a limited period of time to a generic computer that "automates what was previously done manually." *Cogent Medicine*, 2014 WL 4966326, at *4; *see Alice Corp.*, 134 S. Ct. at 2359. Thus, for example, while a person must manually return a borrowed book to the library, the claims merely automate the same process in the "restricting access" step.

The asserted system claims (claims 18 and 19) also describe generic computer components designed to implement the method described by claims 7 and 8. Specifically, the components recited are: "a memory for storing instructions," "a memory for storing electronic book," "a display for displaying books," and "a processor that operates under the control of the instructions and is capable of" performing the methods of claims 7 and 8. Indeed, the claims define these components — which would be included in every computer — only by the functions that they are to perform. These components are made no less generic by the description of the viewer as "portable" in claim 18's preamble. *UbiComm, LLC v. Zappos IP, Inc.*, No. CV 13-

1029-RGA, 2013 WL 6019203, at *5 (D. Del. Nov. 13, 2013) (a limitation that requires both a "stationary and mobile" computer "does little more than require two general-purpose computers, an act that does nothing to transform a nonpatentable abstract idea into a patentable invention.").

The Supreme Court addressed this issue, *i.e.*, the impact of "purely functional and generic" computer components, in *Alice Corp.* as well. There, the petitioner argued that the claims recited "specific hardware configured to perform specific computerized functions." *Alice Corp.*, 134 S. Ct. at 2360. But the hardware was insufficient to confer patentability:

> [W]hat petitioner characterizes as specific hardware … is purely functional and generic. Nearly every computer will include a "communications controller" and "data storage unit" capable of performing the basic calculation, storage, and transmission functions required by the method claims. As a result, none of the hardware recited by the system claims "offers a meaningful limitation beyond generally linking 'the use of the [method] to a particular technological environment,' that is, implementation via computers."

*Id.* (citations omitted).

Because these device claims add nothing but functional and generic components designed to implement the method claims, the device and method claims are substantively the same and fall together. *See id*; *Cogent Medicine*, 2014 WL 4966326, at *6; *see also, e.g.*, *Planet Bingo*, 576 Fed. App'x at 1008-09 (affirming finding of ineligibility where claims required "a computer with a central processing unit," "a memory," "an input and output terminal," "a printer," in some cases "a video screen," and "a program ... enabling" the steps of managing a game of bingo).

Similarly, if the function performed by the computer at each step is "[p]urely conventional," that is not enough. *Alice Corp.*, 134 S. Ct. at 2359 (quoting *Mayo*, 132 S. Ct. at 1299). Here as in *Alice Corp.*, the claimed functionality — storing data, performing calculations to associate a period of time with the data, and displaying and restricting access to and/or deleting data — is purely conventional, basic computing functionality of which nearly every

computer will be capable. It fails to contribute an inventive concept that limits the abstract idea of lending books to a patentable application. *See, e.g.*, *DietGoal*, 2014 WL 3582914, at \*\*13-14 (holding insufficient "conventional computer tasks," including "manipulating data based on inputs from the user, making computations from stored data, and displaying the results on a visual display," and rejecting argument that display functionality was "highly particularized," where "the claimed process could 'be carried out in existing computers long in use, no new machinery being necessary'") (citing *Gottschalk*, 409 U.S. at 67); *Loyalty Conversion*, 2014 WL 4364848, at \*\*7, 10 (finding subject matter ineligible where patent provided no detail about how functions are to be performed, "no suggestion that those functions are performed in any novel or unusual manner," and role of computer was "limited to the basic functions of a generic computer, including storing and displaying information, performing simple arithmetic calculations, and enabling a customer to make e-commerce purchases from a vendor"); *Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338, 1344–45 (Fed. Cir. 2013) (computerized aspects of method claim directed to "generating tasks to be performed in an insurance organization," including a "data component that stores, retrieves and manipulates data" and a client component that "transmits and receives data to/from the data component," insufficient to transform abstract idea into concrete application of that idea).

In all, the five asserted claims do no more than state an abstract principle, namely, providing access to books for a limited period of time, and then instruct the public to "apply it with a computer." But an abstract idea applied on a generic computer is not "significantly more" than the abstract idea itself. *See Alice Corp.*, 134 S. Ct. at 2358. All of the asserted claims are accordingly invalid as patent ineligible under Section 101, as interpreted by *Alice Corp.*

## C.    Unclaimed Features Are Irrelevant to the Subject Matter Eligibility Analysis

Subject matter eligibility under Section 101 focuses on the relationship of the claim language to an abstract idea. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). Unclaimed features disclosed in the specification are therefore irrelevant to the analysis. *Id.* ("[A] claim may 'preempt' only that which the claims encompass, not what is disclosed but left unclaimed."); *Amdocs (Israel) Ltd.*, 2014 WL 5430956, at *7. Despite this clear rule, as evidenced by Adrea's expert's supplemental report on validity issues, Adrea may attempt to argue that the claimed "viewer" or "portable viewer" is something more than a generic computer.

