**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ADREA, LLC,<br><br>     *Plaintiff,*<br><br>v.<br><br>BARNES & NOBLE, INC.,<br>BARNESANDNOBLE.COM LLC, and<br>NOOK MEDIA LLC,<br><br>     *Defendants.* | Civil Action No. 13-cv-4137 (JSR) |

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON DAMAGES AND
THE APPLICABILITY OF 35 U.S.C. § 287**

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ........................................................................................1

II.    FACTUAL BACKGROUND ...........................................................................................2

III.   ARGUMENT ....................................................................................................................4

    A.     The Record Does Not Contain Any Evidence of Patented Articles Before
         the Date B&N Received Actual Notice of Infringement. ........................................4

        1.     The Weight of Authority Holds that the Party Seeking to Limit
             Damages Under 35 U.S.C. § 287 Bears the Initial Burden of
             Identifying a "Patented Article" that Triggers the Requirements of
             the Statute.................................................................................................5

        2.     The Only "Articles" Identified by B&N Post-Date Actual Notice
             and Did Not Exist Prior to March 29, 2012. .................................................9

    B.     Section 287 Does Not Preclude the Recovery of Damages During the
         Period in Which There Was No Duty to Mark. .....................................................11

    C.     This Court Should Apply the Royalty Rate Found by the Jury to
         Determine Supplemental Damages.......................................................................14

IV.    CONCLUSION ...............................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aero Prods. Int'l v. Intex Rec. Corp.*,
   No. 02-cv-2590, 2005 U.S. Dist. LEXIS 12899 ....................................................15

*Am. Med. Sys. v. Med. Eng'g Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993)..................................................................................13

*Broadcom Corp. v. Agere Sys.*,
   No. 04-cv2416, 2004 U.S. Dist. LEXIS 18163 (E.D. Penn. Sep. 8, 2004) .............7

*CA, Inc. v. Simple.com, Inc.*,
   2009 U.S. Dist. LEXIS 25240 (E.D.N.Y. Mar. 5, 2009) ........................................5

*Clancy Sys. Int'l v. Symbol Techs.*,
   953 F. Supp. 1170 (D. Colo. 1997).........................................................................11

*DR Sys., Inc. v. Eastman Kodak Co.*,
   No. 08-cv-0669, 2009 U.S. Dist. LEXIS 75549 (S.D. Cal. Aug. 24, 2009)...................7, 8, 10

*Finjan, Inc. v. Secure Computing Corp.*,
   626 F.3d 1197 (Fed. Cir. 2010)..............................................................................14

*Golden Bridge Tech. Inc. v. Apple, Inc.*,
   No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 67238 (N.D. Cal. May. 14, 2014)...............5, 6, 9

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
   609 F. Supp.2d 951 (N.D. Cal. 2009) ...............................................................14, 15

*In re Katz Interactive Call Processing Patent Litig.*,
   821 F. Supp. 2d 1135 (C.D. Cal. 2011) ...............................................................7, 8

*Itron, Inc. v. Benghiat*,
   No. 99-cv-501, 2003 U.S. Dist. LEXIS 15039 (D. Minn. Aug. 29, 2003) .............14

*Konstant Prods. Inc. v. Frazier Indus. Co.*,
   No. 91-cv-4491, 1992 U.S. Dist. LEXIS 14214 (N.D. Ill. Sep. 18, 1992) ........12, 13

*Laitram Corp. v. v. Hewlett-Packard Co.*,
   806 F. Supp. 1294 (E.D. La. 1992).........................................................................7

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998)...........................................................................5, 13

*Oracle Am., Inc. v. Google, Inc.*,
  No. 10-cv-3561, 2011 U.S. Dist. LEXIS 131707 (N.D. Cal. Nov. 15, 2011) ..........................6

*Refac Elecs. Corp. v. A&B Beacon Business Machines Corp.*,
  695 F. Supp. 753 (S.D.N.Y. 1988)..............................................................................4

*Sealant Sys., Int'l v. TEK Global S.R.L.*,
  No. 5:11-cv-774, 2014 U.S. Dist. LEXIS 31528 (N.D. Cal. Mar. 7, 2014) ...............6, 7, 8, 14

*Tex. Digital Sys. v. Telegenix, Inc.*,
  308 F.3d 1193 (Fed. Cir. 2002)....................................................................................4

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
  No. 00-cv-981, 2003 WL 1606081 (D. Del. Feb. 4, 2003)...............................................11, 14

