**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| ADREA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | )   ECF Case |
| | ) |
| BARNES & NOBLE, INC., | )   13-CV-4137 (JSR) |
| BARNESANDNOBLE.COM LLC, and | ) |
| NOOK MEDIA LLC, | )   FILED UNDER SEAL |
| | )   PURSUANT TO PROTECTIVE |
| Defendants. | )   ORDER |
| | ) |
| | ) |

_____


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S SUPPLEMENTAL BRIEF ON DAMAGES AND
THE APPLICABILITY OF 35 U.S.C. § 287**


NON-CONFIDENTIAL (REDACTED)

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................................1

PROCEDURAL BACKGROUND.........................................................................................2

ARGUMENT ..........................................................................................................................4

       I.      Adrea's Requested Remedy Should Be Rejected as Untimely..............................4

      II.     Adrea's Request for Relief Fails to Meet the Strict Reconsideration
              Standard ...............................................................................................................6

      III.    Adrea Continues to Be Wrong on the Law...........................................................7

      IV.    There Is No Way for the Court to Recalculate Damages Now............................13

CONCLUSION......................................................................................................................15

NON-CONFIDENTIAL (REDACTED)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*,
  No. 02-C-2590, 2005 U.S. Dist. LEXIS 12899 (N.D. Ill. June 9, 2005)................................13

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
  24 F.3d 178 (Fed. Cir. 1994).............................................................................................10

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
  684 F.3d 36 (2d Cir. 2012)...................................................................................................7

*Baden Sports, Inc. v. Molten*,
  541 F. Supp. 2d 1151 (W.D. Wash. 2008)............................................................................5

*Barrett v. Orange Cty. Human Rights Comm'n*,
  194 F.3d 341 (2d Cir. 1999).................................................................................................5

*Bonner v. Guccione*,
  178 F.3d 581 (2d. Cir. 1999)................................................................................................5

*Caruso v. Forslund*,
  47 F.3d 27 (2d Cir. 1995).....................................................................................................4

*Clancy Sys. Int'l v. Symbol Techs., Inc.*,
  953 F. Supp. 1170 (D. Colo. 1997).....................................................................................13

*Cognex Corp. v. Microscan Sys., Inc.*,
  990 F. Supp. 2d 408 (S.D.N.Y. 2013)...................................................................................9

*Dimick v. Schiedt*,
  293 U.S. 474 (1935)............................................................................................................15

*DR Sys., Inc. v. Eastman Kodak Co.*,
  No. 08-cv-0669, 2009 U.S. Dist. LEXIS 75549 (S.D. Cal. Aug. 24, 2009)..........................9

*Earl v. Bouchard Transp. Co., Inc.*,
  917 F.2d 1320 (2d Cir. 1990)..............................................................................................15

*Eisemann v. Greene*,
  204 F.3d 393 (2d Cir. 2000)..................................................................................................6

*Elyse v. Bridgeside Inc.*,
  367 Fed. App'x 266 (2d Cir. 2010)......................................................................................15

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010).................................................................................13

*Gasperini v. Center for Humanities, Inc.*,
518 U.S. 415 (1996)...................................................................................................15

*Golden Bridge Tech. Inc. v. Apple, Inc.*,
No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 67238 (N.D. Cal. May 14, 2014).......................9

*Hynix Semiconductor Inc. v. Rambus Inc.*,
609 F. Supp. 2d 951 (N.D. Cal. 2009) ........................................................................13

*Itron, Inc. v. Benghiat*,
Civil No. 99-501, 2003 U.S. Dist. LEXIS 15039 (D. Minn. Aug. 29, 2003) ..........................13

*Jarvis v. Ford Motor Co.*,
283 F.3d 33 (2d Cir. 2002)..........................................................................................5

*Konstant Prod. Inc. v. Frazier Indus. Co.*,
No. 91-cv-4491, 1992 U.S. Dist. LEXIS 14214 (N.D. Ill. Sept. 18, 1992) ...........10, 11, 12, 13

*Lavoie v. Pac. Press & Shear Co.*,
975 F.2d 48 (2d Cir. 1992)..........................................................................................5

*Maxwell v. J. Baker, Inc.*,
86 F.3d 1098 (Fed. Cir. 1996)......................................................................................8

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
138 F.3d 1437 (Fed. Cir. 1998)....................................................................................8

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
322 F.3d 147 (2d Cir. 2003).........................................................................................7

*Oracle Am., Inc. v. Google, Inc.*,
No. 10-cv-3561, 2011 U.S. Dist. LEXIS 131707 (N.D. Cal. Nov. 15, 2011) ..........................9

*Orellana v. World Courier, Inc.*,
No. 09-CV-576, 2010 U.S. Dist. LEXIS 88924 (E.D.N.Y. Aug. 26, 2010).........................6, 7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013).....................................................................................9

*Sealant Sys. Int'l, Inc. v. Tek Global S.R.L.*,
No. 5:11-cv-774, 2014 U.S. Dist. LEXIS 31528 (N.D. Cal. Mar. 7, 2014) ...........................13

