# EXHIBIT A

EA78ADR1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     ADREA, LLC,
 3
                    Plaintiff,
 4
              v.                          13 Cv. 4137 (JSR)
 5
     BARNES & NOBLE, INC.,
 6   BARNESANDNOBLE.COM LLC, AND
     NOOK MEDIA LLC,
 7
                    Defendants.
 8   ------------------------------x
                                          October 7, 2014
 9                                        10:00 a.m.

10   Before:
                        HON. JED S. RAKOFF
11
                                          District Judge
12
                          APPEARANCES
13
     PROSKAUER ROSE LLP
14        Attorneys for Plaintiff
     BY:  STEVEN M. BAUER
15        COLIN CABRAL
          BRENDAN COX
16
     ARNOLD & PORTER LLP
17        Attorneys for Defendants
     BY:  LOUIS S. EDERER
18        ALI R. SHARIFAHMADIAN
          MICHAEL A. BERTA
19        YUE-HAN CHOW

20

21

22

23

24

25
```

Ea7radr4                              Shamoon - direct

1   Q.   Were you involved in the creation of ADREA?

2   A.   Yes, I was.

3   Q.   When was ADREA ultimately informed?

4   A.   ADREA was formed I believe in 2010.

5   Q.   Again briefly, if you could please tell the jury how you

6   came up with the idea to form the company.

7   A.   I don't want to take too much time.  There was a guy at

8   Discovery Networks called Jay Rosenstock, who still works

9   there, who used to work at Sony.  He is an old friend of mine.

10  He called me in the summer of 2009, right after he had moved

11  from Sony to Discovery.  His job at Discovery was to handle

12  business strategy and what they call corporate development.

13          One of his jobs was to deal with this patent case that

14  Discovery had filed against Amazon that was using the patents

15  of the founder of Discovery Networks, guy called John

16  Hendricks, that were on ebooks that John had filed in the mid

17  '90s.  Discovery is a content company.  They make shark

18  documentaries and things like.  Jay had been asked by his boss

19  to see if there was a way to use this patent portfolio that he

20  had invented strategically.

21          Jay knew that I knew a lot about patents, and he knew

22  that I worked with people at Sony and Philips spending a lot of

23  time on research.  Sony had an ebook reader in the market at

24  that time.  He called me up and said, hey, look --

25          MR. EDERER:  Objection, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

EAF8ADR1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ADREA, LLC,

4                    Plaintiff,

5            v.                              13 Cv. 4137 (JSR)

6   BARNES & NOBLE, INC.,
    BARNESANDNOBLE.COM LLC, AND
7   NOOK MEDIA LLC,

8                    Defendants.

9   ------------------------------x

10                                       October 15, 2014
                                         9:50 a.m.
11
    Before:
12                    HON. JED S. RAKOFF

13                                       District Judge

14

15                         APPEARANCES

    PROSKAUER ROSE LLP
16        Attorneys for Plaintiff
    BY:   STEVEN M. BAUER
17        COLIN CABRAL
          BRENDAN COX
18
    ARNOLD & PORTER LLP
19        Attorneys for Defendants
    BY:   LOUIS S. EDERER
20        ALI R. SHARIFAHMADIAN
          MICHAEL A. BERTA
21        YUE-HAN CHOW
          SARAH BRACKNEY ARNI
22        SUSAN L. SHIN

23

24

25

Eafradr4                         Hilt - direct

1    computer.  If they were very adventurous they would take a very

2    strange device that would exist and they would try and connect

3    it with a cord and download it on that device.

4    Q.   What was that device called?

5    A.   The device that Barnes & Noble sold was called a Rocket

6    Reader.

7    Q.   This was in 1999?

8    A.   1999-2000-ish.

9    Q.   In that time period were publishers putting their books in

10   electronic form?

11   A.   Not in a substantial way.

12   Q.   When did ebooks start becoming more prevalent?

13   A.   When Amazon introduced the Kindle.

14   Q.   When was that, if you know?

15   A.   In 2007.

16   Q.   Moving now to the third paragraph, where it starts, "In

17   October 2009," could you read that for the jury, please.

18   A.   Yes.  "In October 2009 Barnes & Noble launched Nook" --

19           MR. CABRAL:  Plaintiff would lodge an objection to the

20   extent defense counsel is having the witness read the document

21   and asking questions unrelated to the document.  More so the

22   fact that we are spending a lot of time reading the document

23   into evidence at this point.

24           THE COURT:  Overruled.

25   A.   "In October 2009 Barnes & Noble launched Nook, the

Eafradr4                              Hilt - direct

1    Q.   Was competition a risk?

2    A.   Incredibly fierce competition was a risk.

3    Q.   I turn your attention to page 25 of that document in front

4    of you.  Can you read for us towards the bottom of the page the

5    first full paragraph, the last four sentences.

6    A.   "In addition, Barnes & Noble faces competition from the

7    expanding market for digital content and hardware, including,

8    without limitation, electronic books, or ebooks, and ebook

9    readers and digital distribution of content.  New and enhanced

10   technologies, including new digital technologies and new web

11   services technologies, may increase Barnes & Noble's

12   competition.  Competition may also intensify as Barnes &

13   Noble's competitors enter into business combinations or

14   alliances or established companies in other market segments

15   expand into its market segments.  Increased competition may

16   reduce Barnes & Noble's sales and profits."

17   Q.   What competition was contemplated at launch?

18   A.   The core competitor was Amazon.

19   Q.   Prior to the introduction of ereaders, how, if at all, did

20   Barnes & Noble compete with Amazon?

21   A.   Amazon was the first online book seller of a substantial

22   manner.  They were the most significant competitor that we had

23   from the very beginning.

24   Q.   You testified earlier that Amazon's Kindle was launched in?

25   A.   I think it was July -- it was 2007.

1    are talking about Dr. Wang.

2         THE COURT:  So it sounds to me like we may well finish

3    the testimony on Monday, in which case we would have a charging

4    conference on Monday.  I will get you over the weekend a draft

5    of my charge.  You previously submitted your proposed requests

6    to charge.  If there are any further requests, they need to be

7    submitted no later than 5 p.m. on Friday.  Any requests to

8    charge not submitted by 5 p.m. on Friday will not be considered

9    under any circumstances whatsoever.

10        So we will have summations probably on Tuesday

11   morning.  How long does plaintiff want for summation?

12        MR. CABRAL:  One hour, your Honor.

13        THE COURT:  Defense counsel?

14        MR. EDERER:  That will be fine, your Honor.

15        THE COURT:  All right.

16        Now, we are going into a sealed proceeding now.  So we

17   will take a five-minute break.  You can leave all your stuff on

18   the table, but you physically and in the people in the audience

19   also have to clear out.

20        MR. EDERER:  May I raise one issue?

21        THE COURT:  Yes.

22        MR. EDERER:  Yesterday I mentioned to your Honor that

23   there were two of our motions in limine.

24        THE COURT:  Yes.  I'm sorry.  I will look at those

25   tonight.

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ADREA, LLC,

4                    Plaintiff,

5            v.                              13 Cv. 4137 (JSR)

6   BARNES & NOBLE, INC.,
    BARNESANDNOBLE.COM LLC, AND
7   NOOK MEDIA LLC,

8                    Defendants.

9   ------------------------------x

10                                      October 20, 2014
                                        10:05 a.m.
11
    Before:
12                      HON. JED S. RAKOFF

13                                      District Judge

14                          APPEARANCES

15  PROSKAUER ROSE LLP
         Attorneys for Plaintiff
16  BY:  STEVEN M. BAUER
         COLIN CABRAL
17       BRENDAN COX

18  ARNOLD & PORTER LLP
         Attorneys for Defendants
19  BY:  LOUIS S. EDERER
         ALI R. SHARIFAHMADIAN
20       MICHAEL A. BERTA
         SUSAN LEE SHIN
21       YUE-HAN CHOW
         TERI RODRIGUEZ

22

23

24

25

```
1   expired, damages may only be awarded for the period March 2,

2   2012, through December 9, 2012."

3        THE COURT:  OK.  I have no problem with adding that

4   language.  I think it should go at the end of that instruction,

5   now that I look at it.  Do you have an objection?

6        MR. CABRAL:  We would prefer it be simpler, your

7   Honor, and say the damages period for the '851 patent or

8   damages should be awarded to the extent they are for the '851

9   patent from March 29, 2012, to December 9, 2012.

10        THE COURT:  If we are going to do that, we should do

11   it for all three.

12        MR. CABRAL:  There is no end period on the other

13   patents, as they have not expired yet, your Honor.

14        MR. EDERER:  But there is an end period because it is

15   the date today or tomorrow.  It would be November 2009 through

16   to date.

17        THE COURT:  I don't mind your wording as long as it

18   covers all three.  Why don't you jointly get me that wording by

19   certainly no later than 7:30 tonight.  I'll add something to

20   that effect at the bottom of the compensatory damages

21   instruction.

