

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------
ADREA, LLC,

             Plaintiff,

         -v-

BARNES & NOBLE, INC.,
BARNESANDNOBLE.COM LLC, and NOOK
MEDIA LLC,

             Defendants.
------------------------------------ x

                                               13-cv-4137(JSR)

                                       MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

Plaintiff ADREA, LLC brings this action against defendants Barnes & Noble, Inc., Barnesandnoble.com LLC, and NOOK Media LLC for infringement of three of its patents: U.S. Patent Nos. 7,298,851 ("the '851 patent"), 7,299,501 (the "'501 patent") and 7,620,703 (the "'703 patent"). See Adrea, LLC v. Barnes & Noble, Inc., No. 13-cv-4137, 2014 WL 3057902, at *1 (S.D.N.Y. July 1, 2014) (describing the patents-in-suit). Following trial, the jury returned a verdict that the '851 patent was not infringed but that the '501 and '703 patents were valid and infringed, and awarded plaintiff $1.33 million in compensatory damages. Pending before the Court are two motions. First, plaintiff moves for reconsideration of the Court's decision regarding application of the marking statute, 35 U.S.C. § 287(a) ("Section 287(a)"). Second, defendants move for judgment that the asserted claims of the '501 patent are invalid because they do not claim patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101").

1

Plaintiff's motion concerns the application of the marking statute, which provides that a patentee or its licensee may give the public notice of its patents by marking them in specified ways. 35 U.S.C. § 287(a); Maxwell v. J. Baker, Inc., 86 F.3d 1098, 1111 (Fed. Cir. 1996). Section 287(a) further provides that, "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." Id.

At the charging conference on October 20, 2014, defendants requested an instruction to the effect that, if the jury found that plaintiff failed to prove that its licensee, Amazon.com, Inc. ("Amazon"), properly marked its "Kindle" electronic book readers pursuant to Section 287(a), then the jury could not award damages for any infringement of those two patents that occurred before March 29, 2012, the date on which plaintiff provided actual notice of the alleged infringement to defendants. See Transcript dated Oct. 20, 2014, at 1168-70. Because, as plaintiff conceded, there was no evidence in the record that Amazon ever marked its Kindle products, this instruction would effectively have limited any damages to the period following actual notice.

Plaintiff responded, first, that although it bore the ultimate burden to prove that any patented articles sold by Amazon were properly marked, defendants had the initial burden, which they had not

2

carried, to show which, if any, of Amazon's products actually
practiced the patents-in-suit. In other words, it argued that
defendants failed to make the initial showing required to trigger
Section 287(a). Second, it argued that, even if Section 287(a) had
been triggered, it could still collect damages for any infringement
that occurred before it granted Amazon a license on November 10, 2011
because before that date, Amazon was not authorized to practice the
patent. The Court directed the parties to submit letter briefs via
email addressing these issues later that evening. Having considered
the parties' written submissions and oral arguments, the Court
instructed the jury that it could award damages for infringement of
the '501 and '703 patents only from March 29, 2012 through the date of
its verdict. The Court's reasoning was as follows.

The Federal Circuit has not provided clear guidance with respect
to either of these issues. Nonetheless, it is well established that
the marking statute places on the patentee the "'burden of pleading
and proving at trial that she complied with the statutory requirements
[of 35 U.S.C. Section 287(a)].'" Cognex Corp. v. Microscan Sys., Inc.,
990 F. Supp. 2d 408, 416-17 (quoting Maxwell, 86 F.3d at 1111). The
reason for allocating the burden of proof in this way is that whether
"patented articles have been duly marked or not is a matter peculiarly
within [the patentee's] own knowledge." Dunlap v. Schofield, 152 U.S.
244, 248 (1894) (interpreting a predecessor marking statute). Thus,
although some courts outside this district have adopted the rule
advocated by plaintiff, see, e.g., Golden Bridge Tech. Inc. v. Apple,

Inc., No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *11 (N.D. Cal. May 14, 2014), the Court finds that this rule would improperly shift the burden to the accused infringer. See, e.g., DR Sys., Inc. v. Eastman Kodak Co., No. 08-cv-0669, 2009 WL 2632685, at *4 (S.D. Cal. Aug. 24, 2009) (noting that placing the initial burden on the defendant is "the exception rather than the rule, and has been criticized as such").[1]

Plaintiff objects that requiring it to prove that none of Amazon's products practiced the patents-in-suit would impose on it an undue burden. Amazon, it argues, sells many thousands of products, and it would be impracticable for plaintiff to prove that none of those products practiced the relevant patents. However, in order to meet its burden, plaintiff would be permitted to introduce evidence of its "reasonable efforts to ensure [Amazon's] compliance with the marking requirements," which could be as simple as "a contractual provision requiring marking." K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp., 52 F. App'x 135, 141 (Fed. Cir. 2002) (internal quotation marks omitted). Moreover, plaintiff could presumably make out a prima facie case of actual compliance with Section 287(a) via a declaration from a knowledgeable Amazon representative.

