**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADREA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| - against - | )    ECF Case |
| | ) |
| BARNES & NOBLE, INC., | )    13-CV-4137 (JSR) |
| BARNESANDNOBLE.COM LLC, and | ) |
| NOOK MEDIA LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION PURSUANT TO RULE 50 FOR JUDGMENT AS A MATTER**
**OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL**

**ARNOLD & PORTER LLP**
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    B&N IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ...................................2

III.   NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '703 PATENT WERE INFRINGED ................................................................................................3

     A.    No Reasonable Jury Could Have Concluded That The Accused Nook Devices Infringe Claims 1, 2 And 3 ................................4

         1.    The Unrebutted Evidence Showed That The Shop Application Is A Web Browser ...............................................5

         2.    The Unrebutted Evidence Showed That Users Must Access The Shop Application In Order To Initiate Retrieval Of The Shop Storefront ...............................................7

         3.    The Unrebutted Evidence Showed That B&N Does Not Infringe Claim 2 ...............................................9

     B.    No Reasonable Jury Could Have Found That B&N Infringed Claims 13 And 15 ...............................................9

         1.    The Evidence Did Not Show That B&N Performs The "Enabling" Step ...............................................9

         2.    The Evidence Did Not Show That B&N's Server "Initiat[ed] Access To A Web Page" "Based on" An "Identifier Representative Of A Type Of The Consumer Appliance" Received From A NOOK Device .....................................................11

         3.    The Evidence Did Not Show That B&N Created A Database Of URLs Or Identifiers Per User ...............................14

     C.    The Evidence Was Overwhelming That The NOOK Devices Were Not The Invention Contemplated By The '703 Patent ...............................................14

IV.   NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '703 PATENT ARE NOT INVALID ...............................................................................................15

A. The Record, Including The Testimony Of The '703 Patent's Inventor, Compels A Finding Of Obviousness As A Matter Of Law ...................................................................16

B. The Record Evidence Is Insufficient To Support The Jury's Finding That Munyan Does Not Anticipate Claims 1, 2 And 3 ...................................................................18

C. The Record Evidence Is Insufficient To Support The Jury's Finding That Bolas Does Not Anticipate Claims 13 and 15 ...................................19

 1. Conclusory Expert Testimony Is Insufficient ..............................................19

 2. Expert Testimony That Fails To Take Into Account The Entire Disclosure Of The Prior Art Is Insufficient ................................22

V. NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '501 PATENT ARE INFRINGED AND NOT INVALID ...................................................................23

VI. IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED ........................................25

VII. CONCLUSION ...................................................................25

## TABLE OF AUTHORITIES

**Cases:**                                                                                   **Page(s):**

*Abbott Labs. v. Sandoz, Inc.,*
   566 F.3d 1282 (Fed. Cir. 2009) ...................................................................20, 21

*Ariad Pharm., Inc. v. Eli Lilly & Co.,*
   598 F.3d 1336 (Fed. Cir. 2010) (en banc) ...........................................................20

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
   406 F.3d 1365 (Fed. Cir. 2005) .........................................................................18

*Caceres v. Port Auth. of N.Y. & N.J.,*
   631 F.3d 620 (2d Cir. 2011) ................................................................................2

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.,*
   150 F.3d 1354 (Fed. Cir. 1998) .........................................................................19

*Ecolab, Inc. v. FMC Corp.,*
   569 F.3d 1335 (Fed. Cir.), *amended on reh'g in part,*
   366 F. App'x 154 (Fed. Cir. 2009) ...............................................................18, 19

*Forest Labs., Inc. v. Abbott Labs.,*
   1999 WL 33290607 (W.D.N.Y. June 23, 1999).............................................7, 8, 11

*Hernandez v. Keane,*
   341 F.3d 137 (2d Cir. 2003) ................................................................................3

*Hypoxico, Inc. v. Colo. Altitude Training LLC,*
   2012 WL 3705006 (S.D.N.Y. Aug. 28, 2012)................................................*passim*

*Integrated Tech. Corp. v. Rudolph Techs., Inc.,*
   734 F.3d 1352 (Fed. Cir. 2013), *cert. denied,* 134 S. Ct. 2873 (2014)................5, 24

*IPPV Enters., LLC v. Echostar Commc'ns, Corp.,*
   191 F. Supp. 2d 530 (D. Del. 2002).....................................................................18

*Joy Techs., Inc. v. Flakt, Inc.,*
   6 F.3d 770 (Fed. Cir. 1993) ...............................................................................11

*Krippelz v. Ford Motor Co.,*
   667 F.3d 1261 (Fed. Cir. 2012) ..............................................................16, 20, 22

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.,*
   485 F.3d 1157 (Fed. Cir. 2007) .........................................................................21

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,*
   931 F. Supp. 1014 (E.D.N.Y. 1996) (Rader, J.), *aff'd sub nom.,*

*Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999) ...........................*passim*

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
    690 F.3d 1354 (Fed. Cir. 2012) .........................................................................................11

*MobileMedia Ideas LLC v. Apple Inc.*,
    780 F.3d 1159 (Fed. Cir. 2015) .........................................................................................20

*Song v. Ives Labs., Inc.*,
    957 F.2d 1041 (2d Cir. 1992) ............................................................................................25

*Soverain Software LLC v. Newegg Inc.*,
    705 F.3d 1333 (Fed. Cir.), *reh'g granted*, 515 F. App'x 883 (Fed. Cir.) ..................17, 22

*Verdegaal Bros., Inc. v. Union Oil, Co.*,
    814 F.2d 628 (Fed. Cir. 1987) .....................................................................................19, 20

## Statutes, Rules and Regulations

35 U.S.C. § 101 ...........................................................................................................1, 15, 23

35 U.S.C. § 103 .....................................................................................................................16

Fed. R. Evid. 50 ....................................................................................................................25

Fed. R. Evid. 50(b) ...............................................................................................................25

Fed. R. Evid. 59 ....................................................................................................................25

## I.    INTRODUCTION

Defendants Barnes & Noble, Inc., barnesandnoble.com llc (predecessor in interest to Nook Digital, LLC), and NOOK Media LLC (now Barnes & Noble Education, LLC, a subsidiary of Barnes & Noble Education, Inc., a separately traded company) (collectively "B&N") respectfully submit this memorandum of law in support of their renewed motion pursuant to Federal Rule 50 for judgment as a matter of law, or in the alternative, for a new trial. Plaintiff Adrea, LLC ("Adrea") asserted at trial that B&N's accused NOOK devices infringed U.S. Patent Nos. 7,620,703 (the "'703 Patent"), 7,299,501 (the "'501 Patent"), and 7,298,851 (the "'851 Patent"). The jury found that the '851 Patent was not infringed, and that the '501 and '703 Patents were valid and infringed. The Court subsequently found the '501 Patent invalid under 35 U.S.C. § 101. This renewed Rule 50 motion addresses the jury's finding of validity and infringement as to the remaining '703 Patent. B&N also briefly addresses the jury's finding of validity and infringement with respect to the '501 Patent.[1]

The '703 Patent, entitled "Topical Service Provides Context Information for a Home Network," issued on November 17, 2009, from an application filed on August 10, 2000. Ex. 3 ('703 Patent).[2] On its face, the '703 Patent has nothing to do with computing devices such as the accused NOOK devices. Rather, the patent relates to the ability of "consumer appliances" which in their ordinary state have no Internet connectivity — *e.g.*, everyday household devices such as

---

[1] As for the '501 Patent, B&N addresses these issues here to preserve its position, in the unlikely event the Court's invalidation ruling is overturned on appeal. B&N does not address the issue of validity of the '851 Patent on this motion, because after finding the '851 Patent not infringed, the jury made no finding as to its validity. B&N also does not address the issue of damages, because the Court has instructed the parties to limit their motions at this time to the substantive issues. For avoidance of doubt, however, by not addressing those issues here, B&N does not waive its right to do so at an appropriate later point.

