**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ADREA, LLC,

       *Plaintiff*,

v.

BARNES & NOBLE, INC.,
BARNESANDNOBLE.COM LLC, and
NOOK MEDIA LLC,

       *Defendants*.

Civil Action No. 13-cv-4137 (JSR)

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION PURSUANT TO
RULE 50 FOR JUDGMENT AS A MATTER OF LAW OR
IN THE ALTERNATIVE FOR A NEW TRIAL**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................3

III.    LEGAL STANDARD...........................................................................................4

IV.     B&N WAIVED ITS RIGHT TO CHALLENGE VALIDITY ISSUES AND
        NON-INFRINGEMENT THEORIES NOT RAISED IN ITS RULE 50(a)
        MOTION..............................................................................................................5

        A.      B&N's Pre-Verdict Rule 50(a) Motion Did Not Address Any Validity
                Issues.............................................................................................................. 6

        B.      B&N Seeks "Renewal" of Non-Infringement Arguments that Were Not
                Raised in Its Rule 50(a) Motion.................................................................... 8

                1.      B&N's Pre-Verdict Motion on Claim 1 of the '703 Patent Was
                        Limited to Whether B&N's Shop Application Is a "Web Browser" .......... 8

                2.      B&N Made No Pre-Verdict Motion With Respect to Claim 2 of the
                        '703 Patent ............................................................................................ 8

                3.      B&N Waived Its Non-Infringement Argument Based on the
                        "Enabling" Element in Claim 13 of the '703 Patent................................. 8

                4.      B&N Made No Pre-Verdict Motion With Respect to Claim 15 of
                        the '703 Patent ...................................................................................... 9

                5.      B&N Waived Its Non-Infringement Theory Concerning Personal
                        Computing Devices and the "Consumer Appliance" Element .................. 9

V.      SUFFICIENT EVIDENCE EXISTS IN THE RECORD FOR A REASONABLE
        JURY TO FIND INFRINGEMENT OF THE '703 PATENT .........................................10

        A.      B&N Cannot Obtain JMOL Based on an Objection to this Court's
                Construction of "Consumer Appliance" ................................................................ 10

        B.      The Nook Devices Meet Every Element of Claims 1-3 ...................................... 11

                1.      B&N's Shop Application Is Not a "Web Browser" According to
                        the Term's Ordinary and Customary Meaning ......................................... 11

                2.      The Single Act of Pressing the Shop Icon Initiates Retrieval of
                        Data, Regardless of Whether the Shop Application Is a "Web
                        Browser" ................................................................................................ 13

i

3.      The Nook Devices Are "Configured for Use on a Home Network" at the Point of Sale with Built-In Wi-Fi Connectivity .............................. 14

C.      B&N Performs Every Method Step of Claims 13 and 15 .................................... 15

1.      There Is No Genuine Dispute that B&N Performs the "Enabling" Step, Allowing Nook Devices to Initiate Sending a Request to the B&N Server Based on a "Single User Input" .......................................... 15

2.      B&N's 30(b)(6) Witness Confirmed in a Binding Admission that the B&N Server Returns Web Data Based on the Nook Model Number .................................................................................................. 16

3.      B&N's Motion with Respect to Claim 15 Is Based on the False Premise that No Evidence Was Presented at Trial.................................... 17

VI.     B&N'S MOTION ON VALIDITY ISSUES FAILS ON THE MERITS ......................... 18

A.      B&N's Theory that the Inventor Testimony by Itself Can Support JMOL on Obviousness Has No Basis in Law or Fact ....................................... 18

B.      B&N's Expert Conceded During Trial that the Munyan Reference Does Not Anticipate Claims 1-3 of the '703 Patent ....................................... 19

C.      The Evidence Does Not Compel a Finding of Anticipation of Claims 13 and 15 of the '703 Patent by Clear and Convincing Evidence ............................ 21

1.      The Parties' Experts Agree that Bolas Does Not Disclose an "Identifier Representative of a Type of the Consumer Appliance" .......... 21

2.      Bolas Does Not Disclose a Server that Initiates Access to a Web Page "Based on the Identifier" .................................................................. 23

3.      Bolas Does Not Disclose the Retrieval of "Content Information About a Context of Using the Consumer Appliance" ............................... 23

VII.    THE RECORD CONTAINS SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT THE '501 PATENT IS VALID AND INFRINGED ........................... 24

VIII.   NO NEW TRIAL IS WARRANTED ................................................................... 25

IX.     CONCLUSION .............................................................................................. 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abel v. Town Sports Int'l, LLC*,
  No. 09-cv-10388, 2012 U.S. Dist. LEXIS 183444 (S.D.N.Y. Dec. 19, 2012) ........................7

*Beastie Boys v. Monster Energy Co.*,
  66 F. Supp. 3d 424, 452 (S.D.N.Y. 2014) ...............................................................................8

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
  320 F.3d 1339 (Fed. Cir. 2003) ...............................................................................................21

*ClearValue, Inc. v. Pearl River Polymers, Inc.*,
  668 F.3d 1340 (Fed. Cir. 2012) .................................................................................................6

*Duro-Last, Inc. v. Custom Seal, Inc.*,
  321 F.3d 1098 (Fed. Cir. 2003) .....................................................................................5, 6, 19

*Franklin Elec. Co. v. Dover Corp.*,
  No. 05-cv-598, 2007 U.S. Dist. LEXIS 84588 (W.D. Wisc. Nov. 15, 2007) ........................19

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004) ...............................................................................................21

*i4i Ltd. P'Ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S. Ct. 2238 (2011) ...................6, 7

*ING Global v. United Parcel Serv. Oasis Supply Corp.*,
  757 F.3d 92 (2d Cir. 2014) ...............................................................................................5, 25

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) .................................................................................................................19

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012) ......................................................................................................5

*Medisim Ltd. v. BestMed, LLC*,
  758 F.3d 1352 (Fed. Cir. 2014) .................................................................................................5

*Otsuka Pharma. Co. v. Sandoz, Inc.*,
  678 F.3d 1280 (Fed. Cir. 2012) .........................................................................................1, 19

*Provost v. City of Newburgh*,
  262 F.3d 146 (2d Cir. 2001) ...............................................................................................4, 5, 7

*Stampf v. Long Island R.R.*,
    761 F.3d 192 (2d Cir. 2014).........................................................................................4, 5, 25

*T.E.A.M. Entm't, Inc. v. Douglas*,
    No. 04-cv-1552, 2006 U.S. Dist. LEXIS 9681 (S.D.N.Y. Mar. 9, 2006)
    (Rakoff, J.) ........................................................................................................................6, 7

*Tex. Instruments Inc. v. Cyrpress Semiconductor Corp.*,
    90 F.3d 1558 (Fed. Cir. 1998).............................................................................................4

*Tolbert v. Queens College*,
    242 F.3d 58 (2d Cir. 2001)...................................................................................................5

*TransOcean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
    443 F. Supp. 2d 836 (S.D. Tex. 2006) .............................................................................19

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*,
    308 F.3d 1167 (Fed. Cir. 2002)...........................................................................................7

## OTHER AUTHORITIES

FED. R. CIV. P. 30(b)(6)..............................................................................................16, 17

FED. R. CIV. P. 50 ....................................................................................................... passim

FED. R. CIV. P. 59 .....................................................................................................4, 5

iv

## I.       INTRODUCTION

The Court should deny the motion for judgment as a matter of law ("JMOL") filed by Defendants Barnes & Noble, Inc., Barnesandnoble.com LLC, and Nook Media LLC (collectively, "B&N") and consider granting appropriate relief to Plaintiff Adrea, LLC ("Adrea"), including an award of fees for time spent answering this motion.

