UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADREA, LLC,<br><br>                Plaintiff,<br><br>    - against -<br><br>BARNES & NOBLE, INC.,<br>BARNESANDNOBLE.COM LLC, and<br>NOOK MEDIA LLC,<br><br>                Defendants. | ECF Case<br><br>13-CV-4137 (JSR) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION PURSUANT TO RULE 50 FOR JUDGMENT AS A MATTER
OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL**

**ARNOLD & PORTER LLP**
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
*Attorneys for Defendants*

## TABLE OF CONTENTS

|      |                                                         | Page |
|------|---------------------------------------------------------|------|
| I.   | INTRODUCTION                                            | 1    |
| II.  | THE RECORD DOES NOT SUPPORT THE INFRINGEMENT VERDICT    | 2    |
| III. | THE RECORD DOES NOT SUPPORT THE VALIDITY VERDICT        | 5    |
| IV.  | B&N PRESERVED ITS RIGHT TO SEEK JMOL                    | 8    |
| V.   | CONCLUSION                                              | 10   |

# TABLE OF AUTHORITIES

**Cases:**                                                                                                                   **Page(s):**

*Abbott Labs. v. Sandoz, Inc.,*
    566 F.3d 1282 (Fed. Cir. 2009) ...................................................................................7

*Anhing Corp. v. Thuan Phong Co. Ltd.,*
    2015 WL 4517846 (C.D. Cal. July 24, 2015).................................................................9

*Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.,*
    542 F.3d 1363 (Fed. Cir. 2008) ...................................................................................6

*Erico Int'l Corp. v. Vutec Corp.,*
    516 F.3d 1350 (Fed. Cir. 2008) ...................................................................................6

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,*
    136 F.3d 276 (2d Cir. 1998) ...................................................................................9, 10

*Hernandez v. Keane,*
    341 F.3d 137 (2d Cir. 2003) .........................................................................................1

*Holland v. City of San Francisco,*
    2013 WL 6698420 (N.D. Cal. Dec. 19, 2013),
    *appeal dismissed* (July 10, 2014)................................................................................9

*Goldhirsh Grp., Inc. v. Alpert,*
    107 F.3d 105 (2d Cir. 1997) .........................................................................................1

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
    302 F.3d 1352 (Fed. Cir. 2002) ....................................................................................2

*Leapfrog Enters, Inc. v. Fisher-Price, Inc.,*
    485 F.3d 1157 (Fed. Cir. 2007) ....................................................................................8

*Levitant v. N.Y. Human Res. Admin.,*
    914 F. Supp. 2d 281 (E.D.N.Y. 2012), *aff'd*, 558 F. App'x 26 (2d Cir. 2014) ......................10

*Loral Fairchild Corp. v. Victor Co. of Japan,*
    931 F. Supp. 1014 (E.D.N.Y. 1996) (Rader, J.), *aff'd sub nom. Loral Fairchild
    Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999) ..............................................10

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) .......................................2

*Merck & Co. v. Teva Pharm. USA, Inc.,*
    395 F.3d 1364 (Fed. Cir. 2005) ....................................................................................6

*In re Omeprazole Patent Litig.*,
   2002 WL 287785 (S.D.N.Y. Feb. 27, 2002) ..................................................................6

*Otsuka Pharma. Co. v. Sandoz, Inc.*,
   678 F.3d 1280 (Fed. Cir. 2012) ....................................................................................6

*Reinshaw PLC v. Marposs Sociceta per Azioni*,
   158 F.3d 1243 (Fed. Cir. 1998) ....................................................................................8

*Schering Corp. v. Geneva Pharm,. Inc.*,
   339 F.3d 1373 (Fed. Cir. 2003) ....................................................................................7

*Sjolund v. Musland*,
   847 F.2d 1573 (Fed. Cir. 1988) ....................................................................................6

*Song v. Ives Labs., Inc.*,
   957 F.2d 1041 (2d Cir. 1992) .....................................................................................10

*Soverain Software LLC v. NewEgg.*,
   705 F.2d 1333 (Fed. Cir. 2013) ....................................................................................8

*T.E.A.M. Entm't, Inc. v. Douglas*,
   2006 WL 587326 (S.D.N.Y. Mar. 9, 2006) ..................................................................9

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
   247 F.3d 1316 (Fed. Cir. 2001) ....................................................................................6

