F9SQADRc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ADREA LLC,

                    Plaintiff

           v.                          13 CV 4137 (JSR)

BARNES & NOBLE, INC.

                    Defendant

------------------------------x
                                   New York, N.Y.
                                   September 28, 2015
                                   4:30 p.m.

Before:

                    HON. JED S. RAKOFF

                                        District Judge

                         APPEARANCES

PROSKAUER ROSE LLP
     Attorney for Plaintiff
COLIN CABRAL
FABIO TARUD


ARNOLD & PORTER LLP
     Attorneys for Defendant
LOUIS S. EDERER
MICHAEL A. BERTA
JULIE SIMEONE

F9SQADRc

1            (In open court; case called)

2            THE DEPUTY CLERK:  Will the parties please identify

3    themselves for the record.

4            MR. CABRAL:  For plaintiffs, Colin Cabral from

5    Proskauer Rose.  With me is Fabio Tarud, an associate of the

6    firm.

7            THE COURT:  Good afternoon.

8            MR. EDERER:  Good afternoon, your Honor Louis Ederer

9    from Arnold & Porter for the defendants.

10            MR. BERTA:  Michael Berta also for defendants.

11            MS. SIMEONE:  Julie Simeone, also for the defendants.

12            THE COURT:  Good afternoon.

13            So we are here on several motions.  Basically, I am

14    trying to get all the motions here resolved.  There has already

15    been a prior motion, but I want to resolve them because they

16    are sort of interrelated.

17            So, presently we have defendant's motion seeking

18    judgment notwithstanding the verdict or a new trial.  And we

19    have the plaintiff's motion to assert new claims in light of

20    two recent decisions from the Second Circuit.

21            Now, as I knew you would, both sides have given me

22    excellent papers on those motions.  Partly for that reason and

23    partly because of time constraints that are imposed on me by

24    the ongoing bench trial, I am going to, with apologies, have to

25    limit oral argument here this afternoon.  I think it makes

F9SQADRc

1    sense to hear chiefly on the second motion, but what I will do

2    is this:  I will give each side 20 minutes, and you can talk

3    about anything you want, but my recommendation is that you

4    address chiefly the plaintiff's motion, the motion relating to

5    the Federal Circuit's recent decisions.

6         So in light of that, we will start with plaintiff, and

7    if you want to also say something about the other motion, you

8    can, but you're not required to.

9         MR. CABRAL:  Your Honor, I will do my best to be

10   brief.  I don't think I will need the full 20 minutes, and I

11   will just say maybe I would need a few minutes on defendant's

12   motion before I conclude.

13        THE COURT:  OK.  No one should infer that I have a

14   view about either motion.  It's really that the defendant's

15   motion presents familiar legal issues while the plaintiff's

16   motion, of course, involving new decisions in the Federal

17   Circuit is a little more novel.

18        So, go ahead.

19        MR. CABRAL:  Thank you, your Honor.

20        So our request here, I think, is pretty

21   straightforward.  There is no dispute that the law has changed

22   in light of the Federal Circuit's recent decision and what we

23   have been referring to as *Akamai III*, which is the third in a

24   series of cases relating to divided infringement.  The latest

25   decision relates specifically to establishing divided

F9SQADRc

1    infringement under 271(a) as direct infringement for a method

2    claim involving multiple parties.

3        We had at the outset of this case two separate

4    competing theories of infringement with respect to claim one of

5    the '851 patent, which is the only claim at issue for purposes

6    of this motion.  One of those theories related to the first

7    level of encryption, which was performed exclusively by Barnes

8    & Noble.  Another separate theory related to a second level of

9    encryption called TLS encryption.  Our motion is focused again

10   exclusively on the TLS second-level encryption of claim one of

11   the '851 patent.

12       So, when we started this case, the law was such that

13   you could prove divided infringement under 271(b) under an

14   indirect infringement theory.  Shortly before summary judgment,

15   and we will acknowledge this at oral argument for summary

16   judgment, the Supreme Court came down with a decision that said

17   you can no longer do that; you can no longer prove divided

18   infringement under 271(b) without a single direct infringer.

19   And because of the contentions as they were at that point, we

20   effectively conceded the point that our theory was no longer

21   viable under the current state of the law.

