# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com

+1 212.715.1102
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

March 4, 2016



**VIA EMAIL (RakoffNYSDChambers@nysd.uscourts.gov)**
Hon. Jed S. Rakoff
United States District Judge
US District Court, Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

    Re:    *Adrea LLC v. Barnes & Noble, Inc. et al.*, No. 13-cv-4137

Dear Judge Rakoff:

    On behalf of Defendants Barnes & Noble, Inc., barnesandnoble.com llc (predecessor in interest to Nook Digital, LLC), and NOOK Media LLC (now Barnes & Noble Education, LLC) (collectively, "B&N"), we write at the Court's direction to address the scope of the "limited new trial on damages" that the Court ordered on February 24, 2016 (the "Order"). *See* Dkt. No. 201. "[I]n light of the fact that the jury awarded [$1.33 million in] damages but did not allocate those damages between the '501 and '703 patents, one of which the Court subsequently held to be invalid" (Order at 16), the trial should be limited solely to the issue of determining the portion of the jury's award that should be allocated to the '703 Patent. There should be strict ground rules for the upcoming trial, specifically: (i) no evidence concerning anything other than the allocation of the jury's $1.33 million award to the '703 Patent; (ii) no claim for damages above $1.33 million; (iii) no new damages theories, calculations, or experts; and (iv) no additional discovery, including no new sales information.

    **The New Trial Should Be Limited to the Allocation of the $1.33 Million Award to the '703 Patent, and Should Not Involve New Evidence, Experts, or Theories.** A new damages trial may be limited to any issue that "is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Indeed, "a new trial may be limited to a single element of damages, if that element is distinct and separable from questions related to other elements of damages." 12 Moore's Federal Practice § 59.14 (citing *Rice v. Cmty. Health Ass'n*, 203 F.3d 283, 290 (4th Cir. 2000)); *see Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 23 (2d Cir. 1996). Determining the allocation of a jury's damage award to one of its components is just such a "distinct and separable" issue. *See Cappellini v. McCabe Powers Body Co.*, 713 F.2d 1, 9-10 (2d Cir. 1983); *Mitrione ex rel. Brittany v. Monroe*, 2010 WL 1539719, at *7 (N.D.N.Y. Apr. 19, 2010).

1

A trial limited to determining the portion of the first jury's damage award that should be allocated to the '703 Patent makes the most sense. At the first trial, each party already had the opportunity to present its damages case to the jury. The Court then instructed the jury how to calculate damages by patent, that is, by determining a reasonable royalty rate for each patent and then multiplying it by the number of infringing devices. *See* Dkt. No. 143 at Instruction No. 12. Thus, the new jury should properly focus on evidence going only to the issue of how the $1.33 million award should be allocated to the sole remaining patent. This it can do, for example, simply by considering the evidence presented at the first trial about the relative values of the '703 and '501 Patents. *See, e.g.*, Trial Tr. 1243:13-18. If the new jury accepts this evidence, then the $1.33 million award will be significantly reduced. In the unlikely event the new jury were to decide, based on the evidence presented at the first trial, that the '501 Patent had little to no value, then a far greater proportion of the $1.33 million would be allocated to the '703 Patent. Either way, the new jury's sole function should be to "allocate the $1.33 million award between the [two] patents," and $1.33 million should be the maximum permissible award. Order at 2.

A new trial has been ordered only because the first jury did not indicate how the damages it awarded were to be allocated. That should not open the door to any new evidence, damages theories, expert testimony, or discovery. There is no basis for awarding Plaintiff ("Adrea") a "do-over" to arrive at a more favorable number. In similar circumstances courts have consistently declined to open up the record or allow anything new. That is so with good reason.

Allowing new evidence, experts, and theories would result in unnecessary delay, not to mention the additional expense of preparing new expert and rebuttal reports, and conducting new depositions. *See Martin's Herend Imports v. Diamond & Gem Trading USA Co.*, 195 F.3d 765, 775-76 (5th Cir. 1999) (affirming refusal of new evidence based on plaintiff's failure to explain "why it did not offer [the evidence] at the first trial, and based on the injustice that might result for [defendant] in having to prepare for this new evidence"). Further, to open up the record in this manner would almost surely lead to additional motion practice, both of the *Daubert* and *in limine* variety, whereas confining the case to the original record would avoid this, since the parties have already made such motions, the Court has already ruled on them, and they are the law of the case.

In addition, were the Court to allow the limited new trial to be anything other than the determination of the portion of the $1.33 million award to be allocated to the '703 Patent, this would necessarily complicate the trial and surely cause jury confusion. As this Court has previously stated in this case, jury confusion of this nature is to be avoided.[1] On the other hand, if the case is confined to the issue of allocation, all the jury needs to hear is the evidence already presented on that issue.

