**Proskauer**》 Proskauer Rose LLP  2049 Century Park East, 32nd Floor  Los Angeles, CA 90067-3206

March 4, 2016

By Email and Federal Express

Hon. Jed S. Rakoff
Room 1340
United States Courthouse
500 Pearl Street
New York, NY 10007



Colin G. Cabral
Senior Counsel

d 310.284.5611
f 310.557.2193
ccabral@proskauer.com
www.proskauer.com

Re:   *ADREA, LLC v. Barnes & Noble, Inc. et al.*, 13-CV-4137 (JSR) (S.D.N.Y.)

Dear Judge Rakoff:

To resolve the parties' differences regarding the "limited new trial . . . to determine damages on the remaining claims as to which liability remains established" (Dkt. No. 201 at 16), the Court ordered the parties to submit their respective proposals for the scope and management of the new trial. Plaintiff Adrea, LLC ("Adrea") proposes that the Court follow established procedures for new trials on damages in patent cases. Adrea sees no good cause to depart from the normal practice, which would permit both parties to submit revised expert reports addressing the damages issues as they now stand. Defendants Barnes & Noble, Inc., Barnesandnoble.com LLC, and NOOK Media LLC (collectively, "B&N") continue to sell infringing products, even after the jury's verdict. Accordingly, Adrea believes it would be appropriate for the Court to permit limited fact discovery to update B&N's sales data with respect to the infringing devices. In addition, Adrea respectfully requests that the Court, in its discretion, allow Adrea to use a different damages expert, insofar as the opinions of Adrea's original damages expert were excluded during the first trial.

Adrea respectfully disagrees with the special restrictions on the new trial proposed by B&N. Specifically, B&N proposes that the jury not only be told about the prior jury's verdict, but also be instructed to award no more in compensatory damages than what was awarded by the original jury. Courts, however, have long recognized the problems associated with allowing juries to consider prior verdicts, including the significant potential for unfair prejudice and confusion. Moreover, B&N urges that it should be the only party allowed to offer expert testimony at trial, asking that the Court deny Adrea the opportunity to do the same. Such an unbalanced approach would be grossly unfair and would not be justified by the facts or history of this case. Finally, B&N asserts that the jury should not hear evidence regarding B&N's infringement during the last 20+ months. But addressing these additional infringing sales now, as part of the new trial on damages, would eliminate the need for subsequent proceedings to determine the royalties owed by B&N for its post-verdict infringement.

## Procedural History

In October 2014, following a 10-day trial, the jury returned a verdict that B&N infringed two patents: U.S. Patent No. 7,620,703 ("the '703 patent") and U.S. Patent No. 7,299,501 ("the '501 patent"). The jury awarded $1.33 million in compensatory damages to Adrea. Dkt. No. 145. The Final Jury Instructions required the jury, *first*, to determine the appropriate royalty rate and, *second*, to "multiply that royalty rate by the corresponding figure in evidence for the number of NOOK Device units sold during the 'relevant periods.'" Dkt. 143 at 20-22 (Instruction No. 12). The damages award represented a running royalty based on B&N's sales data from March 29, 2012 through June 30, 2014. *See id.* at 21-22 (stating the "relevant periods" begin on March 29, 2012); Dkt. No. 132 at 9-10 (showing stipulated sales data through June 30, 2014). After the trial, the Court determined that the asserted claims of the '501 patent were invalid. Dkt. No. 182. On February 24, 2016, the Court ordered that "a limited new trial will be held to determine damages on the remaining claims as to which liability remains established." Dkt. No. 201, at 16. During a teleconference on February 29, 2016, the Court ordered the parties to submit letter briefing regarding their respective proposals for the scope and management of the new trial.

## Plaintiff's Proposal for the New Trial

The control and management of the new trial on damages are within this Court's discretion. *See* 11 Wright, Miller & Kane, Federal Practice & Procedure, § 2803 at 64-65 ("If a new trial is granted, the district court has broad discretion in its control and management of the new trial."). On retrial, "[d]ecisions respecting the admission of additional witnesses and proof should be guided by considerations of fairness and justice to all parties." *Id.* at 65. Indeed, principles of "improving the quality of justice" and "intelligent flexibility" should "govern the trial court's discretion in managing a second trial in any given case." *Cleveland By & Through Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1450 (10th Cir. 1993) *abrogated on other grounds by Choate v. Champion Home Builders Co.*, 222 F.3d 788 (10th Cir. 2000). For example, "if a party makes a timely motion to produce new and material evidence which was not otherwise readily accessible or known, the court should, within the exercise of discretion, consider whether denial of the new evidence would create a manifest injustice." *Id.* Moreover, "[i]f a lay or expert witness is deceased or ill or for whatever reason unable to attend trial, the court should give every consideration to allowing additional witnesses to testify." *Id.*

