# ARNOLD & PORTER LLP

**Louis S. Ederer**
Louis.Ederer@aporter.com
399 Park Avenue
New York, NY 10022-4690

March 9, 2016

**VIA EMAIL (RakoffNYSDChambers@nysd.uscourts.gov)**
Hon. Jed S. Rakoff
United States District Judge
US District Court, Southern District of New York
500 Pearl Street, Room 1340
New York, NY 10007

Re:   *Adrea LLC v. Barnes & Noble, Inc. et al.*, No. 13-cv-4137

Dear Judge Rakoff:

On behalf of Defendants ("B&N"), we respectfully submit this letter brief in reply to Plaintiff Adrea's March 4, 2016 letter. Although the Court found that a "limited new damages trial" is needed only "because the jury did not allocate the $1.33 million award between the [two] patents" (Order at 2), Adrea argues that the Court should allow a complete do-over on damages, delay trial, re-open discovery, allow new evidence and expert testimony (including about devices not at issue in the first trial), and require B&N to incur major costs — all so it can try to increase damages for the '703 Patent above $1.33 million. That, however, is not what this trial is about; rather, the new jury need only consider the evidence presented at the first trial and complete the first jury's verdict by deciding one issue — how to apportion the $1.33 million award between the two patents. Adrea's arguments to the contrary are wrong, and its citations are misleading.

*First*, Adrea argues that a trial focused on allocation alone would present "serious problems" of jury prejudice, because (according to Adrea) a jury on retrial is not allowed to hear anything about the first jury's findings. *See* Adrea Ltr. at 4-5. Adrea, however, is conflating two types of retrials: ones that result from legal error, and ones that complete the first jury's verdict. An apportionment of damages between two components is a perfect example of the latter, where a new jury not only *can* hear about the first jury's verdict, but in order to do its job, it *must*.

Indeed, to support its argument, Adrea relies on cases that do not even involve retrials. Rather, in Adrea's cases, the defendant had been accused of a similar act in a *different* case, and the plaintiff wanted to tell the jury about the prior result. In each of these inapposite cases, the court found it would be prejudicial for the jury to hear about the prior verdict.[1] None involved a retrial where the new jury was simply asked to complete a prior jury's verdict in the same case.

---

[1] *See Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010) (affirming exclusion of a jury verdict rendered in a separate lawsuit); *Engquist v. Or. Dept. of Agric.*, 478 F.3d 985, 1010 (9th Cir. 2007) (affirming exclusion of verdict in unrelated proceeding); *Coleman Motor Co. v. Chrysler Corp.*, 525 F.2d 1338, 1350 (3d Cir. 1975) (finding prejudice where jury heard that "in 1968 a jury in [another] case found that Chrysler had violated ... laws"). Adrea also

Footnote continued on next page

1

The Second Circuit provided a blueprint for the present situation in *Cappellini v. McCabe Powers Body Co.*, 713 F.2d 1 (2d Cir. 1983). In that case, in order to allocate damages for a worker's injury from machinery, the first jury apportioned fault among the employer and the machinery's manufacturer (*see id.* at 7-8), but the Second Circuit ordered a retrial on apportionment. In so holding, it specifically directed that the new jury be told of the first jury's findings, stating that "[u]pon retrial ..., the jury should be informed that [the manufacturer] has been determined to be liable for design defect, that [the employer] has been determined to be liable for negligent maintenance .... The jury need determine only the apportionment of responsibility [for the accident]...". *Id.* at 9-10. The new jury's apportionment of fault would then be used to reallocate the first jury's damages award, which was not subject to retrial. In accord is *Mitrione ex rel. Brittany v. Monroe*, 2010 WL 1539719 (N.D.N.Y. Apr. 19, 2010), ordering a retrial only on apportionment, while retaining the first jury's total damages valuation. The same process should apply here.

In short, the upcoming new trial can and should have a single purpose — allocating the $1.33 million award to the '703 Patent. All the new jury needs to hear is that the first jury already came to a total number, and it merely needs to determine the relative value of the two patents to one another so that the damages award can be allocated. This narrow determination would then complete the first jury's verdict, and permit the case to move to the next phase.

*Second*, Adrea argues that "[t]he interests of fairness and justice" require that it be allowed to present a new damages expert to replace its excluded expert. Adrea Ltr. at 2-4. But as B&N has shown, new trials are not opportunities for a plaintiff to improve its case or retreat from its prior choice to present flawed or incomplete evidence; rather, they are routinely ordered to proceed on the same essential record, without replacing experts. B&N Ltr. at 4-5.[2] As Judge Chin held in *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 377 (S.D.N.Y. 2003), after excluding Plaintiffs' valuation expert and refusing to consider a new expert report at a summary judgment hearing, "[w]hen a party loses at trial or when it loses a summary judgment motion, it does not get to do it again. It does not get a chance to come up with more evidence or to try to make a

---

Footnote continued from previous page
cites the inapposite *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998) (prior verdict "had no bearing" on the issues, and was premised on an erroneous claim construction).

