# Exhibit I

```
G4RKBARC                                                 Page 1
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   ADREA LLC,
 4              Plaintiff,
 5        v.                              13 CV 4137 (JSR)
 6   BARNES & NOBLE, INC.,
 7              Defendant.
 8   ------------------------------x
                                        New York, N.Y.
 9                                      April 27, 2016
                                        3:32 p.m.
10   Before:
11                   HON. JED S. RAKOFF,
12                                        District Judge
13                       APPEARANCES
14   PROSKAUER ROSE LLP
          Attorneys for Plaintiff
15   BY:  COLIN CABRAL
16   ARNOLD & PORTER LLP
          Attorneys for Defendant
17   BY:  LOUIS S. EDERER
          SUSAN LEE SHIN
18        MAXWELL CHARLES PRESTON
          JULIE A. SIMEONE
19
```

G4RKBARC                                                                        Page 2

1      (Case called)
2      THE COURT: Good afternoon. I'm looking forward to
3  our trial on June 1st. You folks asked for a conference
4  because you had some questions you wanted to put to me. So
5  question ahead.
6      MR. EDERER: Well, that would have been me, your
7  Honor, who requested the conference. So if it's okay with
8  Mr. Cabral, I'll go first.
9      Good afternoon, your Honor. As we get ready for the
10 upcoming retrial on damages and begin to prepare our pretrial
11 disclosures, which, I think, are due two weeks from today, we
12 have some fundamental questions about how the trial is going to
13 be conducted, the ground rules --
14     THE COURT: Brilliantly, is the answer.
15     MR. EDERER: Sorry?
16     THE COURT: Brilliantly.
17     MR. EDERER: Thank you.
18     The most fundamental question we have is what is the
19 scope of the evidentiary record in this trial. As your Honor
20 will recall, this is a retrial on damages, limited to the issue
21 of apportioning the prior jury's damages award to the
22 infringement of the one remaining patent, which is what we call
23 the '703 patent. So the question is: What is the scope of the
24 record? Is the record limited to or bound to the evidence
25 presented to the jury at the first trial, which we, Barnes &

G4RKBARC                                                                        Page 3

1  Noble, should be the case, or do the parties get to offer new
2  evidence that was not presented to the prior jury?
3      As you know, Barnes & Noble has taken a position on
4  this in motion practice and so forth, and that is that the
5  record in the retrial should be the same one as the record in
6  the previous trial and nothing new should be presented.
7      THE COURT: Why?
8      MR. EDERER: Well, because -- why?
9      THE COURT: Why?
10     MR. EDERER: Because what it is, it's an attempt to
11 fill in the blank that the first jury didn't fill in, your
12 Honor. This is supposed to be an effort on the part of this
13 jury, even though it may not be told that, to come up with the
14 number that the first jury didn't separate. If your Honor will
15 recall, what happened was --
16     THE COURT: I recall. So the first jury dealt with
17 two patents and came up with a number, which will set the upper
18 limit for this retrial, but one of the patents was subsequently
19 found to be invalid, so now they have to figure out what the
20 damages are for the one patent. It seems to me, just thinking
21 aloud, that the question should be, if there is new evidence,
22 was it evidence that was produced during discovery so that it's
23 not a surprise? But I don't see why inherently it should be
24 limited to the same evidence. Counsel sometimes forget that
25 the object of this little exercise we call the legal process is

G4RKBARC                                                                        Page 4

1  to arrive at the truth. So if there is truthful, admissible
2  evidence that for one reason or another wasn't presented before
3  but which is not a surprise, so there's no ambushing involved,
4  why shouldn't it be presented at the second trial?
5      MR. EDERER: Well, because, your Honor, what we're
6  trying to do is fill in a blank from a previous trial.
7  Presumably, both parties presented their case, their best case,
8  for what the damages should be or should not be with respect
9  to --
10     THE COURT: That is one way of looking at what we're
11 doing. Another way of looking at it is that we're trying to
12 figure out what damages are owed with respect to a particular
13 patent.
14     MR. EDERER: If I may say, the only reason we don't
15 know the answer to that now is that the jury wasn't asked to
16 separate the damage award between the two parties.
17     THE COURT: That's right, and you can say that.
18     MR. EDERER: And I think your Honor has indicated that
19 himself in your various rulings subsequent to the ruling in
20 February, that the trial is an apportionment trial limited to
21 the issue of the amount of damages on the '703 because the jury
22 didn't allocate between the '703 and the '501. So what we're
23 trying to do is find what that number was, based upon the
24 evidence that was previously --
25     THE COURT: That would be fine if we had the same

