# Exhibit K

```
                                                                    1

 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                       Norfolk Division

 3   ----------------------------------
     MICROSTRATEGY INCORPORATED,
 4                  Plaintiff,

 5   vs.                                          DOCKET NO.
                                                  2:01cv826
 6   BUSINESS OBJECTS, S.A., et al.,
                    Defendants.
 7   ----------------------------------

 8              TRANSCRIPT OF PENDING MOTIONS
                      PAGES 1 - 102
 9
              BEFORE THE HONORABLE TOMMY E. MILLER
10              UNITED STATES MAGISTRATE JUDGE

11                    September 19, 2002

12                        9:30 a.m.

13
     APPEARANCES:
14
                         HUNTON & WILLIAMS
15                        SunTrust Center
                          P.O. Box 3889
16                        Norfolk, VA 23514
                    By:  Gregory N. Stillman, Esq.
17                       Ph:  757-640-5314
                         Fax: 757-625-7720
18                  Email:  gstillman@hunton.com
                           ---and---
19              HOWREY, SIMON, ARNOLD & WHITE, LLP
                  1299 Pennsylvania Avenue, N.W.
20                     Washington, DC 20004
                    Attorneys for the Plaintiff
21              By:  Joseph P. Lavelle, Esq.
                  Email: lavellej@howrey.com
22                            and
                    By:  Peter F. Moll, Esq.
23                  Email:  mollp@howrey.com
                        Ph:  202-783-0800
24                      Fax: 202-383-6610

25


          D. M. Gray, Official Court Reporter        757/222-7071
```

```
                                                                2

 1  APPEARANCES:  (Cont'd.)

 2                    McCANDLISH HOLTON, P.C.
                 1111 East Main Street, Suite 1500
 3                      P.O. Box 796
                   Richmond, VA 23218-0796
 4              By:  David J. Sensenig, Esq.
                 Email: dsensenig@lawmh.com
 5                  Ph:  804-775-3807
                   Fax:  804-775-3800
 6                      ---and---
                TOWNSEND and TOWNSEND and CREW, LLP
 7                   379 Lytton Avenue
                   Palo Alto, CA 94301-1431
 8              Attorneys for the Defendants
                By:  Daniel J. Furniss, Esq.
 9              Email:  djfurniss@townsend.com
                        and
10              By:  Gary H. Ritchey, Ph.D., Esq.
                Email:   ghritchey@townsend.com
11                   Ph:  650-326-2400
                    Fax:  650-326-2422
12


13

14  COURT STAFF PRESENT:
    Kara Brown, Law Clerk
15  Nancy Lytwyn, Deputy Courtroom Clerk
    John Keller, Jr., Court Security Officer
16  Diane M. Gray, Official Court Reporter

17

18

19

20

21

22

23

24

25



        D. M. Gray, Official Court Reporter         757/222-7071
```

                                                                    42

 1            THE COURT:  Federal Rule of Civil Procedure --
 2   Federal Rule of Civil Procedure, 26(a)(2)(B) requires this from
 3   expert reports from specially retained experts.  "The report
 4   shall contain a complete statement of all opinions to be
 5   expressed and the basis and reasons therefore, the data or
 6   other information considered by the witness in forming the
 7   opinions, any exhibits to be used as a summary of or support
 8   for the opinions, the qualification of the witness, including a
 9   list of all publications authored by the witness within the
10   preceding 10 years, and then compensation and listing of other
11   cases for which the witness has testified as an expert."
12            I want to emphasize, we're here on a motion to
13   exclude the expert opinions of Dr. Yurkerwich or
14   Mr. Yurkerwich -- I think he's a mister, not a doctor -- for --
15   as contained in the July 17th, 2002, report.  We're not here to
16   exclude at this point any declaration he may have subsequently
17   made or his September 3rd, 2002, report.  That's a subject for
18   a different motion.
19            Rule 702 was recodified a couple years ago to take
20   into consideration the Kumho Tire case and the Daubert case,
21   and I'm going to read the entire -- well, the relevant portion
22   of the rule into the record.
23            "The scientific, technical, or other specialized
24   knowledge will assist the trier of fact to understand the
25   evidence or to determine a fact in issue.  A witness qualified

                                                                        43

1   as an expert may testify thereto in the form of an opinion or
2   otherwise if, 1, the testimony is based on sufficient facts or
3   data; 2, the testimony is a product of reliable principles and
4   methods; and 3, the witness has applied the principle and
5   methods reliably to the facts of the case."
6           I find in this instance that the expert opinions of
7   Mr. Yurkerwich as contained in the July 17th, 2002, report
8   should be excluded as an exercise of the gatekeeping
9   responsibilities of this court.
10          There's an old expression among probably many lawyers
11  but certainly criminal defense attorneys in this area that
12  would evidence that they present in a case pass the red face
13  test.  In other words, could you put it up without blushing so
14  that the jury might buy it.  This report does not pass the red
15  face test.  It does not pass the Daubert test.  It does not
16  pass the Rule 702 test.
17          As I told you, I read the report before I read any of
18  the briefs, and I, frankly, was appalled at it.  I've had
19  enough contact with this case to know the complexity, and when
20  I read the report, I knew that Dr. Yurkerwich was failing to
21  consider a substantial number of matters involving this case.
22  And I find, without reading them all over again, Mr. Moll
23  agrees that these factors in the year 2000 and 2001 were not
24  explicitly considered by Dr. Yurkerwich's report.  And those
25  factors that I read were from pages -- wait a second -- pages 3

