# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| ADREA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - against - | ) | ECF Case |
| | ) | |
| BARNES & NOBLE, INC., | ) | 13-CV-4137 (JSR) |
| BARNESANDNOBLE.COM LLC, and | ) | |
| NOOK MEDIA LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

**EXPERT REPORT OF B. CLIFFORD NEUMAN, PH.D., REGARDING THE
NON-INFRINGEMENT OF U.S. PATENT NOS. 7,620,703, 7,299,501 AND 7,298,851**

**HIGHLY CONFIDENTIAL**

**OUTSIDE ATTORNEYS' EYES ONLY**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   THE ASSERTED CLAIMS AND THE ACCUSED PRODUCTS .................................... 2

III.  QUALIFICATIONS AND MATERIALS REVIEWED .................................................. 6

IV.   LEGAL PRINCIPLES ......................................................................................... 10

      A.    Claim Construction ................................................................................ 10

      B.    Infringement .......................................................................................... 11

            1.    Literal Infringement .................................................................... 11

            2.    Infringement Under the Doctrine of Equivalents ....................... 12

      C.    Indirect Infringement ............................................................................ 14

            1.    Contributory Patent Infringement ............................................... 14

            2.    Inducement of Patent Infringement ............................................ 14

V.    SUMMARY OF OPINIONS ................................................................................ 15

VI.   THE '703 PATENT ........................................................................................... 15

      A.    Overview of the '703 Patent .................................................................. 15

      B.    The Prosecution History of the '703 Patent .......................................... 16

      C.    Construction of Claim Terms of the '703 Patent ................................... 19

      D.    General Description of the Accused Shop Application ........................... 20

            1.    The Shop Application from the User's Perspective .................... 20

            2.    The Shop Application from the NOOK Device's Perspective ................. 26

      E.    The Evidence on Which Mr. Berg Relies in Support of His Opinion of
            Infringement With Respect to the '703 Patent Is Inapplicable to the NOOK
            Classic ................................................................................................... 28

      F.    B&N Does Not Infringe Claim 1 of the '703 Patent .............................. 30

1.   The Accused NOOK Devices Do Not Meet the "Initiating Retrieval Of Data By the Consumer Appliance From a Server Based on a Predetermined URL or an Identifier Associated with the Consumer Appliance" Limitation ............................................................. 31

2.   The Accused NOOK Devices Do Not Meet the "Wherein the Consumer Appliance Does Not Require a User to Access a Web Browser or Other Device in Order for the Consumer Appliance to Initiate Retrieval of the Data" Limitation .................................................. 34

G.   B&N Does Not Infringe Claim 2 of the '703 Patent ............................................ 43

H.   B&N Does Not Infringe Claim 3 of the '703 Patent ............................................ 46

I.   B&N Does Not Infringe Claim 13 of the '703 Patent ......................................... 46

1.   B&N Does Not Perform the "Enabling the User by a Single User Input to the Consumer Appliance to Have the Consumer Appliance Initiate Sending a Request with the Identifier Representative of a Type of the Consumer Appliance to a Server on the Internet Through the Home Network" Limitation .................................................................................. 48

2.   B&N Does Not Perform the "Based on the Identifier, the Server Initiating Access to a Web Page with Content Information about a Context of Using the Consumer Appliance" Limitation .......................... 50

J.   B&N Does Not Infringe Claim 15 of the '703 Patent ......................................... 51

K.   No Indirect Infringement ................................................................................... 53

L.   Non-infringing Design Alternative ..................................................................... 54

VII.   THE '501 PATENT .................................................................................................... 62

A.   Overview of the '501 Patent .............................................................................. 62

B.   The Prosecution History of the '501 Patent ........................................................ 63

C.   Construction of Claim Terms of the '501 Patent ................................................. 65

D.   General Description of the Accused LendMe Feature .......................................... 66

1.   Actions Necessary Before Lending a Book ............................................. 66

2.   Sending a Lend Offer ............................................................................. 69

3.   Accepting a Lend Offer and Reading the Book ....................................... 72

4.   End of the Lending Period ...................................................................... 74

E.  B&N Does Not Infringe Claim 7 of the '501 Patent ........................................... 75

    1.  B&N Does Not Perform the "Storing an Electronic Book on a Viewer" Limitation ...................................................................................................... 76