The Court, however, did not construe the terms "viewer" or "portable viewer" in this case, and certainly did not construe them to require any special components or features that improve the functioning of the viewer itself, or effect an improvement in any other technology or technical field. *See Alice Corp.*, 134 S. Ct. 2359. The expert testimony presented at trial confirmed that none of the asserted claims requires special hardware.[4] Moreover, while the specification of the '501 patent states that the viewer is made of five primary components — (1) LCD display 602, (2) digital circuitry (not shown), (3) video graphics controller 607', (4) controls 740, [and] (5) book memory 728 — those components are the text book definition of generic, conventional components that every computer is expected to have. '501 Pat, at 10:59-

---

[4] *See, e.g.*, Trial Tr. (attached as Ex. 5) at 1055:18-21 (B&N's expert opining that claim 7 "doesn't require any special hardware"); Trial Tr. at 589:3-594:24 (Adrea's expert testifying as to infringement of method claims 7-9 with no testimony or suggestion that any special hardware components are required). In addition, B&N's expert explained at trial, in testimony that is uncontested in the record, that no special kind of memory, display, or processor is required by claims 18 and 19. Trial Tr. at 1075:22-1076:6, 1076:16-24, 1077:5-14, 1077:22-1078:6; *see also* Trial Tr. at 606:17-615:22 (Adrea's expert opining as to infringement of claims 18 and 19 based upon hardware components' generic functionality). Having failed to provide any evidence at trial that the asserted claims require any special kind of hardware, Adrea should not now be heard to contend that the asserted claims require something more.

64 (attached as Ex. 4). Thus, to the extent that the viewer could even be considered to include these components, that would not be enough to save the claims. *Alice Corp.*, 134 S. Ct. 2360 ("[P]urely functional and generic" computer components do not "offer[] a meaningful limitation beyond generally linking the use of the [method] to a particular technological environment, that is, implementation via computers."); *see also Cogent Medicine*, 2014 WL 4966326, at *6; *Every Penny*, 2014 WL 4540319, at *5.

To the extent that the specification describes the viewer as optionally or preferably having other components or features — e.g., lightweight; security; include a battery; designed to physically resemble a bound book — those are merely unclaimed preferred embodiments that are not part of the claim. *See* '501 patent, at 10:52-65, 11:64-66; *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The claims, not specification embodiments, define the scope of patent protection. … [W]e will not limit [the claims to the] preferred embodiment or import a limitation from the specification into the claims."); *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005) ("we do not import limitations from a preferred embodiment").

Finally, the asserted claims are also no less abstract and improper just because they may have practical applications or have "solved a problem existing in the art." *Amdocs (Israel) Ltd.*, 2014 WL 5430956 at *11; *see Peter Wolf*, slip op. at 18 (citing *Diamond v. Diehr*, 450 U.S. 175, 189 (1981)) (Ex. 1); *Cogent Medicine*, 2014 WL 4966326, at *4 n.3. "A person may have invented an entirely new and useful advance, but if the patent claims sweep too broadly, or only claim the idea that was achieved rather than implementation of the idea, § 101 directs that the patent is invalid." *Amdocs (Israel) Ltd.*, 2014 WL 5430956, at *7. Indeed, the computerized intermediated settlement methods and devices claimed in *Alice Corp.* had real-world practical

applications, but that did not affect the Court's holding that they were directed to an abstract idea.

Thus, the so-called practical problems that Adrea has identified through its expert's supplemental report — e.g., security and thwarting potential illegal distribution and piracy — are not relevant to whether the claims are directed to an abstract idea. In any event, nothing in the asserted claims requires that the books be "securely" stored on the viewer; that the books be encrypted or otherwise protected by a digital rights management (DRM) scheme; or that the user not otherwise be able to copy the book while it is stored on the viewer. In other words, the claims simply do not address any of the so-called technical problems that may have concerned the publishing industry. Thus, just as a library patron could check out a book, photocopy it while in his possession, and then return the book, the asserted claims of the '501 patent are unquestionably broad enough to encompass a scenario in which the user copies the book while it is stored on the viewer. Nothing in the claims is directed to a technological solution for preventing books that are stored on the viewer from being copied or preventing those copies from being saved on another device.

## IV.    CONCLUSION

The asserted claims of the '501 patent are squarely directed at the abstract idea of lending books for a limited time period. And these claims merely implement that age-old idea on a generic computer, which is insufficient to render them patentable. Accordingly, the Court should grant B&N's motion for entry of judgment that the asserted claims of the '501 patent are invalid as a matter of law under § 101 because they are directed to non-patentable subject matter.

Dated:  November 7, 2014

**Arnold & Porter LLP**

*/s/ Ali R. Sharifahmadian*

Louis S. Ederer
Susan Shin
Yue-Han Chow
Maxwell Preston
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael Berta (*pro hac vice*)
Willow Noonan (*pro hac vice*)
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and Nook Media LLC*

**CERTIFICATE OF SERVICE**

I, hereby certify that on November 7, 2014, copies of Defendants' Memorandum in Support of Motion for Judgment that the Asserted Claims of the '501 Patent Are Invalid Because They Are Directed to Non-Patentable Subject Matter Pursuant to 35 U.S.C. § 101 were caused to be served upon the following via ECF:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
krubenstein@proskauer.com
bvinti@proskauer.com

Steven Michael Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Brendan Cox, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
sbauer@proskauer.com
kmottley@proskauer.com
mmiller@proskauer.com
pniedermeier@proskauer.com
estaab@proskauer.com

Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067
ccabral@proskauer.com

*/s/ Yue-Han Chow*_____
Yue-Han Chow