*Unova Inc. v. Hewlett-Packard*,
  No. 02-cv-3772, 2006 U.S. Dist. LEXIS 97403 (C.D. Cal. Feb. 17, 2006) ...................7, 8, 10

*WiAV Sol'ns LLC v. Motorola, Inc.*,
  732 F. Supp. 2d 634 (E.D. Va. 2010) .......................................................................11, 13, 14

*Wokas v. Dresser Industries, Inc.*,
  978 F. Supp. 839 (N.D. Ind. 1997) ...........................................................................11, 12, 13

## STATUTES

28 U.S.C. § 1295(a) ...................................................................................................................5

35 U.S.C. § 284..........................................................................................................................14

35 U.S.C. § 287............................................................................................................... passim

## OTHER AUTHORITIES

2-10 Horwitz on Litigation 10.23 (2014)...................................................................................12

4 Annotated Patent Digest § 30:142 ..........................................................................................12

Pursuant to the Court's October 29, 2014 Order, Plaintiff ADREA, LLC ("ADREA") submits this supplemental briefing on Barnes & Noble, Inc.'s, Barnesandnoble.com LLC's, and Nook Media LLC's (collectively "B&N") defense under the marking statute (35 U.S.C. § 287) and the recovery of supplemental damages.

## I.  PRELIMINARY STATEMENT

After a trial on the merits, the jury returned its verdict that: (i) B&N has infringed U.S. Patent Nos. 7,299,501 ("the '501 patent") and 7,620,703 ("the '703 patent"); and (ii) the patents are not invalid.   The jury awarded ADREA $1.33 million in compensatory damages for infringing sales occurring on or after March 29, 2012—*i.e.*, the date B&N received actual notice of its infringement of the '501 and '703 patents.

This submission addresses three issues relating to how, if at all, the marking statute limits ADREA's  recovery of damages for B&N's infringement of the '501 and '703 patents before the date of actual notice:

1.      The marking statute limits the recovery of damages for patent infringement in the event of a failure to mark "patented article[s]."  Did any "patented articles" exist before the date of actual notice, such that 35 U.S.C. § 287 limits ADREA's recovery of damages?

2.      The Patent License and Settlement Agreement entered into between ADREA and Amazon on November 10, 2011 ("the Amazon Agreement") ultimately provided Amazon with non-exclusive licenses to the '501 and '703 patents.   In the event the Court finds that the Amazon Agreement triggered the marking statute, is ADREA precluded from recovering damages for B&N's infringement prior to the date of the Amazon Agreement?

3.      The law allows this Court to award supplemental damages for uncalculated pre-verdict sales not considered by the jury.  *See* Section III.C *infra*.   In the event this Court determines supplemental damages are appropriate, should this Court calculate supplemental

damages by applying the royalty rate found by the jury to the royalty base during the supplemental damages period?

*First*, the marking statute has not been triggered in this case because the record does not contain any evidence regarding the existence of a "patented article" prior to the date of actual notice.  B&N chose not to identify any products during the discovery period that allegedly practiced the inventions of the '501 or '703 patents.  B&N now relies on three products identified after the close of discovery in its motion for summary judgment.  But none of the products identified by B&N were on sale before the date B&N received actual notice of infringement.

*Second*, even if this Court finds that the marking statute has been triggered, the overwhelming weight of authority allows patent holders to recover damages for infringement during the period when requirements of the marking statute did not apply, even if the requirements of the marking statute were later triggered and the patentee failed to comply.

*Last*, if this Court agrees with ADREA on either issue relating to the application of the marking statute, the law for calculating supplemental damages is clear:  The Court should apply the royalty rate determined by the jury to the number of infringing sales made during the supplemental damages period.

## II.     FACTUAL BACKGROUND

The relevant facts are limited and not in dispute:

1.      ADREA does not make or sell any products.  Trial Transcript ("Trial Tr.") at 50:1-5; 185:24-186:3.

2.      On November 10, 2011, Amazon entered into a License and Settlement Agreement with ADREA.  JTX-032.  Under the agreement, Amazon obtained a non-exclusive license to the '501 patent and an option to license the '703 patent.  *Id.* at 5-7.  The agreement

also included a covenant not to sue with respect to the '703 patent.  *Id.* at 7.  Amazon exercised

its option to license the '703 patent in late 2013.  Trial Tr. at 96:8-18.

　　　　3.　　　　During the discovery period, B&N did not identify any products made or sold by

Amazon (or anyone else) that allegedly practiced the inventions of the '501 or '703 patents.