*Sequa Corp. v. GBJ Corp.*,
156 F.3d 136 (2d Cir. 1998).........................................................................................7

*Shrader v. CSX Transp.*,
  70 F.3d 255 (2d Cir. 1995)..................................................................................7

*Telcordia Tech., Inc. v. Cisco Sys., Inc.*,
  592 F. Supp. 2d 727 (D. Del. 2009), *vacated and remanded on other grounds by* 612 F.3d
  1365 (Fed. Cir. 2010)..........................................................................................14

*Tulip Computers Int'l B.V. v. Dell Computer Corp.*,
  No. 00-cv-981, 2003 U.S. Dist. LEXIS 5409 (D. Del. Feb. 4, 2003)................................12, 13

*WiAV Solutions LLC v. Motorola, Inc.*,
  732 F. Supp. 2d 634 (E.D. Va. 2010) ..............................................................9, 13

*Wokas v. Dresser Indus., Inc.*,
  978 F. Supp. 839 (N.D. Ind. 1997) ..............................................................11, 12, 13

*In re Yarn Processing Patent Validity Litig.*,
  602 F. Supp. 159 (W.D.N.C. 1984) ........................................................................11

*Zdanok v. Glidden Co.*,
  327 F.2d 944 (2d. Cir. 1964)................................................................................7

## Statutes, Rules and Regulations

35 U.S.C. § 287.............................................................................................2, 9, 10, 15

Local Civ. R. 6.3 ..........................................................................................6

Fed. R. Civ. P. 54(b) .....................................................................................7

Fed. R. Civ. P. 59 .........................................................................................7

## Other Authorities

4 Annotated Patent Digest § 30:148 .......................................................................9

## INTRODUCTION

Defendants Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC ("B&N") respectfully submit this brief in opposition to Plaintiff Adrea, LLC's ("Adrea") Supplemental Brief on Damages, and its request for reconsideration of the jury instruction regarding the first date for which damages are available under the patent marking statute.

Adrea's request to take the start date for damages back to November 2009, when B&N first sold the accused products, should be rejected, because it cannot meet the high standard for reconsideration of this Court's prior ruling on this issue, particularly after the jury has returned its verdict. Indeed, the relief Adrea seeks here is unprecedented — there is no support for the proposition that a jury instruction that was hotly contested, fully litigated and explicitly decided by the Court can be amended after the fact, and the damages award increased, prior to entry of judgment. Once a jury instruction is given, the time to take up any objection is on appeal — indeed, when the Court decided on its instruction, it explicitly stated that it would issue a short opinion setting forth the reasons for its determination, "so that any reviewing court will have the benefit of a more elaborate discussion." Ex. A at 1511:4-12.[1]

As for the instruction in question, it was decided by this Court after both parties were given several opportunities to present their respective legal positions — indeed, this is now Adrea's fifth challenge on the same issue. Tellingly, Adrea's latest attempt raises no arguments or precedents that were not raised previously. While Adrea is free to argue on appeal that the instruction was in error, any pre-judgment recalculation of damages after the jury has been instructed, considered the evidence of record (which was deliberately tailored to the Court's instruction), deliberated, reached an award, and was dismissed, would be tantamount to

---

[1] "Ex. __" refers to exhibits attached to the Declaration of Yue-Han Chow, filed concurrently.

depriving B&N of its constitutional right to a jury trial on damages.

## PROCEDURAL BACKGROUND

The legal and factual issues surrounding the start date for damages have been extensively litigated.  The jury instruction at issue, based on Adrea's failure to mark, is the following:

> For the '501 and '703 patents, however, damages should run from March 29, 2012, through the date of your verdict.  Ex. A at 1500:3-4.

In its Supplemental Brief, Adrea argues, among other things, that it should be relieved of the burden of showing compliance with the marking statute because it had no idea what products could be relevant to marking, since Amazon sells "thousands of products."  Dkt. 169 at 8.  This, however, is revisionist history, since the record is replete with evidence demonstrating Adrea's full awareness of the Amazon products at issue.  Indeed, this Court first addressed this issue when it granted B&N partial summary judgment, finding that because of Amazon's sales of Kindle products, and Adrea's assertion that such sales were relevant to secondary considerations of nonobviousness, Adrea was foreclosed from seeking damages on the '851 patent prior to March 29, 2012, the date of actual notice of its claims.  Dkt. 85 at 3-5.

As for Adrea's request for reconsideration of the Court's instruction on marking and the start date for damages, the complete procedural history on this issue bears repeating:

- On August 9, 2013, B&N asserted in its Answer an Eighth Affirmative Defense (Bar to Damages) that "Adrea's claims for damages are barred, in whole or in part, under . . . 35 U.S.C. § 287 (marking)."  Dkt. 24.

- On January 30, 2014, B&N moved for summary judgment that Adrea was not entitled to recover damages prior to March 29, 2012, the date of actual notice, based on the Amazon license, the Discovery-Sony cross license, and sales of unmarked Amazon Kindles and Sony eReaders.  Dkt. 63 at 46-50.  Adrea's opposition on the marking issue made no argument that it should be entitled to recover damages for any period prior to the time it or Discovery licensed the patents in suit or that B&N had waived this defense during discovery.  Adrea Opp. at 43-49.