22        MR. EDERER:  Your Honor, if I may, we had also

23   proposed an instruction, which you didn't accept, with respect

24   to the start date for the other two patents.  We had a marking

25   issue which was raised on summary judgment.  You granted with
```

 1   respect to the '851 but not with respect to the '501 and '703

 2   because you said there were issues of fact.  It has to do with

 3   the question of marking and whether or not the patents are

 4   being practiced and whether there was marking.

 5          There was no dispute that there was no marking.  The

 6   dispute is whether or not the patents were being practiced.  If

 7   we are right about that and the jury finds that the patents

 8   were being practiced, then we are entitled to push forward the

 9   start date for those two patents as well to March 29, 2012,

10   because that is the date --

11          THE COURT:  What is the instruction you want?

12          MR. EDERER:  The instruction we are asking for is an

13   instruction which asks the jury to determine --

14          THE COURT:  No, I want the words.

15          MR. EDERER:  It's a fairly lengthy charge.

16          THE COURT:  Yes, it was.  That's why I wasn't going to

17   give it.

18          MR. EDERER:  We can cut it down.  But I think we are

19   entitled to that.

20          MR. CABRAL:  Your Honor, on this issue defendants did

21   not identify any articles they thought were covered by the '501

22   or '703 patents during discovery.  They never identified any

23   patent articles that we would then have to go back and

24   establish were not covered by the patents.  They waived any

25   argument regarding marking.

1    On this issue, your Honor, we wrote a letter to

2    defense counsel on October 4th laying out our position very

3    clearly and the case law supporting our position, which has not

4    been responded to.  I am happy to provide your Honor with a

5    copy of that letter.

6         THE COURT:  I don't know about that.  I'm certainly

7    not going to give the lengthy instruction.  If by 7:30 tonight

8    you want to propose a short instruction that can be added to

9    this general instruction on compensatory damages, I will

10   consider it, keeping in mind the objections just stated.  If

11   you want to submit something right after you receive it as to

12   further objections or anything like that, I will look at that

13   as well.  But I need to have it by 7:30 tonight because we have

14   to put this to bed tonight.

15        I shouldn't say we are putting it to bed tonight with

16   one exception that anything in motions made at the close of all

17   the evidence that affects the charge, obviously that will be

18   taken account of.

19        Turning to instruction number 15, any objections or

20   additions, etc., from plaintiff's counsel?

21        MR. CABRAL:  Your Honor, one moment.  I seem to have

22   lost it in the pile of paper here.

23        No problem, your Honor.

24        THE COURT:  From defense counsel?

25        MR. EDERER:  Which one, your Honor?

1  │ is overruled.

2  │         MR. EDERER:  Your Honor, the second thing we are

3  │ proposing is that the damages be divided up patent by patent,

4  │ which is consistent with the way --

5  │         THE COURT:  They are going to get that instruction

6  │ that we just discussed about the date and all like that.  I

7  │ appreciate the Court of Appeals, to argue your position for a

8  │ moment, always says give us a verdict with 47 special

9  │ interrogatories so that we can make sure that every single

10 │ issue is decided permanently here and we don't have to send it

11 │ back for a new trial, their theory being that they are somehow

12 │ saving the district court or maybe a future Court of Appeals

13 │ panel some problem.  What I think is lacking from that analysis

14 │ is the fact that in every case, but certainly in a patent case,

15 │ to complicate the verdict form in the way that that kind of

16 │ approach entails is actually to just create a recipe for

17 │ confusion rather than clarity.

18 │         If the jury carries out the Court's instructions of

19 │ law as to how to calculate damages, they will be able to arrive

20 │ at damages -- if, for example, they find there is infringement

21 │ on one patent but not on two others -- that will reflect that

22 │ fact.

23 │         Will the Court of Appeals necessarily know that fact,

24 │ and therefore, if they find that there is a reason for over-

25 │ turning one of those infringement determinations or something

 1    like that, will they know how to reserve at damages?  No, they

 2    won't, and that is a shame.  But that problem is more than

 3    offset by the need make sure that the jury is not placed in

 4    a position of endless difficulty, confusion, and angst.  So,

 5    that request is denied.

 6            MR. EDERER:  You have our position on that.

 7            This one I think you may actually agree with us on,

 8    your Honor.

 9            THE COURT:  I have agreed with you on so much.  It is

10    hard to believe what an agreeable person I am.  Go ahead.

11            MR. EDERER:  What you have now as paragraph 3(b) in

12    your verdict form, it should have a "yes" and a "no" box

13    underneath it.

14            THE COURT:  Yes, you are right.  Of course, if this

15    were an SEC case, we could put yes, no, or neither admit nor

16    deny.

17            Anything else?

18            MR. BAUER:  Just a couple of procedural issues

19    regarding tomorrow, your Honor.  The jury has not touched the

20    patents yet.  They won't even know where to find the claims in

21    the back.

22            THE COURT:  I asked that you prepare an appendix.  I

23    think my law clerk sent you an email to this effect.  In the

24    instructions under infringement, I specifically say attached to

25    this set of instructions is an appendix with all the claims.

EAL8ADR1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    ADREA, LLC,

4                    Plaintiff,

5            v.                          13 Cv. 4137 (JSR)

6    BARNES & NOBLE, INC.,
     BARNESANDNOBLE.COM LLC, AND
7    NOOK MEDIA LLC,

8                    Defendants.

9    ------------------------------x

10                                       October 21, 2014
                                         10:05 a.m.
11
     Before:
12
                        HON. JED S. RAKOFF
13
                                         District Judge
14

                              APPEARANCES
15
     PROSKAUER ROSE LLP
16        Attorneys for Plaintiff
     BY:  STEVEN M. BAUER
17        COLIN CABRAL
          BRENDAN COX
18
     ARNOLD & PORTER LLP
19        Attorneys for Defendants
     BY:  LOUIS S. EDERER
20        ALI R. SHARIFAHMADIAN
          MICHAEL A. BERTA
21        YUE-HAN CHOW
          SARAH BRACKNEY ARNI
22        SUSAN L. SHIN

23

24

25

                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

EAL8ADR4                         Barnes - direct

1            THE WITNESS:  I did, your Honor.

2            THE COURT:  Go ahead, counsel.

3    BY MR. EDERER:

4    Q.  How did you go from the lump sum payments that were made in

5    the Amazon agreement to a per unit royalty rate as you just

6    described?

7    A.  I had to convert them to a per unit by taking into account

8    actual and estimated sales that I believe ADREA and Amazon

9    would have considered when they entered into that agreement.

10   Q.  Why did you convert these payments to a per unit rate?

11   A.  Well, I believe it's the best way really to account for the

12   significant size difference between Amazon and Barnes & Noble

13   and the fact that Amazon sales of licensed products were much,

14   much greater than Barnes & Noble sales of licensed products.

15   Q.  So what is the relevance of the actual amount of money paid

16   by Amazon to ADREA?

17   A.  I think it's only relevant in the context of the number of

18   sales, actual and expected sales.

19   Q.  Now, what years of Amazon sales did you look at?

20   A.  I looked at historical sales that covered the period 2008

21   through 2011.

22   Q.  What data did you use to determine Amazon sales for the

23   years 2008 to 2011?

24   A.  I utilized actual Amazon -- actual sales data from Amazon's

25   own business records.

EAL8ADR4                    Barnes - direct

1    Q.   For what period of time?

2    A.   For 2008, 2009, and 2010.  And then there were partial year

3    estimates for 2011.

4    Q.   Did you use anything else in connection with your analysis

5    of data of Amazon sales for the year 2011?

6    A.   Yes.  In order to get a better handle on 2011 full year

7    sales, I collected information or I obtained information from a

8    market research firm called IDC, which is in the business of

9    analyzing various markets and putting that type of data

10   together.  So I obtained that information for 2011.

11        MR. EDERER:  Can we put up DDX 1008, please?

12   Q.   Now, we have a slide, Mr. Barnes.  What are we looking at

13   here?

14   A.   Well, this is the sales data that we were just discussing

15   for 2008, which is when Amazon first introduced its Kindle

16   products, through 2011.

17   Q.   According to this table, the estimated actual sales for

18   2011 that you used reflected a pretty big jump over the

19   previous year.  Do you see that?

20   A.   I do.

21   Q.   Did you do anything to test the reliability of the IDC data

22   that you used as estimated actual sales for 2011?

23   A.   Yes, I did.  As I mentioned previously, I did have from

24   Amazon's own records estimates.

25        MR. BAUER:  Objection.  Outside the scope.

Ealradr4                    Barnes - direct

1    downward pressure on the rates.  By not making a downward

2    adjustment in the rates that I derived from the Amazon

3    agreement, I believe my calculations have been very

4    conservative.

5    Q.  Let's talk about the damages calculations themselves, or

6    the royalty rate calculations, if you will.  Could you briefly

7    explain how you actually came to those 8-cent, 4-cent, and

8    2-cent numbers before we go through this slide.

9    A.   Sure.  I think I already did that when I explained how I

10   took the unit sales, both historical and projected, and I

11   divided those into the total payments that were made under the

12   Amazon agreement, accounting for the discount factor that I

13   discussed earlier.  Once I did that, I came up with the 8 cents

14   for the Discovery portfolio, which again I attributed 100

15   percent to the '851 and the '501.  When you multiply that 8

16   cents to the unit sales that were made by Barnes & Noble

17   through June 30, 2014, you get a total damages figure of

18   569,306.

19   Q.  That's for the '851 and '501 together, right?

20   A.   That is.

21   Q.  The starting point for this calculation is December 1,

22   2009, is that right?

23   A.   It is.  But remember the '851 is only -- the damages period

24   for the '851 is only that 8½-month period from March 29, 2012,

25   to December 9, 2012.  All other periods in that date range at

1    the top there, the rate is only 4 cents.  For those other

2    periods, only the '501 would be included in the calculation.

3    Q.  You did a calculation for the '501 only at 4 cents for the

4    period indicated at the header of the slide, correct?

5    A.  That's correct.  For the entire period '501 only at 4

6    cents, it's $478,099.

7    Q.  Then if you take the '501-only number and subtract it from

8    the '851-'501 together number, what does that come out to?

9    A.  The difference is approximately $91,000 for the '851 by

10   itself.

11   Q.  We see also some dates in parentheses next to the words

12   "'851 only."  Can you explain the significance of those dates.

13   A.  Yes.  Those are the same dates that I have been discussing

14   earlier, March 29, 2012, to December 9, 2012.  That's the

15   8½-month period for which damages may apply if the '851 patent

16   is found to be valid and infringed.

17   Q.  Then there is a number at the bottom of that slide for the

18   '703 patent only.  Do you see that?

19   A.  Yes.

20   Q.  Can you explain how you calculated that number.

21   A.  That is for the entire date range at the top.  That is all

22   the units that were sold during that time period multiplied by

23   the 2-cent royalty for the '703 patent.

24   Q.  In your analysis, Mr. Barnes, are these the maximum amounts

25   of damages that would be awardable for these three patents for

Ealradr4                     Barnes - direct

1    the period that you calculated them?

2    A.   Yes.  You would not want to add them all together, because

3    there is some overlap between a couple of them, but yes.

4    Q.   Explain that overlap.

5    A.   If we took all three patents, for example, said all three

6    are valid and infringed, then you would take the top line and

7    the bottom line.

8    Q.   The 569 and the 239?

9    A.   Right.  I think that is roughly $808,000.

10   Q.   If you did the same thing with each patent by itself, the

11   478, the 91, and the 239, you would come out with that same

12   $808,000 number?

13   A.   That's correct.

14            MR. EDERER:  No further questions, your Honor.

15            THE COURT:  Cross-examination.

16            MR. BAUER:  Thank you, your Honor.

17   CROSS-EXAMINATION

18   BY MR. BAUER:

19   Q.   Hello, Mr. Barnes.

20   A.   Hello.

21   Q.   You spoke a lot about economics.  You don't have any degree

22   in economics, do you?

23   A.   My degree is in accounting.

24   Q.   Before you were retained here, you had no particular

25   experience in the ereader space, correct?

Eakradr4                              Barnes - cross

1          MR. BAUER:  Thank you, your Honor.

2          (Jury not present)

3          THE COURT:  Mr. Barnes, you can step down.  During

4   your cross you should not discuss the case with anyone.

5          THE WITNESS:  Yes, your Honor.

6          (Witness not present)

7          THE COURT:  With respect to the charge, let me ask

8   plaintiffs first, are you going to be calling Mr. Wang or not?

9          MR. CABRAL:  We do plan on calling Mr. Wang, your

10  Honor.

11         THE COURT:  Really?  Why?

12         MR. CABRAL:  Just for a brief rebuttal to some of the

13  validity opinions.

14         THE COURT:  Brief rebuttal to?

15         MR. CABRAL:  To some of the validity opinions that

16  were rendered by Dr. Neuman.

17         THE COURT:  The only typo I found was on page 14.

18  I'll fix it.  It was "some meaning."  It should have been "same

19  meaning."

20         With respect to the one and only issue that I am going

21  to hear argument on, the one and only issue I'm going to hear

22  argument on, which is the last paragraph of instruction number

23  12 on compensatory damages and the related issue of marking,

24  I'll start with the marking part.  I still have not heard any

25  evidence on the issue of marking.  Unless someone from the

Eakradr4                              Barnes - cross

1    defense can tell me there is such evidence, we are not going to

2    say one word in these instructions about marking.