Conversely, requiring defendants to prove that Amazon's products practiced the patents-in-suit would impose on them a far more onerous

---

[1] See also Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC, No. 1:09-CV-1685, 2013 WL 1821593, at *3 (M.D. Pa. Apr. 30, 2013); PACT XPP Techs., AG v. Xilinx, Inc., No. 2:07-CV-563-RSP, 2012 WL 1029064, at *2 (E.D. Tex. Mar. 26, 2012); WiAV Solutions LLC v. Motorola, Inc., 732 F. Supp. 2d 634, 643 (E.D. Va. 2010).

burden. Defendants would be required to sift through Amazon's many
products, determine which products could potentially be implicated,
and then prove that those products practiced the relevant patents.
Moreover, they would have to do so under the distinct informational
disadvantage mentioned above.

Nor can the plaintiff in this case complain of unfair surprise.
Defendants identified the Amazon Kindles as potentially unmarked
patented articles over eight months before trial. See Defendants' Mem.
of Law in Support of Motion for Summary Judgment dated Jan. 31, 2014,
ECF Dkt. No. 63, at 48. Plaintiff nonetheless failed to produce any
evidence that it made any effort to ensure that Amazon or any other
licensee marked their patented products, or that such products were in
fact properly marked.[2] Accordingly, the Court found that Section
287(a)'s damages bar applies.

Second, as to plaintiff's contention that it may recover damages
for any infringement occurring before November 10, 2011, the date on
which Amazon purchased a license to plaintiffs' patents, this argument
is foreclosed by the plain language of Section 287. The operative
sentence provides that, if the patentee fails to mark its products but
provides defendant with actual notice, "damages may be recovered only
for infringement occurring after such notice." 35 U.S.C. § 287(a)
(emphasis added); see also Konstant Products Inc. v. Frazier Indus.
Co. Inc., No. 91 C 4491, 1992 WL 404224, at *4 (N.D. Ill. Sept. 18,

_____

[2] Indeed, plaintiff failed to raise its present argument with the
Court until well after the trial had begun.

5

1992). The statute is clear that, where plaintiff fails to mark its patented articles, it may not recover damages until after it gives actual notice to the accused infringer. See Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (holding that where "the statutory language is unambiguous and 'the statutory scheme is coherent and consistent,'" the Court's inquiry must cease).[3] Thus, plaintiff cannot recover damages for infringement before the date of the Amazon license.

After the trial concluded, plaintiff filed the present motion, in which it requests that the Court reconsider its previous decision regarding the application of the marking statute. Plaintiff seeks an award of supplemental damages for the period before March 29, 2012, calculated by applying the per-unit royalty rate implicit in the jury's verdict to the number of accused products sold during that period.

The parties dispute whether plaintiff's motion is subject to the "strict" standard applicable to motions for reconsideration. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party

---

[3] The case relied on by plaintiff, American Medical Systems, Inc. v. Medical Engineering Corp., 6 F.3d 1523 (Fed. Cir. 1993), is not to the contrary. In that case, the patentee began marking its products in accordance with the statute about two months after the patent issued. Id. at 1534-35. The Federal Circuit held that the patentee was "entitled to damages from the time when it began marking its products in compliance with section 287(a) or when it actually notified [defendant] of its infringement, whichever was earlier." Id. at 1537. That is precisely what the Court holds here. As plaintiff has submitted no evidence that it has ever complied with the marking statute, it is entitled to damages only from the date of actual notice.

6

can point to controlling decisions or data that the court overlooked —
— matters, in other words, that might reasonably be expected to alter
the conclusion reached by the court."). The Court finds that it is.
Although plaintiff did not style its motion as a motion for
reconsideration, that is effectively what it is. The Court previously
rendered a decision regarding defendants' requested jury instruction
following briefing (albeit in summary fashion) and oral argument. Such
a decision should not be lightly disturbed. See Melnitzky v. Rose, 305
F. Supp. 2d 349, 350 ("Reconsideration of a court's previous order is
an 'extraordinary remedy to be employed sparingly in the interests of
finality and conservation of scarce judicial resources.'" (quoting In
re Health Mgmt. Sys. Inc. Secs. Litig., 113 F. Supp. 2d 613-14
(S.D.N.Y. 2000)). In this case, plaintiff's motion merely
recapitulates the arguments that it previously made to the Court. It
fails to cite any additional law or facts that alter the Court's
assessment of these issues. Accordingly, the Court will not reverse
its previous ruling.