[2] "Ex." refers to the exhibits to the accompanying Declaration of Louis S. Ederer, dated August 31, 2015, in support of B&N's motion.

garbage cans, DVD players and blenders — to retrieve information from a remote server without using a web browser. Mr. Eugene Shteyn, the inventor of the '703 Patent, repeatedly emphasized at trial that his patent was not intended to cover personal computing devices, but was targeted at ordinary devices not typically having computer capabilities. Ex. 1 (Tr.) at 228:11-13, 228:20-22, 209:14-23. Mr. Shteyn further conceded that computing devices were able to retrieve information from remote servers long prior to the filing of the '703 Patent application (*id.* at 225:18-23, 224:12-15, 227:17-20) — indeed, as far back as 1969 — so those could not have possibly been the kind of "consumer appliances" he was referring to in his application.

Despite the limited scope of the '703 Patent, however, Adrea attempted at trial to expand the asserted claims to cover computing devices such as the accused NOOKs. *See* PTX204-211 (NOOK devices admitted at trial). Unfortunately for Adrea, however, the evidence at trial was insufficient for a reasonable jury to have found that any NOOK device met the claimed scope of the '703 Patent. Further, and particularly in light of Adrea's efforts to expand the patent beyond what the inventor claims he invented, no reasonable jury could have found the asserted claims valid, because, according to the undisputed trial record, each and every asserted claim was anticipated by or obvious in view of the prior art. As a result, B&N respectfully requests that the Court enter judgment as a matter of law finding that the accused NOOK devices do not infringe the asserted claims of the '703 Patent, and that those claims are invalid.

## II.    B&N IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

On a Rule 50 motion, judgment as a matter of law is appropriate when "a party has been fully heard on an issue" and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 622 (2d Cir. 2011); *see also Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 931 F. Supp. 1014, 1022 (E.D.N.Y. 1996) (Rader, J.) (noting that JMOL is warranted when "no reasonable jury

could have reached its result"), *aff'd sub nom.*, *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999). The Second Circuit has also stated, in the Rule 50 context, that "[t]he jury's role as the finder of fact does not entitle it to return a verdict based only on confusion, speculation or prejudice; its verdict must be reasonably based on evidence presented at trial." *Hernandez v. Keane*, 341 F.3d 137, 143 (2d Cir. 2003) (citations omitted).

Courts in this Circuit have not hesitated to grant Rule 50 motions in patent cases where these standards are not met. For example, in *Hypoxico, Inc. v. Colo. Altitude Training LLC*, 2012 WL 3705006 (S.D.N.Y. Aug. 28, 2012), Judge Griesa granted a Rule 50 motion after the jury found two patents to be infringed, finding, with respect to the first patent, that the plaintiff had "introduced no evidence whatever" to support its argument that the accused products satisfied one of the claim elements; rather, "[t]he actual evidence is directly to the contrary." *Id.* at *6. As to the second patent, he found that the only actual evidence — "rather than theory" — regarding one of the claim elements came from the testimony of two of defendant's employees. *See id.* at *11. As plaintiff "introduced no evidence to the contrary", "[e]ssentially, the evidence on both sides was in agreement . . . and could lead to only one conclusion . . . . There was no reasonable basis for a jury verdict" of infringement. *Id.* The same is the case here.

## III.   NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '703 PATENT WERE INFRINGED

Adrea asserted five claims of the '703 Patent at trial — three system claims (claims 1, 2 and 3) and two method claims (claims 13 and 15). The two independent claims (claims 1 and 13) read as follows:

> Claim 1. A consumer appliance, comprising:
> an input component responsive to a user-input for initiating retrieval of data by the consumer appliance from a server based on a predetermined URL or an identifier associated with the consumer appliance, the data representing content information about the context of usage of the consumer appliance, wherein the consumer appliance does not require a

user to access a web browser or other device in order for the consumer appliance to initiate retrieval of the data.

Claim 13. A method of enabling a service provider to provide a service via the Internet to a user of a consumer appliance having a predetermined identifier, the identifier being stored on a home network that includes the consumer appliance, the method comprising:

enabling the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request with the identifier representative of a type of the consumer appliance to a server on the Internet through the home network; and

based on the identifier, the server initiating access to a web page with content information about a context of using the consumer appliance.

Adrea argued at trial that these independent claims, and the asserted claims that depend on them, were infringed by B&N's NOOK devices, even though the NOOK devices are all microprocessor-based computing devices. Specifically, Adrea asserted that the NOOK's Shop application, a special web browser that allowed the user to gain access to B&N's Shop storefront and purchase electronic books, provided the claimed functionality. The Shop application, which is accessed by selecting an icon on the home screen of a NOOK device, retrieves a storefront from B&N's server that lists books available for purchase. According to Adrea, the NOOK devices are therefore "consumer appliance[s]" as required by the asserted claims (*see* Ex. 1 (Tr.) at 679:21-24, 680:1-4), and the Shop storefront is what the asserted claims describe as the "data" retrieved and the "web page" accessed (*see id.* at 680:5-20, 689:12-690:6). However, these arguments were not supported by the evidence presented at trial.

## A. No Reasonable Jury Could Have Concluded That The Accused Nook Devices Infringe Claims 1, 2 And 3

The final limitation of claim 1 (on which claims 2 and 3 depend) recites that the consumer appliance at issue "does not require a user to access a web browser or other device in order for the consumer appliance to initiate retrieval of the data." Because this limitation was added by amendment to overcome the examiner's rejection (Ex. 4 (JTX006) at

ADREA0059384), it must be met literally, and cannot be satisfied under the doctrine of equivalents. *See Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 2873 (2014). The unrebutted evidence at trial, however, showed that the NOOK devices require users to access a web browser, namely, the Shop application itself, in order to initiate retrieval of the desired data. Thus, these claims are not infringed.