B&N's renewed motion for JMOL under Rule 50(b) is a perfunctory submission, untethered to its pre-verdict Rule 50(a) motion, the plain language of Rule 50, and controlling authority regarding the specificity requirement for JMOL motions.   B&N advances numerous arguments directed to theories and prior art references that were not addressed in its Rule 50(a) motion.   Despite being put on notice of waiver, B&N presses forward in clear violation of Second and Federal Circuit law, claiming this Court somehow gave it permission to bring a Rule 50(b) motion "on all grounds," regardless of whether issues were properly preserved.   *See* Dkt. No. 185 ("B&N Br."), at 23 n.14.   Of course, this never happened.   Nevertheless, Adrea has been forced to expend significant resources responding to challenges that B&N has clearly waived even under the most forgiving view of the specificity requirement.

B&N's motion also fails on its merits.   On validity issues, where B&N has a doubly high burden of showing that no reasonable jury could conclude that B&N failed to prove its case by clear and convincing evidence, B&N seeks JMOL that the asserted claims of U.S. Patent No. 7,620,703 ("the '703 patent") are invalid as obvious based ***solely*** on inventor testimony, disregarding clear Federal Circuit authority.[1]   In addition, B&N seeks JMOL that the claims of the '703 patent are anticipated in spite of unambiguous admissions from its expert that the prior

---

[1] *See Otsuka Pharma. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012) ("The inventor's own path itself never leads to a conclusion of obviousness; that is hindsight.").

1

art is missing key claim limitations.  *E.g.*, Trial Transcript ("Trial Tr.")[2] (Neuman) at 993:9-21 ("Q. Does the Munyan patent explicitly disclose this limitation?  A. No, it does not explicitly disclose this limitation.").

B&N's challenge to the jury's verdict of infringement is also without merit.  B&N rehashes the same non-infringement defenses that were rejected ***first*** by the Court during the summary judgment phase and ***second*** by the jury at the conclusion of the trial.  B&N repeatedly mischaracterizes evidence as "unrebutted" with complete disregard for relevant trial testimony and other evidence that support a finding of infringement.  In one instance, B&N moves for JMOL based simply on the fact it "objects" to one of the Court's claim constructions ("consumer appliance").  In another, B&N cites nothing at all in support of its motion, relying only on a glaring misrepresentation to the Court that "[t]here was no evidence presented at trial" on that particular issue.  To the extent the Court reaches the merits of these non-infringement theories, B&N has failed to meet its heavy burden for obtaining JMOL in every instance.

In the alternative, B&N makes a half-hearted motion for a new trial "on the grounds that the jury's verdict of infringement and validity was against the overwhelming weight of the evidence."  B&N Br. at 25.  Here, B&N adds nothing new, citing the same flawed arguments it advanced in support of its motion for JMOL.  In essence, B&N asks this Court to give no deference to the jury's evaluation of the witnesses' credibility, or to the jury's careful deliberation of the issues for more than three days.  B&N's motion is woefully inadequate in many respects and falls far short of demonstrating the need for a new trial here.

---

[2] The cited portions of the trial transcript are provided as Exhibit ("Ex.") A.  All exhibits are attached to the 9/14/15 Declaration of Colin Cabral that accompanies this filing.

## II.      FACTUAL BACKGROUND

The Court conducted a jury trial in October 2014 over the course of 10 days.  *See* Dkt. Nos. 146-162.  The jury deliberated for over three full days.  *E.g.*, Dkt. Nos. 162, 164.  During its deliberations, the jury posed thoughtful questions (*e.g.*, Trial Tr. at 1531:7-11) and requested a voluminous amount of evidence to review, including testimony from five witnesses concerning the '703 patent alone (*e.g.*, *id.* at 1524:7-9), prompting this Court to comment: "I am not quite sure whether they haven't just requested the entire transcript of the trial."  *Id.* at 1524:10-11.

On October 27, 2014, the jury issued its verdict, finding that B&N infringed the '703 patent, as well as U.S. Patent No. 7,299,501 ("the '501 patent"), and that these patents were not invalid.  Dkt. No. 145.  The verdict form did not require the jury to specify which claim (or claims) formed the basis of its verdict.  *See generally id.*; *see also* Trial Tr. at 1177:14-1178:1 (overruling B&N's objection to break down the verdict form by claim for each patent).

Before the case went to the jury, B&N made several oral Rule 50(a) motions.  *See* Trial Tr. at 1378:24-1382:23.  At the outset, B&N made a generic motion with respect to all claims:

> MR. SHARIFAHMADIAN: Your Honor, we have a motion with respect to all of the claims.
>
> THE COURT: Yes, that motion is denied.

*Id.* at 1378:24-1379:1.    B&N then "focus[ed] on several issues," each of which related exclusively to infringement.  *See id.* at 1372:2.  With respect to the '703 patent, B&N moved for JMOL on claim 1, arguing only that the Shop application on the accused Nook devices was not a "web browser."  *Id.* at 1380:15-1381:8.  B&N also moved for JMOL on claim 13 of the '703 patent on two grounds: (i) the user and the accused devices perform the steps of the claimed method, rather than B&N; and (ii) the "identifier" element was not met.  *See id.* at 1379:3-

1380:12.  With respect to the '501 patent, B&N moved for JMOL on claim 18, arguing only that the "predetermined amount of time" did not begin precisely "when the electronic book is stored on the viewer."[3]  Trial Tr. at 1381:21-1382:6.  B&N made the same argument for claim 7 and also argued that the accused devices perform the "storing" step of the method, rather than B&N.  *Id.* at 1381:16-20.  The Court denied each of B&N's motions.  *Id.* at 1385:18-20.

## III.   LEGAL STANDARD

### A.     Judgment as a Matter of Law Under Rule 50

A party moving for JMOL faces a high burden, as such relief can be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue."  FED. R. CIV. P. 50(a)(1).  "A court may set aside a jury's verdict only where there is such a complete absence of evidence supporting the verdict that a jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the non-moving party]."  *Stampf v. Long Island R.R.*, 761 F.3d 192, 197 (2d Cir. 2014) (internal quotation omitted); *see also Tex. Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1563 (Fed. Cir. 1998).  Evidence must be viewed in the light most favorable to the non-moving party.  *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001).