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
   90 F.3d 1558 (Fed. Cir. 1996) ......................................................................................9

*Zoomar, Inc. v. Paillard Products, Inc.*,
   152 F. Supp. 328 (S.D.N.Y. 1957), *aff'd*, 258 F.2d 527 (2d Cir. 1958) ......................6

**Statues, Rules and Regulations**

Rule 50 ..................................................................................................................................2, 9

Rule 50(a) ..................................................................................................................................9

Rule 50(b) ........................................................................................................................8, 9, 10

Rule 59 ....................................................................................................................................10

## I. INTRODUCTION

Adrea's opposition to B&N's motion for judgment as a matter of law ("JMOL") on the '703 Patent repeatedly mischaracterizes certain evidence as favorable to its position, while conveniently ignoring the overwhelming evidence to the contrary. *Hernandez v. Keane*, 341 F.3d 137, 143-44 (2d Cir. 2003) (JMOL warranted where "[t]here is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him"). The record simply does not support either the infringement or the validity verdict. On JMOL, the Court must determine whether any inference the jury drew from the evidence is *legitimate*. *See Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 107-110 (2d Cir. 1997). A verdict cannot stand on inferences that amount to "impermissible speculation." *Id.* at 108. Thus, the issue is not, as Adrea suggests, whom the jury chose to believe, but whether the outcome can "reasonably be inferred on this record." *Id.* at 110.

For example, on infringement, it was unreasonable for the jury to ignore the testimony of the inventor, Mr. Shteyn, and extend the reach of the patent beyond its intended scope, while also finding the patent valid. Contrary to Adrea's argument, and as Shteyn admitted at trial, the purported invention has nothing to do with microprocessor-based computing devices. *See* Dkt. 185 at 16-17. Rather, it takes everyday household devices such as garbage cans and blenders — that typically lack internet connectivity — and enables them to retrieve information from a remote server with the press of a button. As Shteyn testified, he did not invent the iPad; he did not invent eReaders; and most importantly, he did not invent the NOOK. *See id.*

Similarly, on validity, Adrea quotes B&N's expert stating that a certain claim limitation is not "expressly" stated in a prior art reference, while ignoring his testimony that the reference discloses the limitation inherently. Thus, the "good" evidence Adrea claims the jury relied on has either been misstated, taken out of context, or contradicted, and, in fact, was not so good.

1

## II. THE RECORD DOES NOT SUPPORT THE INFRINGEMENT VERDICT

***The Purported Invention.*** As indicated in its opening brief, B&N has consistently maintained that the construction of the term "consumer appliance" should not encompass computing devices such as the NOOK, and the inventor's trial testimony confirmed this. While by no means the sole basis for B&N's JMOL motion, there can be no infringement under a correct construction. The Court can and should grant JMOL, and reject Adrea's attempt to hammer a square peg into a round hole.

While B&N's expert did not dispute that the NOOK is a "consumer appliance" under the Court's construction, that construction would also include satellites, cellular base stations, and other things that are clearly not consumer appliances. Adrea's only response is to suggest that the Court cannot revisit its construction. But the Court has the ability on a Rule 50 motion to apply the correct claim construction to the facts in the record. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975-77 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). In *Markman*, the district court, on a motion for JMOL, overturned the jury's infringement verdict after concluding that its claim construction had been incorrect. 52 F.3d at 973. The Federal Circuit affirmed, stating that "in this case the district court properly discharged its obligation to delineate the scope of the claim *on motion for [JMOL]* when the jury had rendered a verdict that was incompatible with a proper claim construction." *Id.* at 971 (emphasis added); *see also Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.").

***Web Browser.*** With regard to the no-web-browser limitation of claims 1-3 of the '703 Patent, Adrea's opposition rests upon its own special construction. *First*, Adrea contends that a "web browser" must allow "you to go anywhere on the web". Opp'n at 11-13. Yet, Adrea does

2

not and cannot refute that B&N demonstrated in open court how to use Shop to navigate to non-Barnes & Noble web pages on the internet, just as Adrea's definition calls for. *See* Dkt. 185 at 6. Further, no evidence of record supports the only distinction Adrea's expert made — that Shop is not a "web browser" because it "only allows you to see what Barnes & Noble wants you to see". B&N demonstrated this to be false. *Second*, Adrea now, for the first time, suggests that a web browser must have an "express mechanism to navigat[e] the Internet". Opp'n at 11. There is *no* support in the record for this limitation, or what it might mean. The Court did not adopt these constructions, and neither is required under the plain and ordinary meaning of "web browser", which Shop satisfies as a matter of law in light of the browsing shown at trial. Dkt. 185 at 5-7.