22       In that Supreme Court decision, the Supreme Court

23   actually invited the Federal Circuit to address 271(a) and

24   divided infringement under that particular statute, which they

25   then came back and did just in, I believe it was, August or

F9SQADRc

September of this year, so very recently.  That decision is

significant really in a couple respects.

It spans the scope of direct liability in a couple

different ways.  First and foremost, it introduces a new way to

prove divided infringement under 271(a), under a theory of

joint enterprise, which did not exist at the beginning of the

case.

It also extended ways in which you could establish

direction and control which were not in place at the beginning

of the case under *Muniauction*, prior Federal Circuit case law,

and specifically that allows you to prove liability under

271(a) when participation in an activity or receipt of a

benefit upon performance of a step or steps of a patented

method, and establishes the manner over timing of that

performance.  So when an alleged infringer conditions

participation in activity that is on receipt of a benefit or

establishes the manner or timing of that performance, he can

establish direction and control.

Prior to this, you could only establish direction and

control under traditional principal agent principles, so under

an agency theory or under a strict contractual relation to show

that one party had strict control over every step of the

method.  Here you have the Federal Circuit giving another way

to prove direction and control.

You also have the Federal Circuit going even further

F9SQADRc

1   and saying that 271(a) is not limited solely to principal agent

2   relationships or contractual arrangements and joint enterprise.

3   Rather, the liability question focuses more broadly on whether

4   all method steps can be attributed to a single entity.  That's

5   the situation we have now.  So we have three -- at least

6   three -- because that last part is a little bit open-ended, but

7   at least three different ways to prove liability under 271(a)

8   that did not exist when we initiated the case or at the time of

9   summary judgment.

10          All we are asking for now is the opportunity to move

11   forward under these new pathways of establishing liability

12   under 271(a) with respect to that one theory of infringement;

13   that is TLS encryption, second-level encryption and only with

14   respect to claim one of the '851 patent.  That is essentially

15   our request in short.

16          Now, in response to our motion, Barnes & Noble made

17   several arguments that we had abandoned these claims; that

18   think were untimely; and that they were futile.  Our general

19   response to those is, there is no way to abandon claims

20   logically or legally that were not available to us at the

21   outset of the case.  And there is no way for us to seek

22   discovery on or know that discovery is even appropriate with

23   respect to this four-factor test to prove joint enterprise, for

24   example.  And, therefore, it's hard for us to see how we can

25   abandon those claims or how we can be at a point of futility

F9SQADRc

1    here unable to prove them without knowing that discovery was

2    even available to us to meet that legal standard.

3           With that, your Honor, I think that summarizes our

4    point on the first motion.

5           Without any questions, I'll speak briefly on

6    defendant's motion, and then I'll turn it over to the other

7    side.

8           With respect to defendant's motion, the one piece of

9    it I will address because there were a lot of issues raised in

10   the motion.  I want to speak briefly to whether the claims

11   themselves are procedurally barred at this stage, if that is OK

12   with the Court.

13          This is a threshold question.  And this is a threshold

14   question that would come into place before even turning to the

15   merits of the motion.  Rule 50(a), just the plain language of

16   the rule itself, has language in it where the movant must

17   specify the judgment sought and the law and the facts that

18   entitle the movant to judgment that is at the Rule 50(a) stage

19   before the case is submitted to the jury.  The significant wave

20   of controlling authority both in the Second Circuit and the

21   Federal Circuit said it's improper to bring a renewed motion

22   based on new arguments and theories that were not raised before

23   the case was submitted to the jury under Rule 50(a).

24          That is what this Court found in the *T.E.A.M. v.*

25   *Douglas* case based on similar facts, although not a patent

1    case.  That is what another judicial court found in this

2    district and even addressed Barnes & Noble's position on the

3    waiver issue calling it borderline frivolous to say you don't

4    have to specifically raise the issues on which you're seeking

5    judgment as a matter of law under Rule 50.

6              So there is one open question I just wanted to direct

7    the Court's attention to because it is not one hundred percent

8    clear as to whether Federal Circuit law controls here or

9    whether Second Circuit law controls here.  The Federal Circuit

10   has handled this issue actually differently on multiple

11   occasions.

12             Our view is that Federal Circuit law would control

13   because these are issues that relate uniquely to patent law.