---

[1] Indeed, B&N respectfully submits that the best way to avoid jury confusion would be for the Court to conduct a bench trial. In fact, in *Burroughs v. FFP Operating Partners, L.P.*, 70 F.3d 31 (5th Cir. 1995), in similar circumstances, the Court did not see the need to conduct a trial at all. In that case, a jury awarded $250,000 in damages for two claims — intentional infliction of emotional distress and slander — but the Fifth Circuit reversed on liability on emotional distress, and remanded for apportionment. The district court then considered the evidence and came to its own determination as to what portion of the $250,000 should be allocated to the remaining claim, and the Fifth Circuit affirmed.

Finally, by law, at a retrial on damages of this nature, a court is only required to allow new opinions, evidence or theories where excluding them would be a "manifest injustice." *See McMillan v. Weeks Marine, Inc.*, 2008 WL 4442087, at *2 (D. Del. Sept. 30, 2008) (quoting *Total Containment, Inc. v. Dayco Products, Inc.*, 177 F. Supp. 2d 332, 338 (E.D. Pa. 2001)). Here, to the contrary, it would be manifestly unjust to B&N, not to mention highly prejudicial, were the Court to allow new evidence, new experts, and new theories designed to increase the damages award.[2] The jury at the first trial already determined damages for infringement of the '703 Patent, and the only thing the new jury has to determine is what portion of the $1.33 million relates to that patent. It would be grossly unfair for B&N to have to go through the burden and expense of engaging in another full-blown round of expert discovery, defending against whole new damages theories, and dealing with a new evidentiary record, merely to give Adrea an unfounded opportunity to make a case for more than $1.33 million — which, as Adrea's counsel has previously pointed out, is already over four times the amount presented by B&N's expert Barnes (whose testimony, following Magee's exclusion, was the only reliable damages evidence presented to the first jury). The new trial instead should focus on achieving, as efficiently as possible, a prompt determination of the allocated damages number so that post-trial and appellate proceedings can follow expeditiously.

In the highly publicized case of *Apple Inc. v. Samsung Electronics Co.*, the Northern District of California has twice considered a situation similar to that now before this Court, and in both instances imposed the same evidentiary limitations B&N advances here. In 2013, the court ordered a limited retrial on damages after the jury had applied erroneous notice dates. *See Apple*, Case No. 5:11-cv-01846-LHK (N.D. Cal.) (Dkt. No. 2316 at 2-3). In 2015, after the Federal Circuit vacated the jury's liability verdict with respect to certain claims, the case was remanded for a second retrial on damages. *See Apple*, 2016 WL 524904, at *2 (N.D. Cal. Feb. 10, 2016). On both occasions, the court refused requests to allow "supplemental fact discovery", and prohibited the parties from "expand[ing] the scope of the damages trial" by introducing "new sales data", "new products", "new methodologies", "new theories", or even new experts.[3] *See Apple*, 2016 WL 524904, at *2; *Apple*, Dkt. No. 2316 at 3. Further, the court's prior evidentiary rulings (*e.g.*, on *Daubert* and *in limine* motions) all remained "in effect as law of the case." *Apple*, Dkt. No. 2316 at 2; *Apple*, 2016 WL 524904, at *2. As Judge Koh pointedly explained:

> [The parties are] not going to get anything new. This is going to be Groundhog Day. You're going to be reliving [the first trial]. No new theories ... no new data, no new products, no new sales, no new damages period, no new methods.... I think it would be cleaner and easier if we just do a new trial based on all the old theories, the old numbers, the old discovery and not -- no one is going to get a do-over in this case. I just want to do a very limited retrial on damages on all of the old information and then have this go up to the Federal Circuit.

---

[2] Adrea's counsel appears to have conceded as much in his August 7, 2015 letter brief, stating that at any such retrial, the parties will not "introduce new issues, but instead draw[] on the same evidence already introduced at the original trial...".

[3] In *Apple*, to avoid manifest injustice, a new damages expert (a CPA) was allowed to replace a deceased expert (also a CPA), but was required to rely on the same methodologies, data and opinions. *Apple*, Dkt. No. 2316 at 3.

3

*Apple*, Dkt. No. 2320 at 41:18-22, 43:12-18 (capitalization changed). Then, just last week, Judge Koh denied another motion to introduce new evidence at the upcoming damages retrial, stating: (i) "fairness and efficiency require that the retried claims in this case be judged on an evidentiary record comparable to the record before the 2012 and 2013 juries", and (ii) "[p]ermitting ... new evidence at this late date would undermine the court's attempt to maintain a coherent record for appeal". *Id.* (*Apple*, Dkt. No. 3430 at 5-7). This Court should reach the same result here.

**Adrea Should Not be Allowed a Do-Over on Damages.** Adrea contends that at the upcoming "limited new trial", it should be allowed to have a do-over on damages with respect to the '703 Patent, notwithstanding that the sole reason to have the new trial is to determine the portion of the $1.33 million award to be allocated to the '703 Patent. This is not surprising, since at the first trial, the Court excluded Adrea's damages expert, Stephen Magee, just minutes into the cross-examination. Trial Tr. 891:1-2. As the Court correctly found, Magee's opinions, which were devoid of any attempt to allocate damages among the patents at issue, but instead were designed to get to his target number of $6 million regardless of which patents the jury found infringed, were not based upon a "reliable valid methodology". *See id.* at 890:18-891:17.