Adrea outlined the details of its proposal for the new trial on damages in its August 7, 2015 letter briefing to the Court:

> A short, efficient trial, where each side presents expert testimony to explain the evidence, is the best option to arrive at a damages award that reflects fair and appropriate compensation for B&N's infringement of the '703 patent. The discovery involved would be minimal. Adrea would ask that B&N update its prior disclosures of financial information relating to sales of the infringing Nook

Proskauer»

Hon. Jed S. Rakoff
March 4, 2016
Page 3

> products, as the record only contains B&N's sales data through June 2014. In addition, each party would serve an expert report on damages and depose the other side's expert.

Plaintiff's August 7, 2015 Letter Brief, at page 3.

The damages experts will rely on the evidence and exhibits from the original trial, augmented only by the supplemental data on B&N's post-trial sales. Each party will have an opportunity to depose the other side's expert, eliminating any risk of prejudice if a new expert testifies at the second trial on either side. *See Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, Case No. 02-cv-5893, 2016 WL 374132, *1 (N.D. Ill. Feb. 1, 2016) ("[B]ecause the parties will have the opportunity to explore the experts' opinions in depositions before the case is retried, no one will be prejudiced if the new experts testify at the second trial. Thus, given the circumstances of this case, the Court exercises its discretion to allow defendants to substitute experts.").

### The Court Should Reject the Special Conditions Requested by B&N

B&N requests a series of special conditions for the new trial in stark contrast to the balanced approach proposed by Adrea. *First*, despite acknowledging that expert testimony is necessary for the jury to understand the evidence and decide the issue of damages, B&N argues that the jury should only hear testimony from B&N's expert. *Second*, B&N argues that the jury should be instructed to "cap" damages at $1.33 million—*i.e.*, the total running royalty awarded after the first trial—and determine what portion of the original jury's verdict was attributable to the '703 patent. *Third*, B&N argues that the jury should not be allowed to consider evidence regarding B&N's infringement during the last 20+ months.

*First*, denying Adrea the opportunity to offer expert testimony during the new trial would result in undue prejudice. B&N acknowledges that expert testimony is necessary for the jury to understand the evidence and decide the issue of damages at the new trial.[1] Nonetheless, B&N contends that only it should be permitted to proffer expert opinions. According to B&N, Adrea should not offer expert testimony during the new trial because the Court previously excluded the testimony of Adrea's damages expert. But the Court made its ruling in the middle of trial,[2] leaving no reasonable way for Adrea to replace the excluded testimony without disrupting the ongoing jury trial. That is no longer a concern. The interests of fairness and justice are best served by allowing the jury to hear expert testimony from both sides.

---

[1] B&N acknowledged this during a phone conference between the parties on February 26, 2016.

[2] The Court excluded the opinions of Prof. Stephen Magee on the second day of his testimony and the seventh day of the original trial. *See* Dkt. No. 156, Trial. Tr. (Oct. 17, 2014) at 880-908.

B&N's position is at odds with the standard practice of district courts—that is, to make every effort to provide parties with an opportunity to present expert testimony on damages, when feasible, after an expert's testimony has been excluded. In *Enovsys, LLC v. AT&T Mobility LLC*, for example, the court bifurcated the trial into a liability phase and a damages phase to be tried by different juries after excluding the opinions of the patent owner's damages expert. Case No. 11-cv-5210-SS, 2015 U.S. Dist. LEXIS 176546, *3, 23 (C.D. Cal. Aug. 10, 2015). Notably, the court allowed the patent owner to submit a revised expert report and stated it would "reopen discovery for the limited purpose of permitting . . . discovery on the opinions in the Second Supplemental Damages Report." *Id.* at *3, 24. Similarly, in *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, the court allowed the patent owner to submit a new damages report after excluding the opinions and testimony of plaintiff's expert under FED. R. EVID. 702. Case No. 11-cv-5973-PSG, 2013 U.S. Dist. LEXIS 120403, *16-17 (N.D. Cal. Aug. 12, 2013). The court explained: "On balance, and in consideration of its due process rights, the court is loathe to leave [the plaintiff] stripped of any damages expert testimony whatsoever." *Id.* The court continued: "Because [the plaintiff] would otherwise be left without any real evidence of damages, the court will permit it one more opportunity to offer a new expert report on damages." *Id.*