[2] Once again, the cases Adrea cites on this point do not even involve retrials in the same case. *See Enovsys, LLC v. AT&T Mobility LLC*, 2015 WL 10383057, at *1 (C.D. Cal. Aug. 10, 2015) (first damages expert excluded before liability portion of bifurcated trial); *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) (new damages expert allowed where first expert excluded pretrial); *Oracle Am., Inc. v. Google Inc.*, Case No. 10-cv-3561, Dkt. No. 702, at 2 (N.D. Cal. Jan. 20, 2012) (same); *Oracle Am.*, 798 F. Supp. 2d 1111, 1121-22 (N.D. Cal. 2011) (same); *Oracle Am.*, 847 F. Supp. 2d 1178 (N.D. Cal. 2012) (same). Nor are its other cases remotely relevant. In *Cleveland By & Through Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir. 1993), the court, while remanding for a new trial, warned that this "was not an invitation to reopen discovery for newly retained expert witnesses." *Id.* at 1449-50. In *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 2016 WL 374132 (N.D. Ill. Feb. 1, 2016), and *Roberts Tech. Grp., Inc. v. Curwood, Inc.*, 2016 U.S. Dist. LEXIS 9259 (E.D. Pa. Jan. 27, 2016), the circumstances under which a party was allowed to replace an excluded expert were entirely different (*e.g.*, in *Roberts*, the excluded expert had not been challenged on the same grounds before trial or in *Daubert* briefing (*id.* at **21-22)).

more persuasive presentation or to try to write a more coherent brief. That is not the way our system of justice works. The party's recourse is to appeal, and only if it prevails on appeal will it get another chance. A *Daubert* motion is no different." The Second Circuit affirmed, stating that the "plaintiffs had a full and fair opportunity to develop and defend their choice of experts. That they failed in that endeavor does not entitle them to begin anew." 99 F. App'x 274, 280 (2d Cir. 2004). Moreover, limiting the retrial to allocation eliminates any arguable prejudice, because Adrea chose not to present any expert testimony on apportionment before its expert was excluded, and can argue the relative value of the two patents based on other evidence.

*Third*, Adrea's request for updated sales information is not only premature, but grossly misleading, and would unduly complicate or render it impossible to have a limited trial focused on apportioning the $1.33 million verdict. The request is premature because, as discussed in B&N's March 4 Letter, accountings for sales of accused products not considered at a patent trial are routinely conducted after all other proceedings are concluded. *See* B&N Ltr. at 5. An accounting at this stage would be an exercise in complexity, and, possibly, futility, as there are more proceedings to come; depending on the outcome, the need for a supplemental accounting may go away, or there may have to be another accounting. Further, if Adrea is allowed discovery on post-verdict sales, B&N will need discovery as well, as to Adrea's efforts (or lack thereof) to license the '703 Patent the last two years, which goes directly to the issue of the patent's value — all the more reason discovery should not now take place. In any event, Adrea is not entitled to discovery as to additional pre-verdict sales, since the Court instructed the jury to determine damages "from March 29, 2012 through the date of your verdict" (Dkt. 143 at 20).[3]

In addition, Adrea's request is misleading because while it purports to seek only "minimal" discovery on additional accused device sales, in a footnote Adrea reveals that it also seeks sales data for entirely new NOOK devices made by the third party manufacturer Samsung. Adrea argues that because its counsel determined, based on his own Internet research, that the new NOOK products infringe the '703 Patent, they should be included in the new damages trial unless B&N can meet its supposed burden to "identify any relevant technical distinctions between the [new products] and the infringing Nook devices." Adrea Ltr. at 5. The problem with that argument is that it is juries and courts, not plaintiffs' lawyers, who determine whether an infringement has occurred. Further, this is not a supplemental proceeding to determine additional damages, but a limited new trial on allocation of an existing damages award. In such instances, as Judge Koh stated in *Apple*, "no new data, *no new products*, no new sales…. I just want to have a very limited retrial on damages on all of the old information…." B&N Ltr. at 3.

For these reasons, the new trial should be limited to an allocation of the $1.33 million award, and should proceed per B&N's March 4 letter. We thank the Court for its consideration.

Respectfully,

Louis S. Ederer

---

[3] *See Apple, Inc. v. Samsung Elecs. Co.*, 926 F. Supp. 2d 1100, 1104-05 (N.D. Cal. 2013), *vacated on other grounds*, 786 F.3d 983 (Fed. Cir. 2015) (refusing to award additional pre-verdict damages on same grounds, even though pre-verdict sales data was three months old).