| G4RKBARC | Page 5 |
|---|---|

1  jury, but we don't. Let's say, to take a hypothetical, that
2  yesterday the plaintiffs became aware of some important piece
3  of evidence that had never been within their cognizance before,
4  that would have a bearing on the amount and let's say, in my
5  hypothetical, that the reason they didn't have that evidence
6  before is that it should have been disclosed by defendant but
7  wasn't. That's not the issue you're presenting, but I just
8  give that as the extreme. You're not suggesting, are you, that
9  they would be precluded from introducing that evidence at the
10 retrial, are you?
11         MR. EDERER: Under those specific circumstances, I
12 would say probably not.
13         THE COURT: Okay.
14         MR. EDERER: But that's a pretty extreme example.
15         THE COURT: I agree, I agree, and not the case as
16 presented here. But what it illustrates is that it's not just
17 a question of filling in the blank or guessing what the earlier
18 jury would have found if they had separated it out; it's a
19 question of finding truthfully what the amount is, holding
20 them, however, within the limits of what the overall
21 determination by the earlier jury was.
22         MR. EDERER: But using your example, your Honor, if
23 there is evidence that was disclosed and was available to both
24 parties and, for whatever reason, a party chose not to present
25 that evidence in support of whatever argument it was making

| G4RKBARC | Page 6 |
|---|---|

1  with respect to the damages on the '703 patent, I would argue
2  that that should not be allowed to be put in.
3          THE COURT: Why?
4          MR. EDERER: Because they had the opportunity to
5  present it at the previous trial.
6          THE COURT: I understand, but I'm not understanding
7  why, if the object of the entire overall exercise in this and
8  every other trial is to arrive at the truth, why we should say,
9  okay, you made your tactical choice, you were not only bound by
10 it at the prior trial, which obviously you were, but you're
11 bound by it forever and therefore it can't be used because of
12 the tactical choice you made, even if now on reflection it
13 seems highly relevant arguendo to the jury's determination,
14 determining the relevant facts, you still can't use it. Why
15 would that be?
16         MR. EDERER: Because presumably the parties put forth
17 their best case the previous time and now, if we're --
18         THE COURT: You're arguing in terms of, I think, an
19 overly narrow view of the truth-finding process. You want
20 adversary decisions made at one time to be controlling. I
21 don't see the policy reason why that should be so.
22         MR. EDERER: Well, I think there's another issue here,
23 your Honor, because now we're going to get new witnesses and
24 new documents, even if they were disclosed previously. Now we
25 have an issue as to why they're relevant and we haven't had any

| G4RKBARC | Page 7 |
|---|---|

1  discovery with respect to that.
2          THE COURT: No, no. I started all this by saying that
3  if something had been previously presented in discovery and
4  therefore was kept back, just because it was a tactical, you
5  know, maybe they thought it was cumulative, maybe they were too
6  optimistic, who knows what, it's quite different. If it wasn't
7  presented in discovery, then you would be prejudiced by having
8  it presented at this last time.
9          But before we discuss this any further, let's find out
10 what it is, if anything, they're planning to present that's
11 new, because why discuss this in the abstract?
12         MR. EDERER: Well, if I could just give one example
13 that --
14         THE COURT: Oh, no, no, let me hear from them.
15         MR. EDERER: Sure.
16         THE COURT: Let me hear from plaintiff's counsel.
17         MR. CABRAL: Thank you, your Honor. Good afternoon.
18         I think, on the issue of witnesses, we're not
19 intending to present any new witnesses.
20         THE COURT: Okay, okay, that's great. So that takes
21 care of that subject.
22         Go ahead about evidence.
23         MR. CABRAL: As far as evidence goes, we have not seen
24 the other side's expert report yet but we don't intend to
25 introduce any documents that were not produced in discovery