44

1   and 4 of the expert report of D. Paul Regan dated -- or signed
2   by him on August 16th, 2002, as a rebuttal report.
3           Mr. Moll says that Dr. -- that Mr. Yurkerwich
4   actually considered these opinions, these factors, the factors
5   that Microstrategy itself thought it was going in the tank
6   because of business practices and the restatement of income,
7   the SEC investigation, laying off employees, that it's -- in
8   April of 2000, it thought that its operations and prospects had
9   been and are significantly affected by the recent developments.
10  Mr. Moll suggests that this was taken into consideration by his
11  expert because he picked the year 2000 as the baseline year or
12  the first year in comparison.  I find that to be a preposterous
13  statement based on the July 17th -- the contents of the
14  July 17th, 2002, report, which I am considering.
15          I find that this simplistic report of the expert
16  touched on a very -- a variety of factors of causation of
17  damage to Microstrategy based on conduct by Business Objects
18  and certain former employees of Microstrategy.  It never linked
19  any single misconduct to a specific amount of damage to
20  Microstrategy.  Instead, the good expert said that all of
21  Microstrategy's loss of revenue was based on the Business
22  Objects' problems.
23          He did not consider the economic downturn in 2000 and
24  2001, specifically, and its effect on technology companies.
25  He -- in not taking into consideration the internal problems of

D. M. Gray, Official Court Reporter              757/222-7071

                                                                45

1   Microstrategy, which Business Objects had nothing to do with,
2   nothing to do with, I'm not certain if -- I just don't know why
3   he didn't.
4           Occasionally you'll hear of experts asking lawyers,
5   "What do you want me to say?"  And then reporting what you
6   want -- what it is that the lawyer wants to be said.  I'm not
7   accusing anybody of anything here, but this report is so
8   appalling, so insulting to the intelligence of the -- to my
9   intelligence, much less a jury's intelligence, whose collective
10  wisdom would be higher than mine.  I think anybody would be
11  appalled by this report.
12          I am excluding this report because it would mislead
13  rather than enlighten a jury.
14          In addition, the argument Mr. Moll made that Business
15  Objects' gain in revenues and the effect that they had would
16  only affect the business intelligent part of Microstrategy's
17  corporate income is not covered in the July 17th, 2000, report.
18  Microstrategy apparently had other type of businesses, and
19  whether they were a drain or a benefit to the corporation is
20  not covered in the report.
21          Every single nickel of damages was caused by Business
22  Objects according to the report, and it fails that the
23  testimony was based on sufficient facts or data.  As part one
24  of Rule 702, Dr. Yurkerwich's report lists many, many
25  documents, but he doesn't put them in his report.  He doesn't


         D. M. Gray, Official Court Reporter          757/222-7071

46

1  rely on them in this report.  I find that his methodology,
2  although appropriate in some cases, the but for test, is not
3  appropriate in this case when you don't consider the other
4  issues raised by Microstrategy's problems.
5       I find that the witness has not applied the
6  principles and methods reliably to the facts of the case
7  because he hasn't considered the facts.  Simple as that.
8       In Westberry versus Gummi, G-U-M-M-I, 178 F.3d 257 at
9  pages 260 and 61, the Fourth Circuit requires the court to be
10 mindful that an expert witness has the potential to be both
11 powerful and quite misleading.  This report is quite
12 misleading.  It has a greater potential to mislead than to
13 enlighten, and I'm ordering it excluded.  I cite the case of
14 United States versus Dorsey, 45 F.3d 809.
15      In the case of General Electric Company versus
16 Joiner, 118 S.Ct. 512 in 1997, the Supreme Court upheld a
17 District Court's decision to exclude scientific evidence that
18 while methodologically sound, and the but for test could be
19 methodologically sound, had little bearing on the issues
20 presented.  Nothing the court said, nothing in either Daubert
21 or the Federal Rules of Evidence require a District Court to
22 admit opinion evidence that is connected to existing data only
23 by the ipse dixit, I-P-S-E D-I-X-I-T, of the expert.
24      The court may conclude there is simply too great an
25 analytical gap between the data and the opinion offered.  The