    2.  B&N Does Not Perform the "Associating a Predetermined Amount of Time After the Electronic Book Is Stored on The Viewer with the Electronic Book" Limitation ........................................................................ 77

F.  B&N Does Not Infringe Claim 8 of the '501 Patent ........................................... 80

G.  B&N Does Not Infringe Claim 9 of the '501 Patent ........................................... 81

H.  B&N Does Not Infringe Claim 18 of the '501 Patent ......................................... 83

    1.  The Accused NOOK Devices Do Not Meet the "A Processor that Operates Under Control of the Instructions and Is Capable of … Associating a Predetermined Amount of Time After the Electronic Book Is Stored on the Viewer with the Electronic Book" Limitation ...... 84

I.  B&N Does Not Infringe Claim 19 of the '501 Patent .......................................... 87

J.  No Indirect Infringement ..................................................................................... 87

VIII.  THE '851 PATENT ............................................................................................................ 88

A.  Overview of the '851 Patent ................................................................................ 88

B.  The Prosecution History of the '851 Patent ........................................................ 88

C.  Construction of Claim Terms of the '851 Patent ................................................. 90

D.  Description of the Accused Electronic Book System ........................................... 91

    1.  Electronic Book Preparation and Distribution ......................................... 91

    2.  Different Types of Encryption .................................................................. 91

    3.  Electronic Book Digital Rights Management ........................................... 93

    4.  Internet Communications on NOOK Devices .......................................... 98

E.  B&N Does Not Infringe Claim 1 of the '851 Patent .......................................... 104

    1.  B&N Does Not Perform the "Creating a List of Titles of Available Electronic Books/Transmitting the List of titles of Available Electronic Book/Selecting a Title From the Transmitted List of Titles" Limitation 108

2.      B&N Does Not Perform the "Supplying a Selected Electronic Book Corresponding to the Selected Title to Be Encrypted" Limitation ......... 110

3.      B&N Does Not Perform the "Supplying an Encryption Key" Limitation 116

4.      B&N Does Not Perform the "B&N Does Not Perform the "Encrypting the Selected Electronic Book Using the Encryption Key" Limitation ... 117

5.      B&N Does Not Perform the "Supplying the Encrypted Selected Electronic Book" Limitation .................................. 119

6.      B&N Does Not Perform the "Supplying a Decryption Key" Limitation 120

7.      B&N Does Not Perform the "Decrypting the Encrypted Selected Electronic Book Using the Decryption Key" Limitation ....................... 121

F.      B&N Does Not Infringe Claim 34 of the '851 Patent ....................... 122

G.      B&N Does Not Infringe Claim 35 of the '851 Patent ....................... 124

H.      B&N Does Not Infringe Claim 96 of the '851 Patent ....................... 124

1.      The Accused NOOK Devices Do Not Meet the "A Receiver, Wherein the Receiver: Receives A Created, Transmitted List of Titles of Available Electronic Books, Wherein an Electronic Book Is Available If Text Associated With the Electronic Book Is Available for Transmission; Selects a Title From the Transmitted List of Titles; Communicates the Selected Title" ......................................... 126

2.      Neither ACS4 Nor SSL/TLS By Themselves Satisfy the Encryption and Decryption Requirements of Claim 96 ........................... 128

3.      The Accused NOOK Devices Do Not Meet the "Receives Transmitted Text Associated With the Selected Title As Encrypted Electronic Books and Encryption Information" Limitation .................................... 131

4.      The Accused NOOK Devices Do Not Meet the "A Memory Coupled To the Receiver That Stores the Encrypted Electronic Books and the Encryption Information" Limitation ...................................... 133

5.      The Accused NOOK Devices Do Not Meet the "A Key Generator That Generates Encryption and Decryption Keys" Limitation ...................... 134

6.      The Accused NOOK Devices Do Not Meet the "A Transmitter Coupled to the Processor That Sends Encryption Information to the Sending Party, Wherein the Encryption Information Includes Information That Allows Encryption and Decryption of the Electronic

Book and Encryption and Decryption of Encryption and Decryption Keys" Limitation........................................................................... 135

I.     B&N Does Not Infringe Claim 108 of the '851 Patent .................................... 137

IX.    TRIAL EXHIBITS............................................................................................. 137

X.     SUPPLEMENTATION OF OPINIONS............................................................. 138

substantial non-infringing use, as I understand would be required for a finding of contributory infringement.