　　　　4.　　　　In support of its motion for summary judgment, B&N identified three unmarked

products allegedly purchased by its attorneys on January 27-28, 2014.  *See* Dkt. No. 65 at ¶¶ 91-

94.　　B&N's motion specifically names two Kindle products sold by Amazon—the Kindle

"Paperwhite" and the Kindle Fire 8GB—and one e-reader device sold by Sony—the Sony PRS

T-2 e-reader.  Dkt. No. 63 at 48 n. 33; *id.* at 49 n. 34.

　　　　5.　　　　B&N received actual notice of the '501 and '703 patents on March 29, 2012.  Dkt.

No. 140 at 10.  On that date, ADREA provided B&N with claim illustrations providing B&N

with notice of its infringement of the '501 and '703 patents.  *Id.*; *see also* JTX-022.

　　　　6.　　　　After a trial on the merits, the jury found that B&N infringed the '501 and '703

patents and that the two patents were not invalid.  Dkt. No.  145 at 1-2.  The jury awarded

ADREA $1.33 million in compensatory damages for B&N's infringement. *Id.* at 2.

　　　　7.　　　　The Court's Instructions of Law to the Jury ("Jury Instructions") provided

instructions for calculating compensatory damages.  Dkt. No. 143 at 18-20.  The Jury

Instructions stated that "[t]he first step in calculating the fee is to determine what rate (as a

percentage or fixed amount per unit of NOOK Devices sold) the parties would have reasonably

agreed to in a hypothetical negotiation taking place in November, 2009."  *Id.* at 18.  The Jury

Instructions then told the jury to "multiply that royalty rate by the corresponding figure in

evidence for the number of NOOK Device units sold during the relevant periods."  *Id.* at 19.  The

Jury Instructions defined the "relevant period[]" for calculating damages relating to the '501 and

'703 patents as "from March 29, 2012 through the date of your verdict."  *Id.* at 19-20.  The resulting royalty rate was $0.25 per unit.

8.      From March 29, 2012 through June 30, 2014, B&N sold 5,232,016 infringing Nook units in the United States.  Dkt. No. 140 at 10.

9.      From November 2009 through June 30, 2014, B&N sold 11,952,463 infringing Nook units in the United States.  *Id.*

10.     From November 2011 through the end of March 2012, B&N sold 2,421,712 infringing Nook units in the United States.  Ex. B, 10-21-14 Email from Y. Chow to the Court (stating, "B&N agrees with plaintiff that [2,421,712] is the correct number of units sold" from November 2011 through March 2012).[1]

11.     B&N has not provided data regarding sales of infringing Nook units occurring after June 30, 2014.

## III.    ARGUMENT

### A.      The Record Does Not Contain Any Evidence of Patented Articles Before the Date B&N Received Actual Notice of Infringement.

The marking statute (35 U.S.C. § 287) applies only where a patentee (or one of its licensees) sells a product that practices the patented invention.  *See Tex. Digital Sys. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002) ("The recovery of damages is not limited [under Section 287] where there is no failure to mark, *i.e.*, . . . where there are no products to mark."). In the absence of any "patented article," the notice requirements under Section 287 do not apply. *See Refac Elecs. Corp. v. A&B Beacon Business Machines Corp.*, 695 F. Supp. 753, 755 (S.D.N.Y. 1988) ("[A] patentee with an unutilized patent may do nothing before bringing a suit

---

[1] All exhibits referenced herein are attached to the Declaration of Colin Cabral submitted with this memorandum.

to collect damages for infringement, while one producing or selling [patented] goods is under an obligation to provide notice before exercising patent rights.").

In this case, like others before it, the parties dispute who bears the initial burden of establishing the existence of a "patented article" needed to trigger the marking statute.[2]  While the Federal Circuit has not provided clear guidance on this issue,[3] the overwhelming weight of authority endorses the view that B&N, as the party seeking to limit damages, had an obligation to identify what marketed products it believed practiced the inventions during the relevant time period—that is, the period beginning when the marking statute was allegedly triggered and ending when B&N received actual notice of its infringement.  Because B&N has failed to identify any "patented article" that practiced the inventions of the '501 and '703 patents before March 29, 2012, B&N cannot rely on § 287 to limit ADREA's recovery of damages in this case.

      1.     The Weight of Authority Holds that the Party Seeking to Limit Damages Under 35 U.S.C. § 287 Bears the Initial Burden of Identifying a "Patented Article" that Triggers the Requirements of the Statute.