- On July 1, 2014, the Court held in its Summary Judgment Order that Adrea first provided actual notice to B&N on March 29, 2012, and this would be the starting date for when damages could be calculated for the '851 patent.  Dkt. 85 at 3-5.

- On September 30, 2014, the parties submitted proposed jury instructions.  B&N provided a marking instruction.  Dkt. 133 at 74-76.  Adrea did not.  Dkt. 134 at 52.  Adrea also provided no instruction that B&N had the burden to prove the existence of patented articles, or that Adrea could recover damages for the period before it or Discovery licensed the patents in suit.

- On October 4, 2014, Adrea sent B&N, *but not the Court*, a letter demanding that neither side address the marking issue in opening statements, given the differences between the parties' respective positions on the issue.  Ex. B.  It did not, however, seek to amend its proposed jury instructions.  On October 17, 2014, at the Court's direction, B&N submitted a proposed final set of jury charges, including its marking instruction.  Ex. C.  Adrea submitted nothing, even though additional instructions submitted after 5:00 pm that day would "not be considered [by the Court] under any circumstances whatsoever."  Ex. A. at 668:2-9.

- On October 20, 2014, the Court held a charging conference on its proposed final jury charges, which contained no instruction on marking.  Upon hearing argument on the issue, the Court directed the parties to propose a short instruction by 7:30 pm.  *Id.* at 1168:22-1170:18.  B&N also requested that the verdict form list damages on a per patent basis.  *Id.* at 1178:2-4.  The Court denied this request.  *Id.* at 1178:5-1179:5.

- On October 20, 2014, B&N submitted proposed language for a marking instruction.  Ex. D.  Adrea submitted nothing; it only responded to B&N's submission by forwarding to the Court, almost two hours past the deadline, the October 4, 2014 letter it had sent to B&N on the subject of marking, arguing for the first time that it could recover damages prior to licensing its patents.  Ex. E.  B&N replied later that evening, refuting Adrea's arguments and citing additional authority.  Ex. F.

- On October 21, 2014, the Court circulated revised jury instructions, including an instruction that damages on the '501 and '703 patents could start only on March 29, 2012.  Ex. G.  Midway through the testimony of B&N's damages expert, Ned Barnes, the Court heard further argument on the issue, and decided to maintain its instruction.  Ex. A at 1285:20-1289:19; 1291:4-7.  B&N was then permitted on Barnes' redirect to present new damages numbers for the '501 and '703 patents, based on a March 29, 2012 start date.  *Id.* at 1291:14-25; 1293:3-6; 1335:8-1337:16.

- Later that day, Adrea again brought up the marking instruction, once again arguing that it could recover damages for the period prior to the licensing of the '501 and '703 patents.  Ex. A at 1386:1-1389:6.  The Court instructed Adrea to brief its position by 7:30 pm, and for B&N to reply by 8:00 pm.  *Id.* at 1388:19-1389:6.

- That evening, Adrea submitted a proposed modification to the marking instruction, and resubmitted part of its October 4, 2012 letter to support its position.  Ex. H.  B&N

responded by citing additional authority in support of a March 29, 2012 start date, and further argued that should the Court decide in Adrea's favor, B&N should be permitted to enter the Discovery/Sony license into evidence, as any recovery under the '501 patent would exempt the period between August 25, 2010 and March 29, 2012.  Ex. I.

- That same evening, the Court ruled once again that it would maintain its instruction that start date for damages on the '501 and '703 patents would be March 29, 2012. Ex. J.  The Court then reiterated this on the record the next day, stating that it had "received excellent submissions from both sides" and that if the issue "becomes not mooted by the jury's verdict, I will write a short opinion setting forth the reasons for my determination so that any reviewing court will have the benefit of a more elaborate discussion."  Ex. A at 1511:4-12.  The Court then so instructed the jury.

Given this course of events, Adrea's latest attempt to rewrite history should be seen for what it is — yet another bite at an apple that has already been eaten.

## ARGUMENT

This Court should reject Adrea's request to alter the jury's determination on damages prior to entry of judgment.  First, the time for a jury instruction to be amended is before it is given to the jury, not after.  Second, at best Adrea is requesting reconsideration of the Court's legal determination on this issue, but even if a jury instruction may be reconsidered after the jury has been charged, deliberated, rendered a decision, and been excused, Adrea fails to meet the high standard for reconsideration.  Third, Adrea continues to be wrong on the law, relying again on the same cases and arguments it advanced before.  Fourth, even if the Court's instruction were in error, which it was not, the jury's damages award cannot be conformed to any new start date for damages, since the award was undifferentiated by patent and did not contain any royalty rate.