3                MR. EDERER:  Your Honor, are you asking me?

4                THE COURT:  You're the defense last time I checked.

5                MR. EDERER:  I'm sorry.  I didn't hear you.  The issue

6    here, your Honor, is with respect to the issuance of the

7    license, such as the Amazon license in this case.  There was

8    also a license issued to Sony.  The issue is did the plaintiff

9    demonstrate that there was marking and/or that if there was no

10   need to mark because the product did not practice the patent.

11               The case law is clear that at this point in time if

12   there is a license, such as the Amazon license, the burden goes

13   to the plaintiff to demonstrate either that the product was

14   marked or, if it wasn't marked, that the products did not

15   practice the patent.  That was the premise of the summary

16   judgment motion in this case.  That is the reason why your

17   Honor ruled in favor of Barnes & Noble with respect to the '851

18   patent.  You found that --

19               THE COURT:  Excuse me.  If you're right about that,

20   then there is still no instruction on the issue of marking.  My

21   question to you was, was there any evidence of marking?  With

22   respect to marking, any evidence about that issue at all?  The

23   answer is there was none.

24               If you're right about the burden, then the instruction

25   in the present way it reads follows.  If you're wrong about the

Eakradr4                        Barnes - cross

1   burden, then we have to put a different date on.  But neither

2   way do we have to have any of this gobbledygook about marking.

3           MR. EDERER:  Understood, your Honor.

4           THE COURT:  Let me hear now from plaintiffs.  What I

5   understand defendant to be arguing is that because Amazon,

6   after the settlement, had a license to utilize these patents

7   and the marking section, what is it again --

8           MR. CABRAL:  287, your Honor.

9           THE COURT:  Thank you.  -- kicked in so that your

10  damages, if there was no marking, would be from the time of

11  actual notice, which was March 29, 2012.  If they are wrong

12  about that kicking in, then it is from the date of

13  infringement, which is December 1, 2009 or two-thousand --

14          MR. CABRAL:  2009, your Honor.

15          THE COURT:  2009, yes.  The only question now, we are

16  down to one little issue, which is on the very last line of

17  this:  Should the date be March 29, 2012 or December 1, 2009?

18  What is your argument as to why the statute did not kick in?

19          MR. CABRAL:  Your Honor, what we are talking about

20  here is a short window between November 2011, which is the

21  execution of the Amazon license, and March 2012, which is the

22  date of actual notice.  You're talking about a four-month

23  window here.

24          The litigation that Mr. Ederer referenced, that

25  related to the '851 patent.  Your Honor decided that issue on

Eakradr4                          Barnes - cross

1    summary judgment because the Amazon Kindle products were

2    accused of infringing the '851 patent. So we couldn't very

3    well argue that they were not patented articles in the sense as

4    that term is used in section 287.

5          The lending patent, the '501 patent, is not accused in

6    that case.  The Kindle products were never accused of

7    infringing the '501 patent.  Our point of view, your Honor, and

8    we cited some case law to this effect, is that there is no

9    doubt that the plaintiff, the patent holder, has the ultimate

10   burden of proving compliance with 287.  But the defendant also

11   bears some burden of identifying products that would be covered

12   under the patents that would trigger the implication of 287.

13         THE COURT:  OK, I understand that argument.  Let me

14   hear from defense.

15         MR. EDERER:  Your Honor, I think it becomes a burden

16   issue once again.  At this point when there is a license, the

17   burden is upon the plaintiff.

18         THE COURT:  They are saying the license doesn't relate

19   to these two other patents.

20         MR. EDERER:  It certainly does.  The license encom-

21   passes these two other patents.  The license encompasses the

22   entire portfolio of patents, which includes these other

23   patents.  And there has been testimony in this case --

24         THE COURT:  If I understand what plaintiff is saying,

25   the litigation against Amazon only accused them of violating --

Eakradr4                              Barnes - cross

1          MR. EDERER:  The '851.

2          THE COURT:  Yes, thank you.

3          MR. CABRAL:  Yes, your Honor, the '851 and an

4    unrelated patent as well.

5          THE COURT:  They say that although as part of a

6    settlement they got this agreement, a reasonable person in

7    their position would not have believed that the '501 or '703

8    patents had been the subject of any accusation of infringement

9    and therefore the marking section doesn't kick in, if I

10   understand it.  That is the argument, I think.

11         MR. EDERER:  Right.  That is not dispositive, your

12   Honor.  In fact, you denied summary judgment with respect to

13   those other two patents because of the question whether Amazon

14   and/or Sony, but let's focus on Amazon, was actually practicing

15   those two patents and therefore needed those licenses

16   notwithstanding the question of whether those licenses --

17         THE COURT:  I understand the issue.  I will decide it

18   and let you know at 2 o'clock.  Yes, you wanted to say

19   something?

20         MR. CABRAL:  Yes, your Honor.  The only thing I would

21   add is that the issue here is illustrated by the fact that had

22   defendants identified any particular products that were covered

23   by these patent during Discovery, which they did not do, we

24   then could have come forward and shown why the patents or at

25   least established why the patents didn't apply to those

EAL8ADR5

1                              AFTERNOON SESSION

2                                  2:00 p.m.

3         (Jury not present)

4              THE COURT:  So I adhere to the instructions in the

5    fashion that I gave it to you, essentially adopting defendants'

6    view of the issue.  So I will ask my law clerk to hand each

7    side the final instructions.

8              Let's bring in the jury.

9              MR. EDERER:  May I raise one issue in light of your

10   ruling?

11             THE COURT:  Yes.  You feel mortified that I ruled in

12   your favor and you want to seek reargument?

13             MR. EDERER:  No objection.

14             We were awaiting the results of the ruling.  We did do

15   a calculation from the date March 29 forward for all three

16   patents, which we didn't present because we were awaiting the

17   results of your ruling.  So we would like to be able to conduct

18   redirect with Barnes to ask him to provide that calculation.

19             THE COURT:  All right.  Let me hear from plaintiff.

20             MR. BAUER:  My cross is based on the numbers that he

21   has just done.  What we would ask, because this is an issue of

22   law, is that we just let the jury do it with the numbers they

23   have, and you can correct it in posttrial briefing.

24             THE COURT:  I think it would be aiding the jury to

25   have this calculation.  Here is what I think does make sense.

EAL8ADR5

1   Assuming we are going to do all the things you folks told me

2   about, I do not think it would be fair to plaintiff having to

3   give a summation today, or even part of a summation today.  I

4   don't think that is fair.  So we will have summations first

5   thing tomorrow followed by the charge, and as a result of that,

6   if you want to take a little bit more time or have a more

7   lengthy recross after that comes out, I will certainly permit

8   that.  I am still going to hold the videotape to 38 minutes,

9   but I think it would be not fair to, as I thought about it, the

10  way it was probably going to work out, given everyone's timing,

11  that plaintiff would sum up today and defendant would sum up

12  tomorrow.  I don't think that's really fair to the plaintiff,

13  unless you want to do that.  I can exclude that possibility if

14  you want it, but it seems to me it wouldn't be equal treatment.

15          MR. BAUER:  We were just going to ask your Honor what

16  time we needed to finish.  We didn't want to split the closing

17  either, and I was going to ask your Honor what time I needed to

18  be finished if you wanted to get the closing in today.  But I

19  am just not sure, if it's a 5:00 hard break --

20          THE COURT:  I think where we are winding up, and I

21  will apologize to the jury because it is totally my fault, is

22  we will finish the evidence today.  We will hear any motions

23  anyone wants to make outside the presence of the jury.  We will

24  have summations at 9:00 tomorrow morning, followed immediately

25  by the charge.  They still will have the case by late morning

EAL8ADR5

1    tomorrow.

2              OK.  Let's bring in the jury.

3              Before defense counsel starts your redirect, I will

4    explain to the jury that there is one portion of this that had

5    to await a ruling by the Court so that both sides will know

6    what is coming in.

7              (Jury present)

8    NED BARNES, resumed.

9              THE COURT:  Counsel.

10             MR. BAUER:  Thank you, your Honor.

11   BY MR. BAUER:

12   Q.  All right, Mr. Barnes.  We were talking about what the

13   parties would know under this book of wisdom.

14             So they are doing the negotiation in late 2009.  But

15   as you said, we are not limited to the information they would

16   have had in 2009, correct?

17   A.  That is correct.  We don't put blinders on it in a

18   hypothetical negotiation.

19   Q.  So in this respect, the parties would know that Amazon

20   entered into an agreement with ADREA on November 10, 2011,

21   right?

22   A.  I think that the information concerning the agreement would

23   certainly have been a relevant consideration.

24   Q.  Let's just put that on here, November 10, 2011.  That's the

25   Amazon/ADREA agreement, and it's 11/10/11, right?

EAL8ADR5

1    A.   Yes, I believe I have.

2    Q.   What evidence did you see that they were negotiating a per

3    unit royalty?

4    A.   Well, a royalty on a per unit basis associated with a

5    percentage of revenue.

6    Q.   A percentage not per unit, right?

7    A.   But it's per unit -- dollars per unit and percentage of

8    revenue are both, in my vocabulary those would both be per

9    unit.

10   Q.   In this regard, from your calculations here, you were given

11   actual sales data for Amazon for 2008, 2009 and 2010, right?

12   A.   That is correct.   And part-year estimates for 2011.

13   Q.   Well, let's look at the data that you had to try to

14   calculate the number of units to divide into that 12.5 million.

15        We can go to your source, but this was your document

16   DDX 1008?

17   A.   This is a slide that was prepared, yes.

18   Q.   And under licensed units, that's the number of actual

19   Amazon sales for those three years, 2008, 9 and 10?

20   A.   Those two years are there, plus 2011, yes.

21   Q.   I said 2008, 2009, 2010, that's three years.

22   A.   I am just referring to the exhibit.   But yes, the three

23   years you referred to are on this exhibit, yes.

24   Q.   Let's just see what the Amazon sales were.

25        For 2008, let's just do actual Amazon.   For 2008,

EAL8ADR5

1    A.   Approximate, yes.

2    Q.   And this is actual Barnes & Noble.

3            Then I just want to get the actual Barnes & Noble

4    numbers through the time of the Amazon agreement.

5            To the time of the Amazon agreement, are the actual

6    numbers approximately 4 million units?

7    A.   What period of time are you asking me to look at?  That

8    doesn't look like 4 million to me.

9    Q.   Let me leave it at 2010.

10           In 2010, in the first year Barnes & Noble was on the

11   marketplace, they had about 40 percent, they gained about 40

12   percent -- not gained -- they grew to be about 40 percent the

13   size of Barnes & Noble, right?

14           MR. EDERER:  Objection.  Foundation.

15   A.   I'm sorry.  You said grew to 40 percent of Barnes & Noble.

16   That didn't make sense.

17   Q.   Let me ask the question again.

18           We have actual Amazon sales 5.3 million, right?

19   A.   Yes.

20   Q.   In 2010, actual Barnes & Noble sales are about 2 million,

21   right?

22   A.   Correct.

23   Q.   In the year 2010, Barnes & Noble was about 40 percent the

24   size of Amazon?

25   A.   2 million is a little bit less than 40 percent of 5.3, yes.

EAL8ADR5

1    Q.   So about 40 percent?

2    A.   A little bit less, but yes.

3    Q.   And that percentage continued up until the day of the

4    Amazon agreement, right?  Do you know that?

5    A.   What percentage?

6    Q.   For 2011, up until November 2011, so January 2011 to

7    November 2011, Barnes & Noble continued to be about 40 percent

8    of the size of Amazon?

9    A.   I don't believe that's accurate, no.

10   Q.   Let me show you, please, DTX 787.

11            Do you have a book of exhibits in front of you?

12            We haven't given you the exhibits yet.

13            MR. BAUER:   Your Honor, I have a book for you.

14   Q.   Do you have DTX 787?

15            MR. EDERER:   Objection, your Honor.   Hearsay.

16   Foundation.

17            THE COURT:   I don't hear him offering it yet.

18   A.   I see that exhibit.

19   Q.   DTX 787 is a document you cited in your report, correct?

20   A.   As I sit here right now, I don't have a specific

21   recollection, but it's possible.

22   Q.   Do you want to take a look at your footnote 164 of your

23   report?

24   A.   This appears to be a document that I considered in

25   connection with my report.

EAL8ADR5

1    Q.  Not just considered, cited for the accuracy of the numbers.

2    You relied on the numbers in this document, correct?

3    A.  I don't recall what I relied on it for.  I would have to

4    look at it again.

5    Q.  Look at paragraph 58 of your report.

6           In your report you stated, "Amazon was an established

7    leader in the e-reader market with a reported market share of

8    more than 50 percent," right?

9    A.  Right.  I cite to a different document and then I also cite

10   to this document.

11   Q.  That's right.

12          MR. BAUER:  Your Honor, I offer Defendants' Exhibit

13   787.  It comes off their list.  I think they waive any

14   objection to it.

15          MR. EDERER:  Objection, your Honor.  Hearsay.

16          THE COURT:  Let me see your report.

17          What was the page again?

18          MR. BAUER:  Page 34, your Honor, paragraph 158.

19          We can get you your own copy of the report.  Right in

20   the middle of the report there is 164 as a footnote.

21          THE COURT:  I see it.

22          MR. BAUER:  I have an extra copy.  I can give it to

23   the witness.

24          THE COURT:  Yes, please.

25          Sustained.

EAL8ADR5