Defendant, for its part, moves for judgment that the asserted
claims of the '501 patent are invalid because they are directed
towards non-patent-eligible subject matter. Section 101 of the Patent
Act provides:

> Whoever invents or discovers any new and useful process,
> machine, manufacture, or composition of matter, or any new
> and useful improvement thereof, may obtain a patent
> therefor, subject to the conditions and requirements of this
> title.

35 U.S.C. § 101. This provision contains the "important implicit exception" that "'laws of nature, natural phenomena, and abstract ideas' are not patentable." Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1293 (2012) (quoting Diamond v. Diehr, 450 U.S. 175, 185 (1981)) (alteration omitted). This is because these concepts are "the basic tools of scientific and technological work," the monopolization of which "might tend to impede innovation more than it would tend to promote it." Id. (internal quotation marks and citation omitted). At the same time, the Supreme Court has cautioned against "too broad an interpretation of this exclusionary principle," as "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." Id.

The Supreme Court has established a two-step analysis for determining whether a patent falls within this exception. First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347, 2355 (2014) (citing Mayo, 132 S. Ct. at 1296-97). If so, the court then asks whether the claims contain an "inventive concept," meaning "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." Id. (internal quotation marks omitted). In conducting this analysis, the court "consider[s] the elements of each claim both individually and 'as an ordered combination.'" Id. at 2356.

8

The "abstract ideas category embodies the longstanding rule that an idea of itself is not patentable." Id. (internal quotation marks and alteration omitted). On the basis of this rule, the Supreme Court has rejected as ineligible patents claiming, for example, an algorithm for converting data to pure binary numerals, see Gottschalk v. Benson, 409 U.S. 63, 64-65 (1972), a mathematical formula used during catalytic conversion processes, see Parker v. Flook, 437 U.S. 584, 585 (1978), and the "fundamental economic practice" of hedging risk, see Bilski v. Kappos, 561 U.S. 593, 611 (2010).

Most recently, the Supreme Court found invalid a patent that claimed a computerized "method of exchanging financial obligations between two parties using a third-party intermediary to mitigate settlement risk." Alice Corp., 134 S. Ct. at 2356. Specifically, the patent disclosed a scheme, implemented on a computer, whereby the intermediary would keep "shadow" credit and debit records mirroring the parties' real-world accounts; update the shadow records as transactions are entered, permitting only those for which the shadow records indicate sufficient resources to meet the parties' obligations; and then issue orders to the relevant financial institutions to carry out only the permitted transactions. Id. at 2352. The purpose of this scheme is to mitigate the risk that only one party will perform on the agreement. Id.

The Court held that the "concept of intermediated settlement is a fundamental economic practice long prevalent in our system of commerce," and that "mere recitation of a generic computer cannot

transform a patent-ineligible abstract idea into a patent-eligible invention." Id. at 2356, 2358 (internal quotation marks omitted). The court concluded, "if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, that addition cannot impart patent eligibility." Id. (internal citation, quotation marks, and alteration omitted).

Turning to the case at hand, the asserted claims of the '501 patent are Claims 7, 8, 9, 18, and 19. Claim 7 discloses:

A method for restricting access to electronic books displayed on a viewer, the method comprising:
storing an electronic book on a viewer;
associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book;
allowing access to and display of the electronic book for the predetermined amount of time; and
restricting access to the electronic book, for display of the electronic book on the viewer, once the predetermined amount of time has passed.

Claim 8 is a dependent claim that discloses the "method of claim 7, further including deleting the electronic book from the viewer based upon the time parameter."

Claim 9 is a dependent claim that discloses the "method of claim 8 wherein the deleting step includes automatically erasing the electronic book from the viewer upon expiration of a particular time period."

Claim 18 is an independent claim that discloses:

A portable viewer for displaying electronic books, comprising:
a memory for storing instructions;
a memory for storing electronic books;
a display for displaying the electronic books; and
a processor that operates under control of the instructions and is capable of:

10

```
storing an electronic book on the viewer;
associating a predetermined amount of time after the electronic
 book is stored on the viewer with the electronic book;
allowing access to and display of the electronic book for the
 predetermined amount of time; and
restricting access to the electronic book, for display of the
 electronic book on the viewer, once the predetermined amount of
 time has passed.
```

Finally, Claim 19 is a dependent claim that discloses the

"portable viewer of claim 18, wherein the processor is further capable

of deleting the electronic book from the viewer based upon the time

parameter."

The Court finds that these claims attempt to capture the abstract

idea of lending books for a limited period of time. This idea has

existed for centuries in the hoary institution of the lending library.

The patent claims merely recite, in broad and generic terms, steps

that are equivalent to those one could take in the physical world.

Specifically, a lending library operates by associating a

predetermined amount of time with a book by, for example, stamping the

slip inside the book's cover with the due date, allowing the borrower

to take the book home, and then requiring that the book be returned at

the expiration of the time period. These are "conventional and

quotidian tasks" that have long been performed by humans using analog

technologies. DietGoal Innovations LLC v. Bravo Media LLC, 33 F. Supp.