### 1. The Unrebutted Evidence Showed That The Shop Application Is A Web Browser

The evidence at trial conclusively established that the Shop application is itself a web browser. Mr. Deepak Mulchandani, who headed the B&N team responsible for developing the application (*see* Ex. 1 (Tr.) at 448:4-7), testified repeatedly and unequivocally that the Shop application is a web browser. *E.g., id.* at 523:11-13 ("When you press the shop button, it will launch our special browser which will initiate a connection to the Barnes & Noble cloud and load the storefront."); *id.* at 525:2-20 (discussing the design of the Shop application and calling it a "special Web browser"). Mr. Mulchandani then proved that point by demonstrating in open court how to use the Shop application to browse the public web pages of Twitter, the Metropolitan Transit Authority, and the New York Yankees. *Id.* at 463:18-469:14.

The testimony of all other fact witnesses was consistent — the Shop application is a web browser. Thus, B&N's expert, Dr. Neuman, explained that "a person of ordinary skill in the art would consider the shop application to be a web browser . . . [b]ecause the shop application acts like a web browser. It does the things that we would expect a web browser to do." Ex. 1 (Tr.) at 974:13-19. Further, no witness at trial, and in particular none of Adrea's experts, disputed that the Shop application retrieved a web page from the World Wide Web and permitted a user to

browse that web page and follow links.[3]  Accordingly, the unrebutted evidence was that the Shop

application is a web browser, and therefore the accused NOOK devices fail to meet the

requirements of claims 1, 2 and 3.

Adrea's only attempted response at trial was the opinion of its expert, Mr. Berg, who

testified that even though the Shop application retrieves web pages and information from the

web, it was not, in his view, a web browser because "[a] web browser allows you to go anyplace

on the Web[, whereas] the shop application [] only allows you to see what Barnes & Noble wants

you to see." Ex. 1 (Tr.) at 683:17-22.  However, Adrea provided no evidence that this

"construction" of the term "web browser" was correct.  And even if it were, it does not matter,

because the sole predicate assumption for Mr. Berg's opinion — that the Shop application did

not permit access to the Web — was proven false.  In fact, the evidence conclusively

demonstrated that the Shop application can access the Web, and is therefore ***not*** limited only to

"what Barnes & Noble wants you to see."  Indeed, as specifically demonstrated by Mr.

Mulchandani, the Shop application does not prevent users from browsing public websites like

that of the New York Yankees. *Id.* at 463:18-469:14.

Because Mr. Berg's assumption about the Shop application was wrong, his conclusion

was wrong as well, leaving Adrea with no competent evidence that the Shop application is not a

web browser.  This was confirmed by all of the remaining evidence establishing that the Shop

---

[3] *See, e.g.*, Ex. 1 (Tr.) at 455:4-13 (Mulchandani testifying that the Shop application
communicates using the HTTP protocol used by browsers); *id.* at 458:19-460:1 (Mulchandani
testifying that the Shop application may retrieve a web page that the users can browse); Ex. 2
(Narain Tr.) at 143:11-144:5 (Narain testifying about how the Shop application communicates
using the HTTP protocol); Ex. 1 (Tr.) at 971:14-972:16 (Dr. Neuman testifying that the Shop
application retrieves a web page from the World Wide Web that users can browse using the
HTTP protocol); *id.* at 720:13-22 (Mr. Berg testifying the Shop application retrieves a web page
from the cloud); *id.* at 724:19-22 (Mr. Berg agreeing that "the shop application retrieves
information from a web page").

application was designed as a "special browser optimized for shopping and discovery" (*id.* at 464:19-23), such that a user would not need to type in a URL to reach the Shop storefront (*id.* at 525:2-20, 539:17-540:11). As Mr. Mulchandani's unrebutted testimony explained, this design feature of the Shop browser was to make things easier for users, effectively "bookmarking" the Shop storefront and loading that web page when the application was accessed. *See id.* at 460:25-461:23, 539:17-540:11. The fact that the Shop application was designed as a "special purpose" web browser, however, does not make it something other than a web browser, and Mr. Berg's conclusion to the contrary, based solely on a factual assertion that was proven incorrect, cannot support a verdict of infringement. *See Hypoxico*, 2012 WL 3705006, at **6-11 (rejecting argument and "theory" when the actual evidence showed no infringement).[4] Further, as discussed in more detail below, Adrea's argument on claims 1, 2 and 3 that the Shop application was not a web browser is inconsistent with its arguments regarding infringement of claims 13 and 15, which *require* retrieval of a web page for a finding of infringement.

### 2. The Unrebutted Evidence Showed That Users Must Access The Shop Application In Order To Initiate Retrieval Of The Shop Storefront

Adrea also advanced the argument that, even if the Shop application were a web browser (which it is), claims 1, 2 and 3 were still infringed because the act of pressing the Shop icon was not the same as accessing a web browser. Ex. 1 (Tr.) at 683:1-10 ("all the user has to do is press the shop button, and that itself initiates the data retrieval"); *see also id.* at 788:25-789:15. In

---

[4] *See also Forest Labs., Inc. v. Abbott Labs.*, 1999 WL 33290607 (W.D.N.Y. June 23, 1999). In *Forest Labs.*, after a jury found infringement of a patent, the court granted a Rule 50 motion, holding that "[patentee] failed to offer any evidence showing that [the accused product] meets [certain] claim limitations. On the contrary, . . . an expert witness [of patentee] . . . conceded at trial that . . . [he] assumed that" a limitation was met. *Id.* at *4. "A patentee claiming literal infringement cannot simply assume or speculate that certain claim limitations are met." *Id.* at *5. The court also rejected an "unsupported, conclusory opinion" of an expert as insufficient to meet the patentee's burden of proof. *Id.*

other words, Adrea argued that if one ignored the fact that the direct result of selecting the Shop

icon was the opening of the Shop application web browser, then users do not access a web

browser merely by selecting the Shop icon.

However, Adrea's attempt to separate out the act of selecting the Shop icon from the

result of opening the Shop application web browser was not supported by the evidence. *First*, it

was undisputed at trial that it is the Shop application — not some other function of the NOOK

device — that actually initiates retrieval of the Shop storefront, once the Shop icon is selected.[5]

*Second*, all witnesses agreed that selecting the Shop icon accesses the Shop application. These

included not only B&N witnesses Mr. Mulchandani (*see* Ex. 1 (Tr.) at 449:9-14, 450:1-14,

523:10-13), Mr. Narain (*see* Ex. 2 (Narain Tr.) at 23:19-24:2, 140:25-141:3), and Dr. Neuman

(Ex. 1 (Tr.) at 969:9-13, 1215:7-13), but also Adrea's expert Mr. Berg, who testified that

"selecting the shop icon accesses the shop application." *Id.* at 723:12-16; *see also id.* at 780:13-

16 (agreeing that selecting the Shop icon "opens the shop application"). Thus, Mr. Berg's

conclusory statement that the Shop application is not accessed when the Shop icon is selected

was completely unsupported by the evidence, including his own testimony, and is an insufficient

evidentiary basis for the jury's infringement verdict with respect to claims 1, 2 and 3. *See*

*Hypoxico*, 2012 WL 3705006, at **6-9; *Forest Labs.*, 1999 WL 33290607, at *5; *Loral*

---

[5] *See, e.g.*, Ex. 1 (Tr.) at 507:6-10 (Mulchandani testifying that "[t]he shop application retrieves the storefront from the Barnes & Noble cloud"); *id.* at 523:10-13 (Mulchandani testifying that "[w]hen you press the shop button, it will launch our special browser which will initiate a connection to the Barnes & Noble cloud and load the storefront"); Ex. 2 (Narain Tr.) at 24:4-9 (Narain testifying that "the Shop application will invoke the Shop service which is running on the — on the Barnes & Noble servers and that will return shop-related information"); Ex. 1 (Tr.) at 1214:18-20 (Neuman testifying that "the shop application itself" is "actually doing the retrieval of data"); *id.* at 724:19-21 (Berg agreeing that "the shop application retrieves information from a web page").