### B.     New Trial

B&N also faces a heavy burden to establish that it is entitled to a new trial.  "A district court may grant a motion for new trial under Rule 59 if 'the jury has reached a seriously

---

[3] B&N did not argue for JMOL under the proper legal standard.  Instead, B&N argued "there is more than sufficient testimony in the record for a reasonable jury to find that this difference [in time] is substantial."  Trial Tr. at 1382:3-5.

erroneous result or [its] verdict is a miscarriage of justice.'" *Stampf*, 761 F.3d at 202 (quoting *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005)). "When considering a motion for a new trial under Rule 59(a) on the ground that the jury's verdict is against the weight of the evidence, our cases 'teach [that a] high degree of deference [is] accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency.'" *ING Global v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97-98 (2d Cir. 2014) (quoting *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012)).

## IV.   B&N WAIVED ITS RIGHT TO CHALLENGE VALIDITY ISSUES AND NON-INFRINGEMENT THEORIES NOT RAISED IN ITS RULE 50(a) MOTION

Grounds not properly set forth in a prior Rule 50(a) motion cannot be raised post-trial as part of a "renewed" motion under Rule 50(b) and are considered waived. *See*, *e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 153 (2d Cir. 2012); *Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1356 (Fed. Cir. 2014). A motion for JMOL under Rule 50(a) must "specify the judgment sought and the law and facts that entitle the movant to judgment." FED. R. CIV. P. 50(a)(2). "[T]he specificity requirement is obligatory." *Provost*, 262 F.3d at 161 (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 54 (2d Cir. 1993)). "The rationale is that the motion must be sufficient to inform the opposing party of the precise issue as to which more evidence is needed in order to warrant its submission to the jury." *Tolbert v. Queens College*, 242 F.3d 58, 76-77 (2d Cir. 2001); *see also Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1105 (Fed. Cir. 2003).

In the Second Circuit, "[a] motion that identifies one element of a claim is insufficient to permit the district court to grant JMOL for lack of proof of some other, unspecified, element." *Tolbert*, 242 F.3d at 77. The same is true in cases involving issues unique to patent law.[4]

---

[4] Whether Second or Federal Circuit law applies depends on whether the underlying issues pertain uniquely to patent law. *See Duro-Last*, 321 F.3d at 1106 (reviewing JMOL motions

Indeed, the Federal Circuit has stated clearly that "a party must file a pre-verdict JMOL motion on **all theories**, and with respect to **all prior art references**, that it wishes to challenge with a post-verdict JMOL." *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 845 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S. Ct. 2238 (2011) (emphases added); *see also Duro-Last*, 321 F.3d at 1107-08 ("The requirement for specificity is not simply the rule-drafter's choice of phrasing. In view of a litigant's Seventh Amendment rights, it would be constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in the pre-verdict JMOL.").

### A.  B&N's Pre-Verdict Rule 50(a) Motion Did Not Address Any Validity Issues

B&N argues that no reasonable jury could find that the asserted claims of the '703 and '501 patents are valid.  B&N Br. at 15-23.  But the only pre-verdict motion that B&N could possibly point to for support that it preserved its right to challenge validity issues with a post-verdict JMOL reads, in its entirety: "Your Honor, we have a motion with respect to all of the claims."  Trial Tr. 1378:24-1379:1.  Indeed, B&N's pre-verdict Rule 50(a) motion did not mention or otherwise refer to the invalidity theories and prior art references on which it now relies in this "renewed" motion for JMOL.  Waiver is routinely found in these circumstances.

This Court found waiver when faced with the same exact situation in *T.E.A.M. Entm't, Inc. v. Douglas*, No. 04-cv-1552, 2006 U.S. Dist. LEXIS 9681 (S.D.N.Y. Mar. 9, 2006) (Rakoff, J.).  Specifically, the Court found that four arguments were "procedurally barred" because the defendants' Rule 50(a) motion—consisting only of a single statement—did not specifically

---

directed to inequitable conduct, on-sale bar, and obviousness under Federal Circuit law); *cf. ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012) (reviewing waiver of patent invalidity issues not raised in Rule 50(a) motion under regional circuit law).  In either case, B&N has waived its right to challenge many of the issues raised in this motion.

address them.  *Id.* at *8.  The Court determined that the defendants "[c]learly . . . failed to preserve these aforementioned arguments for purposes of a Rule 50(b) motion," emphasizing that "judgment as a matter of law under Rule 50(b) is limited to those issues specifically raised in [a] prior motion for directed verdict."  *Id.* at **7-8 (internal quotations omitted).

The Court's decision in *T.E.A.M* is in complete agreement with the plain language of Rule 50 and controlling precedent holding that "renewal" based on new arguments is improper. *See Abel v. Town Sports Int'l, LLC*, No. 09-cv-10388, 2012 U.S. Dist. LEXIS 183444, at *15 (S.D.N.Y. Dec. 19, 2012) ("Defendant's response borders on the frivolous; the plain language of Rule 50 and the great weight of controlling precedent are clear that, as a general rule, a 'renewal' based on new arguments is improper.").

The governing law in both the Second and Federal Circuits requires a high level of specificity in Rule 50(a) motions to preserve issues for a renewed motion under Rule 50(b).  In *i4i*, the Federal Circuit held that a "pre-verdict JMOL on anticipation . . . was insufficient to preserve [the] right to post-verdict JMOL on a different theory (obviousness), or on different prior art . . . ."  598 F.3d at 845.   Similarly, in *Duro-Last*, the Federal Circuit held it was improper for the district court to rule on a JMOL motion challenging the sufficiency of the evidence on obviousness because "a post-trial JMOL motion [can] be granted only on grounds advanced in the pre-verdict motion," which related to the on-sale bar and inequitable conduct.[5]

Here, the waiver issue is straightforward: B&N did not mention ***anything*** regarding the validity of the '703 or '501 patents in its Rule 50(a) motion.  *See Provost*, 262 F.3d at 161 (holding that defendant waived argument based on qualified immunity because he "did not

---

[5] *See also Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1188 (Fed. Cir. 2002) (holding pre-verdict JMOL on anticipation did not support post-verdict JMOL on obviousness).

specifically include a qualified immunity argument in his pre-verdict request for judgment as a matter of law"); *Beastie Boys v. Monster Energy Co.*, 66 F. Supp. 3d 424, 452 (S.D.N.Y. 2014) (finding waiver because "hinting at the point" in a Rule 50(a) motion did not provide the "required specificity" to preserve a post-verdict JMOL motion).  The Court need not reach the sufficiency of the evidence on any validity issues, as they have been waived.

**B.   B&N Seeks "Renewal" of Non-Infringement Arguments that Were Not Raised in Its Rule 50(a) Motion**

      **1.   B&N's Pre-Verdict Motion on Claim 1 of the '703 Patent Was Limited to Whether B&N's Shop Application Is a "Web Browser"**

B&N moves for JMOL under Rule 50(b) on the grounds that no reasonable jury could have found that B&N infringed claim 1 of the '703 patent because: (i) the B&N Shop application is not a "web browser" (B&N Br. at 5-7); and (ii) the accused Nook devices require the user to access the Shop application to "initiate retrieval of the data" (*id.* at 7-9).  But B&N's Rule 50(a) motion on non-infringement was based solely on the theory that the Shop application is not a "web browser."  *See* Trial Tr. at 1380:14-1381:8.  B&N has therefore waived its alternative non-infringement defense with respect to claim 1 of the '703 patent.