Further, Adrea does not dispute the clear evidence that Shop is a "special browser"; rather, it merely argues that a special browser is not a web browser. Opp'n at 11. Moreover, its argument that some NOOK devices have *another* web browser makes no sense and is irrelevant — the presence of a so-called "general browser" doesn't make a "special browser" something other than a web browser. Indeed, as the evidence showed, computers — which is what the NOOK devices are — routinely have multiple web browsers (*e.g.*, Chrome, Firefox, Internet Explorer, Safari). Adrea also does not address the inconsistency of its position that Shop is not a web browser under claim 1, but retrieves a web page under claim 13.

***Initiating Access.*** Claims 1-3 recite the limitation that "the consumer appliance does not require a user to access a web browser . . . in order . . . to initiate retrieval of the data." Adrea asserts, without support, that even if Shop is a web browser, selecting the Shop icon is not the same as *accessing* Shop. Dkt. 193 at 13-14. All witnesses at trial confirmed, however, that selecting the Shop icon launches the Shop browser, and that Shop is what retrieves the data. Nonetheless, Adrea takes its illogical argument to the extreme, claiming that if one ignores the

3

fact that selecting the Shop icon launches the Shop web browser, then the NOOK device initiates retrieval of data *without* accessing a web browser. *Id.* Neither of these arguments can support the jury's verdict. And, Adrea's reliance on isolated, out-of-context testimony to support its argument only confirms that the jury's verdict was not based on rational inference, and is contrary to the overwhelming weight of the evidence. What is more, importantly, the Patent Office required the applicant to add this limitation to obtain allowance of claim 1. The Patent Office did not allow the applicant to obtain their patent merely by limiting the scope to "no special web browsers," or to "selection of a web browser icon without accessing the browser". Adrea does not contest that this limitation must be met literally, and this concession is fatal.

*Configured For Use On A Home Network.* With regard to claim 2, Adrea contends that the devices are "configured for use on a home network" because B&N intends them to be so used and sells them with the ability to be so used — but Adrea does not dispute that they actually can be so used only after a *user* takes action, and specifically "performs some set-up steps". Dkt. 193 at 14-15. Adrea now conflates intent and ability with actual configuration, but its expert conceded it is the *users* who must configure. *Id.*; *see also* Dkt. 185 at 9-10 (Berg testifying how users configure).

*Single User Input.* With regard to the single-user-input limitation of claims 13 and 15, Adrea does not dispute that before a user can select the Shop icon, she must first not only power on the device, configure it, and connect it to a wi-fi network, *but also navigate to the home screen and unlock it.* Perhaps Adrea would have a stronger argument with respect to powering on alone, but the argument that it is appropriate to disregard each of these other steps (Dkt. 193 at 15-16) is unfounded. It also highlights the evidence, ignored by Adrea, that NOOKs are simply not the kinds of appliances this patent covers, which all have simple buttons that can be

4

pressed to retrieve information. *See, e.g.*, Dkt. 1-1 at 6:5-7, 7:10-11. The accused NOOKs indisputably require more than a single user input before the device can initiate sending a request to a server. Nor is it disputed that the enabling steps of claims 13 and 15 are performed, if at all, by the *user*, not B&N.

***Based On An Identifier***. With regard to the identifier limitation of claims 13 and 15, Adrea's opposition rests on a Mr. Mulchandani's deposition testimony that the "model number for the device will help the server have some insight into the type of device it's talking to." His testimony *was not* that the server initiates access to a web page based on the identifier (the requirement of claim 13). Indeed, there was no evidence that the NOOK's access to any web page (let alone the Shop home page) was based on its model number. To the contrary, Mulchandani, the only witness who testified about what the server does, stated that the model number was used only for logging and analytics purposes, then discarded. Dkt. 185 at 12-13.[1]

## III. THE RECORD DOES NOT SUPPORT THE VALIDITY VERDICT

***Inventor's Testimony***. B&N presented overwhelming evidence, separate and apart from the inventor's testimony, that the asserted claims of the '703 Patent were anticipated or obvious in light of the prior art. Dkt. 185 at 18-22. Accordingly, once again, the invalidity portion of B&N's JMOL motion does not rest solely on the inventor's trial testimony.