14   However, you can also view it as a waiver issue is an issue

15   that does not relate specifically to patent law and Second

16   Circuit would apply here.  But regardless, the outcome is the

17   same.  The law is a little bit different in the sense that the

18   Federal Circuit law is a little bit of a harder line.  In the

19   *i4i* case it says that a moving party must move on all theories

20   of all prior art references.  That is the *i4i* decision.

21             And the *Duro-Last* decision goes a little bit further

22   and says:  "In view of a litigant's Seventh Amendment rights,

23   it would be constitutionally impermissible for the judicial

24   court to reexamine the jury's verdict and enter judgment as a

25   matter of law on grounds not raised in the pre-verdict JMOL."

F9SQADRc

1              They are saying that even the court issuing a ruling

2      on these issues would be a constitutional violation, at least

3      of the Seventh Amendment.

4              Second Circuit law is similar, but it has an

5      exception.  So, in the Second Circuit the specificity

6      requirements are obligatory.  It has a distinction which it

7      characterizes as a "very narrow exception" in the Second

8      Circuit where a jury's verdict -- "any jury verdict wholly

9      without legal support to prevent manifest injustice could be

10     overturned."That exception exists in the Second Circuit.  I'm

11     not aware of it existing in the Federal Circuit, but there is

12     this narrow exception.

13             Here, to my knowledge, Barnes & Noble hasn't made an

14     argument that there is any manifest of injustice in its papers.

15     There is nothing I can see in the original motion and in the

16     reply there's a general reference to it, but there is no

17     explicit argument saying that denied, that JMOL would have to

18     be granted under these circumstances to prevent manifest

19     injustice.

20             In light of those facts, and in light of the fact that

21     the Rule 50(a) motion is essentially just a general motion with

22     respect to all claims, it does not raise any validity issues

23     whatsoever, and it doesn't raise the majority of infringement

24     issues that are raised in Barnes & Noble's papers here in their

25     motion.

1            Our view is that all but two of these arguments are

2   waived under current Rule 50 and are procedurally barred.  We

3   put them on notice of the waiver before the papers were

4   submitted in the letter briefing that was requested by your

5   Honor, and they moved on those issues anyway, which required us

6   to -- you know, it's one thing to say that there's insufficient

7   evidence on an issue.  It's another thing to go back and

8   collect all that evidence, put it into briefing.  That's a very

9   monumental task.

10           With that, your Honor, unless there are any questions,

11  I'll turn it over to the other side.

12           THE COURT:  That's very helpful.

13           Since you didn't use all your time, I will give you a

14  few minutes for rebuttal after I hear from your adversary.

15           MR. CABRAL:  Thank you, your Honor.

16           MR. BERTA:  Thank you, your Honor.  We actually had

17  split up the responsibility.

18           THE COURT:  As long as you're within your 20 minutes.

19           MR. BERTA:  The issue that I want to address is the

20  issue of the alleged change in law.

21           So this is what I think is true:  That there was a

22  decision in *Akamai III*, and with respect to the parties and the

23  facts of that case, there was a finding of liability on a

24  theory of direct infringement that was unavailable before.  But

25  a couple things:  First, they moved -- I'm going to be very

brief about this because I'm not certain -- I think it's
important, but perhaps not dispositive.  They moved to
reconsideration of this Court's summary judgment decision.
This Court's summary judgment decision was on the issue of
inducement.  The substantive decision was on the issue of
inducement, not direct infringement.  They are now just seeking
to have a theory of direct infringement.  There is no
reconsideration of summary judgment, in the sense that the
theory of direct infringement was decided by this court on
summary judgment expressly, but the reason for the decision of
direct infringement was because they had abandoned that theory
and didn't put in any evidence on it.  And, thus, it was
decided on that basis.  And that is page 3 of this Court's
summary judgment order that they pleaded direct infringement,
abandoned it, and on that basis we prevailed.  So, it has
nothing to do with the substantive decisions with respect to
inducement, which is what they were talking about in their
opening motion.

        So I don't think this is a motion for reconsideration,
and I think it really wasn't clear until you come to the reply
where they're asking for basically more discovery and reopening
the entire case that it's become clear that they basically just
want to have a new case on a new theory on claim one.