Now Adrea faces the inevitability that the first jury's much lower damages award may be significantly reduced based on the allocation evidence in the record. Accordingly, Adrea asks the Court to: (i) disregard the factual findings by which the first jury arrived at the $1.33 million award; (ii) allow it to present a new damages expert; (iii) allow it to offer new opinions and theories on damages; and (iv) require B&N to produce updated sales information, effectively seeking to combine the retrial with the equivalent of a post-verdict, post-appeal supplemental accounting. Obviously, Adrea makes all these requests hoping to pump up the damages award.

Adrea is not entitled to any of this. A new trial "is not meant to provide the plaintiff with an opportunity to improve his or her case." *McMillan*, 2008 WL 4442087, at *2; *Total Containment, Inc.*, 177 F. Supp. 2d at 338 ("a 'new trial may not be granted merely because [a party] may be able to present a better case in another trial.'"). In *McMillan*, the court granted a retrial on damages after excluding an expert's testimony for lack of foundation and being beyond the scope of his report. *McMillan*, 2008 WL 4442087, at *1. Plaintiff tried to put on a new fact witness to provide such foundation and present testimony not in the report, but the court refused, finding that the "decision to exclude [the expert's] testimony on these issues was meant as a sanction for Plaintiff's failure to comply with the requirement[s] of Fed. R. Civ. P. 26(a)(2)(B)". *Id.* at *3. Allowing the witness to testify "would essentially permit Plaintiff to avoid the sanction imposed by the Court ...." *Id.* "Moreover, the Court note[d] that the proffered testimony ... was in existence at the time of the original trial in this case, yet Plaintiff chose not to introduce that evidence .... This was a litigation decision ... and the Court will not allow Plaintiff to retreat from that choice to avoid the sanctions that flowed directly from it." *Id.* at *4.[4]

---

[4] *See also Total Containment*, 177 F. Supp. 2d at 338-39 (plaintiff bound by "tactical decision" not to introduce evidence and theories at first trial, since "a plaintiff omits evidence necessary to sustain its damage award at its own peril"); *Cleveland By & Through Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1449 (10th Cir. 1993) (new trial "not an invitation to [present] newly retained expert witnesses and to enlarge trial time unnecessarily through the addition of totally new exhibits and testimony").

4

The circumstances here are in parallel. Magee's testimony regarding, among other things, the issue of allocation (or better said, the lack thereof), was excluded as unreliable. *See* Trial Tr. 890:18-891:17, 902:13-15. Further, Adrea and Magee deliberately chose not to present damages separately by patent, instead arguing that a single royalty rate (or lump sum amount) should apply no matter what. *Id.* at 876:23-877:19. As the Court stated (albeit on another issue), "*Adrea made its choices ... and now must live with the consequences.*" Order at 15-16.

In a further effort to improperly increase the damage award beyond some allocated portion of $1.33 million, Adrea seeks supplemental discovery regarding sales of accused products not captured by the original damages verdict. This request is premature at best with respect to the products at issue at the first trial, and also unfounded because Adrea has not established liability with respect to any additional products.[5] In any case, an accounting for sales not considered by the jury is routinely conducted post-trial, on a supplemental motion for an accounting of post-verdict damages. As Judge Koh stated:

> I'm not going to order pre-judgment interest and supplemental damages until the appeal is over, because there may be many errors that this court committed during that trial and who knows what is going to remain standing after an appeal.... It'll only be addressed after the Federal Circuit either completely reverses everything and remands it for a new trial, or whatever happens.

*Apple*, Dkt. No. 2320 at 43:2-11. Similarly here, it makes no sense to delay and expand a limited trial on the sole issue of allocation, when there are more proceedings to come that may reshape the broader post-verdict issues. Once all proceedings are concluded, then, if appropriate, Adrea can move for a supplemental accounting. Moreover, a motion for supplemental accounting in patent cases is typically heard by the Court, not a jury. *See, e.g.*, *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1384 (Fed. Cir. 2013).

Accordingly, B&N respectfully asks the Court to limit the new trial on damages solely to determining the portion of the $1.33 million award to be allocated to the '703 Patent, based on the evidence that was offered at the first trial. We thank the Court for its consideration, and stand ready to conference this matter further if it would assist the Court.

Respectfully,

*Louis S. Ederer*

Louis S. Ederer

cc: Proskauer Rose (by email)

---

[5] To the extent Adrea seeks discovery on products not previously at issue, this is inappropriate. In a supplemental accounting, discovery and damages are limited to the products at issue in the first trial. *Syndia Corp. v. Gillette Co.*, 2002 WL 2012473, at *3 (N.D. Ill. Aug. 30, 2002).