Indeed, district courts routinely exercise their discretion to provide an opportunity to supplement, revise, or even replace expert disclosures on damages following the exclusion of expert testimony. *See, e.g., Oracle Am., Inc. v. Google Inc.*, Case No. 10-cv-3561-WHA, Dkt. No. 702, at 2 (N.D. Cal. Jan. 20, 2012) (allowing damages expert a "third try to calculate damages" after the exclusion of testimony);[3] *see also Roberts Tech. Grp., Inc. v. Curwood, Inc.*, Case No. 14-cv-5677, 2016 U.S. Dist. LEXIS 9259, *21-22 n.87 (E.D. Pa. Jan. 27, 2016) (ordering a new trial on damages and noting, "we exercise our discretion to avoid undue prejudice by allowing the parties to supplement their damages discovery . . . including expert disclosures, before the new trial on [plaintiff]'s damages.").

Respectfully, the Court should exercise its discretion here in a similar manner by allowing both sides to present expert testimony on the issue of damages. Otherwise, the new trial would be a lopsided, defense-oriented proceeding defined by pervasive unfairness and undue prejudice to Adrea.

*Second*, B&N asks the Court to "cap" compensatory damages at the amount of the prior verdict ($1.33 million) and require the new jury to determine what portion of the original jury's verdict was attributable to the '703 patent. There are serious problems with this approach. "Commentators agree that most courts forbid the mention of verdicts or damages amounts obtained in former or related cases." *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985 (9th Cir. 2007) (citing 75A AM. JUR. 2d Trial § 628; D.C. Barrett, *Propriety and prejudicial effect of*

---

[3] *See also Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1121-22 (N.D. Cal. 2011) (excluding expert opinions on damages and providing plaintiff with an opportunity to revise its damages report); *Oracle Am., Inc. v. Google Inc.*, 847 F. Supp. 2d 1178, (N.D. Cal. 2012).

# Proskauer»

Hon. Jed S. Rakoff
March 4, 2016
Page 5

*reference by counsel in civil case to result of former trial of same case, or amount of verdict therein*, 15 A.L.R.3d 1101 (summarizing cases)). This is because "[t]he admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it." *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1351 (3d Cir. 1975). In *Johns Hopkins Univ. v. CellPro, Inc.*, for example, the Federal Circuit upheld the district court's exclusion of a prior verdict in a subsequent trial on damages and willfulness. 152 F.3d 1342, 1362 (Fed. Cir. 1998). The Federal Circuit agreed that "consideration of the [prior] jury verdict . . . had significant potential to confuse the jury." *Id.* at 1363; *see also Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010) (upholding exclusion of a prior verdict). The same is also true here. The jury would have no way of knowing how the prior jury arrived at its verdict, what evidence the prior jury relied on, or what was said at the first trial about the '501 patent, which is no longer in the case.

*Third*, the Court should reject B&N's attempt to avoid responsibility for its ongoing infringement of the '703 patent. B&N does not dispute that it continues to sell infringing products. Instead, B&N simply refuses to provide updated sales information, arguing that the jury should not consider evidence of B&N's infringement since June 2014 because, had a new trial *not* been necessary, these sales would have been the subject of post-trial motions. B&N's position is unreasonable—why not include the additional infringing sales and eliminate the need for separate proceedings to determine the royalties owed on these sales? In the absence of any genuine dispute that B&N continues to infringe the '703 patent, B&N should be required to disclose the information necessary for the jury to determine the extent of B&N's liability.[4]

## Conclusion

For the reasons set forth above, Adrea respectfully requests that the Court adopt a schedule that includes limited expert discovery, including the exchange of revised expert disclosures and depositions. Adrea also respectfully asks that the Court order B&N to produce updated sales data for all Nook devices sold after June 30, 2014.

Respectfully submitted,

Colin Cabral

---

[4] B&N has introduced at least three new Samsung Galaxy Nook Tablet devices since the trial in October 2014. User guides and online tutorials establish that these new Samsung-Nook devices utilize the same infringing "Shop" technology as the Nook devices that came before them. To date, B&N has not identified any relevant technical distinction between the Samsung Galaxy Nook Tablets and the infringing Nook devices in response to Adrea's inquiry. Accordingly, any supplemental production by B&N should include sales data for the new Samsung-Nook devices.