| G4RKBARC | Page 8 |
|---|---|

1  either.
2          THE COURT: Well, that's very helpful, but are there
3  documents that were produced during discovery that were not
4  introduced or sought to be introduced at the earlier trial that
5  you are seeking to introduce? And my subquestion to that is:
6  Is that true regardless of what their expert report says or
7  does that possibility own exist after you've seen their expert
8  report?
9          MR. CABRAL: I think with the caveat that we have not
10 finalized the exhibit list yet, I'm not aware of any documents
11 that would fall into that category.
12         THE COURT: Okay. So, going back to defense counsel,
13 then, it sounds like, at least as of now, this is a moot point.
14         MR. EDERER: Well, it certainly sounds like that, your
15 Honor, and that could change, I suppose --
16         THE COURT: Well, if it changes, I'll take it up then.
17         MR. EDERER: Okay.
18         THE COURT: Okay.
19         So what else?
20         MR. EDERER: Here's what else: Mr. Cabral has
21 indicated that at this time he doesn't plan to introduce any
22 witnesses who didn't testify at the first trial. And, of
23 course, you've heard our position, and I'm sure you don't want
24 to hear it again, that we didn't think there was a need for any
25 additional fact witnesses. You said you deferred on that and

G4RKBARC                                                                 Page 9

1  you will deal with that in the in limine process, if necessary.
2       The one thing I wanted to bring up, your Honor, is, I
3  do think that it's important to understand that the two
4  principal fact witnesses that testified on behalf of Barnes &
5  Noble at the previous trial are no longer with the company.
6  They're long gone from the company at this point.  I don't know
7  if they will be available or unavailable.  We're still trying
8  to figure that out but it's quite possible that they will be
9  unavailable.
10       THE COURT: When you say they're unavailable, you mean
11 because they're not within the subpoena power?
12       MR. EDERER: That's correct.
13       THE COURT: Where are they?
14       MR. EDERER: One of them is in Ohio and one of them is
15 in California, I believe.
16       THE COURT: What efforts have been made to get them to
17 voluntarily appear?
18       MR. EDERER: They've been contacted, and we don't have
19 any response yet one way or another as to whether they're going
20 to be able to make themselves available.  They both hold very
21 significant management positions with their companies and
22 it's --
23       THE COURT: So here's how I've handled that at prior
24 trials:  It's obviously to the jury's advantage to see a
25 witness live as opposed to just having a rereading of his prior

G4RKBARC                                                                 Page 10

1  testimony or deposition or whatever.  So if you get a
2  commitment from them that they will appear, that's great.  If
3  you don't, notify me no later than two weeks from today, and I
4  will, with counsel on the phone, call them myself and see if I
5  can persuade them that the cause of justice would warrant their
6  making themselves available.  My experience is that often
7  people do.  They sometimes ask to have the testimony on a
8  particular day and we can, within limits, make arrangements to
9  accommodate their schedules, but I have been impressed that
10 once even very busy people who have been told that the whole
11 point of this process is so that the jury can come that a
12 reasoned conclusion and that a jury is much better able to do
13 that when they've seen live testimony as opposed to just a
14 reading, with one exception, I've actually succeeded in all
15 cases where I've made that overture.
16       So I'm available to be of assistance to you.  It may
17 not be necessary if you persuade them on your own to make
18 themselves available.
19       MR. EDERER: Okay, your Honor, two other questions
20 with respect to that:  One is with respect to the testimony of
21 any live witnesses who may be fact witnesses, one issue that I
22 have been discussing with Mr. Cabral is the question of whether
23 those witnesses are going to be allowed to testify on topics or
24 subject matter that they didn't testify about the first time.
25 I guess that falls generally into the same category that we

G4RKBARC                                                                 Page 11

1  were talking about earlier with respect to documents.  But
2  we've taken the position that the testimony should be directed
3  to the areas of testimony that they gave before because
4  otherwise we're dealing with a potential situation where we
5  don't know what they're going to say before they say it.
6       THE COURT: I come back down to the same basic
7  proposition:  I would not allow that if it's going to
8  prejudice, so if someone proposes to inquire of a witness --
9  but these, I thought, were your witnesses.
10       MR. EDERER: Well, Mr. Cabral is planning to put up at
11 least one, if not more than one, fact witnesses as well.
12       THE COURT: Yes, okay, but on your witnesses, you can
13 control the scope of their testimony.
14       MR. EDERER: Right.  I was referring more so to the
15 other side's witnesses.
16       THE COURT: With respect to his, if he wants to
17 introduce something new -- well, let's find out again whether
18 this is a moot point or not.
19       So, are you planning to call a witness who would say
20 something new?
21       MR. CABRAL: The short answer is, no, your Honor.
22       THE COURT: Okay, that's a good answer.
23       MR. CABRAL: But right now, the only witness that we
24 can confirm that we've settled on to call as a fact witness
25 would be the inventor on the patent just to give the jury some