47

1  data in this case relied on was Microstrategy's decline in
2  income, and it didn't take into account any of these problems
3  they had in 2000 and 2001.  And again, I'm just adopting
4  without rereading page 3 and page 4 of the factual statement
5  which Mr. Moll's agreed to in Paul Regan's report.
6          I find that in this case the plaintiff's expert has
7  engaged in a simplistic economic analysis that fails to account
8  for many key variables.  Attributing all of the defendant's
9  gains and all of the plaintiff's losses, plus the royalties
10 here, during this time period of the defendant's alleged
11 illegal acts without identifying the specific harm caused by
12 each action, without addressing the variable nature of the
13 market, and Microstrategy's internal problems makes the report
14 speculative and unreliable.  The report has the potential to
15 mislead and confuse the jury.
16         There are a lot of cases from the Eighth Circuit on
17 this type of issue.  The Eighth Circuit in Children's
18 Broadcasting Company versus Walt Disney Company at 245 F.3d
19 1008 Eighth Circuit in 2001 cited by both parties.  In this
20 case, the Eighth Circuit found no abuse of discretion in the
21 District Court's finding that on reflection after the trial,
22 that the court should have excluded the expert's testimony
23 because the expert failed to consider the effect of competition
24 on the plaintiff, his theory of causation was questionable, and
25 his testimony was based on the report prepared before

                                                                    48

1  plaintiff's claims were narrowed for trial.
2           Well, in this case, I find that the simplistic report
3  that was prepared certainly did not consider the effect of
4  competition or other factors on the plaintiff.
5           In this case, the plaintiff's expert did not consider
6  the value or the period of use of the individual trade secrets
7  alleged to have been misappropriated and failed to establish a
8  causal link between the alleged harm and damages.  He simply
9  ascribes all of the plaintiff's losses and the defendant's
10 gains using an arbitrary baseline without considering the
11 numerous other factors in this case.
12          The case of Southern Pacific Communications
13 Corporation versus American Tel & Tel Corporation at 556 F.Supp
14 825, it's a 1993 D.C. case, cert denied by the Supreme Court,
15 it's an antitrust case, but the expert here failed to segregate
16 damages, and I think it would be extremely important in this
17 case based on Microstrategy's own documents to segregate
18 damages.  Many of the lost sales that they have analyzed, that
19 is Microstrategy analyzed, based on the fact that the company
20 was in turmoil and losing employees and customers did not want
21 to have a vendor of expensive software product not around to
22 keep the product up.
23          So I find that the expert failed to discuss in depth
24 the value of the alleged misappropriated material and the
25 financial benefit that the defendant may have received as a

49

1  result and the numerous other factors that could have affected
2  the losses and gains.  Therefore, I exclude his testimony based
3  on the July 17th, 2002, report as a violation in that it does
4  not comply with the requirements of Federal Rule of Evidence
5  702.
6           I'm next going to take up the defendant's motion for
7  a protective order regarding the entry upon land, entering the
8  property of Business Objects for the purpose of inspecting
9  Business Objects' email and computerized document file servers.
10 I'm not hearing evidence.  I'm relying on the -- excuse me, I'm
11 not hearing argument.  I'm relying on the briefs as I may do
12 under our rules, and I grant the protective order.
13          I find that this request was filed too late in these
14 proceedings and there was insufficient information in the
15 plaintiff's brief to justify such an extraordinary search of
16 the email records.  And particularly when only, perhaps, 18 or
17 20 people left Microstrategy to go to Business Objects.  They
18 are now wishing to search all the email records.  Other
19 sanctions are available if Business Objects has deliberately
20 withheld email results.
21          I'm next going to consider the motion to compel the
22 30(b)(6) witness of Microstrategy filed by Business Objects.
23 Again, I'm not going to hear argument.  Here's my ruling.  I
24 find that the three inches of briefs were adequate to inform me
25 on this.

          D. M. Gray, Official Court Reporter          757/222-7071

50

1          I'm going to partially grant, partially limit -- in
2  fact, I'm limiting substantially the Business Objects' request
3  to compel testimony of a 30(b)(6) witness.  Potentially
4  limiting, I should say.  And let me explain what I mean.  I'm
5  going to go through topic by topic and describe what you can
6  do, but there are certain general conditions of the 30(b)(6)
7  deposition that will have to be met on each of these topics,
8  that is the ones I haven't denied.
9          These general conditions are as follows:  (1)
10  Microstrategy is not required to comment upon evidence or
11  identify documents that were received from the defendant in
12  discovery of this case in stating its 30(b)(6) answers.  The
13  defendant should know what it has disclosed.  That is a common
14  theme of Microstrategy's objections to the 30(b)(6) topics, and
15  I think it's well taken, particularly since there's a
16  protective order here, and the lawyers may know what the
17  documents are, but Microstrategy may not, so they are not
18  required to comment upon any evidence or identify documents
19  received from the defendant in the discovery of this case.
20          On the other hand, if Microstrategy somehow received
21  documents ahead of time, ahead of the discovery of the case,
22  and it's known in the corporation, then they can rely on them
23  in making their answers, emails, et cetera.  I don't know that
24  that exists.
25          (2) Microstrategy as a general condition of the

D. M. Gray, Official Court Reporter                757/222-7071