169.     Should Adrea or Mr. Berg be permitted to advance a theory of, or provide an opinion with respect to, inducement of infringement or contributory infringement with respect to any asserted claim of the '703 Patent, I reserve the right to supplement my report or to testify at trial to address that opinion.

**L.     Non-infringing Design Alternative**

170.     To the extent that it might be determined that the Shop application does not comprise a web browser, it would be readily feasible to remove the Shop application as currently implemented from the accused NOOK devices while maintaining the ability to retrieve and review information regarding books and lists of books available from B&N using an application that I expect even Mr. Berg would concede is a web browser.

171.     Initially, I performed an experiment to confirm that it is already possible on certain NOOK devices to search for, browse, and purchase books via a web browser on those devices.  In this experiment, I used a NOOK HD+ and the Google Chrome web browser on that device to interact with B&N's website at www.barnesandnoble.com to retrieve information about books offered by B&N and purchase book.

172.     I used the web browser on a NOOK HD+ to navigate to www.barnesandnoble.com and retrieved data including, but not limited to, lists of books that are new, top sellers, or in the news:



173.    I then logged in as "BN@BCNeuman.com" (the same account previously

registered to the NOOK device):



174.    After logging in, the Google Chrome web browser continued to display lists of books that are new, top sellers, or in the news while also displaying my first name at the top of the page (indicating that I am logged into my account):



175.    I next began the process of searching for and purchasing a book via the web browser on the NOOK HD+.  I searched for an electronic book on B&N's web site by using the keywords "hiking utah":



176.    Using the web browser on the NOOK HD+, I selected the book: "Hiking Grand

Staircase-Escalante and the Glen Canyon Region" by Ron Adkison:



177.     I clicked on the "Buy Now" button on the website as displayed on the web browser on NOOK HD+, and was presented with a confirmation screen:



178.    A few minutes later, I pressed the "n" button on the bottom of the NOOK HD+,

selected the Library, and I observed that the book had been downloaded and was available for

reading on the NOOK HD+:



179.    I was able to open the book and view it on the NOOK HD+.

180.    I am aware of no reason why these steps could not all be replicated on any NOOK device that already possess an application that I expect even Mr. Berg would accept to be a web browser.  Accordingly, in my opinion it would be readily feasible to set the Shop icon to open an instance of Google Chrome or another web browser with www.barnesandnoble.com (or another web site established by B&N) as the default page.

181.    Indeed, I note that, in addition to the Shop application, all accused NOOK devices have a second web browser application (*i.e.*, in addition to the Shop application which in my opinion is also a web browser), even if that second web browser is not made readily accessible to users by default.  There is also no truth to Mr. Berg's statement that "the Nook Simple Touch

and Nook GlowLight[] do not include a web browser." Berg Rep. at 67. Having reviewed those devices and documents produced during the course of this litigation, in my opinion the NOOK Simple Touch and the NOOK GlowLight (as well as the NOOK Simple Touch with GlowLight) also include a second web browser application. http://www.geek.com/gadgets/new-nook-touch-has-a-web-browser-1388607/ (NOOK Simple Touch); http://goodereader.com/blog/e-reader/how-to-access-the-hidden-internet-browser-on-the-nook-simple-touch-with-glowlight (NOOK Simple Touch with GlowLight); http://www.ubergizmo.com/2013/11/nook-glowlight-has-a-hidden-browser/ (NOOK GlowLight).

182.    I further note that, to the extent an accused NOOK device does not contain an application that Mr. Berg would concede is a web browser, it would be readily feasible to add such an application to the accused NOOK device. Mr. Berg admits that the accused NOOK devices run on an Android operating system. Berg. Rep. at 27–28. There are numerous web browsers that function on mobile devices running an Android operating system, including (as demonstrated above) Google Chrome for Android, as well as other familiar browsers such as Mozilla Firefox and Opera.

## VII.    THE '501 PATENT

### A.    Overview of the '501 Patent

183.    The '501 Patent is titled "Electronic Book Selection and Delivery System Having Encryption and Security Features." '501 Patent at Cover Page. The '501 Patent issued on November 20, 2007, from an application filed on September 28, 2001. *Id.* At a high-level, the '501 Patent is directed toward an electronic book selection and delivery system. More specifically, much of this patent is directed at permitting viewers to view electronic books for a predetermined period of time, where that period of time begins when the electronic book is