Earlier this year, in *Golden Bridge Tech. Inc. v. Apple, Inc.*, a district court in the Northern District of California[4] considered the precise issue raised here—that is, "who bears the burden of satisfying the marking requirement where it is disputed whether a licensee marketed a

---

[2] There is no dispute that, once the marking statute has been triggered, a patentee bears the burden of proving compliance with Section 287 beyond a preponderance of the evidence.  *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

[3] *See Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 67238, at **34-37 (N.D. Cal. May. 14, 2014) (noting that the district court was "without clear guidance from the Federal Circuit" as to which party has the burden to identify patented articles).

[4] In the absence of binding authority from the Federal Circuit, which has exclusive jurisdiction over patent appeals, 28 U.S.C. § 1295(a), this Court may look to other district courts for guidance.  *See, e.g.*, *CA, Inc. v. Simple.com, Inc.*, 2009 U.S. Dist. LEXIS 25240, at *83 (E.D.N.Y. Mar. 5, 2009) ("Having discussed some of the broader guidelines provided by the Federal Circuit, the Court will look to analogous district court opinions for further guidance.").

product within the United States that practices the asserted patent."  No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 67238, at **34-37 (N.D. Cal. May 14, 2014).  The court recognized that the "right incentive structure is set by requiring the party seeking limited damages to identify unmarked products believed to practice the accused claims."  *Id.* at *35.  This is undoubtedly the "better view" because "absent guidance [from the party seeking to limit damages], the universe of unmarked, marketed goods with the potential to trigger Section 287 'would be unbounded.'" *Id.* (citing *Sealant Sys., Int'l v. TEK Global S.R.L.*, No. 5:11-cv-774, 2014 U.S. Dist. LEXIS 31528 (N.D. Cal. Mar. 7, 2014)).

   *Golden Bridge* reflects the established rule in the Northern District of California.  In *Oracle Am., Inc. v. Google, Inc.*, the district court found that "in order to limit patent-infringement damages to infringement that post-dated actual notice, Google [the party seeking to limit damages] must show that Oracle [the patent holder] failed to mark patented articles offered for sale, sold, or imported into the United States" before the date Google was put on notice of its alleged infringement.  No. 10-cv-3561, 2011 U.S. Dist. LEXIS 131707, at *8 (N.D. Cal. Nov. 15, 2011).  Because Google, as the party seeking to limit damages, "failed to produce evidence establishing acts . . . that would trigger the damages limitation in the patent-marking statute," it did not establish that the statute applied.  *Id.* at *10.  Accordingly, the burden of production never shifted to the patent holder to prove compliance with § 287.  *Id.*; *see also Sealant*, 2014 U.S. Dist. LEXIS 31528, at *113 ("In this case, TEK [the party seeking to limit damages] has not produced sufficient evidence that AMI [the patent holder] or its predecessor-in-interest triggered the obligations housed within the marking statute.  AMI thus did not have to comply with Section 287.").

This application of the marking statute is undoubtedly correct.  Indeed, it would be an "odd result" to require patent holders to bear the burden to show that their predecessors or licensees have not sold any products embodying the asserted patents.  *Sealant*, 2014 U.S. Dist. LEXIS 31528 at *115.  Absent guidance from the party seeking to limit damages, a patent holder would be "left to guess exactly what it must prove up to establish compliance with the marking statute." *Id.*  Numerous courts in other jurisdictions have adopted the approach endorsed by ADREA—namely, that the burden to identify "patented articles" should fall on the party trying to use § 287 to limit damages.  *See In re Katz Interactive Call Processing Patent Litig.*, 821 F. Supp. 2d 1135, 1158-59 (C.D. Cal. 2011) (holding that although the patentee had "burden to prove compliance" with marking statute, the accused infringers "had the burden to prove that there were patented articles to mark"); *Unova Inc. v. Hewlett-Packard*, No. 02-cv-3772, 2006 U.S. Dist. LEXIS 97403, at *4 (C.D. Cal. Feb. 17, 2006) ("The party claiming failure to mark, however, must show that the allegedly non-marked articles were, in fact, patented articles"); *Broadcom Corp. v. Agere Sys.*, No. 04-cv-2416, 2004 U.S. Dist. LEXIS 18163, at *13 n.5 (E.D. Penn. Sep. 8, 2004) (holding that the accused infringer "failed to prove that the read channel products . . . were patented articles within the meaning of the [patents-in-suit]"); *Laitram Corp. v. Hewlett-Packard Co.,* 806 F. Supp. 1294, 1296 (E.D. La. 1992) (finding that "Hewlett-Packard [the accused infringer] must prove first that the XQ2 conversion kits were a 'patented article' within the meaning of the law'").