## I.   Adrea's Requested Remedy Should Be Rejected as Untimely

The law is clear that once a party allows an instruction on the law to go to the jury, even if the instruction is in error, there cannot then be a do-over after the jury has deliberated and rendered its decision.  For example, as stated in *Caruso v. Forslund*, 47 F.3d 27, 30-31 (2d Cir. 1995), a party cannot seek to alter a jury instruction after it is issued and the jury retires to

deliberate.  This is because "[t]he purpose of Rule 51's timeliness requirement is 'to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time.'"  *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 349 (2d Cir. 1999) (quoting *Bonner v. Guccione,* 178 F.3d 581, 586 (2d Cir. 1999)); *see also Jarvis v. Ford Motor Co.*, 283 F.3d 33, 57 (2d Cir. 2002) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection . . .") (quoting *Lavoie v. Pac. Press & Shear Co.,* 975 F.2d 48, 55 (2d Cir. 1992)).

The holding in *Baden Sports, Inc. v. Molten*, 541 F. Supp. 2d 1151 (W.D. Wash. 2008), is particularly instructive.  In *Baden*, the court denied a request to amend the jury's damages award because defendant waived any attempt to alter the marking instruction by not raising it in a timely fashion, thereby failing "to give opposing counsel time to prepare a response and to give the Court time to consider, research, and rule upon the proposed instructions."  *Id.* at 1165-66.

Further, in light of this Court's instruction, the jury was not asked to make any factual findings on the marking issue, nor did it have the opportunity to consider the evidence B&N would have entered into the record had B&N known that the Court would be giving the instruction Adrea now seeks.[2]  Accordingly, as the Court itself recognized when it stated it

---

[2] Indeed, just as B&N argued to the Court in its October 21, 2014 submission, one of the reasons the Court should not give the charge Adrea was then (and is now) seeking is that B&N did not have the opportunity to present additional evidence on marking that it would have introduced had it known that the Court would be giving that instruction.  In its submission, B&N specifically referred to an August 25, 2010 Sony/Discovery cross-license it had intended to introduce (Exs. I & K).  In addition, Defendants had intended to play the videotaped deposition testimony of James Rosenstock, who was head of Corporate Development at Discovery.  After the Court determined that the jury charges should include the March 29, 2012 marking instruction, B&N decided not to play this testimony.  Ex. A at 1342:9-1343:4.

B&N's designations for Rosenstock (*see* Ex. L) included testimony concerning a document (Ex. M) ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ ▪Ex. N at 25:25-28:2.  B&N also designated testimony concerning ████████████████

Footnote continued on next page

would write an opinion on this issue, the time to take up this issue is on appeal — in the event a higher court disagrees, the only proper way to address any such error would be to correct the instruction and conduct a new trial on damages.

## II.      Adrea's Request for Relief Fails to Meet the Strict Reconsideration Standard

Adrea's Supplemental Brief amounts to nothing more than a request for reconsideration of the Court's carefully considered instruction on the marking issue.  Aside from the fact that this is not the traditional situation where reconsideration is appropriate — indeed, B&N has been unable to identify a single case where reconsideration was even requested, much less granted, in the context presented here — the circumstances under which a court can reconsider a prior decision on the law are limited, and the threshold is extremely high.  As stated in *Orellana v. World Courier, Inc.*, No. 09-CV-576, 2010 U.S. Dist. LEXIS 88924, at **1–2 (E.D.N.Y. Aug. 25, 2010) (citations omitted):

> [Under] Local Rule 6.3, a motion for reconsideration will generally be denied unless the moving party can establish: (1) that the court overlooked controlling decisions or data; (2) that there has been a change in decisions or data; (2) that there has been a change in controlling law; (3) that new evidence has become available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice.

*See also Eisemann v. Greene*, 204 F.3d 393, 395 n.2 (2d Cir. 2000) (referencing Local Civ. R. 6.3 and stating that the moving party "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion").

Further, "the standard for granting [] a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be

_____

Footnote continued from previous page

████████████████.  Ex. N at 28:21 - 29:25 (discussing Ex. O); 36:4 - 37:11 (discussing E. P); 38:10-39:14 (discussing Ex. Q).

expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.,* 70 F.3d 255, 257 (2d Cir. 1995).  In addition, "[c]ourts narrowly construe and strictly apply the Rule in order to avoid 'repetitive arguments on issues that have already been considered fully by the court.'" *Orellana*, U.S. Dist. LEXIS 88924, at *2 (citations omitted).[3]

Here, Adrea is merely repeating the same arguments it has made to the Court several times now, citing virtually no new law whatsoever, much less any that the Court has previously overlooked or misapprehended.  Further, the jury is gone, and there is no way to reconstruct what it actually did to arrive at its damages award, or how it went about it, particularly given the jury's confusion relating to Adrea's proposed alternative lump sum calculation (*see* discussion at p. 14 below).  Accordingly, reconsideration of the Court's instruction on the marking/starting date for damages issues at any point prior to appeal would be utterly inappropriate.

## III.   Adrea Continues to Be Wrong on the Law

In its Supplemental Brief, Adrea makes two arguments in support of its position that the Court's marking instruction is in error — *first*, that B&N had the burden to identify patented articles sold by Amazon prior to March 29, 2012, the date B&N received actual notice of Adrea's claims, and that B&N did not meet this burden; and *second*, that, accordingly, Adrea had no duty to mark, and can recover damages for the period prior to the time it granted Amazon a license.  For the same reasons B&N argued to the Court during trial, however, Adrea is wrong on both counts.