```
 1   BY MR. BAUER:
 2   Q.  Sir, you relied on this document in forming your opinions,
 3   right?
 4   A.  As we just discussed, I cited this document in connection
 5   with a particular statement in my report.
 6   Q.  And the statement you cited it for was that the Kindle's
 7   market share was 51.7 percent, right?
 8   A.  I think --
 9           THE COURT:  The actual statement in his report, give
10   me that page again.
11           MR. BAUER:  I was reading the sentence from the
12   document that he used to generate it.
13           THE COURT:  I'm sorry.
14           Go ahead then.
15           MR. EDERER:  Objection.  Hearsay.
16           THE COURT:  Give me again the page of the report.
17           MR. BAUER:  Page 34.
18           THE COURT:  The relevant sentence of the report, which
19   itself is hearsay but hearsay that's been waived, reads:  "The
20   market conditions surrounding the Amazon agreement were
21   significantly different than comparative market information
22   that was available at the time of the hypothetical negotiation.
23   For example, at the time of the Amazon agreement, Amazon's
24   Kindle e-readers had been on the market for over four years and
25   Amazon was an established leader in the e-reader market with a
```

EAL8ADR5

1    reported market share of more than 50 percent."  And the

2    footnote then cites to several sources, articles.

3            So the objection is sustained.

4    BY MR. BAUER:

5    Q.  The document you relied on was a Web site?

6    A.  Are you talking about this document?  It's an article.

7    Q.  It was an article that you found on the Web?

8    A.  It's very likely that it was found on the Internet.

9    Q.  I don't need to deal with what the articles are.  We are

10   lucky.  We have the exact sales figures.  Let's get the exact

11   sales figures for the first three quarters of 2011 for Barnes &

12   Noble.  I thought that would be the easier way to do it, but we

13   will just get it quickly.

14           Going to your Barnes Exhibit 4A, and right in the

15   middle, from January 2011, let's take it through September

16   2011.  Those are the first three quarters, right?

17   A.  OK.

18   Q.  Just ballpark for me what you think those sales are for the

19   first three quarters, actual sales for Barnes & Noble.

20           MR. EDERER:  Objection, your Honor.

21           May we approach?

22           THE COURT:  You may approach, but I don't see anything

23   objectionable in the question just put.  If there is some other

24   issue you can approach.

25           MR. EDERER:  There is some other issue.

EAL8ADR5

1           THE COURT:  Come up.

2           (At the sidebar)

3           THE COURT:  Before we get to your issue, just to

4      elaborate on the last ruling.  The mere fact that the defense

5      lists an exhibit doesn't mean that they waive all objections to

6      it if used for some other purpose or offer it for some other

7      purpose after they haven't offered it by the defense.

8           In the case of this particular article, the expert was

9      citing it for the fact that Amazon had been reported -- and the

10     newspaper article itself indicates it wasn't reported like in

11     an SEC filing or anything like that, it was reported from

12     another hearsay nongovernmental source -- to have more than 50

13     percent of the market.  That doesn't remotely open the door to

14     plaintiffs relying on that article to show that what the

15     article -- again, in total double hearsay form -- reports about

16     Nook sales for that same period is something that this expert

17     is vouching for, let alone that it's admissible in evidence.

18     So that was the reason I sustained the objection.

19          Now, what is the new problem?

20          MR. EDERER:  I would like to take this one step

21     further, your Honor.  Because what is going on here now is that

22     Mr. Bauer is attempting to create for the jury in a prejudicial

23     way the false inference that they should take the $12.5 million

24     that was paid by Amazon, which related to a 300 patent

25     portfolio, and they should simply take the difference between

EAL8ADR5

1    whatever the percentage of the market Amazon had and whatever

2    percentage of the market Barnes & Noble had, do a quick math

3    calculation, and $6 million.  This is going back to what

4    Professor Magee was exactly doing and why he was excluded.

5    This is where this is all leading.

6              THE COURT:  I don't think so.  At least he hasn't done

7    that yet.  I think he is, at a minimum, attempting to show that

8    some of the assumptions that underlay the witness's treatment

9    of the Amazon settlement were arguably misplaced.  So, for

10   example, he showed right before the lunch break that Barnes &

11   Noble would have had very different motivations or a greater

12   degree of motivation than Amazon would to have entered into

13   that agreement.  That was maybe right, maybe wrong, but that

14   was a fair argument to bring to the jury's attention.  And now

15   I think he is on the way to bring to their attention another

16   possibility.

17             So I am going to allow this.  This is without

18   prejudice to any objections you want to make about his

19   summation, if he is going to say what you think he is going to

20   say, but I don't know that yet.

21             MR. BAUER:  Your Honor, the witness has said that the

22   Amazon agreement is the single best market value.  I am going

23   to ask him that if Barnes & Noble had 40 percent of the market

24   on that day, why wouldn't he have valued the agreement at $5

25   million?

EAL8ADR5

1          THE COURT:  I think that is a fair argument as

2     impeaching his methodology.  That doesn't mean that you should

3     be able to argue to the jury on summation that that's what it

4     should be.  Those are two different issues.

5          MR. BAUER:  OK.  Thank you.

6          (Continued on next page)

Ealradr6                          Barnes - cross

1          THE COURT:  The objection is sustained on the grounds

2     of argumentative.  I have a feeling that was probably the last

3     question.

4          MR. BAUER:  Yes, your Honor.

5          THE COURT:  Redirect.

6     REDIRECT EXAMINATION

7     BY MR. EDERER:

8     Q.  Mr. Barnes, on your direct examination I asked you some

9     questions about the per-unit royalty calculation that you had

10    performed and the dollar amount of royalties that you had

11    calculated with respect to the three patents-in-suit coming out

12    of the hypothetical negotiation.  Do you recall that?

13    A.  I do.

14    Q.  Could we put up the previous slide, please.  This was the

15    slide we looked at at that time, correct?

16    A.  I believe you are correct, yes.

17    Q.  I believe you testified that this calculation covers the

18    period December 1, 2009 to June 30, 2014, right?

19    A.  That's correct with the caveat that we discussed about the

20    '851 patent.

21    Q.  Did you do any other calculation with respect to the

22    anticipated royalties that would be paid by Barnes & Noble in

23    the hypothetical negotiation for a different period of time?

24          MR. CABRAL:  Objection, your Honor.  Could we

25    approach?

Ealradr6                          Barnes - redirect

1              THE COURT:  No.  And there is going to be no more side

2     bars.  This redirect is going to be finished in the next ten

3     minutes.  And we are going to finish the evidence in this case

4     today.  That is not a projection.  That is an order.

5              MR. CABRAL:  Thank you, your Honor.

6              THE COURT:  Sit down.  Ten minutes, counsel.

7              MR. EDERER:  Thank you, your Honor.

8     A.  Yes, I did another calculation similar to this that would

9     have the damages period beginning March 29, 2012.

10    Q.  Is this the calculation that you did, Mr. Barnes?

11    A.  Yes, sir, it is.

12    Q.  This is the second calculation, right?

13    A.  Yes, sir.

14    Q.  Can you explain what we are looking at here.

15    A.  Yes.  These are all the rates that we discussed earlier.

16    None of that has changed.  All I have done here is I have

17    applied the rates to only those sales beginning with March 29,

18    2012.  I understand that for legal reasons.  But this is the

19    calculation that would reflect the total damages if damages

20    began on March 29, 2012, and go through June 30, 2014.

21    Q.  That is broken down between the three different patents,

22    right?

23    A.  Yes, it is, the '851 and '501 together and then the '3

24    individually.

25    Q.  The number for the '851 hasn't changed from the previous

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ealradr6                    Barnes - redirect

1   calculation, right?

2   A.   That's right, because the '851, even under the previous

3   calculation, the damage period for the '851 was limited to

4   March 29, 2012, to December 9, 2012, the same 8½-month period.

5   Q.   This calculation was done using the same royalty rates that

6   you had applied to your other calculation, right?

7   A.   The exact same royalty rates.

8   Q.   What is the total amount for the three different patents

9   based upon this calculation starting from March 29, 2012, for

10  the three of them?

11  A.   It's approximately $405,000.

12  Q.   Is it your opinion, sir, that that is the maximum amount of

13  damages that ADREA would be entitled to should it demonstrate

14  that all three patents-in-suit have been infringed and are

15  valid using March 29, 2012, as a starting point?

16  A.   That is correct.

17  Q.   Mr. Barnes, you were asked some questions on direct

18  examination about the potential for Barnes & Noble to be, I

19  think the word that was used was desperate going into the

20  hypothetical negotiation because they had spent lots of money

21  leading up to that point and would really, really need that

22  license.  Do you recall that?

23  A.   I recall the questions, yes.

24  Q.   Isn't it the case that the rules under Georgia-Pacific

25  involve a willing licensor and a willing licensee?

Ealradr6                          Barnes - redirect

1           (Witness excused)

2           THE COURT:  Ladies and gentlemen, we will take a

3    10-minute break at this time.  I am going to try to hold it to

4    10 minutes.  As you can see, we are running behind.  We are not

5    going to have summations until first thing tomorrow morning,

6    but we are going to finish the evidence today, I guarantee you

7    that.  See you in ten minutes.

8           (Jury not present)

9           THE COURT:  It is 3:29.  At 3:39 we will bring in the

10   jury and begin the tape.  It had better be 38 minutes, because

11   if it's 39 the jury will not hear the last minute because we

12   will cut it off.

13          MR. EDERER:  Your Honor, we are prepared to cut one of

14   the two depositions.

15          THE COURT:  That's good.

16          MR. CABRAL:  Your Honor, we may be able to tell you

17   after the break if we intend to call Dr. Wang as well.

18          THE COURT:  All right.

19          MR. BAUER:  We are all tired, your Honor.

20          THE COURT:  That's all fine.  Sounds good to me.

21   There anything I can do to make you more tired?  We'll see you

22   in ten minutes.

23          (Recess)

24          THE COURT:  What did the defense decide about the

25   depositions?

Ealradr6