3d 271, 284 (S.D.N.Y. 2014) aff'd, 599 F. App'x 956 (Fed. Cir. 2015);

see also Cogent Med., Inc. v. Elsevier Inc., 70 F. Supp. 3d 1058 (N.D.

Cal. 2014). And while plaintiff claims that some of the claimed steps

do not have precise real-world equivalents, "the

11

addition of merely novel or non-routine components to the claimed idea" does not "turn[] an abstraction into something concrete." Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 715 (Fed. Cir. 2014) cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc., No. 14-1392, 2015 WL 2457913 (June 29, 2015).

Plaintiff further objects that the '501 patent is not directed at the abstract idea of lending physical books because it refers specifically to "electronic books." However, an "electronic book" is merely the digital equivalent of a physical book. Indeed, the Court previously construed that term as "an electronic version of textual or graphical information." ADREA, LLC v. Barnes & Noble, Inc., No. 13-cv-4137, 2013 WL 6334489, at *2 (S.D.N.Y. Dec. 2, 2013). It is well established that an "attempt to limit the use of the abstract [] idea to a particular technological environment" is insufficient to save a patent claim from invalidity. buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014) (internal quotation marks and alteration omitted). "[T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium." CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1375 (Fed. Cir. 2011).

Nor does the addition of "deleting" or "automatically erasing" the electronic book from the viewer in Claims 8 and 9, respectively, represent an "inventive concept" that could render the abstract idea patentable. These, along with every other step recited by the patent

12

claims, are simply "well-understood, routine, conventional activities previously known to the [computer] industry." Alice Corp., 134 S. Ct. at 2359 (internal quotation marks and alteration omitted). There is "no detail about how those functions are performed" and "no suggestion that those functions are performed in any novel or unusual manner." Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc., 66 F. Supp. 3d 829, 838 (E.D. Tex. 2014). They do not "purport to improve the functioning of the computer itself," nor do they "effect an improvement in any other technology or technical field." Id. (internal quotation marks omitted). Thus, the '501 patent's recitation that the generic step of "restricting access" to the electronic book be performed through conventional functions of a computer cannot render it patent-eligible. Id.

Underpinning the Supreme Court and Federal Circuit's "abstract ideas" jurisprudence is the concern that a patent claiming no more than an idea could preempt an entire field of innovation. Alice Corp., 134 S. Ct. at 2354. The Supreme Court has explained that granting such patents would "effectively grant a monopoly over an abstract idea," Bilski, 561 U.S. at 612, or "otherwise foreclose[] more future invention than the underlying discovery could reasonably justify." Mayo, 132 S. Ct. at 1301. Here, plaintiff lays claim to the idea of using a computer to lend electronic books. It is clear that virtually any electronic book-lending system would perform the generic, high-level steps set forth in the '501 patent. Thus, the asserted claims

13

pose precisely the risk of pre-emption that the Section 101 case law
seeks to mitigate.

    Finally, although the Supreme Court clarified in Bilski v.
Kappos, 561 U.S. 593, 612 (2010) that the so-called "machine-or-
transformation test" is not the exclusive test for whether a process
is patentable, it nonetheless remains a useful heuristic. See Bancorp
Servs., L.L.C. v. Sun Life Assurance Co. of Can., 687 F.3d 1266, 1278
(Fed.Cir.2012). "A claimed process can be patent-eligible under § 101
if: '(1) it is tied to a particular machine or apparatus, or (2) it
transforms a particular article into a different state or thing.'" In
re Bilski, 545 F.3d 943, 954 (Fed.Cir.2008) (en banc), aff'd on other
grounds, Bilski, 561 U.S. 593. The asserted claims of the '501 patent
are not tied to any novel machine or apparatus, but rather to a
generic "viewer" capable of performing standard computing functions.
Nor do they effect any physical transformation. Instead, the steps of
providing access to content and then restricting it are merely
manipulations of "'public or private legal obligations or
relationships, business risks, or other such abstractions.'"
Ultramercial, Inc., 772 F.3d at 717 (quoting Bilski, 545 F.3d at 963).
They do not transform the physical world in any meaningful way.
Accordingly, for the reasons described above, the Court finds that the
asserted claims of the '501 patent are invalid under Section 101.

    Plaintiff's motion for reconsideration is hereby denied.
Defendants' motion for judgment that the asserted claims of the '501
patent are invalid is hereby granted. The parties are directed to

jointly call the Court within three business days of the date of this Memorandum Order to schedule further proceedings. The Clerk of the Court is directed to close document number 166 on the docket of this case.

                                          _____
                                          JED S. RAKOFF, U.S.D.J.

Dated:  New York, New York
        July 23, 2015

15