*Fairchild*, 931 F. Supp. at 1023-24 (defendant cannot "arbitrarily" identify parts of the accused product as meeting claim elements when there is no evidentiary support).

### 3. The Unrebutted Evidence Showed That B&N Does Not Infringe Claim 2

The trial record also shows that the NOOK devices do not infringe dependent claim 2, not only for the reasons stated above, but also because they do not meet the additional limitations of that claim. Specifically, claim 2 requires that the consumer appliance of claim 1 further be "configured for use on a home network and having Internet-access functionality through the home network, the predetermined URL or the identifier being stored on the home network." Mr. Berg conceded that B&N did not so configure the NOOK devices; rather the NOOK devices cannot connect to a home network until a *user* configures them. *See* Ex. 1 (Tr.) at 734:19-735:6.

### B. No Reasonable Jury Could Have Found That B&N Infringed Claims 13 And 15

Claims 13 and 15 require that a method be performed to "enabl[e]" a "single user input to the consumer appliance to have the consumer appliance initiate sending a request . . . to a server on the Internet through the home network." The evidence at trial, however, was unrebutted that users must do more than just select "a single user input" to enable the Shop application to function; rather, the user must first configure or reset the device for use. Further, while the Shop application is a web browser that accesses a web page, the unrebutted evidence showed that the initiation of access to that web page by B&N's server is not "based on" an "identifier representative of a type of the consumer appliance" received from a NOOK device, as required by the claims. Accordingly, no reasonable jury could have found that B&N infringed claims 13 and 15.

### 1. The Evidence Did Not Show That B&N Performs The "Enabling" Step

With respect to the "enabling" step of claim 13, Mr. Berg first testified that users select the Shop icon, thus suggesting that B&N has met the requirements of the claim:

9

**Q.** The next step is the enabling step. Can you explain to the jury the basis of your opinion as to why Barnes & Noble enables the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request with the identifier? We will stop there.

**A.** Sure. Well, this is very similar to what we were discussing with the earlier claim. Basically, a single user input is simply hitting the shop button on the screen of the Barnes & Noble Nook devices. And what that does is it sends the model number and the device ID from the Nook devices to the Barnes & Noble cloud, and then that initiates retrieval of data that will get downloaded for the device.

Ex. 1 (Tr.) at 688:10-21. However, on cross-examination, Mr. Berg was forced to admit that

users must take more than this single action in order to perform the steps of claim 13 and 15:

**Q.** You agree, though, and may have said this, out of the box the Nooks aren't actually connected to anyone's home network, correct? **A.** That would be correct.

**Q.** So they are not yet actually enabled to do any communication, because they can't actually communicate right out of the box, true? **A.** Right out of the box, they cannot communicate, that's correct.

**Q.** The user has to go through the steps of connecting to their own home network in order to actually enable the Nook to be used, correct, for shop or anything else? **A.** They would have to go through some set-up steps.

*Id.* at 734:19-735:6.

The evidence further showed that even after configuration, users had to perform

additional steps, such as navigating to the home screen and unlocking the device, before they

could select the Shop icon. *See* Ex. 1 (Tr.) at 449:15-25, 465:22-466:11, and 1129:7-19. The

evidence therefore established that operating the Shop application requires more than a "single

user input" to "initiate sending a request," and thus cannot infringe claims 13 and 15.

Further, even if the admittedly required user-taken connectivity steps did not preclude a

finding of infringement, Adrea still presented insufficient evidence for a jury to have found

infringement, because Adrea did not point to any action taken *by B&N* by which it performs the

"enabling" step. Instead, as shown by the above-quoted portion of Mr. Berg's testimony on this

issue, Adrea solely pointed to actions taken by users of the NOOK devices, who by configuring

the devices, perform the step of "enabling the user . . . to have the consumer appliance initiate

sending a request . . . to a server on the Internet through a home network." While B&N sells the

NOOK devices, it does not perform the configuration steps, and thus does not perform the

enabling step. Where a claim recites a method allegedly performed by a system, the mere "sale

of equipment to perform a process is not a direct infringement of the process." *Joy Techs., Inc.

v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). And, Adrea cannot point to the manufacture of

NOOK devices as satisfaction of any claimed method step, because manufacture occurs in China

(Ex. 1 (Tr.) at 650:10-12), whereas all steps of a method claim must be performed in the United

States in order to infringe. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1371

(Fed. Cir. 2012).

Thus, the evidence of record does not support a finding that B&N enables the accused

Shop functionality by virtue of a single user input, as required under claims 13 and 15, and the

jury's infringement finding as to those claims cannot stand. *See Hypoxico*, 2012 WL 3705006, at

**6-9; *Forest Labs.*, 1999 WL 33290607, at *5.

### 2. The Evidence Did Not Show That B&N's Server "Initiat[ed] Access To A Web Page" "Based on" An "Identifier Representative Of A Type Of The Consumer Appliance" Received From A NOOK Device

Independent claim 13 (and therefore dependent claim 15) also requires that the consumer

appliance device in question send "a request with the identifier representative of a type of the

consumer appliance to a server on the Internet." It further requires that "based on the identifier,

the server initiat[es] access to a web page." The '703 Patent specification explains that this step

refers to distinguishing between various types of devices, *i.e.*, a different page would be returned

for a blender, a garbage can, etc. Ex. 3 ('703 Patent) at 2:64-3:31.

At trial, Adrea's infringement position focused on the request sent to B&N's server by

NOOK devices when the Shop application was being accessed. Ex. 1 (Tr.) at 688:10-21, 689:12-

690:6.  Specifically, Mr. Berg pointed to two purported identifiers: the NOOK's device ID, and

its model number.  *Id.* at 688:22-689:5.  However, with respect to the device ID, the evidence

presented did not show that the NOOK's device ID is "representative of a type of the consumer

appliance."  To the contrary, all witnesses, including Adrea's, agreed that the device ID was an

identifier unique to each individual NOOK device, not the type of device overall.  As Mr. Berg

testified, "the device ID[] is representative of that particular Barnes & Noble device.  So it

identifies that device to the Barnes & Noble cloud . . . ."  *Id.* at 688:22-689:3 (also opining that

the model ID represents a particular device); *see also id.* at 733:4-21.  Adrea's expert on validity

issues, Dr. Wang, also agreed that serial numbers are not representative of a type of consumer

appliance.  *Id.* at 1359:1-15.  Both Mr. Mulchandani and Dr. Neuman confirmed this.  *Id.* at

455:20-456:2 (Mulchandani); *id.* at 985:23-986:10 (Neuman).  As Dr. Neuman stated, "[t]he

device ID . . . is effectively a serial number for the device."  *Id.* at 986:2-5.  As Mr. Mulchandani

further explained, B&N's server only uses the device ID to look up a separate identifier, rather

than to access any web page.  *See id.* at 457:2-23, 510:20-511:5.  Thus, even if the device ID is

an "identifier representative of a type of the consumer appliance," which it is not, the server does

not "initiate access to a web page" "based on" the device ID.