      **2.   B&N Made No Pre-Verdict Motion With Respect to Claim 2 of the '703 Patent**

B&N moves for JMOL under Rule 50(b) on the ground that no reasonable jury could have found that B&N infringed claim 2 of the '703 patent because the accused Nook devices are not "configured for use on a home network."  *See* B&N Br. at 9.  And yet, B&N's Rule 50(a) motion included no mention of claim 2 or this particular theory of non-infringement.  *See generally* Trial Tr. at 1378:24-1385:17.  The argument was waived.

      **3.   B&N Waived Its Non-Infringement Argument Based on the "Enabling" Element in Claim 13 of the '703 Patent**

8

B&N moves for JMOL under Rule 50(b) on the ground that no reasonable jury could have found that B&N infringed claim 13 of the '703 patent because B&N does not perform the "enabling the user by a single user input" step. *See* B&N Br. at 9-11 (arguing that the user must take more than a "single action" to perform the steps of claim 13). B&N's Rule 50(a) motion on claim 13, however, is silent with respect to this specific theory of non-infringement. *See generally* Trial Tr. at 1379:3-1380:12. B&N has waived this argument.

### 4.   B&N Made No Pre-Verdict Motion With Respect to Claim 15 of the '703 Patent

B&N moves for JMOL on the ground that no reasonable jury could have found that B&N infringed claim 15 of the '703 patent because, according to B&N, no evidence was presented at trial to suggest B&N performs the recited method step on a "per user" basis. *See* B&N Br. at 14. B&N's pre-verdict JMOL motion made no mention of this specific non-infringement theory. *See generally* Trial Tr. at 1378:24-1385:17. Therefore, B&N has waived the argument.

### 5.   B&N Waived Its Non-Infringement Theory Concerning Personal Computing Devices and the "Consumer Appliance" Element

B&N moves for JMOL under Rule 50(b) on the ground that no reasonable jury could have found that B&N infringed the claims of the '703 patent because, in B&N's view, the accused Nook devices are personal computing devices that are "not the type of consumer appliances for which [the inventor] received a patent." *See* B&N Br. at 14-15. B&N's Rule 50(a) motion did not include this argument. *See generally* Trial Tr. at 1378:24-1385:17. Nor could it. The "consumer appliance" element was not disputed at trial. *See generally* Dkt. No. 140 at 21-22 (listing facts disputed by B&N relating to infringement of the '703 patent); *see also* Trial Tr. at 1116:12-14 ("Q. You [Dr. Neuman] don't dispute that the Nook devices are consumer appliances, correct? A. I do not dispute that, you are correct."). Here, B&N does not

9

contest that the jury properly applied the Court's construction of "consumer appliance."  Instead, B&N's current motion appears to be based solely on the fact that it objects to the Court's construction of the term "consumer appliance."  *See* B&N Br. at 15 n.8.  The argument is wholly inappropriate for a JMOL of non-infringement.  Regardless, it was waived.

## V.     SUFFICIENT EVIDENCE EXISTS IN THE RECORD FOR A REASONABLE JURY TO FIND INFRINGEMENT OF THE '703 PATENT

### A.     B&N Cannot Obtain JMOL Based on an Objection to this Court's Construction of "Consumer Appliance"

B&N argues (somewhat incoherently) that its Nook devices are analogous to personal computers and are "not the type of consumer appliances for which [the inventor] received a patent, and should not be found to have infringed the '703 Patent."  *Id.* at 14-15.

B&N does not appear to dispute that the jury properly applied the Court's construction of "consumer appliance."[6]  *See generally id.* Nonetheless, B&N says in a footnote that while it is "mindful of the Court's ruling on claim construction" for the term "consumer appliance," it also "maintains its objections to that construction, among others."  *See id.* at 15 n.8.  In short, B&N's motion seems to rest solely on its objection to the Court's construction.

On these facts, B&N has no credible basis to argue, as it does now, that the jury acted unreasonably by applying the Court's construction of "consumer appliance" to the evidence in the record.  B&N's technical expert conceded that the Nook devices were "consumer appliances" under the Court's construction.  *See* Trial Tr. (Neuman) at 1116:12-14 ("Q. You don't dispute that the Nook devices are consumer appliances, correct?  A. I do not dispute that, you are

---

[6] The Court construed "consumer appliance" to mean "a device that may send or receive information."  Dkt. No. 60 at 7.  The evidence in the record is more than sufficient to support the jury's finding that the Nook devices meet this element.  *See, e.g.*, Trial Tr. (Berg) at 679:21-680:4 (testifying that the Nook devices send and receive information); *id.* (Mulchandani) at 507:13-16 (same); *id.* (Neuman) at 971:10-13 (same).

correct.").  Moreover, B&N did not even identify the "consumer appliance" element as one of its disputed facts in the Pretrial Consent Order.  *See* Dkt. No. 140 at 21.

**B.      The Nook Devices Meet Every Element of Claims 1-3**

**1.      B&N's Shop Application Is Not a "Web Browser" According to the Term's Ordinary and Customary Meaning**

B&N moves for JMOL on the ground that its Nook devices do not infringe claim 1 of the '703 patent because B&N's Shop application is a "web browser" according to the term's ordinary and customary meaning.[7]  *See* B&N Br. at 5-7.  This argument relates to the following element in claim 1 of the '703 patent: "wherein the consumer appliance does not require a user to access a ***web browser*** or other device in order for the consumer appliance to initiate retrieval of the data."  Defs. Ex. 3, '703 patent (JTX-03) at 9:52-55 (emphasis added).

B&N's motion rests primarily on the testimony of Deepak Mulchandani, a former B&N employee, who referred to the Shop application as a "special browser" during his testimony.[8]  *See* B&N Br. at 5.  B&N argues that Mr. Mulchandani somehow ***proved*** that the Shop application is a "web browser" through a demonstration in open court.  *Id.*  But this is what Mr. Mulchandani actually said about his demonstration while under cross examination:

> Q. So you agree there is no express mechanism to navigating the Internet using the shop application, correct?
>
> A. It's ***not inconceivable*** that just following the steps that I highlighted yesterday or we walked through yesterday that the user would ***conceivably*** find themselves some site that allows them to navigate to, effectively, any aura on the Internet.

---

[7] B&N asked the Court to construe "web browser" during claim construction, but the Court declined.  *See* Dkt. No. 60 at 8.  The Court noted: "While ['web browser'] may once have been an unfamiliar term, it had become commonplace by the time the patent was filed . . . ."  *Id.*

[8] The fact Mr. Mulchandani refers to the Shop application as a "***special*** browser" is evidence, in and of itself, that the Shop application is not a "web browser" according to the ***ordinary*** and ***customary*** meaning of the term.

> Just because of the Facebook and Twitter links, I mean, like I said, **I haven't exhaustively tested it myself** but there is no question of the fact that the user could use that as a mechanism to browse other destinations, **I just haven't tried it myself**.  It **could** happen.

Trial Tr. at 525:21-526:6 (emphases added).