That said, *it could*, since Adrea mischaracterizes the law on this issue. To the extent the Court finds that the '703 Patent sweeps so broadly as to cover routine incorporation of internet

---

[1] Adrea supports the finding of infringement on the '501 Patent, which B&N raised for preservation purposes, solely on the basis of the doctrine of equivalents; however, as B&N pointed out (Dkt. 185 at 23-25), and as Adrea's opposition did not contest, infringement of this patent must be literal. Further, the evidence at trial was that the accused LendMe feature differs substantially from the claimed invention as a matter of law — not only because eBooks could be loaded onto NOOK devices after a "few seconds," but because the NOOK is part of a server-based system that operates in a completely different way, and does not need to store the eBook on the device at all; rather, if that happens, it is necessarily only *after* the lending period begins. *See* Dkt. 185 at 23-25.

technology into computing devices, the inventor's concessions as to the state of the prior art render the invention invalid. Although an inventor's own inventive path cannot by itself prove that her path was obvious, the inventor's testimony about the state of the prior art — *i.e.*, what was already known — is absolutely relevant to obviousness and can invalidate. *See Erico Int'l Corp. v. Vutec Corp.*, 516 F.3d 1350, 1356 (Fed. Cir. 2008).[2] Both this District and the Federal Circuit have relied as a matter of course on an inventor's testimony regarding the prior art in finding obviousness.[3] Indeed, Shteyn testified directly about both the state of the prior art (Tr. 225:18-23, 224:12-15, 227:17-20) and the differences between his patent and the prior art (Tr. 224:1-2, 226:8-10, 228:11-13).[4] Having conceded that prior art computing devices 30 years earlier retrieved data from external servers, Shteyn's testimony alone is enough to invalidate the '703 Patent as obvious. It claims nothing other than routine incorporation of well-known internet technology. Adrea makes no genuine effort to contend otherwise.

***Munyan.*** While Adrea claims that Dr. Neuman "admitted" that the Munyan reference did not disclose certain limitations, in each case it relies on testimony taken out of context. *First*, with regard to claim 2, while Neuman testified that a limitation was not explicitly disclosed, he

---

[2] Adrea's citation to *Otsuka Pharma. Co. v. Sandoz, Inc.*, 678 F.3d 1280, 1296 (Fed. Cir. 2012), is highly misleading — Adrea conveniently omits the court's statement that "[w]hat matters is the path [to obviousness] . . . *as evidenced by the pertinent prior art.*" *Id.* (emphasis added). *Otsuka* stands for the proposition that an inventor's explanation for *how she came up* with her invention cannot be used in hindsight to show that the approach was obvious at the time. That is not B&N's argument.

[3] *See, e.g., Merck & Co. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1375 (Fed. Cir. 2005) (relying on inventor admission to support obviousness); *Commonwealth Scientific & Indus. Research Organisation v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378 (Fed. Cir. 2008); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001); *Sjolund v. Musland*, 847 F.2d 1573, 1579 (Fed. Cir. 1988); *Zoomar, Inc. v. Paillard Products, Inc.*, 152 F. Supp. 328, 341 (S.D.N.Y. 1957), *aff'd*, 258 F.2d 527 (2d Cir. 1958) (all relying on inventor testimony as to the state of the prior art); *In re Omeprazole Patent Litig.*, 2002 WL 287785, at *6 n.7 (S.D.N.Y. Feb. 27, 2002) ("[F]act witnesses who are skilled in the art, including the named inventors of the [patents], are competent to testify concerning prior art documents.").

[4] "Tr." refers to the transcript excerpts included at Dkt. 186-1.

6

then explained why that limitation was obvious. Tr. 993:22-995:14. *Second*, Dr. Neuman testified that Munyan did not disclose "predetermined URLs," but explained that the claim only requires "a predetermined URL *or* an identifier" and that Munyan discloses the claimed identifier. Tr. 989:23-990:11 (emphasis added). *Finally*, Neuman testified that Munyan's "security identification code" is *inherently* used to retrieve Munyan's product "recommendations". While Adrea suggests that inherency is not enough to show anticipation, the law is clear: inherency is often used to find anticipation, and is not a separate legal defense. *Schering Corp. v. Geneva Pharm,. Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) ("Moreover, a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference.").