        Here is the problem with that:  They always had a
claim for direct infringement under this *Akamai* TLS theory

F9SQADRc

```
 1    under claim one from Muniauction.  So there is a change in law
 2    but it is not a relevant change in law for purposes of the
 3    parties here.  It has been true since Muniauction and BMC that
 4    if you are in a contractual relationship with someone such that
 5    you have direction and control over their activities, they are
 6    i.e., a supplier of yours, you can't hand off to someone else
 7    one of the tasks of a method and get out of infringement on
 8    that basis.  That's been true since BMC Muniauction, they had
 9    that theory available to them.  That is the factual -- I'm not
10    saying it's an infringing factual scenario, but that's the
11    relationship between Barnes & Noble and Akamai, where Akamai --
12    we have a contract with them.  They are a supplier to us that
13    allegedly does one of these steps that they claim put together
14    is the method claim.  They had that before.  They chose not to
15    follow that up on that theory of direct infringement and
16    instead did a inducement theory where this whole issue of our
17    relationship with Akamai came up, and it was part of summary
18    judgment briefing.  They said, well, there's a contractual
19    relationship with Akamai for purposes of direction and control
20    and for purposes of inducement, and this Court decided
21    inducement how it decided it on an issue that they're not
22    seeking to revisit.
23            So, I just want to remind the Court that in their
24    letter, which we have in our papers that it was submitted
25    during summary judgment briefing, they said as much.  And I
```

F9SQADRc

 1    have it.  At the time they admitted that they believed that

 2    they had a claim for direct infringement with respect to our

 3    relationship with our content provider Akamai.  And that was

 4    in -- I'm sorry, your Honor -- in their letter which was in

 5    June of 2014.

 6         They say that they want to seek to amend their

 7    contentions and disclosures to withdraw inducement -- I'm

 8    slightly paraphrasing -- and allege direct infringement under

 9    271(a).  The only change needed would be the addition of

10    evidence showing that the steps of claim one are attributable

11    to B&N, either because B&N directly performs the steps or

12    because B&N directs or controls others who perform them;

13    namely, B&N's content provider.  Meaning, they had an available

14    theory of direct infringement based on our relationship with

15    Akamai that they did not follow up on, on which this Court

16    granted summary judgment because there was no evidence.

17         So then get to *Akamai III*.  In the situation in *Akamai*

18    *III*, if you recall, is where it was Limelight and its

19    customers, and the customers were doing tagging, and the

20    question was:  Why am I just control of its customers in the

21    sense of *Muniauction*, so can you still have direct

22    infringement.  And there was a huge turmoil of the Federal

23    Circuit says, well, try out inducement, and the Supreme Court

24    saying, no, you can't try inducement.  Then it comes back and

25    then the Federal Circuit finally decides, yes, between you and

F9SQADRc

1   your customer, we will say that in this set of factual

2   circumstances, you can have the theory of direct infringement.

3   That was what *Akamai III* decided.  But that's not you and your

4   supplier.

5          The Federal Circuit makes clear that distinction

6   because in *Akamai III*, what the Federal Circuit said was:  "to

7   determine if a single entity directs or controls the acts of

8   another, we continue to consider general principles of

9   vicarious liability.  In the past, we have held that an actor

10  is liable for infringement under 271(a) if it acts through an

11  agent, applying judicial agency principles, or contracts with

12  another to perform one or more steps of a claimed method."

13         Then they go on to say, "On the facts of this case, we

14  find a new theory, but the facts of that case between Limelight

15  and its customers have nothing to do with the facts of this

16  case, which is between us allegedly and our supplier Akamai,

17  which they always could have pursued because this is a

18  straight-up *Muniauction* argument of whether what we do with

19  Akamai as a supplier is just merely handing off to them one of

20  the steps of the method.

21         So, the fact that they pleaded it, had it, abandoned

22  it, said that they had it again in June of 2014, and then

23  *Akamai III* comes along on a different set of facts and says

24  there's another available theory for people who are customers,

25  not suppliers, means there is no change of law that is relevant

F9SQADRc

1    to this issue.

2          And the courts in this -- obviously you know this --

3    but the courts in this district have held that where you have

4    an available theory, and you do not make it, arguments that are

5    not -- that are available but not made are waived.  So they had

6    a theory of direct infringement.  They chose not to pursue it.

7    They say that in their papers.  In reply, they admit that they

8    did not pursue -- this is on page -- in the reply on page 3,

9    they say that they didn't do the theory of direct infringement

10   and were pursuing inducement because their theory of direct

11   infringement was "not necessary."  But not necessary isn't the

12   standard.  It has to be not possible, and this theory wasn't

13   not possible under existing law.  They just didn't do it.