G4RKBARC                                                                 Page 12

1  context about what the invention is before we explain what the
2  damages should be.
3       THE COURT: Okay.
4       So, given that answer, I think the point is moot.  If
5  it changes, we'll deal with it then.
6       MR. EDERER: Okay.
7       Your Honor, I'm getting close to the end of my list
8  but I have a couple more --
9       THE COURT: Go ahead.
10       MR. EDERER: -- related points.
11       The first question has to do with prior evidentiary
12 rulings by the Court.  If the Court has made a ruling with
13 respect to the admissibility of either a document or a certain
14 type of testimony that a witness was planning to give or things
15 of that nature, can we assume that that ruling will stand with
16 respect to the same document or the same testimony that may be
17 given at the new trial?
18       THE COURT: Yes, unless the ruling was based for some
19 reason on aspects of the trial that are not part of the
20 retrial.  I doubt that that would be the case but I want to
21 carve out that conceivable exception but with that exception,
22 the answer is yes.
23       MR. EDERER: I guess the last thing I have on my list
24 is the following:  There's been some discussion in the Court's
25 recent rulings about what, if anything, the new jury will be

G4RKBARC                                                                                       Page 13

told about, not specifically about the first trial but what their job is, so to speak, or their task is. And if I understand correctly, the jury will be told that there's been a patent that's been determined to have been infringed and their job is to determine the damages and the damages, I think coming out of one of your rulings, that the award that they can make must be somewhere between zero and 1.33 million, something along those lines.

THE COURT: Correct.

MR. EDERER: My question to the Court is whether the Court would consider saying anything else to the jury about not the fact that there was a prior case and a prior jury made a ruling but just to understand, for example -- I'll give an example -- that the infringement that was determined to have been engaged in was not willful. My concern, of course --

THE COURT: Yes, okay, I hear you. So here's what I think makes sense in that regard: I've increasingly adopted the practice in virtually all trials involving virtually any kind of case, of giving the jury a preliminary instruction. And so why don't you each draft -- and send to me, we'll say, no later than three business days before trial -- a proposed initial instruction, no more than about a page, page and a half, and that would include both what you've just summarized very nicely and what they're basically supposed to do, which is determine damages, maybe a little bit about how you would go

G4RKBARC                                                                                       Page 14

about determining damages, but also if you want to put in that the prior determination was upon willful infringement and your adversary may want to argue against that or whatever. I will consider that and have for you, on the morning of the first day of trial, my proposed instruction that we can then have a brief conference after we pick the jury or something like that.

MR. EDERER: Okay.

I think that brings me to the end of my list. I guess one more quick question would be, going back to the question of whether or not a witness will be here live and to the extent the witness is unavailable, whether or not we may be able to designate from the prior transcript. I believe there are designations that are due two weeks from today with the Rule 26 pretrial disclosures. I don't know whether we'll have a resolution of the issue of whether these witnesses --

THE COURT: I don't need to see that until, again, three business days before the trial, so we'll know by then one way or the other. So you don't need to have them to me two weeks from today but you will need to have them to me three business days before trial.

MR. EDERER: Okay. And, by the way, I was just passed a note, so I'll raise one more question, with apologies.

We have now seen the opening damages expert report from the plaintiff's expert, and ours is due to be served this Friday, the day after tomorrow. There were some references in

G4RKBARC                                                                                       Page 15

that report -- and I was actually going to raise this as an example of what I was talking about earlier -- to the idea that there may be some witnesses on the horizon who did not testify at the first trial, but the point I'm trying to make is that there are some references, for example, in the damages expert's report to some conversations that he had with people, I believe, employees of Adrea, two of which did not testify at the first trial, one of which was not even identified in disclosures and wasn't deposed in the first case.

I guess my question is: Are we going to allow experts to be relying on conversations they may have with employees of their respective clients, to either bolster or support their opinions?

THE COURT: The answer, I would think -- I say this without having looked at their report, so this is a tentative ruling and may be subject to further consideration -- I would think the answer to that would be no if he was not previously deposed or identified, and yes if he was previously deposed as well as identified, and maybe if he was previously identified but not deposed.

MR. EDERER: Well, I think that's about all I have, your Honor. Thank you for your time.

THE COURT: Okay, good.

Let me hear from plaintiff's counsel.

MR. CABRAL: Thank you, your Honor. I'll be extremely

G4RKBARC                                                                                       Page 16

brief.