B&N attempts to dismiss these cases (and others like them) as "outliers that are contrary to binding Federal Circuit precedent and have been recognized as such."  *See* Ex. A, 10-20-2014 Email from Y. Chow to the Court (citing *DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-CV-0669, 2009 U.S. Dist. LEXIS 75549, 2009 WL 2632685, at *4 (S.D. Cal. Aug. 24, 2009)).  But B&N,

and the sole case on which it relies, conflate the burden of proving compliance with Section 287 and the initial burden of establishing whether the statute is triggered in the first instance. *See DR Sys.*, 2009 WL 2632685, at *4 (highlighting the uncontroversial proposition that, when § 287 applies, "the patentee must prove its compliance with the marking statute"). In any event, B&N fails to account for two other cases from the same district—*Unova* and *In re Katz*—and the abundance of authority from other districts that, taken together, discredit any notion that the cases comprising the majority view on this issue should be disregarded as "outliers."

The facts of this case illustrate why B&N's position is untenable. Amazon has taken a license to the '703 patent (JTX-032), which relates generally to "device[s] that may send or receive information." *See* Dkt. No. 60 at 7. Amazon is the largest online retailer in the world;[5] accordingly, it has sold *thousands* of products that could conceivably practice the invention of the '703 patent. Under B&N's application of the law, ADREA must prove compliance with, or the inapplicability of, the marking statute with respect to each and every consumer device sold by Amazon between the date of the Amazon Agreement (November 10, 2011) and the date B&N received actual notice (March 29, 2012). But the universe of consumer devices sold by Amazon during this period is virtually "unbounded." *See Sealant*, 2014 U.S. Dist. LEXIS 31528 at *115. In essence, B&N contends that the law requires patent holders to prove a negative. *See id.* at *116 ("Absent particularized notice of the specific commercial activity in question, [the patentee] would be left to prove a negative – something that is not easily accomplished.").

---

[5] *Forbes*, "Wal-Mart vs. Amazon: World's Biggest E-Commerce Battle Could Boil Down to Vegetables," (Apr. 23, 2013), http://www.forbes.com/sites/ clareoconnor/2013/04/23/wal-mart-vs-amazon-worlds-biggest-e-commerce-battle-could-boil-down-to-vegetables/  (last visited Nov. 7, 2014) (describing Amazon as "the biggest online store on the planet" with $61 billion in 2012 revenues).

A far more sensible approach would require B&N, as the party seeking to limit damages under § 287, to identify the one or more products that it believed practiced the invention during the relevant time period.  Because this view has been endorsed by the majority of courts and creates the "right incentive structure" for parties in a patent infringement dispute, *see Golden Bridge*, 2014 U.S. Dist. LEXIS 67238 at *35, this Court should find that B&N bore the initial burden to identify a "patented article" in existence before the date of actual notice.

> 2.  The Only "Articles" Identified by B&N Post-Date Actual Notice and Did Not Exist Prior to March 29, 2012.

During the discovery period in this case, B&N failed to identify any products sold by Amazon (or any other licensee) that allegedly practiced the inventions of the '501 and '703 patents.  Nonetheless, B&N now argues that it sufficiently identified "patented articles" after the close of discovery in its motion for summary judgment.  *See* Ex. A, 10-20-2014 Email from Y. Chow to the Court (stating, "B&N identified the licensed, patented articles (Amazon Kindles and Sony e-readers) in its motion for summary judgment, filed . . . in January 2014.").

There are myriad problems with B&N's position.  As an initial matter, B&N's motion for summary judgment relies on evidence that post-dates actual notice of the '501 and '703 patents by nearly two years.  *See* Dkt No. 63, at 48 ("Amazon continues to produce e-readers under this license without marking them with the numbers of the '851, '501 and '703 Patents.").  Specifically, B&N alleges that on January 27-28, 2014, its attorneys purchased three products— an "Amazon Kindle Paperwhite," an "Amazon Kindle 8GB Fire," and a "Sony PRS T-2 e-reader"— and that these devices did not contain markings identifying the patents-in-suit.  *See id.* at 48 n.33; *id.* at 49 n.34.  It is of no moment, however, that Amazon and Sony did not mark their products in 2014, long after B&N received claim charts providing actual notice of B&N's infringement of the '501 and '703 patents.  Indeed, the marking statute does not operate to limit

the recovery of damages after an alleged infringer has been notified of its infringement.  *See* 35 U.S.C. § 287 (expressly allowing for the recovery of damages "on proof that the infringer was notified of the infringement and continued to infringe thereafter").[6]