---

[3] Reconsideration under Rule 54(b) is subject to the caveat that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Official Committee of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)).  As for reconsideration under Rule 59, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . " *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

First, the Federal Circuit has consistently held that the burden of proving compliance with the marking statute is on the patent owner.  *See, e.g.*, *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998) (patent holder must prove compliance with marking statute by preponderance of evidence); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996) (patentee bears burden of proving compliance with marking requirements).  Indeed, Adrea concedes that it has this burden.  Dkt. 169 at 5 n.2.  Here, the requirements of the marking statute — and Adrea's burden to prove compliance — undoubtedly have been "triggered":  (1) the '501 and the '703 patents were licensed to Amazon (and the '501 to Sony); and (2) Amazon and Sony produced eReaders pursuant to those licenses.  Since B&N has identified these patent licenses and the articles produced under them, Adrea bears the burden to prove that the patented articles do not practice the patents-in-suit in order to avoid the requirements of the marking statute.[4]

Moreover, contrary to Adrea's assertion, the trial record is replete with evidence that unmarked Amazon Kindles and Sony eReaders[5] were being sold well before B&N began producing the accused NOOK devices in November 2009 — as early as 2007 or 2008 for the Kindles (Ex. A at 630:12-15, 635:24-25, 1253:19-1254:3, 1298:10-23), and as early as May or August 2009 for the Sony eReaders (Exs. M & O; Ex. A at 85:5-24 (Shamoon:  "[Rosenstock] called me in the summer of 2009 . . . Sony had an ebook reader in the market at that time.")).

---

[4] Adrea disingenuously argues that there are an "unbounded" number of products sold by Amazon, and B&N could be referring to any of them.  Dkt. 169 at 8.  B&N, however, has never argued that any and all Amazon products trigger the requirements of the marking statute.  To the contrary, B&N has specifically identified the Amazon Kindle eReaders — products similar to the B&N NOOKs at issue in this case — that were the subject of the patent infringement suit that led to the license.  Under these circumstances, it borders on the absurd for Adrea to assert that B&N has not provided sufficient evidence to "trigger" the requirements of the marking statute.

[5] Although Adrea argues that the unmarked Kindle and Sony eReaders on B&N's trial exhibit list (DTX 755-757) were sold after March 29, 2012 (Dkt. 169 at 10), it can be inferred that if later generations of the eReaders were unmarked, then earlier generations were also unmarked.

███████████████████████████████████████████████████  Exs. K & R.

Thus, by law, the burden was on Adrea, not B&N, to demonstrate that these licensed eReaders did not practice the patents-in-suit to avoid the requirements of the marking statute, a burden Adrea has concededly failed to meet.  *See WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) (patent holder has burden to demonstrate that licensed articles do not practice patents-in-suit); *see also Cognex Corp. v. Microscan Sys., Inc.*, 990 F. Supp. 2d 408, 416-17 (S.D.N.Y. 2013) (Rakoff, J.).[6]

Second, Adrea is wrong in arguing that the marking statute permits it to parse the damages period in the manner suggested.  To the contrary, the plain language of Section 287 states that in the event of a failure to mark, "damages may be recovered *only* for infringement occurring *after* [actual] notice."  35 U.S.C. § 287(a) (emphasis added).  Based on the clear statutory language, and as this Court held and instructed the jury, Adrea may only recover damages for infringement occurring after actual notice, March 29, 2012.  Indeed, under this language, a patentee's failure to mark forfeits any claim to damages before appropriate notice. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1378 (Fed. Cir. 2013) ("Where a patentee does not appropriately mark her products, she may not recover damages for infringement occurring before notice to the infringer.").  Thus, "the marking statute operates precisely to preclude recovery of each quantum of damage — that is, each lost sale or reasonable royalty payment — that arises from an act of pre-notice infringement."  *Id.* at 1379

---

[6] The California district court cases on which Adrea relies, such as *Golden Bridge Tech. Inc. v. Apple, Inc.*, No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 67238 (N.D. Cal. May 14, 2014), and *Oracle Am., Inc. v. Google, Inc.*, No. 10-cv-3561, 2011 U.S. Dist. LEXIS 131707 (N.D. Cal. Nov. 15, 2011), are not inconsistent.  Dkt. 169 at 5-9.  At best, those cases require a defendant to present sufficient evidence to "trigger" the marking statute.  Here, B&N has demonstrated the existence of licenses to the patents-in-suit and eReaders produced pursuant thereto, as well as exemplars that the licensed eReaders were not marked — more than enough to "trigger" the statute.  To the extent Adrea's cases purport to put any more burden on defendants, they are contrary to Federal Circuit precedent.  *See, e.g., DR Sys., Inc. v. Eastman Kodak Co.*, No. 08-cv-0669, 2009 U.S. Dist. LEXIS 75549, at **10–13 (S.D. Cal. Aug. 24, 2009) (citing 4 Annotated Patent Digest § 30:148) (recognizing the conflict with binding precedent).

n.9.  By its language, Section 287 does not permit the parsing of the pre-notice period, as advanced by Adrea.