```
 1              MR. EDERER:  We are going to play one deposition, your
 2    Honor.
 3              THE COURT:  Which one?
 4              MR. EDERER:  Shawn Ambwani.
 5              MS. ARNI:  Before we begin the video, we move the
 6    admission of five documents:  Defense Exhibit 644, Defense
 7    Exhibit 646, Plaintiff's Exhibit 120, Defense Exhibit 55, and
 8    Defense Exhibit 272.
 9              THE COURT:  Any objection?
10              MR. BAUER:  We don't know what those are, your Honor.
11              THE COURT:  They were the ones referenced in the
12    deposition that both sides --
13              MR. BAUER:  Then there is no objection.
14              THE COURT:  Give me those numbers again.
15              MS. ARNI:  Certainly, your Honor.  Defense 644,
16    defense 646, plaintiff 120, defense 55, and defense 272.
17              THE COURT:  Those are all received.
18              (Plaintiff's Exhibit 120 received in evidence)
19              (Defendant's Exhibits 55, 272, 644, and 646 received
20    in evidence)
21              MR. BAUER:  As for that Amazon document, the January
22    11, 2011, document they objected to, we have a stipulation from
23    them.  "The parties accept representation that the two Amazon
24    documents are business records of Amazon created and maintained
25    in the ordinary course of business and accordingly agree not to
```

EAL8ADR7

1          MR. CABRAL:  We have one issue, your Honor.

2          THE COURT:  Yes.

3          MR. CABRAL:  It relates to the sentence we discussed

4    earlier that was the subject of your Honor's ruling regarding

5    patent marking.  And not to reconsider your judge's ruling, but

6    to reconsider the accuracy of that language in light of your

7    Honor's ruling on the marking issue.

8          THE COURT:  Go ahead.

9          MR. CABRAL:  Plaintiff believes the law allows it to

10   recover damages prior to the point in time when 271 was

11   triggered which is the subject of your Honor's ruling.  So the

12   law is pretty clear and we have three cases and secondary

13   source available here that says that plaintiffs or patent

14   holders are allowed to recover damages prior to the point in

15   time in which 287 is triggered and there is a marking

16   obligation.  So, your Honor, prior to the obligation to mark,

17   plaintiff is entitled to damages under the law and after the

18   date of actual notice plaintiff is also allowed to recover

19   damages under the law.

20         The only issue in this case, in light of your Honor's

21   ruling that there was an obligation to mark products under the

22   '703 and '501 patents, the only period that that affects is

23   that four-month window in between the Amazon license and the

24   date of actual notice in March of 2012.

25         THE COURT:  Let me hear from defense counsel.

EAL8ADR7

1          MR. SHARIFAHMADIAN:  Your Honor, this is an issue of

2     the plaintiff having waived this issue.  They have not raised

3     it at any time during this case.

4          THE COURT:  Oh, no, no.  The very argument he just

5     made, he has made before.  I can remember him making that

6     argument.

7          MR. SHARIFAHMADIAN:  Yesterday for the first time,

8     after your Honor said that anything not raised in jury

9     instructions sent on Friday would be waived and would not be

10    part of the jury instructions.

11         THE COURT:  Last night I got from both sides all sorts

12    of untimely unsolicited communications which of course I was

13    thrilled to receive but I did consider it.

14         So on the merits, do you have any answer to the point

15    just made?

16         MR. SHARIFAHMADIAN:  If I may have one second?

17         THE COURT:  Yes.

18         MR. SHARIFAHMADIAN:  Our position would be that there

19    is nothing in the language of 287 itself that requires parsing

20    of the time period in this matter.  There was an obligation to

21    mark.  Your Honor has ruled that it has come into effect and

22    therefore --

23         THE COURT:  I must say, I think 287 is a strange

24    statute.

25         MR. CABRAL:  Plaintiff will offer the cases in the

EAL8ADR7

1    secondary source if it is helpful.

2         THE COURT:  Here is what I am going to do on this

3    because I am running out of time.  I teach at Columbia tonight

4    and I have to hear this other matter.

5         So you would have it read what?

6         MR. CABRAL:  I will bring up the exact language, your

7    Honor.

8         It relates to the last sentence, your Honor.

9         THE COURT:  You would say for the '501 and '703

10   patents, however, damages should run from December 2009 through

11   the date of your verdict except for -- and then we would

12   specify that four-month period?

13        MR. CABRAL:  It would be November 10th of --

14        THE COURT:  How can they even apply that, given the

15   evidence in this case?  They don't have the data to separate

16   out that four months.

17        MR. BAUER:  We have no objection to giving them those

18   four months or resubmitting the numbers.

19        THE COURT:  I don't have time.  I want both sides to

20   submit by 7:30 tonight -- and I really mean 7:30, not the fake

21   times that I got after 7:30 last night -- to my law clerk what

22   you say that last sentence should say, what case law supports

23   your respective positions -- actually, I take it back, I think

24   it should be the plaintiff who should do this by 7:30 and the

25   defense by 8:00 because the defense has their position stated

EAL8ADR7

1   in the instruction -- and what evidence would then be added to

2   the record before the jury hears summations tomorrow.  So that

3   from plaintiffs by 7:30, response by defendants by 8:00.

4           My class ends at 8:15 so my law clerk will get that

5   stuff to me and I will give you my ruling by sometime this

6   evening.

7           Anything else?

8           MR. CABRAL:  No, your Honor.

9           MR. SHARIFAHMADIAN:  No, your Honor.

10          THE COURT:  Very good.

11          (Adjourned to October 22, 2014, at 9:00 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ADREA, LLC,

4                  Plaintiff,

5            v.                         13 Cv. 4137 (JSR)

6   BARNES & NOBLE, INC.,
    BARNESANDNOBLE.COM LLC, AND
7   NOOK MEDIA LLC,

8                  Defendants.

9   ------------------------------x

10                                 October 22, 2014
                                   9:40 a.m.
11
    Before:
12                    HON. JED S. RAKOFF

13                                 District Judge

14                     APPEARANCES

15  PROSKAUER ROSE LLP
         Attorneys for Plaintiff
16  BY:  STEVEN M. BAUER
         COLIN CABRAL
17       BRENDAN COX

18  ARNOLD & PORTER LLP
         Attorneys for Defendants
19  BY:  LOUIS S. EDERER
         ALI R. SHARIFAHMADIAN
20       MICHAEL A. BERTA
         SUSAN LEE SHIN
21       YUE-HAN CHOW
         SUSAN BRACKNEY ARNI
22       TERI RODRIGUEZ

23

24

25

              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

1              Amazon said, your patents aren't infringing, we don't
2       think they are valid, we are in litigation.  Then they settled,
3       they compromised.
4              At this negotiation, Barnes & Noble walks in and says,
5       I know your patents are valid and infringed, I know I need this
6       technology.  They didn't offer, you heard nothing about how
7       they could have worked around this.  They could have told you
8       these were small changes, this was accidental, I could just
9       make a small change, I could have been out of this if I needed
10      the patent, who needed it.
11             You haven't heard one word of evidence, not one word,
12      of how they could have avoided using this technology.  That's
13      what makes these patents valuable.  Right?  No one has told you
14      there was an alternative to using this technology.  No one has
15      told you that.  He tells you the parties would have known about
16      the agreement that Amazon entered.
17             How do you price this?  What we know is that Barnes &
18      Noble was successful against Amazon.  How much did you hear
19      them talk about Barnes & Noble's a startup company, no product?
20      Barnes & Noble is a billion-dollar company.  This is no startup
21      with no money.  And they were successful.  They got to grow
22      almost half the size of Amazon.
23             MR. EDERER:  Objection, your Honor.
24             THE COURT:  Overruled.
25             MR. BAUER:  In the year 2010 Barnes & Noble was about

1   40 percent the size of Amazon.   That's the testimony.

2   2 million units in less than -- in about a year.   All right?

3   They are successful.

4        What does he come in to do?   What does Mr. Barnes tell

5   you would be the right amount?   He tells you 8 cents a unit.

6   How does he get there?   He goes to the Amazon agreement and he

7   wants to divide that Amazon agreement by as big a number as he

8   can to turn it into a royalty rate.

9        Rather than look at how many Amazon had sold up till

10  then and divide it by that number, which was the numbers he has

11  up there -- using his numbers it's about 25 million units,

12  something like that -- rather than dividing what Amazon paid by

13  that and telling you what it was, he projects out for six

14  years.

15       Where did he get those projections?   He made them up.

16  He multiplied numbers by 10 percent when we know that the

17  facts, the facts were that they were going down.   He was coming

18  up with a big number so he can drive the royalty rate down.

19       What we got here, these are the sales numbers he told

20  you were actual.   He knew this when he did that chart.   He

21  says, I don't care what really happened.   That's what he said,

22  I don't care what really happened.   He said, I'm putting in

23  there what I, Mr. Barnes, think the Amazon people were

24  projecting at the time, with no real evidence showing that they

25  were projecting.   For 2011 he put in the number 19 million when

considering.  For the '851 patent, damages may only be awarded

for the period of March 29, 2012, through December 9, 2012.

For the '501 and '703 patents, however, damages should run from

March 29, 2012, through the date of your verdict.

If you find defendants liable for infringement, there

is one last thing you need to determine bearing on damages,

which is whether the infringement by defendants was willful.

The determination of whether defendants' infringement was

willful will not affect the specific amount of compensatory

damages that you will assess, which are not intended to punish

defendants but simply to compensate plaintiff, but it will aid

the Court in determining whether any additional damages must be

assessed.

To prove willful infringement, plaintiff must prove by

clear and convincing evidence that defendants either actually

knew they were infringing plaintiff's patents or, once they

were put on notice of plaintiff's patents, recklessly

disregarded the fact that their actions constituted an

unjustifiably high risk of infringement of that patent.

To determine whether defendants' infringement was

willful, you should consider all relevant facts to the extent

they are supported by credible evidence, including, for

example:

1.  Whether or not defendants intentionally copied a

product of plaintiff;