Similarly, with respect to the NOOK device's model number, it was undisputed at trial

that B&N's server does not "initiat[e] access to a web page" "based on" the model number sent

by the NOOK devices when the Shop application is accessed.  Mr. Mulchandani — who

provided the only evidence on what the server does — testified that the model number sent by

the NOOK device is only used for "logging and analytics purposes," at which point the server

will "throw that information away."  Tr. at 455:17-457:1; *see also id.* at 512:9-18.  He was

explicit about this — "[the] model number [was not used] to decide what information to send to the Nook device." *Id.* at 456:24-457:1; *see also id.* at 512:22-513:1.[6]

Notably, Adrea provided no evidence to refute Mr. Mulchandani's testimony; indeed, Mr. Berg conceded that his "man-in-the-middle attack", from which he formed his opinion, provided no evidence that the B&N servers "initiat[e] access to a web page" "based on" an identifier. Specifically, he testified that "[my] man-in-the-middle attack only actually tells you when information is sent back and forth between the device and the server" (*id.* at 718:4-7; *see id.* at 731:18-20), and admitted that this does not show that the device ID or model number is also "used for any purpose." *Id.* at 732:13-19.[7]  In fact, the only evidence addressing this limitation came from B&N's witnesses, who, Mr. Berg agreed, "provided knowledgeable information about that." *Id.* at 731:15-17.  That testimony "could lead to only one conclusion . . . . [t]here was no reasonable basis for a jury verdict" finding infringement. *Hypoxico*, 2012 WL 3705006, at *11.

Further, as noted above, Adrea's infringement position with respect to this limitation is diametrically opposite to its position with respect to the "no web browser" limitation of claim 1. Talking out of both sides of its mouth, Adrea alleged infringement of claim 1 because the NOOK

---

[6] Adrea's counsel cross-examined Mr. Mulchandani extensively at trial about a reference he made during his deposition to the server using a model number. Mr. Mulchandani explained, however, that his deposition testimony was a reference to the server's general knowledge of "the type of device that it's speaking to" — which the language of claim 13 does not encompass — rather than to the specific model number identifier sent by a NOOK device when the Shop application is launched. *See* Ex. 1 (Tr.) at 514:14-515:1.  With respect to the identifier pointed to by Mr. Berg, Mr. Mulchandani could not have been more clear: "the specific transmission of the model number at the time . . . that the user depresses the shop application icon, and whether that is used in the context of constructing the storefront and returning it, the answer is no." *Id.*

[7] *See also* Ex. 1 (Tr.) at 718:16-23 (Berg agreeing that the attack does not show "what the server is using with respect to that information . . . or whether they are using it at all"); *see also id.* at 733:14-21 (Berg testifying that the attack does not provide "any direct evidence" that "the model number is responsible for retrieving any information with respect to claim 13").

device retrieved information purportedly without accessing a web browser, while on the other

hand it alleged infringement of claim 13 because the NOOK device initiated access to a web

page based on an identifier.  At trial, Adrea did not explain or reconcile this inconsistency,

because it couldn't.  If the Shop application accesses a web page, as required by claim 13 and 15,

then it is a web browser and does not infringe claim 1.

### 3. The Evidence Did Not Show That B&N Created A Database Of URLs Or Identifiers Per User

Dependent claim 15 adds to the method of claim 13 the additional step of "creating a data

base of URLs or identifiers per user."  There was no evidence presented at trial, however, that

showed that the NOOK devices perform this step on a "*per user*" basis.  Thus, no infringement

of claim 15 can be found for this reason as well.

### C. The Evidence Was Overwhelming That The NOOK Devices Were Not The Invention Contemplated By The '703 Patent

The inventor's own trial testimony further supports B&N's entitlement to judgment as a

matter of law on the issue of infringement of the '703 Patent.  Mr. Shteyn's testimony

established conclusively that tablet computers and electronic book readers were not at all within

the scope of what he purported to invent.  The '703 Patent contemplates coverage of everyday,

around-the-house appliances, such as blenders, DVD players, or garbage cans, which, unlike

more sophisticated computing devices, ordinarily are, and traditionally have been unable to

retrieve information from a remote server.  In fact, at trial, Mr. Shteyn confirmed repeatedly that

his patent was not intended to cover personal computers.  Ex. 1 (Tr.) at 209:14-23, 228:11-13,

228:20-22.  Among other things, he admitted he had neither "invented the iPad" (*id.* at 224:1-2),

nor the concept of computers retrieving information from remote servers without using a web

browser, as that functionality had been in existence for over thirty years (*see id.* at 225:18-23,

224:12-15, 225:18-226:2, 227:17-20).  Nor did Mr. Shteyn claim to have invented electronic

book readers, much less electronic book readers like the NOOK that are capable of connecting to a remote server. *See id.* at 247:9-18. Indeed, in light of these admissions, had Mr. Shteyn attempted to specifically claim coverage of computers or electronic book readers in his patent application, the asserted claims of the patent would not have issued. In any case, all of the trial evidence points to the *only* thing he did purport to invent, and what the asserted claims of the '703 Patent are clearly directed at — enabling ordinary non-computing devices to retrieve information from remote servers without accessing a web browser. Thus, to the extent NOOK devices meet any of the limitations of the asserted claims, it is simply because they are computers, which, as Mr. Shteyn concedes, have long been able to carry out these functions. They are, therefore, not the type of consumer appliances for which he received a patent, and should not be found to have infringed the '703 Patent.[8]

In sum, there is insufficient evidence in the trial record to support the jury's finding that the NOOK devices met all the limitations of the asserted claims of the '703 Patent. Accordingly, no reasonable jury could have concluded that B&N infringed the '703 Patent, and B&N is entitled to judgment as a matter of law on this issue.

## IV. NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '703 PATENT ARE NOT INVALID

On the issue of invalidity, the evidence showed that the asserted claims of the '703 Patent were anticipated by or obvious in view of the state of the art at the time it was applied for, as well as by U.S. Patent Nos. 5,761,485 ("Munyan") (Ex. 5) and 6,389,463 ("Bolas") (Ex. 6).

---

[8] B&N is mindful of the Court's ruling on claim construction that the term "consumer appliance" encompasses "device[s] that may send or receive information" (Dkt. 60 at 7), and maintains its objections to that construction, among others. As B&N argued during claim construction, and as the inventor's testimony conclusively established at trial, the "consumer appliance" contemplated by the '703 Patent does not include microprocessor-based personal computing devices such as the NOOK. To the extent it encompasses them, the '703 Patent would claim unpatentable subject matter under 35 U.S.C. § 101.