On this "web browser" issue, B&N repeatedly mischaracterizes its own evidence as "unrebutted."  *See*, *e.g.*, B&N Br. at 6.  But other evidence in the record shows that when Nook user guides mention a "web browser" they are referring to a "general Web browser" (*e.g.*, Google Chrome), and not the Shop application.  *See* Trial Tr. (Mulchandani) at 520:24-521:5.  Evidence of record also establishes that Nook devices have a dedicated icon for a web browser on the menu bar separate and apart from the icon for the Shop application.  *See id.* at 521:6-11; *see also id.* at 522:15-523:5 (showing how the "Web" button launches Google Chrome).  Further, Sudeep Narain, former Principal Architect at B&N who developed Nook software, testified that certain Nook devices do not have a "web browser," despite the presence of the Shop application in the menu bar.  *See* Ex. B, Narain Transcript ("Narain Tr."), at 34:17-21 ("Q. Is it correct that the NOOK Simple Touch does not include a Web browser? A. We don't expose that functionality here, that is correct."); *see also* Trial Tr. at 522:3-5 (Mulchandani) ("Q. But there is a shop icon on the Nook Simple Touch, is that right?  A. There is, yes.").

The parties' experts also provided substantial evidence that the Shop application is not a "web browser," as that term is used in the claims of the '703 patent.  Adrea's expert, Brian Berg, testified that "[a] web browser allows you to go anyplace on the Web," whereas "the shop application that comes up is very limited . . . It only allows you to see what Barnes & Noble wants you to see."  *See id.* at 683:11-22; *see also id.* at 683:23-684:4 (testifying the Shop application is not a web browser because "[i]t only allows limited information to come back").

For his part, B&N's technical expert, Clifford Neuman, testified that: (i) he never tried to use the Shop application to access web pages other than those related to B&N; (ii) he did not form an opinion regarding whether a user could access information unrelated to B&N while using the Shop application; and (iii) he did not try to find a portal in the Shop application that might allow one to browse all publicly-available information on the Web. *See* Trial Tr. (Neuman) at 1122:23-1123:14. But Dr. Neuman also took a fringe position, testifying that "it was not necessary for a web browser to access ***anything*** on the World Wide Web and yet it could still be a web browser." *See id.* at 1125:8-11 (emphasis added). A reasonable jury would be within its sound discretion to reject such an extreme opinion based on the available evidence in the record.

### 2. The Single Act of Pressing the Shop Icon Initiates Retrieval of Data, Regardless of Whether the Shop Application Is a "Web Browser"

Next, B&N argues for JMOL because users of Nook devices allegedly must access the Shop application to initiate retrieval of data that comprise the Shop storefront. B&N Br. at 7-9.

Setting aside whether the Shop application is a "web browser," as B&N contends, the Nook devices infringe claims 1-3 of the '703 patent because they do not require a user to access the Shop application (or anything else) to initiate the retrieval of data. Adrea's expert, Mr. Berg, explained to the jury that the simple act of hitting the Shop button on the Nook devices initiates retrieval of data. *See* Trial Tr. (Berg) at 788:20-789:5. Mr. Berg testified further that, notwithstanding the debate about whether the Shop application is a "web browser," the Nook devices still infringe because the lone act of hitting the button initiates retrieval. *Id.* at 789:6-15. This was confirmed by B&N's own fact and expert witnesses. *See id.* (Mulchandani) at 507:13-16 ("Q. Selecting the shop icon prompts the device to initiate the retrieval of data by sending a request to the Barnes & Noble server, correct? A. Yes."); *id.* (Neuman) at 1118:23-1119:2 ("Q.

In the context of claim 1 of the '703 patent , you agree that pressing the shop button initiates the retrieval of data in this context, correct?  A. Pressing the shop button does initiate that process in the context of claim 1.").   Importantly, the user need not ***access*** the Shop application after it opens, or even look at the screen for that matter, because the initiation of data retrieval has already occurred.  *See* Ex. B, Narain Tr., at 149:17-150:14 (explaining the mechanics of the data retrieval immediately following the selection of the Shop icon).

### 3. The Nook Devices Are "Configured for Use on a Home Network" at the Point of Sale with Built-In Wi-Fi Connectivity

B&N moves for JMOL on the ground that it does not infringe claim 2 of the '703 patent because, in its view, the Nook devices are not "configured for use on a home network," as the claim requires.  B&N Br. at 9.  B&N's argument reduces to a strained interpretation of what it means to be "configured."  In B&N's view, Nook devices are not "configured for use on a home network" until the user takes the device out of the box, powers the device on, and actually connects the device to a home network.   *See id.*  These actions, B&N argues, are each performed by the user after the devices are sold.

Sufficient evidence exists in the record for a reasonable jury to conclude that the Nook devices are "configured for use on a home network" at the point of sale.  B&N's expert, for example, admitted during cross examination that "I do believe the Nook devices are intended to be used on a home network."  *See* Trial Tr. (Neuman) at 1127:15-19.  Moreover, Adrea's expert provided unambiguous testimony on this subject:

> Q. Can you explain for the jury your opinion as to why the  Nook devices are configured for use on a home network.
>
> A. Sure.  When you purchase them, they have the ability to be able to connect to a home network. Out of the box they have that ability built in as part of the software that is in the device.

14

*Id.* at 685:8-17 (referring also the Wi-Fi capability of the devices). It is beyond dispute based on the evidence in the record that the Nook devices were "configured" (*i.e.*, designed or adapted) for use on a home network.

### C.      B&N Performs Every Method Step of Claims 13 and 15

#### 1.      There Is No Genuine Dispute that B&N Performs the "Enabling" Step, Allowing Nook Devices to Initiate Sending a Request to the B&N Server Based on a "Single User Input"

B&N moves for JMOL on the ground that it does not infringe claims 13 or 15 of the '703 patent because it does not "enabl[e] the user by a ***single user input*** to the consumer appliance to have the consumer appliance initiate sending a request . . . to a server." *See* B&N Br. at 9-11. In short, B&N argues that it does not perform this method step of claim 13 because multiple set-up steps are required before the user can prompt the Nook devices to initiate sending a request by simply pressing the Shop icon on the menu bar. *See id.* at 10.

B&N does not appear to dispute that, once the initial set-up process is complete and the Nook devices are operating normally, the user's selection of the Shop icon is a "single user input" that causes the device to initiate sending a request. Nor could it. The evidence in the record is clear on this issue. *See* Section V.B.2 *supra* (citing evidence that pressing the Shop icon prompts Nook devices to initiate sending a request to the B&N server).

Instead, B&N's motion focuses on the precursor set-up steps for the Nook devices (*e.g.*, powering on and registering the device), arguing they constitute multiple user inputs, while ignoring that these precursor steps have nothing to do with actually having the device initiate sending a request, as the claims require. *See*, *e.g.*, Trial Tr. (Neuman) at 1129:10-1130:9 ("Q. So turning the device on, that doesn't return content information [about] a context of using, does it? A. No, it does not."); *id.* at 1130:10-12 (same regarding registering the device).