**Bolas**. Addressing Bolas, *first*, Adrea claims that Neuman admitted that Bolas does not disclose an "identifier representative of a type of the consumer appliance". Indeed, Neuman opined that under a proper reading of the claim, Bolas does not disclose an identifier "representative of a type of the consumer appliance". He made clear, however, that *if the NOOK were found to meet that limitation*, then so also would Bolas. Tr. 998:4-24. Therefore, unlike Adrea's experts, Neuman was simply respecting the principle that claims must be read consistently for both infringement and invalidity. *See Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1317 (Fed. Cir. 2009). *Second*, Adrea claims that Neuman admitted that Bolas's identifier is not used in "initiating access to a web page". As B&N explained in its opening brief, the answer quoted by Adrea was in relation to Bolas's pseudo code (Tr. 1200:18-1201:13, 1214:5-9); Neuman clearly indicated that Bolas teaches this limitation elsewhere. Tr. 999:8-24.

*Finally* (and curiously), Adrea relies on testimony of the inventor, Shteyn, to argue that Bolas's "station identifier" or "name of a song" cannot be the claimed "content information

7

about the context of usage". But Shteyn emphatically admitted that his "content information" was exactly that: "it's information *about the music, who the author is, who the band is*, and this type of thing. . . . It is about the music that they want to hear *or they are already hearing*. It's about things, about the music." Tr. 252:3-16 (emphasis added).[5] Not only does Adrea blatantly misrepresent Shteyn's testimony, but his admission is material and binding. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.").

## IV.   B&N PRESERVED ITS RIGHT TO SEEK JMOL

Adrea incorrectly argues that B&N has waived its right to bring a Rule 50(b) motion challenging validity, and, in certain cases, non-infringement, by having failed to separately articulate its JMOL grounds at trial. Opp'n at 5-10. Adrea is wrong. *First*, at the close of Adrea's case, B&N stated it wished to move for JMOL on each and every one of Adrea's claims and B&N's defenses. The Court indicated that all such motions were reserved. Tr. 912:9-13 ("[B&N]: First of all, we thought it would be appropriate at this time to move for judgment. [Court]: You're making a hundred motions which I will allow you to make and they are all reserved till the end of the case. Congratulations."). *Then*, at the close of its own case, B&N again stated it wished to make a "motion with respect to all of the claims" and defenses, which the Court again denied. Tr. 1378:24-1379:1. Minutes earlier, the Court had similarly denied Adrea's general motion, and indicated that the right to later move under Rule 50(b) as to all issues was preserved. *See* Tr. 1377:4-8 ("[Adrea's Counsel]: As a procedural matter, plaintiff

---

[5] Notably, Adrea has no response to B&N's point that there is no evidence that returning data about a "recommended station of the radio" is materially different than returning "radio station data". Dkt. 185 at 21-22 (citing *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) and *Soverain Software LLC v. Newegg Inc.*, 705 F.3d 1333 (Fed. Cir. 2013)).

8

would move for judgment as a matter of law with respect to all the defense issues, . . . . [The Court]: Your general motion *which you were right to raise at this point for technical reasons* is denied, . . . ." (emphasis added)). In such circumstances, these motions were enough to preserve the parties' Rule 50(b) motions on all grounds. *See Holland v. City of San Francisco*, 2013 WL 6698420, at *1 (N.D. Cal. Dec. 19, 2013), *appeal dismissed* (July 10, 2014).

As for Adrea's argument that B&N waived any motion on invalidity, at the close of its case, B&N specifically addressed the evidence with respect to invalidity in response to Adrea's Rule 50 motion. Tr. 1377:11-1378:20. In this context, that was enough to put Adrea on notice of B&N's position, which is all that is required. *See Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 287 (2d Cir. 1998) ("We must . . . view the motion in the context of the ensuing colloquy between counsel and the trial court, and if the colloquy fleshes out the motion, it may provide the opposing party with the requisite notice.").[6] Further, Adrea's statement that B&N failed to move for JMOL on certain claims of infringement is just wrong.[7]

The case relied on by Adrea, *T.E.A.M. Entertainment, Inc. v. Douglas*, 2006 WL 587326 (S.D.N.Y. Mar. 9, 2006), does not create a different standard. There, the defendants' two-sentence Rule 50(a) motion related only to an issue regarding a "precedent condition," while

---

[6] *See also Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1566 (Fed. Cir. 1996) (pre-verdict motion requesting directed verdict on noninfringement sufficient to support post-verdict motion concerning doctrine of equivalents); *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *15 (C.D. Cal. July 24, 2015) ("[H]ere, the Court understood the bases for Defendant's Rule 50(a) motion and did not hear oral argument from Defendant's counsel because of its conclusion that all of the issues were contested and properly submitted to the jury. As a result, Defendant is not barred from challenging the jury's findings in a Rule 50(b) motion now." (internal citations omitted)).