14          So with that, I think we do probably want to address

15   some of the issues with respect to the waiver argument.

16          THE COURT:  All right.  Thank you.

17          MR. BERTA:  Thank you, your Honor.

18          MR. EDERER:  Good afternoon, your Honor.  So, I will

19   address waiver, and if I have any time left over, I may address

20   one or two small other points.

21          We didn't waive anything with respect to our Rule

22   50(b) motion or our Rule 50(a) motion.  We made clear in our

23   pre-verdict motions that we were moving on all claims and all

24   defenses; the same as Adrea, by the way.  At close of the

25   evidence, both sides indicated that they had general motions on

F9SQADRc

1    all claims and defenses, and the Court noted that the parties

2    were right to do this for technical reasons, but then denied

3    the motions without requiring that any grounds be specified

4    leading to the conclusion that these general motions would be

5    sufficient to preserve the party's position on all claims and

6    defenses.

7         In fact, that's what Adrea -- Adrea set the tone for

8    that.  How did they do that?  What happened was, at the close

9    of the plaintiff's case, I stood up and made a one-line

10   application.  I said I want to move for judgment.  And your

11   Honor said it's reserved.  Congratulations.  Sit down.

12        So I sat down.  Then the next thing that happened was

13   at the close of defendant's case, Mr. Cabral stood up and he

14   said to the Court -- first, he made a couple very short,

15   specific motions with respect to invalidity, and then he said

16   he wanted to preserve all of his other motions, so he said:

17   "As a procedural matter, plaintiff would move for judgment as a

18   matter of law with respect to all the defense issues" in

19   addition to the two or three that he specified.

20        And your Honor said, "Your general motion, which you

21   are right to raise at this point for technical reasons, is

22   denied."

23        So there was a clear understanding and request on

24   Adrea's part that their general motion cover whatever grounds

25   that they hadn't specified, which if you look at the

F9SQADRc

transcript, we're talking about two or three paragraphs, one or two specific grounds, and that was it.

On three occasions the Court denied general motions on all claims and defenses:  Two by us; one by Adrea.  Clearly indicating, at least to us, that it did not require every single specific Rule 50 ground for preservation purposes.  It only indicated that you wanted to hear a few highlights from both sides and that's what happened.  Clearly, there was no intent on either side's part to waive anything.

Now, with respect to invalidity, Mr. Cabral said that we made no Rule 50 motion at all and specified nothing on validity.  He tries to make it like we didn't even utter the word validity at the close of defendant's case.  That's wrong. In response to Mr. Cabral's motion, we stated all of our invalidity grounds in response to their Rule 50 motion.  We clearly put them on notice as to what our JMOL position was with respect to invalidity.  That is all that is required by law.  You can see it in the transcript at transcript pages 1377-1378.

In our briefing, we refer to the case of *Anhing Corp. v. Thuan Phong Co.*, (C.D. Cal. 2015).  That is a trademark case where the court only heard the defendant's response to the plaintiff's Rule 50(a) motion and then denied both parties' Rule 50(a) motions in their entirety, and then defendant was allowed to move under Rule 50(b) on all issues.  Very similar

F9SQADRc

1    situation to what happened here.

2            With respect to infringement, once again, we specified

3    key grounds with respect to infringement, just like plaintiff

4    did with respect to validity.  The Court only heard limited

5    arguments highlighting the key points, just like it had moments

6    earlier when Adrea moved on validity.  We touched on some

7    points, but not others, but we did touch on many more points

8    than Adrea is saying we touched on in its briefing.  For

9    example, we touched on the enabling element of claim 13.  They

10   say we didn't.  It's right there.  We moved on the single input

11   element of claim 13.  They say we didn't.  It's in the

12   transcript.

13           In circumstances like these, the case law says all

14   Rule 50(b) motions are preserved as long as the parties are on

15   notice of the scope of each other's Rule 50 motions.  There is

16   no requirement as to the level of specificity.  Notice is all

17   that's required.  You have to look at it in the context of the

18   exchange between the parties and the Court.