With respect to the two Barnes & Noble fact witnesses that Mr. Ederer mentioned, I just want to point out that during the last trial they were in the same situation, they were both former employees and still made it to trial. Mr. Mulchandani was employed at a company called Cloud Color and Mr. Hilt was a company called Express, and that's in the trial transcript in the record.

With respect to the final point, which I think is the last issue I'll raise, regarding conversations with employees that were had by plaintiff's expert, plaintiff's expert, I think, is due to be deposed in a week or two. And I think the issue -- and this relates not just to conversations with employees but also perhaps documents that were not necessarily admitted into evidence -- I think Rule 703 of evidence applies to information or data.

THE COURT: Oh, there's no doubt that an expert can rely on information that otherwise would be prohibited and is out of court, though there are limitations. But the point here is that previously, if an expert had relied and the other party was surprised because they hadn't taken their deposition or, in the worst case, hadn't even known about this person because they hadn't been identified, then they could have applied to take their deposition at that time. Here, that may not be an available remedy.

G4RKBARC                                                          Page 17

1  So if the conversation was with, or the reliance on a
2  document related to, something that was part of the discovery
3  in the previous case, in terms of the witness and the witness
4  had been deposed, then I see no harm in the expert relying on
5  it.  If the party had neither been identified nor previously
6  deposed, then I would think there might be a serious problem.
7  If the party had previously been identified but had not been
8  deposed, then I think we're in a sort of middle ground and I
9  would need to know more about the specifics.  But I'm not going
10 to make any final rulings on that until they had the deposition
11 of your expert, you've seen their expert report.
12     If it were something really critical, another
13 alternative would be to have a very short telephonic
14 deposition.  So there are a whole bunch of possibilities and I
15 don't think I can make a definitive ruling.  I'm just trying to
16 give you some overall guidance as to where I think I would
17 probably come out but it's not a final ruling.
18     MR. CABRAL: Okay, your Honor.  We understand and
19 appreciate the clarity.  Thank you.
20     THE COURT: Good.
21     MR. EDERER: Your Honor, if I may, just two very quick
22 points.  With respect to the two witnesses that we have been
23 talking about, they had both very, very recently left the
24 company at that point, one of whom literally within a matter of
25 a week or two, and I believe both had arrangements with the

G4RKBARC                                                          Page 18

1  company pursuant to which they would be required to attend a
2  proceeding like this.
3      THE COURT: I leave it to you to use your good offices
4  to produce them, but if you can't, I'm going to make my pitch.
5  And my pitch, I will say to them what I'm saying to you:  It
6  has nothing to do with their obligations to their former
7  employer or their obligations to anyone; it is an appeal to
8  making the legal process work as best it can, and the appeal to
9  them, therefore, is as citizens.  And maybe I'm just naive, but
10 I have found that to be an appeal that many citizens find one
11 they want to respond to.
12     MR. EDERER: Just very briefly, your Honor, a second
13 point:  With respect to these people that their expert spoke to
14 about this particular subject, I don't think it's as simple as
15 the question of whether they were disclosed and/or deposed
16 before.  This is a fact that is in support of their damages
17 expert's new theory of damages, something that we couldn't
18 possibility have known about at the time?
19     THE COURT: Okay, that's a good point, and that's why
20 I can't rule on this definitively until we see what happens.
21 So you should raise it again after you have deposed their
22 expert, after we know exactly where the conflict is, after you
23 discussed it with your adversary and then when there's a real
24 dispute, I'll deal with it.  This can be raised even as late as
25 the morning of trial.

G4RKBARC                                                          Page 19

1      MR. EDERER: Thank you, your Honor.
2      THE COURT: Okay.
3      Now, remind me:  How long a trial are we talking
4  about?
5      MR. CABRAL: I believe your Honor had indicated two
6  days.
7      THE COURT: Okay.  So we'll pick a jury of eight.
8  That's probably more than we need but we'll pick a jury of
9  eight and you will recall, my method of picking a jury is the
10 jury box method and each side will have three challenges.
11     Okay.
12     MR. EDERER: Thank you, your Honor.
13     THE COURT: Very good.
14     Anything else?
15     MR. CABRAL: No, your Honor.
16     THE COURT: Good.  Thanks very much.  I look forward
17 to seeing you on June 1st.
18     MR. EDERER: Thank you, your Honor.
19     (Adjourned)