Critically, the three alleged "patented articles" identified by B&N were not released and offered for sale until after B&N received actual notice of its infringement on March 29, 2012. For example, the Kindle "Paperwhite" e-reader device was released on October 1, 2012.  *See* Ex. C, 10-1-12 Amazon Press Release.   Similarly, Sony's PRS T-2 e-reader device was not introduced until August 16, 2012.   *See* Ex. D, 8-16-2012 Sony Press Release.   Further, the second-generation Kindle Fire product purchased by B&N was not available for purchase until at least September 14, 2012.[7]

Finally, B&N will not suffer undue prejudice if this Court determines that the marking statute has not been triggered here.   B&N had every opportunity to pursue discovery, including third-party discovery, to determine whether any "patented article" existed prior to the date of actual notice; it chose not to do so.  *See Unova*, 2006 U.S. Dist. LEXIS 97403, at *4 (noting that the accused infringer identified a product in interrogatories and attempted to prove that the product was a patented article by citing the patentee's responses); *DR Sys.*, 2009 U.S. Dist. LEXIS 75549, at *9 (using interrogatories to identify patented articles).

---

[6] It is difficult to see how B&N can allege that Sony produced "patented articles" at this stage, given the lack of evidence in the record.  In fact, B&N has acknowledged that the document it needs to support its defense under the marking statute was not entered into evidence during trial. *See* Ex. B, 10-21-14 Email from Y. Chow to the Court ("[T]o the extent the Court adopts plaintiff's position, Barnes & Noble should be permitted to enter . . . the cross-license agreement between Discovery and Sony . . . into evidence.").

[7] Amazon released a "first-generation" Kindle Fire product on November 14, 2011, but that product was quickly discontinued and has not been sold by Amazon since late 2012.  *See* Ex. E, 8-30-12 Amazon Press Release (announcing first-generation Kindle Fire "now sold out"); Ex. F, 9-6-2012 Amazon Press Release (announcing second-generation of Kindle Fire products).

In sum, the record lacks evidence of any "patented article" in existence before the date of actual notice that triggers the requirements of the marking statute.  The only products identified by B&N as "patented articles" under § 287 were not introduced until *after* B&N received actual notice.  Accordingly, this Court should find that the marking statute does not limit the recovery of damages for B&N's infringement.

### B.   Section 287 Does Not Preclude the Recovery of Damages During the Period in Which There Was No Duty to Mark.

Even if the marking statute was somehow triggered by the Amazon Agreement, the statute would preclude the recovery of damages during the period in which ADREA had no duty to mark.  Here again, the overwhelming weight of authority cuts against B&N.

Numerous district courts have held that a patent holder can recover damages for patent infringement when marking was not required, even if the marking statute were later triggered and the patentee failed to comply with the statute's requirements.  *See WiAV Sol'ns LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 639-40 (E.D. Va. 2010) (holding that "a patentee is not precluded from collecting damages for a period in which marking was not required even if the requirements of the marking statute were later triggered and the patentee failed to comply."); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, No. 00-cv-981, 2003 WL 1606081, at *15 (D. Del. Feb. 4, 2003) ("Since § 287(a) is not triggered when the patentee is not producing patented articles, the patentee can recover damages for infringement during this period of time even if, later, § 287(a) is triggered."); *Wokas v. Dresser Industries, Inc.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997) (holding that granting a license did not "preclude [the patentee] from recovering against other infringers before the date [the patentee and licensee] became obligated to comply with § 287(a)"); *Clancy Sys. Int'l v. Symbol Techs.*, 953 F. Supp. 1170, 1174 (D. Colo.

1997) ("Damages for infringement to the time unmarked products were sold . . . may be recoverable.").[8]

The facts in *Wokas* are instructive. In that case, the patentee (Wokas) sued Dresser Industries ("Dresser"), alleging infringement based on activities that began in the spring of 1993 and continued through the expiration of the patent in September 1996. *Wokas*, 978 F. Supp. at 842. Because Wokas entered into a license agreement with a third party (Tokheim) in June 1996, and because it was undisputed that the licensee had failed to mark its products, Dresser argued that the marking statute precluded Wokas from recovering damages prior to the date of actual notice (*i.e.*, July 30, 1996). *Id.* at 842-43. The district court disagreed. The court noted that Wokas had been under no duty to mark or otherwise provide notice prior to signing the license agreement. *Id.* at 848 ("Wokas had no duty to mark or give notification until such date [triggering Section 287]."). Moreover, the court held that "Dresser [was] liable for all infringement which occurred before the [triggering event] . . . irrespective of whether actual notice was given before that time or not." *Id.*