Further, the requirements of the marking statute apply equally to patent licensees, so that where the patentee has licensed its invention, it must take reasonable steps to ensure that its licensees are appropriately marking the patented products.  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184-85 (Fed. Cir. 1994).  If the patentee fails to do so, it has not satisfied the conditions of the marking statute, and may not recover damages for infringement occurring before notice to the infringer.  *Id.*  And, importantly, where a patentee settles a claim with an alleged infringer and licenses it to use the patent in the accused articles both prospectively and retrospectively, by law the requirements of the marking statute apply equally both to previously sold products and the products to be sold in the future.

Here, it is undisputed that on November 10, 2011, Adrea granted a license to Amazon to use the patents-in-suit, as part of the settlement of its lawsuit with Amazon.  Ex. R.  Notably, the Amazon license applied both prospectively — that is, to products Amazon would sell in the future — and retrospectively — to products that were the subject of the lawsuit.  Adrea, however, failed to carry its burden to show that it required Amazon to mark any of these licensed products, prospectively or retrospectively.  Accordingly, Adrea cannot recover damages for the period before it notified B&N of its claims.[7]

The case of *Konstant Products Inc. v. Frazier Industrial Co.*, No. 91-cv-4491, 1992 U.S. Dist. LEXIS 14214 (N.D. Ill. Sept. 18, 1992), cited by B&N to the Court in its October 21 email,

---

[7] Discovery also granted a license for the '501 patent to Sony on August 25, 2010.  Ex. K.  B&N did not introduce the Sony license into evidence for the reasons explained at p. 5 n.2 above. ██████████████████  As such, Adrea cannot recover damages for the period between the date of this license for the '501 patent and when it notified B&N of its claims.

stands for this proposition.  In *Konstant*, the original patentee, Eric Döring, had not commercialized his invention in the United States, but later assigned his rights under the patent to Frazier.  Before the assignment, Frazier had already been producing an infringing product, but the assignment retroactively authorized Frazier's prior sales.  Thereafter, Konstant sued Frazier for infringement of its patents, and Frazier countersued for infringement of the assigned patent.

The question presented to the *Konstant* court was whether Frazier could recover damages for Konstant's infringement of the Döring patent for the period before Döring assigned the patent to Frazier.  During that period, Frazier had been selling unmarked products.  The district court held that because the assignment authorized Frazier's prior sales, Frazier's failure to comply with the marking statute during that prior period barred its recovery of damages.  The court explained that "[the] portion of the statute requiring marking or notice by 'persons making or selling any patented article for or under [the patentee],' . . . has been held applicable to those operating under authority of the patentee, regardless of the form such authorization may take."  1992 U.S. Dist. LEXIS 14214, at *9 (citing *In re Yarn Processing Patent Validity Litig.*, 602 F. Supp. 159, 169 (W.D.N.C. 1984)).  Further, the court noted, "[s]uch authorizations may be embodied in settlement agreements, covenants not to sue, or licenses."  *Id.* (citations omitted).  The same rule applies here to Adrea's settlement with Amazon, and its retrospective licensing of Amazon's allegedly infringing Kindle sales.

In its Supplemental Brief, Adrea attempts to dismiss *Konstant* as an anomaly because it involved an assignment, not, as here, a license.  In doing so, Adrea relies heavily on *Wokas v. Dresser Industries, Inc.*, 978 F. Supp. 839 (N.D. Ind. 1997), which, according to Adrea, purported to distinguish *Konstant* on this basis.  That is simply not the case — the reason *Wokas* distinguished *Konstant* was not because *Wokas* involved a license (as opposed to an assignment),

but because the license was prospective only, and not retrospective.  Thus, while the license in *Wokas* authorized *future* commercial activity under the patent, there was "no allegation or indication that [the licensee]'s past infringement was authorized by the [license]."  *Id.* at 847.

As the *Wokas* court held in distinguishing *Konstant*, "[i]n this case, entirely different circumstances exist.  For one, the [license] is a prospective license which only gives Tokheim authority to manufacture under the [Wokas] patent starting on [the date of the license]."  *Id.* at 847.[8]  "In *Konstant*," on the other hand, "the fact that the assignment retroactively authorized Frazier's infringement made all the difference."  *Id.* at 847.  *Wokas* thus stands for the proposition that a license that is only prospective will not invoke the requirements of the marking statute for past infringement, but it does not disturb the holding of *Konstant* that a retroactive authorization of prior infringing activity converts the previously accused products into articles made "for or under" the patentee, thus invoking the protection of the statute.