```
 1                      AFTERNOON SESSION

 2                          2:20 p.m.

 3        (Jury not present)

 4            THE COURT:  So, first of all, I forgot to mention this

 5    morning, and let me note for the record, that last night I

 6    received excellent submissions from both sides on the somewhat

 7    close question of the duration of damages.  I decided in favor

 8    of defendants' position, but I do want to acknowledge that it's

 9    a close call.  If it becomes not mooted by the jury's verdict,

10    I will write a short opinion setting forth the reasons for my

11    determination so that any reviewing court will have the benefit

12    of a more elaborate discussion.

13            Secondly, with respect to the issue that was raised by

14    plaintiff's counsel after summations, I don't think any further

15    instruction is necessary, and I don't think what defense

16    counsel said violated any previous ruling.

17            Let's go back to the original source of all this,

18    which is the ruling from this Court in the Markman hearing.  As

19    I said in my Markman opinion at page 8, "The terms 'a

20    predetermined URL associated with a consumer appliance' and 'an

21    identifier associated with a consumer appliance' require no

22    further construction.  B&N proposes adding the modifier

23    'particular' before 'consumer appliance,' but that would

24    inappropriately rewrite the claim language."

25            Now, I mention this because there was no ruling
```

EAO8ADRF

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    ADREA, LLC,

 4                   Plaintiff,

 5              v.                         13 Cv. 4137 (JSR)

 6    BARNES & NOBLE, INC.,
      BARNESANDNOBLE.COM LLC, AND
 7    NOOK MEDIA LLC,

 8                   Defendants.

 9    ------------------------------x

10                                    October 24, 2014
                                      9:00 a.m.
11
      Before:
12                       HON. JED S. RAKOFF

13                                       District Judge

14
                          APPEARANCES
15
      PROSKAUER ROSE LLP
16         Attorneys for Plaintiff
      BY:  STEVEN M. BAUER
17         COLIN CABRAL
           BRENDAN COX
18
      ARNOLD & PORTER LLP
19         Attorneys for Defendants
      BY:  LOUIS S. EDERER
20         ALI R. SHARIFAHMADIAN
           MICHAEL A. BERTA
21         YUE-HAN CHOW
           SARAH BRACKNEY ARNI
22         SUSAN L. SHIN

23

24

25
```

EAO8ADRF

1    infringement was found."

2             THE COURT:  OK.  If infringement of a valid patent

3    claim or claims was found.

4             LAW CLERK:  OK.  "In determining damages, even though

5    plaintiff bears the burden of proof, you can still consider all

6    evidence including any evidence introduced by the defendants.

7    Finally, if you find in the end that, even taking account of

8    all the evidence, plaintiff has not carried its burden as to

9    any amount of damages but has nonetheless proved infringement,

10   you should --"

11            THE COURT:  Proved infringement of a valid claim or

12   claims.   .

13            LAW CLERK:  "You should award the amount of zero

14   dollars, which is known as nominal damages."

15            THE COURT:  OK.  Good.  I think that is a print, as

16   they say.

17            So I will have my law clerk type it up nicely, put at

18   the bottom Judge Rakoff, send it into the jury, have a copy

19   made for each side and also a copy marked as a court exhibit.

20            Anything else we need to take up now?

21            MR. CABRAL:  Nothing from plaintiff.

22            MR. EDERER:  No, your Honor.

23            THE COURT:  Very good.  Thanks so much.

24            (Recess pending verdict)

25            (Jury not present; time noted:  3:55 p.m.)

EAO8ADRF

1    THE COURT:  I want my law clerk to please read the

2    plaintiff's note.

3    LAW CLERK:  "To the judge:  Requesting Ned Barnes

4    report evidence, DTX 787, and calculator, and James Hilt's

5    testimony."

6    THE COURT:  All right.  If it's in evidence, they

7    should have it.

8    THE DEPUTY CLERK:  It's not in evidence.

9    THE COURT:  Then they can't have it.

10   They can have, obviously, the testimony and they can

11   have a calculator.

12   There is a calculator down at chambers.

13   THE DEPUTY CLERK:  I already have one, Judge.  I have

14   got the calculator.  I have got nine copies of the testimony.

15   THE COURT:  Great.  Let's send that in.  And to speed

16   things up, unless any counsel disagrees, I will just have my

17   courtroom deputy tell them, when the other items are brought

18   in, that the exhibit they mentioned is not in evidence.

19   THE DEPUTY CLERK:  OK.  Are we going to refer to the

20   Barnes report?

21   THE COURT:  I'm sorry.  Read me the note one more

22   time.

23   LAW CLERK:  "Requesting Ned Barnes report evidence,

24   DTX 787."

25   THE COURT:  That seems to be a request for that

# EXHIBIT B



**Proskauer»** Proskauer Rose LLP  One International Place  Boston, MA 02110-2600

October 4, 2014

**By Email**

Louis S. Ederer
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690

Colin G. Cabral
Senior Counsel
d 310.284.5611
f 310.557.2193
ccabral@proskauer.com
www.proskauer.com

Re: *ADREA, LLC v. Barnes & Noble, Inc., et al.*, No. 13-CV-4137 (JSR)

Dear Lou:

The proposed jury instructions reveal genuine disputes between the parties concerning the law relating to 35 U.S.C. § 287 ("Section 287").

*First*, B&N's proposed instructions state that Plaintiff has the burden of identifying and establishing that unspecified Amazon and Sony e-readers are ***not*** "patented articles" under Section 287.  *See* Dkt. No. 76, B&N Jury Instructions, at 75 ("Because the e-readers are sold under a license that includes the patents at issue, ADREA has the burden of proving that the Amazon and Sony e-readers do not utilize the claimed inventions.").  This is not the law.

- *Sealant Sys. Int'l. v. TEK Global S.R.L.*, No. 5:11-cv-00774, 2014 WL 1008183, * 31 (N.D. Cal. Mar. 7, 2014) ("It would be an odd result to require [patentee] to bear the burden to show that its predecessor-in-interest either did not sell any product embodying the patent or, if it did, it complied with the marking statute."); *id.* ("Absent guidance from the other side as to which specific products are alleged to have been sold in contravention of the marking requirement, a patentee . . . is left to guess exactly what it must prove up to establish compliance with the marking statute.").

- *Oracle America, Inc. v. Google, Inc.*, No. 10-cv-3561, 2011 WL 5576228, *3 (N.D. Cal. Nov. 15, 2011) (holding that Google, the accused infringer, "failed to produce evidence establishing acts by Oracle [the patentee] that would trigger the damages limitation in the patent-marking statute" and therefore "did not show that the statute applie[d]"); *id.* ("Because [defendant] did not show that the statute applies, no burden of production is shifted to [patentee] . . .").

- *In re Katz Interactive Call Litig.*, 821 F. Supp. 2d 1135, 1138 (C.D. Cal. 2011) ("Although we recognize that Katz has the burden to prove compliance with § 287, we held that the defendants had the burden to prove that there were patented articles to mark.").

**Proskauer»**

Louis S. Ederer
October 4, 2014
Page 2

- *Unova, Inc. v. Hewlett-Packard Co.*, NO. 02-cv-3772 ER, 2005 WL 6070187, at *1 (C.D. Cal. Dec. 9, 2005) ("The party claiming failure to mark, however, must show that the allegedly non-marked articles were, in fact, patented articles.").

- *Laitram Corp. v. Hewlett-Packard Co.*, 806 F. Supp. 1294, 1297 (E.D. La. 1992) ("To benefit from the § 287 limitation, then, the defendant must show that either the patentee or his agent sold a patented article.").

        *Second*, setting aside the burden of producing evidence, we also disagree with your position that Plaintiff cannot recover damages for infringement of the '501 and the '703 patents prior to the date of actual notice. *See* Dkt. No. 76, B&N Jury Instructions, at 76 ("If you determine that Amazon or Sony e-readers utilize the '501 or '703 patents, and that they have not marked their e-readers with the patent numbers, damages only begin from the date of actual notice of infringement from ADREA to Barnes & Noble, which the Court determined to be March 29, 2012."). Again, this is not the law.

- *Tulip Computer Int'l B.V. v. Dell Computer Corp.*, No. 00-981, 2003 WL 1606081, at *15 (D. Del. Feb. 4, 2003) ("Since § 287(a) is not triggered when the patentee is not producing patented articles, the patentee can recover damages for infringement during this period of time even if, later, § 287(a) is triggered.").

- *WiAV Sol'ns. LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 639-40 (E.D. Va. 2010) ("[T]he Court holds that a patentee is not precluded from collecting damages for a period in which marking was not required even if the requirements of the marking statute were later triggered and the patentee failed to comply. This conclusion is most consistent with the purpose of the statute.").

- *Wokas v. Dresser Indus.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997) ("The Court also holds that [defendant] is potentially liable for any infringement it committed before the Shipping Date [of unmarked products].").

- 2-10 Horwitz on Patent Litigation § 10.23, "Limitations on Damages: Marking and Notice" ("If products sold by the patentee do not practice the claimed invention, the marking requirement is not triggered. Even if a patentee later sells, and fails to mark, products which do practice the invention, the marking statute does not bar recovery of damages during the period in which there was no duty to mark. ***Thus, even if § 287 is later triggered, recovery will not be barred for the time period during which § 287 was not triggered.***") (emphasis added).

**Proskauer》**

Louis S. Ederer
October 4, 2014
Page 3

Given the parties' disagreement on these questions of law, we expect that B&N will make no mention to the jury of the parties' obligations under Section 287 until the Court resolves these issues.  If you intend to address patent marking in your opening statement, please let us know immediately so that we can seek an order from the court before opening statements are made.


Sincerely,

Colin Cabral

# EXHIBIT C

**Chow, Yue-Han**

---

| | |
|---|---|
| **From:** | Chow, Yue-Han |
| **Sent:** | Friday, October 17, 2014 5:00 PM |
| **To:** | Celia_Choy@nysd.uscourts.gov |
| **Cc:** | Adrea-Litigation; sbauer@proskauer.com; Cabral, Colin G. |
| **Subject:** | Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Additional Jury Instructions |
| **Attachments:** | B&N Amended Jury Instructions.docx |

Dear Ms. Choy,

Pursuant to Judge Rakoff's instruction on October 15, Defendants submit the attached proposed final set of jury instructions.  Opposing counsel is cc-ed on this communication.

Regards,
Yue-Han Chow

# EXHIBIT D

**Chow, Yue-Han**

| | |
|---|---|
| **From:** | Chow, Yue-Han |
| **Sent:** | Monday, October 20, 2014 7:44 PM |
| **To:** | Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov |
| **Cc:** | Adrea-Litigation; sbauer@proskauer.com; Cabral, Colin G.; Ederer, Louis S.; Sharifahmadian, Ali R. |
| **Subject:** | Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions |
| **Attachments:** | BN proposed instructions on marking  willfulness.doc |

Dear Ms. Choy,

Pursuant to Judge Rakoff's instruction in court today, Defendants submit the attached proposed revised jury instructions.  Opposing counsel is cc-ed on this communication.  Please note that, as the Court permitted, we have re-ordered the Georgia-Pacific Factors to keep the factor numbers consistent with what was presented to the jury.  Also, as discussed with the Court, we have added a short instruction on the commencement of damages and marking issues.  Lastly, Defendants' proposed willful infringement instruction makes minor modifications to the instruction previously proposed by the Court.