Specifically, Mr. Shteyn admitted that the prior art had long since included personal computing devices capable of retrieving data from remote servers, which by itself supports a finding of obviousness as a matter of law.  Further, Munyan and Bolas demonstrate that the claimed invention — as broadly as Adrea asserted it — was far from new at the time the application was filed; indeed, in light of these prior inventions, the evidence at trial demonstrated the '703 Patent's complete absence of novelty.  Specifically, the evidence showed that Munyan anticipated or rendered obvious claims 1, 2 and 3, and Bolas anticipated or rendered obvious claims 13 and 15.  "To show that a patent claim is invalid as anticipated, the accused infringer must show by clear and convincing evidence that a single prior art reference discloses each and every element of a claimed invention." *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1265 (Fed. Cir. 2012).  Further, a patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103.  Both are the case here.

### A. The Record, Including The Testimony Of The '703 Patent's Inventor, Compels A Finding Of Obviousness As A Matter Of Law

As discussed above, the '703 Patent describes nothing more than performing a well-known technique (retrieving data from a server) on well-known devices (consumer appliances) at the time the '703 Patent was applied for.  Indeed, as the evidence at trial demonstrated, including the inventor's own admissions, retrieving data from an external server was indisputably a well-known technique.  On this issue, Mr. Shteyn confirmed that his invention was a routine incorporation of a well-known technique into existing, commonplace devices.  In addition, Mr. Shteyn repeatedly emphasized that his patent was intended to cover the simple idea of retrieving

data from the Internet — not by way of a web browser, but by pushing a button — on everyday *non*-computing devices. Ex. 1 (Tr.) at 209:14-23, 228:11-13, 228:20-22.

As Mr. Shteyn further conceded at trial, computing devices were able to retrieve information from remote servers long prior the filing of the '703 Patent application — as far back as 1969 (*id.* at 225:18-23, 224:12-15, 227:17-20). Mr. Shteyn also repeatedly emphasized that his patent was intended to cover ordinary consumer devices. *Id.* at 209:14-23, 228:11-13, 228:20-22. The clear result, then, by his own admission, is that the '703 Patent covers nothing more than incorporating a well-known technique into well-known devices, and Adrea did not introduce evidence to the contrary. Adrea also did not provide any evidence that the incorporation of these well-known technologies into well-known devices was beyond the ability of a person of ordinary skill. Thus, Mr. Shteyn's own testimony demonstrated that the technique of the asserted claims was obvious in view of the admitted state of the art. *See Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333, 1340 (Fed. Cir.) ("Precedent agrees with Newegg that a person of ordinary skill could have adapted the CompuServe order command to known browser capabilities when these capabilities became commonplace, and that it was obvious to do so."), *reh'g granted*, 515 F. App'x 883 (Fed. Cir.), *and amended on reh'g*, 728 F.3d 1332 (Fed. Cir. 2013), *and cert. denied*, 134 S. Ct. 910 (2014). This compels a straightforward and incontrovertible finding of obviousness as a matter of law. *See Soverain*, 705 F.3d at 1344 ("Newegg is correct that the [claimed invention] was a routine incorporation of Internet technology into existing processes. . . . The district court's ruling of nonobviousness is reversed.").

**B.  The Record Evidence Is Insufficient To Support The Jury's Finding That Munyan Does Not Anticipate Claims 1, 2 And 3**

As Dr. Neuman explained at trial, and as is apparent from a straightforward review of the patent, Munyan describes an electronic book reader where, when a user presses an icon, the device accesses a virtual bookstore on a remote server and retrieves information about books available for purchase based on an identifier.  *See* Ex. 1 (Tr.) at 987:16-995:14.  Munyan therefore concisely demonstrates that, to the extent claims 1, 2 and 3 could cover the accused NOOK devices, Mr. Shteyn's invention was far from novel.  Dr. Neuman further explained, limitation by limitation, how claims 1, 2 and 3 of the '703 Patent were anticipated in view of the electronic book reader disclosed by Munyan.  *See id.*  On the other hand, Adrea's expert on validity, Dr. Wang, did not even bother to address Munyan.  In light of Dr. Neuman's unrebutted testimony — as well as Munyan's facial disclosure of all the limitations of claims 1, 2 and 3 of the '703 Patent — no reasonable jury could have concluded anything other than that these claims were anticipated by Munyan.  *See, e.g., IPPV Enters., LLC v. Echostar Commc'ns, Corp.*, 191 F. Supp. 2d 530, 561-62 (D. Del. 2002) (granting invalidity JMOL motion where plaintiff offered no expert testimony regarding validity, choosing instead to rely on cross-examination of defendant's invalidity expert, because "the undisputed evidence offered at trial . . . establishes that the claims . . . at issue are invalid as anticipated").[9]

---

[9] *See also Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1345-47 (Fed. Cir.) (reversing denial of invalidity JMOL where accused infringer's expert presented a "strong prima facie case" that the claim was anticipated and patentee did not introduce substantial evidence in response), *amended on reh'g in part*, 366 F. App'x 154 (Fed. Cir. 2009); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1374 (Fed. Cir. 2005) (reversing denial of invalidity JMOL where plaintiff "limit[ed] its argument to contesting the veracity of [defendant's] expert and disputing his conclusions," because the prior art reference "speaks for itself, and it clearly discloses" the limitation at issue).

**C.  The Record Evidence Is Insufficient To Support The Jury's Finding That Bolas Does Not Anticipate Claims 13 and 15**

As Dr. Neuman explained at trial, Bolas describes an internet radio where, when a user presses a button, the radio retrieves music from a web page on a remote server based on an identifier, as well as textual information such as a description of the station the radio is set to, or the name of the song being played. *See* Ex. 1 (Tr.) at 995:15-1001:7, 1212:21-1214:9.  Dr. Neuman further testified, limitation by limitation, how claims 13 and 15 of the '703 Patent were anticipated by or obvious in view of Bolas. *See id.*  In response, Adrea's expert, Dr. Wang, only addressed the sufficiency of Bolas' disclosures with respect to three of claim 13's limitations. As discussed below, his testimony with respect to those limitations could not have supported the jury's verdict.[10]

**1.  Conclusory Expert Testimony Is Insufficient**

With respect to two of the claim 13 limitations at issue, Dr. Wang offered only conclusory opinions regarding anticipation by Bolas. *First*, Dr. Wang opined that the serial number identified in Bolas did not meet the limitation of an "identifier representative of a type of the consumer appliance."  Dr. Wang's entire testimony on this issue is as follows:

> **Q.** I want to direct your attention in the middle clause beginning with "enabling," there is the phrase "initiate sending a request with the identifier representative of a type of the consumer appliance."  Are you familiar with Dr. Neuman's opinions on this element? **A.** Yes.

> **Q.** What does he point to [], in his view, meet this element?   A. He thinks the serial number that he used for the device is the identifier.