Under B&N's hyper-literal non-infringement theory, no one could ever perform the method of claim 13 because (i) all electronic "consumer appliances" need to be turned on before their first use, and (ii) simply pressing the "power" button would constitute user input in B&N's view.[9]   The overwhelming evidence shows that pressing a single button on Nook devices—namely, the Shop icon—causes the devices to initiate sending a request to the B&N server.  *See* Trial Tr. (Neuman) at 1116:21-25 ("Q. You don't dispute that the user initiates the retrieval of content information about a context of using the Nook devices by selecting the shop icon on the menu bar, isn't that right?  A. As we have been understanding the term 'context of usage,' I do not dispute that.").  A reasonable jury could find infringement based on the normal operation of the "consumer appliance," after the initial out-of-the-box set-up steps have been completed.

### 2.  B&N's 30(b)(6) Witness Confirmed in a Binding Admission that the B&N Server Returns Web Data Based on the Nook Model Number

B&N moves for JMOL on the ground that it does not initiate access to a web page ***based on*** an "identifier representative of a type of the consumer appliance," and therefore cannot infringe claims 13 and 15 of the '703 patent.  B&N Br. at 11-14.

As an initial matter, the parties do not dispute that the model number for Nook devices is an "identifier representative of a type of the consumer appliance."  *See* Trial Tr. (Neuman) at 1122:4-7 ("Q. You would agree that the model number is representative of a type of Nook device, right?  A. A model number is, in my view, representative of the type of a device, yes.").  The only remaining question is whether B&N initiates access to a web page "based on" the model number.  Sufficient evidence exists for a reasonable jury to conclude the answer is "yes."

Mr. Mulchandani, acting as B&N's corporate representative under Rule 30(b)(6), was

---

[9] B&N made the same argument in its motion for summary judgment of non-infringement (*see* Dkt. No. 63 at 9-11), a motion this Court denied.

asked directly during his deposition: "And how does the server determine what data is appropriate for the device?"  *See* Trial Tr. (Mulchandani) at 513:15-21.  He answered: "The **model number** for the device will help the server have some insight into the type of device it's talking to and the device might send some information on its own."  *Id.* (emphasis added).  This testimony was read into the record at trial.  *Id.*  The Court later noted that, with respect to this exact testimony: "If it is a statement of a 30(b)(6) witness, I don't see how it can be disputed."  *See* Trial Tr. at 823:1-824:3.  The Court continued: "I don't think we need to single it out with some sort of special instruction, but I do think you should, assuming it is a binding admission from a 30(b)(6) witness, which it sounds like to me it is, you should be perfectly allowed to say this is undisputed."  *Id.*  B&N's motion is silent with respect to this binding admission.[10]

B&N's motion relies primarily on the fact that Mr. Mulchandani changed his testimony at trial, when he said during his direct examination that the Nook model number plays no role in retrieving data from B&N's server.  *See* B&N Br. at 12-13.  When asked about the shift in his testimony, Mr. Mulchandani said, among other things, "I think I would have to look at the specific context surrounding the comments I made," and "I can't, from what you mentioned, discern whether there was some specificity around your question during the deposition."  *See* Trial Tr. (Mulchandani) at 513:22-514:13.  A reasonable jury would be free to judge Mr. Mulchandani's credibility and find that B&N infringes the '703 patent, as the jury did here.

### 3. B&N's Motion with Respect to Claim 15 Is Based on the False Premise that No Evidence Was Presented at Trial

B&N moves for JMOL on claim 15, arguing that "[t]here was no evidence presented at

---

[10] Similarly, Adrea's expert, Mr. Berg, testified that Nook model numbers are used by B&N to decide how to format and return data for the different screen sizes on a "device-by-device" basis. *See* Trial Tr. 676:19-677:3; *see also id.* at 791:5-792:14 (testifying that B&N returns data on a device-by-device basis based on the model number).

trial . . . that showed that the NOOK devices perform this step [of creating a database of URLs or identifiers] on a '*per user*' basis."  B&N Br. at 14 (emphasis in original).  B&N cites nothing in support of this argument.

B&N's representation to this Court—that no evidence exists in the record to support a finding of infringement of claim 15—is demonstrably false.  For example, Adrea's expert, Mr. Berg, testified that B&N performs the recited step in claim 15 with reference to relevant testimony from Mr. Narain.   *See* Trial Tr. (Berg) at 691:1-12.  Specifically, Mr. Narain testified that each Nook device has a database of URLs stored in memory, and that B&N creates the database when each user registers the device with B&N.  *See* Ex. B, Narain Tr., at 145:22-147:2; *see also id.* at 153:20-23 ("Q. Is the database contained -- the database of URLs, that is, contained on the NOOK device itself?  A. Yes.").  Moreover, B&N's own non-infringement expert did not even contest that B&N performs the step of claim 15.  Trial Tr. at 1131:2-5 ("Q. Do you dispute that Barnes & Noble creates a database of URLs or identifiers per user? A. I did not dispute that Barnes & Noble was creating such a database.").

## VI.   B&N'S MOTION ON VALIDITY ISSUES FAILS ON THE MERITS

### A.   B&N's Theory that the Inventor Testimony by Itself Can Support JMOL on Obviousness Has No Basis in Law or Fact

B&N argues that the evidence in the record compels a finding of obviousness by clear and convincing evidence as a matter of law with respect to claims 1, 2, 3, 13, and 15 of the '703 patent.   *See* B&N Br. at 16-17.  But B&N's technical expert, Dr. Neuman, did not testify that these claims are invalid as obvious.[11]   *See generally* Trial Tr. at 988:15-1001:7.  Instead, Dr.

---

[11] The only exception is claim 2 of the '703 patent.   *See* Trial Tr. at 993:22-23 ("Q. Does Munyan nevertheless render this claim 2 obvious?  A. I believe that Munyan does render this claim obvious.").   But even with respect to claim 2, Dr. Neuman only stated a conclusory opinion that the claim is obvious without citing any evidentiary support.  *See id.* at 993:22-995:4.

18

Neuman's trial testimony focused exclusively on his theory that claims 1, 3, 13, and 15 are invalid as anticipated.  *See*, *e.g.*, *id.* at 988:17-20.  It is well-settled that "obviousness and anticipation are . . . legally distinct and separate challenges to a patent's validity."  *Duro-Last*, 321 F.3d at 1107.  Here, B&N never presented any expert testimony to the jury on the issue of obviousness with respect to claims 1, 3, 13, and 15 of the '703 patent.

In an effort to fill the gaping hole in its obviousness case, B&N now relies solely on the testimony of Mr. Shteyn, the inventor of the '703 patent.  *See* B&N Br. at 16-17.  This approach is flawed for three reasons.  *First*, Mr. Shteyn's testimony did not address the specific factual findings underlying the obviousness inquiry, including (i) the scope and content of the prior art, (ii) differences between the prior art and the claimed inventions, and (iii) the level of ordinary skill.  *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).  *Second*, Mr. Shteyn provided only general testimony regarding his invention, which was not from the perspective of a person of ordinary skill.  *See TransOcean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, 443 F. Supp. 2d 836, 868 (S.D. Tex. 2006) (reliance on inventor testimony did not support obviousness because the testimony was not from the viewpoint of one of ordinary skill); *Franklin Elec. Co. v. Dover Corp.*, No. 05-cv-598, 2007 U.S. Dist. LEXIS 84588, *20 (W.D. Wisc. Nov. 15, 2007) (same).  *Third*, the Federal Circuit has held that "[t]he inventor's own path itself never leads to a conclusion of obviousness; that is hindsight.  What matters is the path that the person of ordinary skill in the art would have followed, as evidenced by the pertinent prior art."  *Otsuka*, 678 F.3d at 1296.