[7] *Compare* Opp'n at 8 ("B&N waived its non-infringement argument based on the 'enabling' element in Claim 13 of the '703 Patent[.]" (heading)) *with* Tr. at 1379:3-10 (B&N moving for JMOL on ground that "Mr. Berg pointed to the actions of users of NOOK devices and what a NOOK device does to say that the *enabling limitation of claim 13 is met*.") (emphasis added); *and* Opp'n at 8 (alleging that B&N did not move on whether the "accused NOOK devices require the user to access the Shop application") *with* Tr. at 1380:14-22 (B&N moving on ground that "the user is accessing the shop application when pressing the button happens").

9

their Rule 50(b) motion addressed entirely unrelated issues. *Id.* Moreover, there was no pre-verdict attempt to preserve additional grounds, or even indicate that there were any. Here, Adrea was fully on notice of B&N's position that it had failed to elicit sufficient evidence regarding infringement and validity of the '703 Patent. Under these circumstances, the Court's denial of B&N's motions without hearing a detailed articulation of each and every JMOL ground is not a basis for waiver. *See Galdieri-Ambrosini*, 136 F.3d at 287-88; *Levitant v. N.Y. Human Res. Admin.*, 914 F. Supp. 2d 281, 296 (E.D.N.Y. 2012) (finding, in similar circumstances, that JMOL was required "in order to prevent manifest injustice"), *aff'd*, 558 F. App'x 26 (2d Cir. 2014).

In addition, B&N certainly has not waived its right to move for a new trial under Rule 59. B&N's new trial motion was not "half-hearted". Rather, as stated in B&N's opening brief, if for some reason the Court believes the weight of the evidence does not rise to the level of JMOL, where "the great weight of the evidence is against the verdict", a trial judge, putting himself in the position of the jury, may weigh the evidence, consider the credibility of the witnesses, and order a new trial. *Loral Fairchild Corp. v. Victor Co. of Japan*, 931 F. Supp. 1014, 1034 (E.D.N.Y. 1996) (Rader, J.), *aff'd sub nom. Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999). Further, a new trial is warranted when the jury's verdict, if allowed to stand, would be a "seriously erroneous result". *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992). Thus, even if the Court is not prepared to modify its construction of the term "consumer appliance" in order to award JMOL, the fact that Shteyn repeatedly conceded that his invention was not intended to cover devices like the NOOK is reason for a new trial, with the jury receiving a construction of "consumer appliance" consistent with his testimony.

## V. CONCLUSION

For the reasons stated above, the Court should grant B&N's motion for JMOL.

Dated: September 21, 2015            **ARNOLD & PORTER LLP**

*/s/ Louis S. Ederer*
_____
Louis S. Ederer
Susan Shin
Maxwell C. Preston
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
maxwell.preston@aporter.com

Ali R. Sharifahmadian (*pro hac vice*)
555 Twelfth Street, NW
Washington, DC 20004-1206
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
ali.sharifahmadian@aporter.com
sarah.arni@aporter.com

Michael Berta (*pro hac vice*)
Willow Noonan (*pro hac vice*)
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
michael.berta@aporter.com
willow.noonan@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc., barnesandnoble.com llc, and NOOK Media LLC*

## CERTIFICATE OF SERVICE

I, hereby certify that on September 21, 2015, copies of Defendants' Reply Memorandum of Law In Support of Their Motion Pursuant To Rule 50 For Judgment As A Matter of Law Or In The Alternative For A New Trial was caused to be served upon the following via ECF:

Kenneth Rubenstein, Esq.
Baldassare Vinti, Esq.
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036

Steven Michael Bauer, Esq.
Kimberly A. Mottley, Esq.
Micah W. Miller, Esq.
Patrick Niedermeier, Esq.
Erin Staab, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110

Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East
Los Angeles, CA 90067

Julie Simeone