19           Your Honor, I'm sure, is familiar with this case.  We

20   cited it in our brief:  *Galdieri-Ambrosini v. Nat'l Realty*

21   where the Second Circuit affirmed this Court's finding that

22   even though a Rule 50(a) motion was not fleshed out, there was

23   ensuing colloquy between counsel and the Court that fleshed out

24   the motion to some extent and at least provided the opposing

25   party with the requisite notice.  That was your Honor's Ruling

F9SQADRc

1    and it was affirmed by the Second Circuit.

2              THE COURT:  Every once in awhile I get lucky.

3              MR. EDERER:  They went right down the line with you on

4    that particular case.

5              *Holland v. City of San Francisco*, (N.D. Cal. 2013),

6    finding that a Rule 50(a) obligation was satisfied when the

7    Court denied the Rule 50(a) motion before counsel had a chance

8    to explain her reasons for it.

9              I mentioned the *Anhing Corp.* case (C.D. Cal. 2015)

10   just two or three months ago.  Then there was *Levitant v. N.Y.*

11   *Human Res. Admin.*, (E.D.N.Y. 2012) affirmed by the Second

12   Circuit.  In that case, a Rule 50(b) motion was preserved on

13   all grounds even though defendant did not specify the factual

14   and legal bases for its Rule 50(a) motion, where the parties

15   understood that a non-specific motion would preserve all

16   grounds and did not object to this.

17             Here, not only did Adrea not object, but it started

18   the whole thing.  It indicated that it was making a motion with

19   respect to all defense issues for preservation purposes "as a

20   procedural matter."

21             The Second Circuit said in *Levitant* or the Eastern

22   District said, and the Second Circuit affirmed, that that was

23   sufficient because notice -- there was no objection and

24   sufficient notice on all grounds.

25             Now, the *T.E.A.M.* case that Mr. Cabral mentioned,

F9SQADRc

1    which is your Honor's case as well, we say that case is

2    inapplicable.  There, the Rule 50(b) grounds were not specified

3    at all in the Rule 50(a) motion.  There was no indication that

4    there were any other grounds besides the one ground that was

5    stated.  No general motion was made and denied.  The Rule 50(b)

6    motion contained four random arguments never previously

7    referred to.  That's not what happened here.  That's not the

8    situation.

9        So we say under all the circumstances and under the

10   applicable case law, we believe Second Circuit applies because

11   this is a procedural issue, and not specifically a patent case

12   issue; that in order to prevent manifest injustice, and because

13   proper notice was given -- and this was the way the parties

14   were operating at the time -- there was no waiver.

15       Now, I think I have a few minutes left.

16       THE COURT:  Yes, you have three and a half.

17       MR. EDERER:  So, I am not going to go through all of

18   the reasons why we think we're entitled to JMOL on infringement

19   and invalidity.  That is all set out pretty clearly in our

20   briefing.  There is one issue that came up that I would like to

21   address, your Honor.

22       In addition to the points that we make in our brief

23   about why we're entitled to JMOL on infringement with respect

24   to the two independent claims, which are claim one and claim

25   13, there is a discussion in the briefing also about the

F9SQADRc

1   testimony of the '703 patent's inventor.  And in particular his

2   testimony that the patent was not intended to cover computing

3   devices like the NOOK.  That was Mr. Shteyn, if you remember.

4   We did on Mr. Shteyn's cross-examination get him to concede

5   repeatedly that computing devices had the capability to access

6   remote servers -- which is what the patent covers -- 30 years

7   before he applied for his patent.

8           Adrea is arguing in their briefing that the sole basis

9   for our Rule 50 motion on non-infringement is the inventor's

10  testimony at trial.  He did testify that computing devices like

11  the NOOK are not the kind of devices covered by the patent.

12          They are also arguing that essentially we need the

13  Court to amend its claim construction with respect to the term

14  consumer appliance in order to find in our favor on JMOL.  The

15  answer to that is no.  That is not what we are doing.  We have

16  strong JMOL arguments even without the inventor testimony, and

17  separate and apart from any issue about claim construction.

18          But the inventor's testimony does put an exclamation

19  point on our JMOL position.  This patent exists because the

20  inventor took devices that ordinarily did not have internet

21  connectivity and allow them to retrieve information from remote

22  servers without accessing the web browser.  Before this,

23  blenders -- which is what the patent specifically covers --

24  presumably couldn't do that.  Maybe that's inventive.  But

25  computing devices could, and the inventor conceded that.  Not

F9SQADRc

1    only that, but the NOOK does access a browser to retrieve this

2    information, which is contrary to the patent claim.