Like the accused infringer in *Wokas*, B&N has cited to a single case—*Konstant Prods. Inc. v. Frazier Indus. Co.*[9]—as its sole authority to support the notion that Section 287, once triggered, forecloses the recovery of all damages prior to the date of actual notice. *See* Ex. B, 10-

---

[8] *See also* 2-10 Horwitz on Litigation 10.23 (2014) ("Even if the patentee later sells, and fails to mark, products which do practice the invention, the marking statute does not bar recovery of damages during the period in which there was no duty to mark."); 4 Annotated Patent Digest § 30:142 ("[T]he failure to mark will bar damages for acts of infringement done during the period where the patentee, or its licensee, distributed unmarked products. However, the patentee may recover damages for acts of infringement done when the patentee, and its licensees, were not making or selling any products.").

[9] No. 91-cv-4491, 1992 U.S. Dist. LEXIS 14214 (N.D. Ill. Sep. 18, 1992).

21-14 Email from Y. Chow to the Court (citing only *Konstant* and the plain language of Section 287 in support of B&N's position).[10]

B&N's reliance on *Konstant* is misguided.  *Konstant* involved "the odd situation where one wrongdoer was attempting to collect damages from another wrongdoer during the time period in which both were engaged in the same wrongful act."  *See Wokas*, 978 F. Supp. at 847.  Put simply, *Konstant* involved a patentee and two different infringers.  The patentee assigned its rights retroactively, including the right to sue, to Infringer No. 1, who then sued Infringer No. 2 for patent infringement.  *Konstant*, 1992 U.S. Dist. LEXIS 14214, at *10-11.  Because Infringer No. 1 had not marked products during its own period of infringement, the court found that it could not recover damages prior to the date of actual notice.  *Id.*  Notably, *Konstant* involved a retroactive assignment, not a license, and an action in which the assignee sought to enforce the patent *during the period of its own infringement*—a period in which it failed to mark any of its own products.  *Id.*  Thus, "[i]t is clear . . . that *Konstant* is very fact specific and simply does not stand for the general proposition that a licensee's failure to mark or notify precludes a patentee from collecting damages from other infringers before the license was granted."  *Wokas*, 978 F. Supp. at 847.[11]

---

[10] If Section 287 were read literally, as B&N suggests, a patentee that fails to mark at any point could never recover damages through constructive notice *before or after* a failure to mark until it provided actual notice.  *See* 28 U.S.C. § 287 ("In the event of failure so to mark, no damages shall be recovered . . . except on proof that the infringer was notified"). The Federal Circuit, however, has rejected such a narrow reading of § 287. *See Am. Med. Sys. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993) (rejecting the argument that § 287 bars recovery of damages for period of compliance after initial period of noncompliance).

[11] Allowing the recovery of damages for infringement that pre-dates the event triggering § 287 is consistent with the purpose of the statute.  The marking statute has three related purposes: "(1) helping to avoid innocent infringement; (2) encouraging patentees to give notice to the public that the article is patented; and (3) aiding the public to identify whether an article is patented." *WiAV*, 732 F. Supp. 2d at 639 (citing *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998)).  The statute "does not protect *all* innocent infringers from damage liability."

**C.      This Court Should Apply the Royalty Rate Found by the Jury to Determine Supplemental Damages.**

Patent holders are entitled to supplemental damage awards for any infringement that was not considered by the jury.  *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212 (Fed. Cir. 2010) (awarding "additional damages by multiplying the jury's royalty rates against previously uncalculated sales," and remanding to the district court to expand the damages period).[12]  Indeed, "[c]ourts routinely grant motions for further accounting where the jury did not consider certain periods of infringing activity."[13]  *Sealant*, 2014 U.S. Dist. LEXIS 31528, at *20 (quoting *Itron, Inc. v. Benghiat*, No. 99-cv-501, 2003 U.S. Dist. LEXIS 15039, at *49 (D. Minn. Aug. 29, 2003)).  This includes situations in which the jury did not consider all sales made prior to trial.  *See*, *e.g.*, *Hynix Semiconductor, Inc. v. Rambus, Inc.*, 609 F. Supp.2d 951, 959-65, 987 (N.D. Cal. 2009) (awarding pre-verdict supplemental damages after the "last date for which [the patentee] was able to present evidence of [infringing] sales to the jury").