Here, just as in *Konstant*, the Amazon license is retrospective (*see* Ex. R at ADREA0007441-42 ("Adrea and Discovery each hereby forever releases Amazon and its Affiliates . . . of and from any and all manner of causes of action and claims . . . (ii) that are based on acts or omissions occurring before the Effective Date which would have been licensed had they occurred after the Effective Date . . . ")), and so Amazon's prior sales were made "for or under" the patentee.[9]  Accordingly, *Konstant* — not *Wokas* — applies, and, as the jury was instructed, the statute prevents Adrea from recovering damages prior to March 29, 2012.[10]

---

[8] Further, since the license in *Wokas* was prospective, it was "undisputed that, prior to [the license], neither Wokas nor anyone else had ever manufactured or sold a product under the [] patent."  *Id.* at 842.

[9] ███████████████████████████  *See* Ex. K at ADREA0007491-92.

[10] The other cases cited by Adrea in support of its "parsing" argument are either inapposite or *dicta*.  Thus, in *Tulip*, neither the patentee or its licensees *initially* made or sold any products, but *later* began selling an unmarked product covered by the patent.  *Tulip Computers Int'l B.V. v.*

Footnote continued on next page

## IV.    There Is No Way for the Court to Recalculate Damages Now

Finally, Adrea's entire rationale for seeking relief now, before judgment is entered, is that not only was the Court's marking instruction wrong on the law, but the jury purportedly established a per unit royalty rate such that damages can be recalculated without its involvement. Once again, however, Adrea is wrong — its theory that the jury's award reflects an implied royalty rate is entirely inconsistent with the award and the course of events.

First, the jury's award is a lump sum amount, and does not equate to any per unit royalty rate. Unlike cases cited by Adrea, the jury provided no actual royalty rate on the verdict form.[11] Further, while Adrea claims that the rate the jury found is an even 25 cents (which it is not), it offers no explanation for how the jury could have arrived at such a rate, because there is none.[12]

---

Footnote continued from previous page

*Dell Computer Corp.*, No. 00-cv-981, 2003 U.S. Dist. LEXIS 5409, at **46–48 (D. Del. Feb. 4, 2003) (damages not permitted after first sale of unmarked patented articles). In both *WiAV* and *Clancy*, the discussions of "parsing" are *dicta*, because in both cases the courts determined for other reasons that damages were precluded for the entire notice period. *WiAV*, 732 F. Supp. 2d at 643 (holding that plaintiff failed to meet its burden of demonstrating that products did not trigger the marking requirements, so damages were precluded for the entire period prior to notice); *Clancy Sys. Int'l v. Symbol Techs.,Inc.*, 953 F. Supp. 1170, 1175 (D. Colo. 1997) (finding that plaintiff failed to demonstrate that prior patent owner appropriately marked its products, so what later licensee did was irrelevant). Moreover, none of these cases addressed the question whether, as here, the license at issue was retrospective, the issue the *Konstant* and *Wokas* courts found dispositive.

[11] *Cf. Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1208, 1212-13 (Fed. Cir. 2010) (remanding to district court to determine appropriate damages by multiplying jury's 4%, 16%, 8%, and 8% royalty rates stated on the special verdict form against previously uncalculated sales); *Sealant Systems International, Inc. v. Tek Global S.R.L.*, No. 5:11-cv-774, 2014 U.S. Dist. LEXIS 31528, at **15, 136, 137 n.266 (N.D. Cal. Mar. 7, 2014) (holding that plaintiff was entitled to receive supplemental damages based on the jury's 7% royalty rate as stated on the verdict form); *Hynix Semiconductor Inc. v. Rambus Inc.*, 609 F. Supp. 2d 951, 965 (N.D. Cal. 2009) (applying percentage royalty rates set in remittitur order). In two other cases cited by Adrea, there was only one patent-in-suit, and therefore the determination of a royalty rate was straightforward, and the parties did not disagree on the rate used by the jury. *See Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*, No. 02-C-2590, 2005 U.S. Dist. LEXIS 12899, at **2, 6 (N.D. Ill. June 9, 2005); *Itron, Inc. v. Benghiat*, Civil No. 99-501, 2003 U.S. Dist. LEXIS 15039, at **2, 47-48 (D. Minn. Aug. 29, 2003).

[12] Indeed, following the exclusion of Adrea's damages expert, the only evidence of record as to a royalty rate for the '501 and '703 patents was that presented by B&N's expert Barnes, who

Footnote continued on next page

If anything, what the jury appears to have done here is buy into a new lump sum damages theory first advanced by Adrea only after its damages expert was excluded — an amount somehow made up of a percentage of B&N's share of the eReader market times the amount Amazon paid for a license to use Adrea's entire 300-patent portfolio (not just the three patents-in-suit).[13] Indeed, the day before it returned its verdict, after raising questions to the Court about what its role was supposed to be in calculating damages, the jury asked to see a document that Adrea's counsel had unsuccessfully tried to introduce into evidence that purportedly showed Amazon and B&N's share of the market.  Ex. A at 1304:12-1306:3, 1537:1-9.  In any case, since there is no explanation for what the jury did here, or how it arrived at its number, there is nothing about the jury's award that could possibly lend itself to a simple recalculation of damages.  *See Telcordia Tech., Inc. v. Cisco Sys., Inc.,* 592 F. Supp. 2d 727, 747 n.8 (D. Del. 2009) ("[T]here is nothing in either the record or verdict form from which the court could determine whether the jury based its award on a lump-sum, paid-up license; running royalty rate; some variation or combination of the two; or rejected the theories and reached its own number."), *vacated and remanded on other grounds by* 612 F.3d 1365 (Fed. Cir. 2010).[14]

---

Footnote continued from previous page

concluded that the rates the parties would have agreed to in a November 2009 hypothetical negotiation were 4 cents for the '501, and 2 cents for the '703.  Ex. A at 1274:5-1276:3.