Regards,
Yue-Han Chow

_____

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Yue-Han.Chow@aporter.com
www.arnoldporter.com

# EXHIBIT E

**Chow, Yue-Han**

| | |
|---|---|
| **From:** | Cabral, Colin G. [CCabral@proskauer.com] |
| **Sent:** | Monday, October 20, 2014 9:16 PM |
| **To:** | Chow, Yue-Han; Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov |
| **Cc:** | Adrea-Litigation; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R. |
| **Subject:** | RE: Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions |
| **Attachments:** | 10-4-14 letter to Edererer re marking.pdf; Sealant Sys v. TEK.DOC; Laitram v. HP.DOC; Unova v. HP.DOC; In re Katz.doc; Oracle v. Google Marking.doc |

Dear Ms. Choy:

Pursuant to Judge Rakoff's instructions, we write in response to defendants' proposed instruction regarding the commencement of damages and patent marking.   We have no objection to the first sentence regarding the '851 patent.   The remainder of the proposed instruction is highly unorthodox, misstates the law, and is not an appropriate instruction for the jury.  Prior to submitting proposed jury instructions, defendants had not identified any "patented articles" under Section 287 with respect to the '501 and '703 patents.  The attached letter, sent to defendants on October 4, 2014, summarizes plaintiff's position on the marking issue.  Much of the case law cited in the letter is also attached for the Court's convenience.

Respectfully submitted,
Colin Cabral

**Colin G. Cabral**
Senior Litigation Counsel

Proskauer
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
d 310.284.5611 | f 310.557.2193
ccabral@proskauer.com

greenspaces
Please consider the environment before printing this email.

**From:** Chow, Yue-Han [mailto:Yue-Han.Chow@APORTER.COM]
**Sent:** Monday, October 20, 2014 7:44 PM
**To:** Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov
**Cc:** Adrea-Litigation; Bauer, Steven M.; Cabral, Colin G.; Ederer, Louis S.; Sharifahmadian, Ali R.
**Subject:** Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions

Dear Ms. Choy,

Pursuant to Judge Rakoff's instruction in court today, Defendants submit the attached proposed revised jury instructions.  Opposing counsel is cc-ed on this communication.  Please note that, as the Court permitted, we have re-ordered the Georgia-Pacific Factors to keep the factor numbers consistent with what was presented to the jury.  Also, as discussed with the Court, we have added a short instruction on the commencement of damages and marking issues. Lastly, Defendants' proposed willful infringement instruction makes minor modifications to the instruction previously proposed by the Court.

Regards,
Yue-Han Chow

_____

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Yue-Han.Chow@aporter.com
www.arnoldporter.com

_____

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.
_____
For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

*********************************************************************************************************
*************************************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
*********************************************************************************************************
*************************************************************************

# EXHIBIT F

**Chow, Yue-Han**

| | |
|---|---|
| **From:** | Chow, Yue-Han |
| **Sent:** | Monday, October 20, 2014 11:05 PM |
| **To:** | Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov |
| **Cc:** | Adrea-Litigation; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R.; Cabral, Colin G.; Arni, Sarah Brackney |
| **Subject:** | RE: Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions |

Dear Ms. Choy:

Barnes & Noble writes to respond to correct the many errors in the below communication from plaintiff.  As requested by the Court, B&N provided proposed jury instructions on the damages period/marking and willful infringement. Plaintiff did not provide alternative instructions.  Although B&N believes that plaintiff's attempt to argue legal issues is inappropriate, B&N responds to the many errors in plaintiff's submission.

First, there is nothing "unorthodox" about a jury instruction on the commencement of damages, including marking issues, in a patent infringement litigation.  Indeed, the Federal Circuit Bar Association's model jury instructions includes such a model instruction.  Of course, B&N has tailored the model instructions to fit the circumstances in this case, including the production of patented articles by a licensee, rather than by the patent holder.

Second, plaintiff incorrectly asserts that B&N did not identify any patented articles prior to its proposed jury instructions.  This is directly contradicted by the record in this case.  B&N identified the licensed, patented articles (Amazon Kindles and Sony e-readers) in its motion for summary judgment, filed nearly 9 months ago in January 2014. Moreover, B&N sought discovery throughout the litigation, including from plaintiff's 30(b)(6) witnesses, regarding plaintiff's failure to ensure that its licensees complied with the requirements of the marking statute.

Third, as to the first issue raised in plaintiff's letter, the Federal Circuit has consistently held that the burden of proving compliance with the marking statute is on the patent owner.  *See, e.g., Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447 (Fed. Cir. 1998) (patent holder must prove compliance with marking statute by preponderance of evidence); *Maxwell v. J. Baker, Inc.*, 86 f.3d 1098, 1111 (Fed. Cir. 1996) (patentee bears burden of proving compliance with marking requirements); *see also WiAV Solutions LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010) (burden to show no patented articles is on patent holder).  The cases on which plaintiff relies are outliers that are contrary to binding Federal Circuit precedent and have been recognized as such.  *See, e.g., DR Sys., Inc. v. Eastman Kodak Co.*, 2009 WL 2632685, at *4 (S.D. Cal. Aug. 24, 2009) (citing 4 Robert A. Matthews Jr., Annotated Patent Digest § 30:148)).

Fourth, as to the second issue raised in plaintiff's letter, plaintiff's have never raised this argument previously.  Plaintiff's proposed jury instructions did not include a marking instruction at all, simply incorrectly asserting that the damages period for the '501 and the '703 patents begins with the first sale in November 2009.  Nor did plaintiff file a proposed modification addressing this newly asserted argument when the Court directed that any new instructions had to be provided by last Friday, October 17.  Any argument for an alternative instruction based on plaintiff's newly asserted argument was waived.

B&N respectfully reiterates its request that the Court instruct the jury pursuant to the instructions that B&N submitted earlier this evening.

Regards,
Yue-Han Chow

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Yue-Han.Chow@aporter.com
www.arnoldporter.com

---

**From:** Cabral, Colin G. [mailto:CCabral@proskauer.com]
**Sent:** Monday, October 20, 2014 9:16 PM
**To:** Chow, Yue-Han; Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov
**Cc:** Adrea-Litigation; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R.
**Subject:** RE: Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions

Dear Ms. Choy:

Pursuant to Judge Rakoff's instructions, we write in response to defendants' proposed instruction regarding the commencement of damages and patent marking.   We have no objection to the first sentence regarding the '851 patent.   The remainder of the proposed instruction is highly unorthodox, misstates the law, and is not an appropriate instruction for the jury.  Prior to submitting proposed jury instructions, defendants had not identified any "patented articles" under Section 287 with respect to the '501 and '703 patents.  The attached letter, sent to defendants on October 4, 2014, summarizes plaintiff's position on the marking issue.  Much of the case law cited in the letter is also attached for the Court's convenience.

Respectfully submitted,
Colin Cabral

**Colin G. Cabral**
Senior Litigation Counsel

Proskauer
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
d 310.284.5611 | f 310.557.2193
ccabral@proskauer.com

greenspaces
Please consider the environment before printing this email.

---

**From:** Chow, Yue-Han [mailto:Yue-Han.Chow@APORTER.COM]
**Sent:** Monday, October 20, 2014 7:44 PM
**To:** Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov
**Cc:** Adrea-Litigation; Bauer, Steven M.; Cabral, Colin G.; Ederer, Louis S.; Sharifahmadian, Ali R.
**Subject:** Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) - Proposed Revised Jury Instructions

Dear Ms. Choy,

Pursuant to Judge Rakoff's instruction in court today, Defendants submit the attached proposed revised jury instructions.  Opposing counsel is cc-ed on this communication.  Please note that, as the Court permitted, we have re-ordered the Georgia-Pacific Factors to keep the factor numbers consistent with what was presented to the jury.  Also, as

2

discussed with the Court, we have added a short instruction on the commencement of damages and marking issues. Lastly, Defendants' proposed willful infringement instruction makes minor modifications to the instruction previously proposed by the Court.

Regards,
Yue-Han Chow

_____

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Yue-Han.Chow@aporter.com
www.arnoldporter.com

This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please note that any dissemination, distribution, or copying of this communication is strictly prohibited. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

For more information about Arnold & Porter LLP, click here:
http://www.arnoldporter.com

*************************************************************************************************
**************************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
*************************************************************************************************
**************************************************************

# EXHIBIT G

**Ederer, Louis S.**

| | |
|---|---|
| **From:** | Celia_Choy@nysd.uscourts.gov |
| **Sent:** | Tuesday, October 21, 2014 9:04 AM |
| **To:** | Cabral, Colin G.; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R. |
| **Subject:** | ADREA v. B&N, 13cv4137 |
| **Attachments:** | 2014-10-21 Jury Charges (circ.).doc; 2014-10-21 Verdict (circ.).doc |

Dear Counsel:

Subject to checking for typographical errors, this is the Court's final charge, except for the final paragraph of charge number 12 and the related issue of marking, which will be the subject of further oral argument later today. No other arguments on any other aspect of the charge will be permitted.

Thanks,

Celia Choy
Law Clerk to the Hon. Jed S. Rakoff
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street Room 1340
New York, NY 10007
(212) 805-0401

# EXHIBIT H

**Ederer, Louis S.**

| | |
|---|---|
| **From:** | Cabral, Colin G. [CCabral@proskauer.com] |
| **Sent:** | Tuesday, October 21, 2014 7:30 PM |
| **To:** | Celia_Choy@nysd.uscourts.gov |
| **Cc:** | Ederer, Louis S.; Sharifahmadian, Ali R.; Berta, Michael A.; Adrea-Litigation |
| **Subject:** | ADREA v B&N, 1:13-cv-04137 |
| **Attachments:** | Horwitz - 10_23_Limitations_on_Damages.pdf; Tulip Computers Int'l B.V. v. Dell Computer Corp., 262 F. Supp. 2d 358.pdf; WiAV Solutions LLC v. Motorola, Inc., 732 F. Supp. 2d 634.pdf; Wokas v. Dresser Indus., 978 F. Supp. 839.pdf; JTX-034.pdf |

Dear Ms. Choi:

Pursuant to Judge Rakoff's order, we write on behalf of plaintiff regarding the last sentence of Jury Instruction No. 12 (Compensatory Damages).

Plaintiff proposes that the last sentence of Instruction No. 12 be modified to read as follows: "For the '501 and '703 patents, however, damages should run from ~~March 29, 2012~~ December 1, 2009 through the date of your verdict, <u>excluding damages for the period between November 2011 and March 2012</u>."

The only additional evidence needed is a stipulated fact regarding the number of accused units sold by B&N between November 10, 2011 (the date of the Amazon agreement) and March 29, 2012 (the date of actual notice).   The Joint Pretrial Consent Order contains factual stipulations by the parties relating to the number of accused units sold, broken down into several different time periods.  (Dkt No. 140, at 9-10).  These stipulated sales numbers have also been entered into evidence as Joint Exhibit 34.  Removing unmarked sales would reduce the total number of accused units by 2,421,712.

| Date | Number of Accused Units |
|---|---|
| November 2011 | 682,722 |
| December 2011 | 1,185,932 |
| January 2012 | 191,202 |
| February 2012 | 246,740 |
| March 2012 | 115,116 |
| **Total** | **2,421,712 total units** |

Plaintiff's request is based in law stating that a patentee can recover damages during a period in which marking was not required, even if the requirements of the marking statute (Section 287) were later triggered.  The cases and secondary source material relied on by plaintiff are summarized below and attached to this email.