> **Q.** Do you agree with that opinion? **A.** No.

---

[10] *See Ecolab*, 569 F.3d at 1345-47; *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1360-61 (Fed. Cir. 1998) (reversing denial of JMOL of anticipation where "the Telebit article itself and the testimony offered at trial conclusively demonstrate" anticipation); *Verdegaal Bros., Inc. v. Union Oil, Co.*, 814 F.2d 628, 632 (Fed. Cir. 1987) (reversing denial of invalidity JNOV motion where the "reference itself" and its "uncontradicted disclosure" taught the claimed invention).

> **Q.** Why not?   **A.** Because the serial number is not a representative of a type of consumer appliance.

Ex. 1 (Tr.) at 1359:1-15.

As a matter of law, conclusory expert testimony of this nature is insufficient to support a jury verdict of validity. *MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172 (Fed. Cir. 2015) (reversing denial of JMOL of invalidity where accused infringer's expert provided specific testimony on obviousness, but patentee's expert only offered conclusory statements in rebuttal); *Krippelz*, 667 F.3d at 1268-69 (holding that "generic statements that [a] limitation [is] unmet" are "too conclusory to sustain [a] jury's verdict"); *cf. Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1358 (Fed. Cir. 2010) (en banc) (conclusory expert testimony "cannot constitute substantial evidence" of enablement).   Dr. Wang's testimony epitomizes this, as he provided no analysis as to why the serial number in Bolas did not meet this limitation of claim 13; rather, he simply opined, without any explanation, that the serial number does not meet the limitation.

This testimony also, once again, demonstrates an inherent inconsistency in the positions Adrea's experts took at trial.   On the one hand, Mr. Berg, Adrea's infringement expert, pointed to the NOOK's device ID (*i.e.*, serial number) as an identifier representative of type (Ex. 1 (Tr.) at 687:3-689:5),[11] while on the other hand,  Dr. Wang, Adrea's validity expert, opined that Bolas' serial number was not representative of type (*id.* at 1359:1-15).   Adrea cannot have it both ways, since "patent claims are construed the same way for validity and for infringement." *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1317 (Fed. Cir. 2009).   Rather, as Dr. Neuman explained at trial, the NOOK's device ID does not satisfy this limitation of claim 13 and 15, but if they are held to, then so does the serial number in Bolas (*see* Ex. 1 (Tr.) at 996:21-24), and the

---

[11] As noted above, Mr. Berg conceded at trial that the device ID was representative of each individual NOOK device. *Id.* at 689:1-3.

claims are invalid. No reasonable jury could have found otherwise; either the claims are not infringed on this basis, or they are invalid in view of Bolas.

*Second*, Dr. Wang testified that he disagreed with Dr. Neuman's testimony that "returned radio station data" comprised "content information about a context of using the consumer appliance," as required by claims 13 and 15. Dr. Neuman had explained in great factual detail that the "content information about the context of using the consumer appliance" limitation is met by Bolas' disclosure of "textual information that is . . . about the audio that is being retrieved", for example, "a station identifier, . . . the name of a song[,] . . . [or] the current score" of a sporting event (Ex. 1 (Tr.) at 999:8-1000:8), an opinion even Mr. Shteyn concurred with.[12] Yet, the entirety of Dr. Wang's rebuttal of Dr. Neuman's testimony was:

> **Q.** In the context of the Bolas patent, which relates to a radio device, what is your understanding of what Dr. Neuman points to for that element? **A.** He points to the returned radio station data.
>
> **Q.** Do you agree with his opinion that that returned radio station data constitutes content information about a context of using the consumer appliance? **A.** No.
>
> **Q.** Why not? **A.** Because that's the data for usage of the radio. It's not the information for the context of the usage of the radio.
>
> **Q.** What would be information about the context of using a radio in your opinion? **A.** It could be some recommended station of the radio station that the user can turn to.

*Id.* at 1360:14-1361:7. This conclusory testimony is insufficient to support the jury's verdict. Nor is it sufficient to overcome a finding of obviousness as a matter of law, because there is no evidence that returning data about a "recommended station of the radio" is materially different in concept or practice than returning "radio station data". *See Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("Furthermore, the reasons for adding a reader

---

[12] Thus, Mr. Shteyn testified that for a radio, his patent would be directed to information "about the music . . . they are already hearing. It's about things, about the music." Ex. 1 (Tr.) at 252:11-16.

to the Bevan/SSR combination are the same as those for using readers in other children's toys —
namely, providing an added benefit and simplified use of the toy for the child in order to increase
its marketability.  Leapfrog presents no evidence that the inclusion of a reader in this type of
device was uniquely challenging or difficult for one of ordinary skill in the art."); *see also*
*Soverain*, 705 F.3d at 1340.

### 2. Expert Testimony That Fails To Take Into Account The Entire Disclosure Of The Prior Art Is Insufficient

In addition to his other conclusory testimony on Bolas, unsupported by any factual
references, Dr. Wang also opined that one portion of Bolas' specification — an excerpt of
"pseudo code" — does not disclose "initiating access to a web page" based on the serial number.
Ex. 1 (Tr.) at 1359:21-1360:13.  However, Adrea cannot avoid invalidity by selecting a portion
of Bolas' specification and ignoring the rest.  Rather, it is the entirety of the disclosure of Bolas
that is relevant.  Dr. Neuman carefully explained how other language in the specification —
which Dr. Wang did not address — supported Dr. Neuman's opinion that the server disclosed in
Bolas initiates access to a web page based on the serial number (*id.* at 999:8-24, 1202:8-
1203:13).  An expert's testimony, like Dr. Wang's, that "fail[s] to take into account the entire . . .
disclosure" is "too conclusory to sustain the jury's verdict." *See Krippelz*, 667 F.3d at 1268-69.[13]

In sum, Dr. Neuman's testimony as to the invalidity of the '703 Patent based on Munyan
and Bolas stands unrebutted in the trial record.  Accordingly, no reasonable jury could have

---

[13] Even the select portion of Bolas cited by Mr. Wang does not prove his point.  It is neither
surprising nor relevant that the pseudo code referred to by Dr. Wang does not describe all the
functionality disclosed in the specification.  As Dr. Neuman explained, the pseudo code in the
specification is only "a piece of code," so it does not set forth all of the functions performed by
the disclosed system.  Ex. 1 (Tr.) at 1201:10-13 (stating that "[t]he entire code that would be
implemented there would be a larger piece of code").  Indeed, the second and final lines of the
pseudo code include ellipses, indicating that the pseudo code is incomplete.  DTX-477 at 6:60-
7:20 (second line is an ellipsis; final line reads: "Redirect to http://www...").

concluded that the '703 Patent was not anticipated or rendered obvious by Munyan and Bolas, and B&N's Rule 50 motion with respect to the invalidity of the '703 Patent should be granted.[14]