### B.    B&N's Expert Conceded During Trial that the Munyan Reference Does Not Anticipate Claims 1-3 of the '703 Patent

B&N seeks JMOL of invalidity on the ground that Munyan anticipates claims 1-3 of the

19

'703 patent.  *See* B&N Br. at 18.  For support, B&N contends that its technical expert, Dr. Neuman, "explained, limitation by limitation, how claims 1, 2, and 3 of the '703 Patent were anticipated in view of the electronic book reader disclosed by Munyan."  *Id.*  B&N fails to inform the Court, however, that Dr. Neuman admitted that Munyan does not disclose every limitation of claim 2 of the '703 patent ***during his direct examination***.  *See* Trial Tr. at 993:9-21 ("Q. Does the Munyan patent explicitly disclose this limitation [in claim 2]?  A. ***No, it does not explicitly disclose this limitation***.") (emphasis added).

B&N mischaracterizes Dr. Neuman's testimony concerning the Munyan reference as "unrebutted."  *See* B&N Br. at 18.  During cross examination, Dr. Neuman conceded that Munyan does not disclose any "predetermined URLs," as required by claim 1 of the '703 patent. *See* Trial Tr. at 1193:8-11 ("Q. You agree that the electronic book system described in the Munyan reference does not have any predetermined URLs on it, correct?  A. Yes, it does not have predetermined URLs.").  Dr. Neuman also admitted under cross examination that Munyan does not expressly disclose that the alleged "identifier" (*i.e.*, a security identification code)[12] is used to retrieve the recited data (*i.e.*, product recommendations),[13] as claim 1 requires:

> ***Q. This [Munyan] doesn't say that the security identification code is used specifically to retrieve the product recommendations, does it?***
>
> A. Well, one of ordinary skill in the art understand that that is inherent in what is disclosed.
>
> Q. But you agree it doesn't expressly say that, correct?

---

[12] Dr. Neuman testified the security identification code in Munyan meets the "identifier" element in claim 1.  *See* Trial Tr. at 1193:15-17 ("Q. Yesterday you testified that in your opinion the identifier in Munyan was a security identification code, correct?  A. That is correct.").

[13] Dr. Neuman also testified that the "data" retrieved in Munyan consist of "lists of books that could be purchased, for example."  *See* Trial Tr. at 991:1-21.

**A. I agree it does not expressly say that.**

*Id.* at 1197:1-7 (emphases added).[14]

Despite this testimony, B&N somehow moves based on "Munyan's ***facial disclosure*** of all the limitations of claims 1, 2, and 3 of the '703 Patent." *See* B&N Br. at 18 (emphasis added). B&N's position cannot be reconciled with the testimony of its own expert witness.

### C.   The Evidence Does Not Compel a Finding of Anticipation of Claims 13 and 15 of the '703 Patent by Clear and Convincing Evidence

B&N's burden to obtain JMOL on its invalidity defenses is "doubly high" because "it must show that no reasonable jury could have failed to conclude that [B&N]'s case had been established by clear and convincing evidence." *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003). Despite this heavy burden, B&N's motion focuses almost exclusively on Adrea's ***rebuttal*** evidence, rather than its own affirmative case, to argue that the testimony of Adrea's rebuttal expert "could not have supported the jury verdict" that claims 13 or 15 of the '703 patent are valid. *See* B&N Br. at 19-23 ("As discussed below, [Dr. Wang's] testimony with respect to those limitations could not have supported the jury's verdict."). B&N's argument is completely backwards.

### 1.   The Parties' Experts Agree that Bolas Does Not Disclose an "Identifier Representative of a Type of the Consumer Appliance"

*First*, Bolas does not disclose an "identifier representative of a type of the consumer appliance," as required by claims 13 and 15. The parties' experts are in complete agreement here. B&N's expert, Dr. Neuman, testified during his ***direct examination*** that the alleged

---

[14] B&N does not seek JMOL on a theory of inherent anticipation. Even if it did, Dr. Neuman's conclusory testimony would fall well short of establishing inherency by clear and convincing evidence. *See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004) ("Inherent anticipation requires that the missing characteristic is necessarily present, or inherent, in the single anticipating reference.") (internal quotations omitted).

"identifier" in Bolas (*i.e.*, the serial number) is not representative of a consumer appliance:

> Q. You mentioned the user name and the serial number and the ***serial number being an identifier***.   Is that representative of a type of a consumer appliance?

> A. ***No, it is not representative of a type of a consumer appliance***, but what it is similar to the serial number that we saw on the Nook devices.

Trial Tr. at 998:4-9 (emphases added); *see also id.* at 1198:1-7 ("Q. Yesterday you testified that the serial number in Bolas was the identifier for the radio device, is that right?  A. I did discuss the serial number as being an identifier, yes.  ***Q. You testified also that the serial number in Bolas is not representative of a consumer appliance, isn't that right?   A. Yes, I did.***") (emphasis added).[15]  But Dr. Neuman went even further, agreeing that Bolas does not anticipate claims 13 and 15 of the '703 patent.  *Id.* at 1198:24-1199:3 ("Q.  ***So you agree that the Bolas reference does not anticipate claim 13 of the '703 patent, is that correct?*** A.  Again, to the extent we are not looking at the claim language the same way that we are for the Nook devices, ***yes, I would agree with that statement***.") (emphases added).

Dr. Neuman's equivocation on this issue went to his credibility in front of the jury.  Dr. Neuman tried to explain that "to the extent that the device identifier, the serial number on the Nook device, were found to meet that particular limitation, one would also need to find that the serial number met that when looking at the Bolas Internet radio."  *See id.* at 998:4-16.  But this testimony largely ignores that Adrea's infringement case relied on the ***model number*** of the Nook devices,[16] which, unlike the serial number, everyone agrees is representative of a type of

---

[15]  For his part, Adrea's expert on validity issues, Dr. Wang, provided virtually identical testimony on this issue.  *See* Trial Tr. at 1359:1-15.

[16]  Adrea's infringement expert testified regarding "two kinds of identifiers in the device," including the "model number and device ID" in the accused Nook products.  *See*, *e.g.*, Trial Tr. (Berg) at 688:1-7; *see also id.* at 688:22-689:5 (testifying that the Nook model number meets the "identifier" element of claim 13).

device.   *See* Trial Tr. (Neuman) at 1122:4-7 ("Q. You would agree that the model number is representative of a type of Nook device, right?   A. A model number is, in my view, representative of the type of a device, yes.").