3               So, our point is, we are not relying on the inventor's

4    testimony solely, or even partially, with respect to JMOL on

5    infringement other than the fact that it puts, as I said, an

6    exclamation point on the JMOL arguments that I'm already

7    making.  And I am not going to take up the Court's time

8    mentioning any of them; you can read them.

9               With respect to the claim construction issue, it's

10   true that we have, and we continue to take, issue with the

11   Court's construction of the term consumer appliance, which

12   would on its face would allow the NOOK to be included within

13   the scope of the patent.  We believe the Court does have the

14   ability, if it thinks it needs to reconsider claim

15   construction -- which we don't think it needs to do in order to

16   grant JMOL -- it can look at its construction again and measure

17   it against the evidence.

18              That's the teaching of the Markman case.  The Federal

19   Circuit has repeatedly recognized that Markman stands for the

20   proposition that the interpretation to be given a claim can

21   only be determined and confirmed with a full understanding of

22   what the inventor actually invented and intended to envelop

23   with the claim.  That's the *Reinshaw* case which we cite in our

24   reply brief.

25              So the inventor's testimony about the state of the

F9SQADRc

1    prior art and what he invented can be considered, but let me be

2    clear, our motion on the issue of infringement is not based on

3    any claim construction issue or the inventor's testimony.

4           One more small point about the inventor's testimony

5    because we think this goes to the validity issue as well.  It

6    goes to the issue of obviousness.  We specify in our papers the

7    reason why we believe that claims of this patent were

8    anticipated by two prior art patents.  I won't go into any of

9    that.  The munion (ph.) and the bolus patent.  The inventor's

10   testimony as to the state of the art at the time that he

11   applied for this patent indicates the inclusion of computing

12   devices within the scope of the patent would have been obvious.

13          He testified that the computing devices had the

14   ability to connect and retrieve information from remote servers

15   that were known in the art for 30 years before he applied for

16   this patent.  So, if computing devices are included in the

17   patent, by definition the invention was obvious.

18          We think the case law is clear.  We cite the cases in

19   our brief as to the state of the prior art can go to

20   obviousness.  This is not, as Adrea argues, about the

21   inventor's path to building the invention.  It's about whether

22   the prior art reads on the invention.  The case law says that

23   you can rely on the inventor's testimony as to the state of the

24   prior art in reaching an obviousness determination.  And we

25   believe the Court should do so here, in addition to finding

F9SQADRc

1    under anticipation under those other two patents that we

2    mentioned.  We believe the Court should find obviousness here,

3    hold this invention obvious as a matter of law to the extent it

4    purports to encompass computing devices in light of the

5    inventor's undisputed testimony.

6              THE COURT:  Thank you very much.

7              We will hear finally from plaintiff's counsel.

8              MR. CABRAL:  Thank you, your Honor.

9              Your Honor, I will briefly address the issues in the

10   order in which they were raised just for clarity.

11             The first issue raised by Mr. Berta was whether or not

12   this is properly a motion for reconsideration or to revise a

13   non-final order under Rule 54.

14             I think we addressed that in footnote one of our reply

15   brief where there were specific findings that the Court made in

16   its summary judgment order.  That's Docket No. 85, specifically

17   on pages 5 through 7.  Where the Court found that the accused

18   devices do not literally infringe claim one, and there is no

19   direct infringement to begin with, which is really the key

20   finding.

21             Our position is that there is no way for the Court to

22   grant the relief we're requesting now unless the Court goes

23   back and revisits that non-final order.  The way to do that is

24   under Rule 54.  If it got to the point of being a final order,

25   then it would be Rule 60.  But we're in the Rule 54 arena right

F9SQADRc

1    now.

2              With respect to *Akamai III*, which was also mentioned

3    by Mr. Berta, I think it provides a good example, because there

4    was no direct infringement under *Muniauction* under the prior

5    law.  In *Akamai III*, under the standard that is now set forth

6    in the Federal Circuit, there was direct infringement under the

7    new law, and that just goes to show you how different the legal

8    landscape is right now and how presumably, while we were not in

9    a position strategically to make an argument under *Muniauction*,

10   we had no interest in going under *Muniauction* exclusively.  We

11   tried to make this as clear as we could in our briefing.  We

12   are solely going under the new paths that have been created.