"Where the jury was unable to consider all infringing sales, its damages award is insufficient.  In calculating supplemental damages to correct this deficiency, courts may apply the reasonable royalty rate found by the jury."  *Sealant*, 2014 U.S. Dist. LEXIS 31528, at *22.  In fact, the existing case law on supplemental damages "recommends applying the royalty rates

---

*Tulip Computers*, 2003 WL 1606081, at *16 (emphasis in original).  Rather, "it is only when the patentee is himself contributing to the problem of innocent infringement by producing unmarked product that § 287(a) punishes that patentee by precluding damage recovery."  *WiAV*, 732 F. Supp. 2d at 639.  Because ADREA cannot be accused of contributing to B&N's infringing activities, there is no "innocent infringement" to speak of in this case.

[12] In *Finjan*, the Federal Circuit explained that "[u]nder 35 U.S.C. § 284, 'the court *shall* award . . . in no event less than a reasonable royalty,' and '[w]hen damages are not found by a jury, the court *shall* assess them.'"  *Finjan*, 626 F.3d at 1212 (emphases in original).

[13] In fact, such accounting is needed here to determine damages for B&N's infringing sales occurring after June 30, 2014—*i.e.*, the last day of sales data produced by B&N in this case.  To the extent updated sales data are available to B&N, it has no basis to withhold this information.

determined by the jury." *Hynix*, 609 F. Supp. 2d at 964-65 (applying jury's royalty determination to all infringement); *see also Aero Prods. Int'l v. Intex Rec. Corp.*, No. 02-cv-2590, 2005 U.S. Dist. LEXIS 12899, at *6 (N.D. Ill. Jun. 9, 2005) (granting motion for supplemental damages, noting, "[i]t is proper to use the royalty rate determined by the jury to assess damages for the sales at issue in this motion.").

Pursuant to the Court's instructions, the jury awarded $1.33 million in compensatory damages based on 5,232,016 infringing units sold on or after March 29, 2012, applying a royalty rate of $0.25 per unit. *See supra* at 3-4 (discussing the Jury Instructions for calculating damages). In the event the Court finds no evidence of "patented articles" and determines that the marking statute has not been triggered, *see* Section III.A *supra*, applying the jury's royalty rate to the additional 6,720,447 infringing units sold between the date of first infringement and March 29, 2012, would result in a supplemental damages award of $1,680,111. Alternatively, if the Court finds that the marking statute has been triggered but also determines that ADREA can recover damages during the period when there was no obligation to mark, *see* Section III.B *supra*, applying the jury's royalty rate to the additional 4,298,735 infringing units sold during the supplemental damages period would result in an award of $1,074,684.

## IV. CONCLUSION

For the foregoing reasons, the Court should award supplemental damages for infringing sales prior to March 29, 2012, which were not considered by the jury when it rendered its verdict.

Dated:  November 7, 2014                    Respectfully submitted,


                                            /s/ Colin Cabral
                                            Steven M. Bauer
                                            Kimberly A. Mottley (*pro hac vice*)
                                            Patrick J. Niedermeier (*pro hac vice*)
                                            Micah Miller (*pro hac vice*)
                                            Brendan Cox (*pro hac vice*)
                                            Erin Staab (*pro hac vice*)
                                            PROSKAUER ROSE LLP
                                            One International Place
                                            Boston, Massachusetts 02110
                                            (617) 526-9600 (telephone)
                                            (617) 526-9800 (facsimile)
                                            sbauer@proskauer.com
                                            kmottley@proskauer.com
                                            pniedermeier@proskauer.com
                                            mmiller@proskauer.com
                                            estaab@proskauer.com

                                            Colin Cabral
                                            PROSKAUER ROSE LLP
                                            2049 Century Park East, Suite 3200
                                            Los Angeles, CA 90067
                                            (310) 284-5611 (telephone)
                                            (310) 557-2193 (facsimile)
                                            ccabral@proskauer.com

                                            Kenneth Rubenstein
                                            Baldassare Vinti
                                            PROSKAUER ROSE LLP
                                            11 Times Square
                                            New York, NY 10036
                                            (212) 969-3000 (telephone)
                                            (212) 969-2900 (facsimile)
                                            krubenstein@proskauer.com
                                            bvinti@proskauer.com

                                            *Attorneys for Plaintiff ADREA, LLC*


                                            16

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 7, 2014, I caused a copy of the forgoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com LLC, and Nook Media LLC by ECF.

Louis S. Ederer
Susan Lee Shin
Yue-Han Chow
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael A. Berta, Jr. (*pro hac vice*)
Willow W. Noonan (*pro hac vice*)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415)-471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*Barnesandnoble.com LLC, and Nook Media LLC*

/s/ Colin Cabral
_____
Colin Cabral

17