[13] Following the exclusion of Adrea's damages expert, in its cross-examination of B&N's damages expert Barnes, Adrea's counsel attempted to advance a new lump sum theory of damages by taking the amount paid under the Amazon Agreement, comparing the relevant market shares of Amazon and B&N *in 2010 and 2011*, and arguing that this would be an appropriate valuation of a license resulting from a hypothetical negotiation *in 2009*.  Ex. A at 1302:10-1308:25.  The Court allowed the line of questioning as impeachment of Barnes' methodology, but admonished Adrea's counsel that he should not present such an argument in closing.  *Id.* at 1309:1-4.  In summation, however, Adrea's counsel in fact presented this argument, despite the Court's admonition.  Ex. A at 1432:15-1433:3.

[14] In addition, since the verdict form did not provide for a breakout of damages by patent, there is no way to determine what portion of the damages award the jury attributed to the '501 patent, and what portion to the '703.  If B&N had been allowed to introduce the evidence it did not present after the Court settled on its instruction (*see* discussion at p. 5 n.2 above), then the dates

Footnote continued on next page

Further, were the Court to grant the relief Adrea seeks and *increase* the damages award, it would be tantamount to an unconstitutional additur.[15]  Indeed, if any party is entitled to an adjustment of the jury's damages award, it is B&N that is entitled to a remittitur, i.e., a *downward* adjustment, an issue B&N will address at the appropriate time in the post-judgment phase.  Once again, there was simply no evidentiary support in the record for the jury to have concluded that damages should be any greater than the amounts presented by Barnes: for the '501 patent, 4 cents times B&N's March 29, 2012 − June 30, 2014 unit sales ($209,281); and for the '703 patent, 2 cents times such unit sales ($104,640).  Ex. A at 1274:5-1275:10, 1335:21-1337:16.  Indeed, as the Court instructed the jury in response to one of its deliberation questions, there is a serious issue here as to whether Adrea even met its burden of proof on damages, in which case any damages award should be nominal.[16]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's request for reconsideration of this Court's jury instruction concerning Defendants' defense under the marking statute (35 U.S.C. § 287), and for the recovery of supplemental damages for sales prior to March 29, 2012.

---

Footnote continued from previous page

from which damages were to be calculated for the two patents would have been different, i.e., August 25, 2010 and November 10, 2011.  Therefore, in order to calculate supplemental damages, the Court would have to know what, if any, individual royalty rates the jury calculated for each patent.  There is, however, no indication on the verdict form or elsewhere that could allow the Court to make such a determination.

[15] *See Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) ("where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict"); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433 (1996) (noting that the Supreme Court in *Dimick* "recogniz[ed] that remittitur withstands Seventh Amendment attack, but reject[ed] additur as unconstitutional"); *Elyse v. Bridgeside Inc.*, 367 Fed. App'x 266, 267 (2d Cir. 2010) ("additur is constitutionally impermissible"); *Earl v. Bouchard Transp. Co., Inc.*, 917 F.2d 1320, 1331 (2d Cir. 1990) (confirming *Dimick* that additurs are unconstitutional).

[16] *See* Ex. A at 1536:7-14 ("Finally, if you find in the end that, even taking account of all the evidence, plaintiff has not carried its burden as to any amount of damages but has nonetheless proved infringement of a valid claim or claims, you should award the amount of zero dollars, which is known as nominal damages.").

Dated:  November 14, 2014

ARNOLD & PORTER LLP

Louis S. Ederer
Susan Shin
Yue-Han Chow
Maxwell Preston
399 Park Avenue
New York, NY  10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael a. Berta (*pro hac vice*)
Maulik Shah (*pro hac vice*)
Willow Noonan (*pro hac vice*)
Three Embarcadero Center
10th Floor
San Francisco, CA  94111-4024
Telephone:  (415) 471-3100
Facsimile:  (415) 471-3400
michael.berta@aporter.com
maulik.shah@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and Nook Media LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2014, copies of Defendants' Memorandum of Law in Opposition to Plaintiff's Supplemental Brief on Damages and the Applicability of 35 U.S.C. § 287 were caused to be served upon the following via electronic mail and ECF:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
krubenstein@proskauer.com
bvinti@proskauer.com

Steven M. Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Brendan Cox, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
sbauer@proskauer.com
kmottley@proskauer.com
mmiller@proskauer.com
pniedermeier@proskauer.com
estaab@proskauer.com

Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067
ccabral@proskauer.com

Yue-Han Chow