- *Tulip Computer Int'l B.V. v. Dell Computer Corp.*, No. 00-981, 2003 WL 1606081, at *15 (D. Del. Feb. 4, 2003) ("Since § 287(a) is not triggered when the patentee is not producing patented articles, the patentee can recover damages for infringement during this period of time even if, later, § 287(a) is triggered.").

- *WiAV Sol'ns. LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 639-40 (E.D. Va. 2010) ("[T]he Court holds that a patentee is not precluded from collecting damages for a period in which marking was not required even if the requirements of the marking statute were later triggered and the patentee failed to comply. This conclusion is most consistent with the purpose of the statute.").

- *Wokas v. Dresser Indus.*, 978 F. Supp. 839, 848 (N.D. Ind. 1997) ("The Court also holds that [defendant] is potentially liable for any infringement it committed before the Shipping Date [of unmarked products].").

- Horwitz on Patent Litigation § 10.23, "Limitations on Damages: Marking and Notice" ("If products sold by the patentee do not practice the claimed invention, the marking requirement is not triggered. Even if a patentee later sells, and fails to mark, products which do practice the invention, the marking statute does not bar recovery of damages during the period in which there was no duty to mark. Thus, even if § 287 is later triggered, recovery will not be barred for the time period during which § 287 was not triggered.") (emphasis added).

Respectfully submitted,
Colin Cabral

**Colin G. Cabral**
Senior Litigation Counsel

Proskauer
2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
d 310.284.5611 | f 310.557.2193
ccabral@proskauer.com

greenspaces
Please consider the environment before printing this email.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT I

**Chow, Yue-Han**

| | |
|---|---|
| **From:** | Chow, Yue-Han |
| **Sent:** | Tuesday, October 21, 2014 8:02 PM |
| **To:** | Celia_Choy@nysd.uscourts.gov; RakoffNYSDChambers@nysd.uscourts.gov |
| **Cc:** | Adrea-Litigation; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R.; Cabral, Colin G.; Arni, Sarah Brackney |
| **Subject:** | Adrea, LLC v. Barnes & Noble, Inc., et al., No. 13-cv-4137 (JSR) |

Dear Ms. Choy:

Barnes & Noble reiterates its position that Instruction No. 12 of the Court's Instructions of Law to the Jury, as provided to the parties this morning, should be given to the jury as currently written.  Specifically, the jury should be instructed: "For the '501 and '703 patents, however, damages should run from March 29, 2012 through the date of your verdict."

First, Plaintiff is incorrect that the marking statute permits them to parse the damages period in the manner suggested.  To the contrary, the plain language of Section 287 states that, in the event of failure to mark, "damages may be recovered only for infringement occurring after [actual] notice."  35 U.S.C. § 287(a).  Based on the clear statutory language, plaintiff may only recover damages for infringement occurring after actual notice, March 29, 2012.  Adrea cites only three district court cases, none of which are binding on this Court, none of which have been affirmed by the Federal Circuit, and all of which are contrary to the plain language of Section 287.  In addition, each of these cases is distinguishable, because they address situations of a patentee without an applicable product.  That is not the case here, because the Amazon Settlement addressed past infringing products and converted them to noninfringing products by virtue of the Amazon license.  In situations such as this, where there was a product in existence (the Amazon products), the plain language of the statute means that damages cannot be obtained with a failure to mark.  That is the holding of *Konstant Prods. Inc. v. Frazier Indus. Co.*, 1992 WL 404224 (N.D. Ill. Sept. 18, 1992), which is applicable to the facts here where the Amazon license covers past, present, and future products practicing the patents in suit.

Second, to the extent that the Court adopts plaintiff's position, Barnes & Noble should be permitted to enter JTX 034, the cross-license agreement between Discovery and Sony, into evidence.  That cross-license agreement, which was entered into on August 25, 2010, as part of the formation of Adrea, licenses the '501 patent to Sony.  Sony makes e-readers pursuant to that license agreement; indeed, Adrea was formed in part as a result of Discovery's allegations that Sony was infringing its patents.  B&N raised this cross-license in relation to marking in its summary judgment papers and in the initial draft of its marking jury instruction.  Because the Court's jury instruction this morning adopted B&N's position that damages were not available for the '501 patent and the '703 patent prior to March 29, 2012, based on the Amazon agreement, B&N did not move the cross-license into evidence.  Therefore, even under plaintiff's construction, the applicable date for splitting the damages period is August 25, 2010 for the '501 patent, not November 10, 2011.

Third, below is B&N's statement of the sales in each of the relevant periods.  Again, B&N's position is that damages are only available beginning March 29, 2012.  The breakdown below reflects the division if the Court accepts Adrea's position.

For the '501 patent:
- Dec. 2009-Aug. 2010: 767,001 units sold = $30,680.04
- Sept. 2010-Mar. 2012: 5,964,590 units sold -- no damages available due to Sony/Amazon failure to mark
- Apr. 2012-June 2014: 5,232,016 units sold = $209,280.64

For the '703 patent:
- Dec. 2009 - Oct. 2011: 4,309,879 units sold = $86,196.58
- Nov. 2011 - Mar. 2012: 2,421,712 units sold -- no damages available due to Amazon failure to mark (B&N agrees with plaintiff that this is the correct number of units sold)
- Apr. 2012  - June 2014: 5,232,016 units sold = $104,640.32

Regards,
Yue-Han Chow

_____

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Yue-Han.Chow@aporter.com
www.arnoldporter.com

# EXHIBIT J

**Ederer, Louis S.**

---

| | |
|---|---|
| **From:** | Celia_Choy@nysd.uscourts.gov |
| **Sent:** | Tuesday, October 21, 2014 8:50 PM |
| **To:** | Cabral, Colin G.; Bauer, Steven M.; Ederer, Louis S.; Sharifahmadian, Ali R. |
| **Subject:** | ADREA v. B&N, 13cv4137 |

Dear Counsel:

Below is a message from Judge Rakoff:

The Court thanks the parties for their excellent submissions this evening. Although there are good arguments on both sides, the Court concludes in the end, that the change in the charge requested by plaintiff must be denied, essentially for the reasons stated in defendants' response. Because this is a close question, if the issue is not mooted by the jury's verdict, the Court will likely write a short opinion elaborating the reasons for its decision.

Regards,

Celia Choy
Law Clerk to the Hon. Jed S. Rakoff
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street Room 1340
New York, NY 10007
(212) 805-0401

# EXHIBIT K
Filed Under Seal Pursuant
to the Protective Order

# EXHIBIT L

**Chow, Yue-Han**

---

| | |
|---|---|
| **From:** | Chow, Yue-Han |
| **Sent:** | Sunday, October 19, 2014 6:57 PM |
| **To:** | 'Cabral, Colin G.'; Cox, Brendan S.; Adrea-Litigation |
| **Cc:** | Sharifahmadian, Ali R.; Ederer, Louis S.; Berta, Michael A.; Shin, Susan L.; Arni, Sarah Brackney |
| **Subject:** | RE: ADREA v. B&N - Deposition Designations |

Colin,

Below is a list of the page-line numbers of the designations that we are <u>keeping</u>.  We tried to keep in what we believe are your corresponding counterdesignations.  In the videos, we cut the in-line objections – if those objections are sustained, then the question and answer would be cut from the video.

Regards,
Yue-Han

<u>Rosenstock</u>

7:9-9:19
12:2-13:6
25:25-27:13
27:16-30:6
36:4-37:22
38:10-39:14
76:4-5
76:7-12
76:14
82:19-83:18

<u>Ambwani</u>

5:9-10
5:13-15
7:14-20
12:22-13:4
16:12-15
16:17-20
23:16-24:15
26:1-27:3
29:19-30:16
42:20-43:2
43:16-45:15
47:25-48:10
52:22-53:2
54:8-54:18
55:14-22
58:14-59:5
63:16-23
64:25-65:2

68:4-22
83:14-19
85:21-86:14
90:13-92:14
101:18-21
105:15-106:18
114:2-115:10
115:14-116:9
123:1-124:15
132:9-16
139:3-140:9
142:23-143:6
143:16-144:4
146:5-7
154:13-14
154:22-155:1
155:24-156:8
204:18-205:14
220:2-6
295:4-296:17
297:19-298:12

Yue-Han Chow
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

Telephone: +1 212-715-1120
Fax:  +1 212-715-1399
Yue-Han.Chow@aporter.com
www.arnoldporter.com

**From:** Cabral, Colin G. [mailto:CCabral@proskauer.com]
**Sent:** Sunday, October 19, 2014 5:17 PM
**To:** Chow, Yue-Han; Cox, Brendan S.; Adrea-Litigation
**Cc:** Sharifahmadian, Ali R.; Ederer, Louis S.; Berta, Michael A.; Shin, Susan L.; Arni, Sarah Brackney
**Subject:** RE: ADREA v. B&N - Deposition Designations

Yue-Han:

Please send us revised transcripts indicating what designations have been removed.  We will need this to determine whether we can drop any of our counter-designations.

Thanks,
Colin


**Colin G. Cabral**
Senior Litigation Counsel

Proskauer

2

2049 Century Park East, Suite 3200
Los Angeles, CA 90067-3206
d 310.284.5611 | f 310.557.2193
ccabral@proskauer.com

greenspaces
Please consider the environment before printing this email.

---

**From:** yue-han.chow@aporter.com [mailto:yue-han.chow@aporter.com]
**Sent:** Sunday, October 19, 2014 4:56 PM
**To:** Cabral, Colin G.; Cox, Brendan S.; Adrea-Litigation
**Cc:** ali.sharifahmadian@aporter.com; louis.ederer@aporter.com; michael.berta@aporter.com; susan.shin@aporter.com; sarah.arni@aporter.com
**Subject:** ADREA v. B&N - Deposition Designations

Counsel,

Defendants have cut down their deposition designations for Rosenstock and Ambwani. Attached are the current video cuts for these witnesses. Depending on how Judge Rakoff rules on the objections tomorrow, these videos may need to be recut.

Regards,
Yue-Han

File(s) will be available for download until **02 November 2014**:

File: ROSENSTOCK VIDEO.wmv, 48,077.76 KB   [Fingerprint: bd8ff6c86ca62c253830ce29aeb46db6]
File: AMBWANI VIDEO.wmv, 70,114.58 KB   [Fingerprint: 8acf7a60d0d48633fd9bac45c7061a12]


You have received attachment link(s) within this email sent via Accellion Secure File Transfer. To retrieve the attachment(s), please click on the link(s). To learn how your company can benefit from Accellion Secure File Transfer, please visit http://www.accellion.com
Accellion File Transfer


*************************************************************************************************
*************************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure.
If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them.
Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.
*************************************************************************************************
*************************************************************

# EXHIBIT M

Filed Under Seal Pursuant
to the Protective Order

# EXHIBIT N

Filed Under Seal Pursuant
to the Protective Order

# EXHIBIT O

Filed Under Seal Pursuant
to the Protective Order

# EXHIBIT P

Filed Under Seal Pursuant
to the Protective Order

# EXHIBIT Q

Filed Under Seal Pursuant
to the Protective Order