## V.   NO REASONABLE JURY COULD HAVE FOUND THAT THE ASSERTED CLAIMS OF THE '501 PATENT ARE INFRINGED AND NOT INVALID

Although the Court held the '501 Patent invalid under 35 U.S.C. §101 in its July 24, 2015 Order (Dkt. 182), to preserve its position, B&N briefly sets out here why the jury's infringement verdict could not stand.  Adrea asserted infringement of claims 7, 8, 9, 18 and 19, arguing that the NOOK devices were "viewer[s]," and that the lending period for an electronic book loaned via B&N's LendMe feature was the "predetermined amount of time" recited by the claims.  Ex. 1 (Tr.) at 589:9-22, 591:24-592:14.  However, rather than the lending period being the "time after the electronic book is stored on the viewer" (as the claim requires), or "begin[ning] when the electronic book is stored on the viewer" (as this language was construed), all witnesses agreed that B&N's lending period begins before the loaned book is ever stored on a NOOK device.  *Id.* at 435:14-436:22, 437:3-438:19, 537:5-538:1 (Mulchandani); Ex. 2 (Narain Tr.) at 51:22-52:23; Ex. 1 (Tr.) at 1049:19-1050:11, 1054:13-20, 1056:9-1057:9, 1063:7-25, 1089:13-16 (Neuman); *id.* at 576:20-577:5, 581:13-582:5, 592:22-593:9, 737:22-740:7, 793:16-22 (Berg).  Moreover, the evidence was clear that B&N's LendMe feature was substantially different from the claimed invention as a result of the LendMe feature being a cloud-based system.  *Id.* at 1057:10-1058:15.

---

[14] Adrea apparently takes the position that B&N has waived its right to bring a renewed Rule 50 motion on the invalidity of the '703 Patent, since at trial, according to Adrea, B&N only moved for JMOL on infringement.  *See* Adrea Aug. 11, 2015 Letter at 2.  This is wrong.  Both at the close of Adrea's case and then again its own case, B&N made clear that it wished to move for JMOL on all of its claims and defenses.  At the close of Adrea's case, the Court indicated that B&N's motions were reserved "to the end of the case" (Ex. 1 (Tr.) at 912:9-13), and then at the close of B&N's case, the Court allowed B&N to make a general motion "with respect to all of the claims", and then ruled that the "motion was denied."  *Id.* at 1378:24-1379:1.  And then, following its invalidation of the '501 Patent, the Court invited both sides to present Rule 50 motions with respect to the '703 Patent on all grounds.

Accordingly, no reasonable jury could have found infringement literally or via the doctrine of equivalents. Moreover, prosecution history estoppel barred Adrea from relying on the doctrine of equivalents, because the claims were only allowed as a result of an amendment indicating when the "predetermined amount of time" began.[15] *See* Ex. 8 (JTX-005) at ADREA0056108,10-11, ADREA0058521-48, ADREA0058626-27, 30, ADREA0058706, 09-10, 16-17, 20-21, 26, 88. Further, Adrea's doctrine of equivalents argument was improper as it would ensnare the prior art addressed below.

With respect to the invalidity of the '501 Patent's asserted claims in view of the prior art, Dr. Neuman explained in detail how the claims were invalid in view of PCT Publication No. WO1993/09490, naming Michael M. Saigh as an inventor (the "Saigh publication"). Ex. 1 (Tr.) at 1066:7-1080:9, 1217:5-1219:15. Dr. Wang only disputed Dr. Neuman with respect to two limitations, but those disputes were based on Dr. Wang's decision to ignore one disclosed embodiment in favor of another. *Id.* at 1355:15-1357:8. Dr. Wang's decision to ignore a disclosed embodiment does not change the fact that it is disclosed, nor does it negate Dr. Neuman's undisputed testimony that the asserted claims of the '501 Patent are invalid in view of that embodiment. *Id.* at 1069:24-1070:5, 1070:19-1071:5, 1072:13-20, 1217:5-1218:1. Accordingly, no reasonable jury could have found the asserted claims to be valid. Moreover, the rule that claims must be interpreted consistently for the purposes of infringement and validity

---

[15] In addition, while the Court, in denying B&N's motion *in limine* on this issue (Dkt. 142), held that specifying when the lending period began was tangential to the reason for the amendment, Adrea's evidence at trial did not support this. In fact, the evidence showed, the amendment adding the limitation "a predetermined amount of time after the electronic book is stored on the viewer" (Ex. 8 (JTX-005) at ADREA0058716-721) was specifically made to overcome the Patent Office's rejection in view of the prior art's "time parameter" (*id.* at ADREA0058627). Further, as stated in *Integrated Tech. Corp.*, 734 F.3d at 1358, "[t]he tangential relation exception is 'very narrow'" (citations omitted), and "[a]n amendment made to avoid prior art that contains the equivalent in question is not tangential." *Id.*

places Adrea in an unfortunate situation — Dr. Berg and Dr. Wang adopted contrary interpretations of the import of a lending period beginning prior to storage. *Id.* at 1368:9-1369:13; 739:17-740:3, 740:21-741:16, 745:19-745:25.  Either the NOOK devices do not infringe despite the lending period beginning before storage, or the Saigh publication anticipates because the lending period begins before storage.  Either way, a reasonable jury could not have found for Adrea.

## VI.    IN THE ALTERNATIVE, A NEW TRIAL IS WARRANTED

In the event the Court determines that there was sufficient evidence in the record, however limited, to avoid judgment as a matter of law with respect to the '703 Patent under the Rule 50 standard, B&N requests in the alternative a new trial under Rule 50(b) or 59, on the grounds that the jury's verdict of infringement and validity was against the overwhelming weight of the evidence.  For all the reasons set forth in this memorandum, undoubtedly it was.  *See Loral Fairchild*, 931 F. Supp. at 1034 ("In the alternative, the court grants Sony's motion for a new trial because the great weight of the evidence is against the verdict.").  In addition, for all the reasons stated above, allowing the jury verdict to stand would be a seriously erroneous result. *See Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1047 (2d Cir. 1992) (stating that a motion for a new trial should be granted when, *inter alia,* "in the opinion of the district court, the jury has reached a seriously erroneous result") (citations and internal quotations omitted).  Accordingly, while B&N has amply shown that the evidence was insufficient to support the jury's verdict, and judgment as a matter of law should therefore issue, B&N moves in the alternative for a new trial.

## VII.    CONCLUSION

For the reasons set forth above, B&N's motion for judgment as a matter of law should be granted.  In the alternative, B&N should be granted a new trial with regard to non-infringement and invalidity of the '703 Patent.

Dated:  August 31, 2015

**ARNOLD & PORTER LLP**

Louis S. Ederer
Susan Shin
Maxwell C. Preston
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian  (*pro hac vice*)
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael Berta (*pro hac vice*)
Willow Noonan (*pro hac vice*)
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and Nook Media LLC*

## CERTIFICATE OF SERVICE

I, hereby certify that on August 31, 2015, copies of Defendants' Memorandum of Law In Support of Their Motion Pursuant To Rule 50 For Judgment As A Matter of Law Or In The Alternative For A New Trial was caused to be served upon the following via ECF:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036


Steven Michael Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110


Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067

Julie Simeone