### 2.   Bolas Does Not Disclose a Server that Initiates Access to a Web Page "Based on the Identifier"

*Second*, Bolas fails to disclose a server that initiates access to a web page "based on the identifier," as claims 13 and 15 require.  Bolas provides "pseudo code" to show how its "system will receive and act upon input from the user's internet radio box."   Defs. Ex. 6, Bolas (DTX 477), at 6:52-54.   Dr. Neuman admitted that the pseudo code does not include the alleged "identifier"—that is, the radio serial number—indicating that the serial number plays no role in the communications between the device and server, or in initiating access to a web page.  *See* Trial Tr. (Neuman) at 1201:19-22 ("Q. And this pseudo code does not include a serial number, do you agree?   A. This particular piece of pseudo code does not include the serial number.").  Adrea's expert provided similar testimony, confirming the server in Bolas does not act "based on the identifier."   *See id.* (Wang) at 1360:5-13 (testifying that the pseudo code "clearly shows that the serial number is not used at all; it does not appear in that pseudo code at all").

### 3.   Bolas Does Not Disclose the Retrieval of "Content Information About a Context of Using the Consumer Appliance"

*Last*, there can be no genuine dispute that a reasonable jury could conclude that B&N failed to provide clear and convincing evidence that Bolas discloses the retrieval of "content information about a context of using the consumer appliance," as required by claims 13 and 15. The inventor, Eugene Shteyn, testified that his invention was directed to "content information" that "show[s] people how to make choices and make[s] it easier for people to make a choice." *See* Trial Tr. at 252:11-16.   In the context of a radio, he explained that his invention was not

23

directed to the "music itself," but rather to information that provides "an intuitive way to make a choice about the music or to say I want to switch to something else."  *See id.* at 252:17-22.

Faced with this testimony, B&N was forced to rely on "textual information" relating to audio data, such as a "station identifier" or a "name of a song."  *See id.* at 999:8-1000:8.  But as Adrea's expert, Dr. Wang, explained, there is a difference between data pertaining to the current use of the radio and "information for the context of the usage of the radio."  *See id.* at 1360:18-1361:3.  He added that the "content information" required by claims 13 and 15 would be "some recommended station" that the user could choose on the radio.  *See id.* at 1361:4-7.

## VII.   THE RECORD CONTAINS SUFFICIENT EVIDENCE TO SUPPORT A FINDING THAT THE '501 PATENT IS VALID AND INFRINGED

Although the Court has entered a non-final judgment that the asserted claims of the '501 patent are invalid under 35 U.S.C. § 101 (Dkt. No. 182), B&N moves for JMOL on both infringement and validity issues to "preserve its position" with respect to the '501 patent.  *See* B&N Br. at 23-25.  To the extent the Court reaches these issues, the motion should be denied.

On infringement, Adrea's expert, Brian Berg, testified at length regarding how B&N infringed each and every element of the asserted claims of the '501 patent.  *See* Trial Tr. at 575:16-615:22.   In rebuttal, Dr. Neuman disputed only that the Nook devices met the "associating" element of claim 18.  *See* Trial Tr. (Neuman) at 1087: 21-25.  And Dr. Neuman conceded that a difference of a few seconds—*i.e.*, the crux of B&N's non-infringement defense—"does not constitute a substantial difference in the life of the [lending] period," all but conceding liability under the doctrine of equivalents.[17]  *See id.* at 1099:9-12.

---

[17] With respect to claim 7 of the '501 patent, Dr. Neuman testified that the Nook devices, rather than B&N, perform the "storing" step of the claimed method.  *See* Trial Tr. at 1101:23-1102:1. Dr. Neuman debuted this theory at trial.  *See id.* at 1104:6-9.  But it was outweighed by other relevant evidence.  *See*, *e.g.*, *id.* (Berg) at 590:7-591:10; Ex. B, Narain Tr. at 45:25-46:9.

Finally, on validity, B&N has not done nearly enough to meet its "doubly high" burden of showing that a reasonable jury would have no choice but to find that B&N's evidence was clear and convincing.  Adrea's rebuttal expert, Dr. Wang, provided credible testimony that the Saigh reference failed to disclose at least two limitations required by the asserted claims: (i) storing an electronic book on a viewer; and (ii) associating a predetermined amount of time after the electronic book is stored on the viewer with the electronic book.  Trial Tr. at 1355:20-1357:17.  Moreover, Dr. Neuman acknowledged during his cross examination "numerous instances" where Saigh referred to memory as "separate" from both the library apparatus and the control unit reading device, indicating that electronic books were not on the viewer in Saigh, as the claims of the '501 patent require.  *See id.* at 1145:3-7; *see also id.* at 1140:1-1145:2.

## VIII.   NO NEW TRIAL IS WARRANTED

In the alternative, B&N advances a half-hearted motion for a new trial "on the grounds that the jury's verdict of infringement and validity was against the overwhelming weight of the evidence."  B&N Br. at 25.  Here, B&N adds nothing new, relying on the same flawed arguments it advanced in support of JMOL.  *See id.*  B&N provides this Court no reason to disturb the jury verdict, or to depart from the general rule that affords a "high degree of deference" to the jury's evaluation of witness credibility.  *See ING Global*, 757 F.3d at 98 (quoting *Raedle*, 670 F.3d at 418) (internal quotations omitted).  New trials are awarded with "great infrequency."  *Id.*; *see also Stampf*, 761 F.3d at 202.  This case deserves no special treatment.

## IX.   CONCLUSION

Adrea respectfully requests that the Court deny B&N's motion in its entirety and award other appropriate relief that it may deem appropriate under the circumstances.

Dated: September 14, 2015                    Respectfully submitted,


                                             */s/ Colin Cabral*
                                             Steven M. Bauer
                                             Micah Miller (*pro hac vice*)
                                             Brendan Cox (*pro hac vice*)
                                             PROSKAUER ROSE LLP
                                             One International Place
                                             Boston, Massachusetts 02110
                                             (617) 526-9600 (telephone)
                                             (617) 526-9800 (facsimile)
                                             sbauer@proskauer.com
                                             mmiller@proskauer.com
                                             bcox@proskauer.com

                                             Colin Cabral
                                             PROSKAUER ROSE LLP
                                             2049 Century Park East, Suite 3200
                                             Los Angeles, CA 90067
                                             (310) 284-5611 (telephone)
                                             (310) 557-2193 (facsimile)
                                             ccabral@proskauer.com

                                             Kenneth Rubenstein
                                             Baldassare Vinti
                                             PROSKAUER ROSE LLP
                                             11 Times Square
                                             New York, NY 10036
                                             (212) 969-3000 (telephone)
                                             (212) 969-2900 (facsimile)
                                             krubenstein@proskauer.com
                                             bvinti@proskauer.com

                                             *Attorneys for Plaintiff ADREA, LLC*


26

## CERTIFICATE OF SERVICE

I certify that on September 14, 2015, I caused a copy of the forgoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com llc, and Nook Media LLC by electronic mail.


Louis S. Ederer
Susan Lee Shin
Yue-Han Chow
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
yue-han.chow@aporter.com
maxwell.preston@aporter.com


Ali R. Sharifahmadian  (*pro hac vice*)
Sarah Brackney Arni (*pro hac vice*)
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004-1206
Telephone:  (202) 942-5000
Facsimile:  (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com


Michael A. Berta, Jr. (*pro hac vice*)
Willow W. Noonan (*pro hac vice*)
ARNOLD & PORTER LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415)-471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc.,*
*barnesandnoble.com llc, and Nook Media LLC*

_/s/ Colin Cabral_
Colin Cabral

27