13   We have no interest in trying to prove direct liability

14   infringement under the old law.

15             Turning now to the preservation issue before I wrap

16   up, there was some discussion by Mr. Ederer of the colloquy on

17   validity.  He referenced specifically our motion for JMOL that

18   no reasonable jury could find that Barnes & Noble met its clear

19   and convincing burden.  Somehow that preserved their JMOL on

20   validity issues.

21             My argument there is it is a completely different

22   standard.  Whether or not a reasonable jury could find that

23   Barnes & Noble met its standard or whether a reasonable jury

24   would have no choice but to find that the claims are invalid

25   are two entirely separate issues.  There is no way in reading

F9SQADRc

that transcript that that can be argued to the preservation on
that specific issue.

Mr. Ederer also cited a few cases, including the
*Galdieri* case and several other cases from the Ninth Circuit,
which literally has a little bit more of a lenient standard out
there.  *Galdieri* is actually informative here because even in
that case, they said that the JMOL motion under Rule 50(a) has
to have some specificity.  That's pretty clear.  When you read
that case, if look at what the lawyer actually said in making
the Rule 50(a) motion, it provides a lot more specificity than
what you see here in the transcript.

So, we don't see that case as being a problem for us
at all.  That case was in the context of a discrimination case.
I just invite the Court to go back look and see what was said
there and compare it to what was said here.

Finally, if you look at this last issue that was
raised by Mr. Ederer with respect to this relates to the
Court's construction of the term consumer appliance.  This
issue was not raised in any way in a Rule 50(a) motion.  The
Barnes & Noble expert actually did not dispute that this
element was met.  That's at trial transcript 1116, 12 to 14.
This element of the claim wasn't even included in the list of
disputed facts in the pretrial order.  So this is not a
disputed issue.

What Barnes & Noble is doing now is looking at

F9SQADRc

1    inventor testimony.  If you look at the cross-examination, it's

2    all over the place.  There is no focus to it whatsoever.  It is

3    not made in with any reference to a person in the ordinary

4    skill, which is the appropriate legal standard.  It's not made

5    with respect to any specific argument in terms of what the

6    proper construction of the claim should actually be.  And there

7    is no reference to any intrinsic evidence, which this Court

8    relies on in its claim construction order.  There is really no

9    basis for the Court to go revisit its construction on this

10   particular issue.  The entire argument appears to be based on

11   the inventor testimony.

12           There is a case from the federal circuit, called

13   *Howmedica v. Wright Medical Technology*, 540 F.3d, 1337,

14   specifically at pages 1346 through 7 where the Federal Circuit

15   holds that:  Inventor testimony as to the inventor's subjective

16   intent is irrelevant to the issue of claim construction.  It

17   could not be clearer.  It is completely irrelevant to the issue

18   of claim construction, which is Barnes & Noble is asking the

19   Court to revisit here for purposes of JMOL.  There is no

20   dispute here that the Court properly applied -- that the jury,

21   rather properly applied the Court's construction, and it wasn't

22   even a disputed issue at trial.  So we don't even see this as a

23   dispute here.  We think the papers are pretty clear in terms of

24   how it should play out.

25           Thank you, your Honor.

F9SQADRc

1          THE COURT:  Thank you very much.

2          So it is really a pleasure to have lawyers of your

3    caliber on both sides because this was very helpful argument,

4    but it also stayed within the unfortunate time limits I had to

5    impose.  So I will take this and the previously pending motion

6    all under consideration and get you a decision on all of these

7    motions with reasonable promptness.

8          Is there anything else we need to raise today?

9          MR. EDERER:  Your Honor, could I just mention in

10   response to the last point that Mr. Cabral made about the

11   Howmedica case, he mentioned that we did exchange some emails

12   about that case, which was not part of the briefing.  And in

13   response to his email, I sent him an email this morning in

14   which I said, well, why don't you take a look at the case of

15   *Arcelormittal France v. AK Steel Corp.,* 700 F.3d 1314 (Fed.

16   Cir. 2012).

17          THE COURT:  I will take a look at that as well.

18          Very well.  Thanks very much.

19          (Adjourned)

20

21

22

23

24

25