**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

ADREA, LLC,

*Plaintiff,*

v.

BARNES & NOBLE, INC.,
BARNESANDNOBLE.COM LLC, and
NOOK MEDIA LLC,

*Defendants.*

Civil Action No. 13-cv-4137 (JSR)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUPPLEMENTAL DAMAGES AND ONGOING ROYALTIES**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ..... 1

II. FACTUAL BACKGROUND ..... 3

III. ARGUMENT ..... 3

A. The Court Should Award Supplemental Damages from the Latest Sales Data Produced by B&N During the Litigation ..... 3

B. The New Nook Devices Released After the Original Trial Are Not More than Colorably Different from the Devices Found to Infringe the Patent-In-Suit ..... 5

C. The Court Should Set an Ongoing Royalty for Prospective Infringement that Reflects the Changed Status of the Parties Following the Judgment ..... 12

IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....................2, 3, 13

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
No. 2:10-cv-248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011)....................5

*Affinity Labs of Texas, LLC v. BMW N. Am., LLC*,
783 F. Supp. 2d 891 (E.D. Tex. 2011)....................14

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008)....................13

*Arctic Cat Inc. v. Bombadier Recreational Products, Inc.*
No. 14-cv-62369, 2017 U.S. Dist. LEXIS 1607 (S.D. Fla. Jan. 3, 2017)....................13

*Bianco v. Globus Med., Inc.*,
53 F. Supp. 3d 929, 942 (E.D. Tex. 2014)....................15

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010)....................5

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009)....................3

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
136 S. Ct. 1923 (2016)....................14

I/*P Engine, Inc. v. AOL Inc.*,
No. 2:11-cv-512, 2014 U.S. Dist. LEXIS 10533 (E.D. Va. Jan. 28, 2014)....................13

*I/P Engine, Inc. v. AOL Inc.*,
No. 2:11-cv-512, 2014 U.S. Dist. LEXIS 7876 (E.D. Va. Jan. 21, 2014)....................5, 6

*Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*,
833 F. Supp. 2d 333 (E.D.N.Y. 2011)....................5

*Mikohn Gaming Corp. v. Acres Gaming, Inc.*,
No. 97-cv-1383, 2001 U.S. Dist. LEXIS 23416 (D. Nev. Aug. 1, 2001)....................4, 5

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*,
822 F. Supp. 2d 639 (E.D. Tex. 2011)....................5

*Mondis Tech., Ltd. v. Chimei Innolux Corp.*,
No. 2:11-cv-378, 2012 U.S. Dist. LEXIS 60004 (E.D. Tex. Apr. 30, 2012)..........................15

*Morpho Detection, Inc. v. Smiths Detection, Inc.*,
No. 2:11-cv-498, 2013 U.S. Dist. LEXIS 150376 (E.D. Va. Oct. 17, 2013)..........................14

*Paice LLC v. Toyota Motor Corp.*,
609 F. Supp. 2d 620 (E.D. Tex. 2009)..........................13

*Proveris Sci. Corp. v. Innovasystems, Inc.*,
739 F.3d 1367 (Fed. Cir. 2014)..........................6, 11

*Read Corp. v. Portec, Inc.*,
970 F.2d 816 (Fed. Cir. 1992)..........................14, 15

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
807 F.3d 1311 (Fed. Cir. 2015)..........................12

*Syntrix Biosystems, Inc. v. Illumina, Inc.*,
No. 10-cv-5870, 2013 U.S. Dist. LEXIS 85781 (W.D. Wash. Jun. 18, 2013)..........................14

*Telcordia Techs. v. Cisco Sys.*,
No. 014-cv-876, 2014 U.S. Dist. LEXIS 51076 (D. Del. Apr. 14, 2014)..........................13

*TiVo, Inc. v. Echostar Commc'ns Corp.*,
No. 2:04-cv-1, 2006 U.S. Dist. LEXIS 64291 (E.D. Tex. Aug. 17, 2006)..........................5

*Tomita Techs. USA, LLC v. Nintendo Co.*,
No. 11-cv-4256 JSR, 2013 WL 4101251 (S.D.N.Y. Aug. 14, 2013)..........................2, 4

*Tomita Techs. USA, LLC v. Nintendo Co.*,
No. 11-cv-4256-JSR, 2013 WL 6504394 (S.D.N.Y. Dec. 11, 2013)..........................12, 13, 14

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
837 F.3d 1358 (Fed. Cir. 2016)..........................14

*Whitserve, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012)..........................3

**STATUTES/RULES**

35 U.S.C. § 284..........................2, 3, 4, 14

FED. R. CIV. P. 26(e)..........................2

FED. R. CIV. P. 52(b)..........................1

FED. R. CIV. P. 59(e)..........................1

## I.      PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in support of its motion seeking supplemental damages for pre-judgment infringement and ongoing royalties for post-judgment infringement.[1] The Court's judgment (Dkt. No. 249) awarded damages for patent infringement based on sales data provided by Defendants (collectively, "B&N") through June 30, 2014.   A supplemental accounting is required to fully compensate Plaintiff for infringing activity between the cutoff of B&N's sales data and the date of judgment.   Moreover, the jury verdict and the Court's subsequent clarification of damages did not account for post-judgment infringement through the expiration of the patent-in-suit.   An ongoing royalty is therefore necessary to provide compensation for prospective infringement.

The parties disagree on two issues: (1) the start date from which supplemental damages should be awarded; and (2) whether new Nook devices released after (or concurrent with) the original trial should be included in the supplemental accounting of pre-judgment damages and subject to ongoing royalties for post-judgment sales.

The supplemental damages award should cover the entire period of infringement and include infringing sales that were not covered by the jury verdict.   Before the original trial, Plaintiff requested that B&N supplement its sales information for the accused Nook devices. B&N produced additional sales data through June 30, 2014.   At trial, Plaintiff's damages claim was restricted by virtue of B&N's failure to produce sales information beyond that date.   Now, B&N argues that no damages should be awarded for pre-verdict sales made after June 30, 2014.

---

[1] As a matter of procedure, the motion is brought under FED. R. CIV. P. 59(e), to alter or amend judgment, and/or under FED. R. CIV. P. 52(b), to make additional factual findings, in light of the availability of new evidence—namely, B&N's updated sales information.   Alternatively, the motion is also be brought under Rule 60(a) to correct an omission or oversight in the judgment based on the Court's previously-stated intention to address post-verdict damages once the verdict from the first trial had been clarified.   *See* Dkt. No. 202 (Mar. 14, 2016 Order) at 3.

In short, B&N seeks absolution for nearly four months of infringing activity—from July 1, 2014 to October 27, 2014—because B&N reports its sales on a quarterly basis and did not fully supplement its discovery responses under FED. R. CIV. P. 26(e) before the start of trial.  B&N's position runs contrary to the language and purpose of 35 U.S.C. § 284, Federal Circuit precedent, and this Court's own practice.  *See Tomita Techs. USA, LLC v. Nintendo Co.*, No. 11-cv-4256 JSR, 2013 WL 4101251, at *9 (S.D.N.Y. Aug. 14, 2013) (Rakoff, J.) (granting supplemental damages for infringing sales from "the latest date for which [defendant] had produced sales data as of trial . . . through the entry of judgment . . .").

Supplemental damages should also be awarded for B&N's use of the patented technology in new versions of Nook devices that were released after the original trial.  All Nook models sold before the June 30, 2014 cutoff were found to infringe the patent-in-suit.  The new Nook devices include the same infringing "Shop" feature and are functionally identical in all relevant respects to the Nook devices that were the subject of the original trial.  While B&N has alluded to a "redesign," the product literature demonstrates that the "Shop" feature on the new Nook devices operates in the same manner as in the older devices and infringes for the same reasons.

Further, the Court should set an ongoing royalty for post-judgment infringement.  The jury verdict was not a lump-sum award extending through the expiration of the patent-in-suit.  The ongoing royalty rate, while largely left to the Court's discretion, must reflect the "substantial shift in the bargaining position of the parties" following a verdict of infringement and no invalidity.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012).  For the reasons set forth below, Plaintiff respectfully requests that the Court increase the implied royalty rate for past infringement to reflect the changed status of the parties.

## II. FACTUAL BACKGROUND

During the discovery period, B&N initially produced sales data for the Nook devices through July 2013. In response to Plaintiff's request, B&N supplemented its sales information before trial, producing additional data through June 30, 2014. The parties' damages experts updated their reports and opinions in light of B&N's supplemental production. During pre-trial submissions, B&N stipulated to the sales numbers for its Nook devices through June 30, 2014. *See* Dkt. No. 140 (Pretrial Consent Order) at 9-10 (reporting sales through June 30, 2014).

Following post-trial motions, the Court ordered a limited new trial to determine damages for the patent-in-suit. Dkt. No. 201 (Feb. 24, 2016 Order) at 16. The Court deferred on the issue of supplemental damages until after "the verdict from the first trial has been clarified" because "[a]ddressing supplemental damages at the new trial would unnecessarily complicate the proceedings." Dkt. No. 202 (Mar. 14, 2016 Order) at 3. The Court also granted Plaintiff leave to file the instant motion. *Id.* ("Adrea, however, may duly file a motion for post-verdict damages once the verdict from the first trial has been clarified.").

## III. ARGUMENT

### A. The Court Should Award Supplemental Damages from the Latest Sales Data Produced by B&N During the Litigation

Under 35 U.S.C. § 284, "the court *shall* award . . . in no event less than a reasonable royalty," and "[w]hen the damages are not found by a jury, the court *shall* assess them." (emphasis added). The Federal Circuit has held that a patentee is not fully compensated for infringement without awarding damages for all pre-judgment sales. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1303 (Fed. Cir. 2009) ("A damages award for pre-verdict sales of the infringing product does not fully compensate the patentee because it fails to account for post-verdict sales . . . ."); *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir.

2012) (finding the district court abused its discretion by failing to award "damages for the period between the jury's verdict and judgment").

The Court's judgment in this case awarded damages based solely on pre-verdict sales through June 30, 2014, the last date of sales reported by B&N. *See* Dkt. No. 140 (Pretrial Consent Order) at 9-10 (reporting sales through June 30, 2014); Dkt. No. 217 ([Proposed] Pre-Trial Consent Order) at 6, ¶ 24 (same). To facilitate an accounting of pre-judgment damages, Plaintiff respectfully requests that the Court order B&N to produce sales data from June 30, 2014 through the date of judgment for all Nook products sold during that time.

Notably, B&N does not oppose an award of supplemental damages or the production of (at least some) supplemental sales data. Instead, B&N seeks to avoid paying damages for nearly four months of pre-verdict infringement, arguing that the Court should only award supplemental damages for sales made after the jury verdict (Dkt. No. 145) on October 27, 2014. B&N's position is contrary to both the language of § 284, which states that courts *shall* assess damages for infringement not awarded by a jury, and the law's purpose—that is, to fully compensate patent holders for infringement. *See Mikohn Gaming Corp. v. Acres Gaming, Inc.*, No. 97-cv-1383, 2001 U.S. Dist. LEXIS 23416, at *63 (D. Nev. Aug. 1, 2001) (awarding supplemental damages for pre-verdict infringement because, to hold otherwise, would "allow [defendant] to evade its obligation to pay damages for the remainder of the period of infringement and would contradict the patent law's purpose of compensating patent holders for the damage suffered due to infringement").

In *Tomita Technologies USA, LLC v. Nintendo Co.*, this Court awarded supplemental damages for infringing sales not included in the jury's verdict starting from "the latest date for which [defendant] had produced sales data as of trial." 2013 WL 4101251, at *9. This approach

for determining supplemental damages is consistent with Federal Circuit precedent[2] and the routine practice of other district courts.[3]

The Court has no reason to reward B&N with four months of royalty-free infringement due to a deficiency in its own production. B&N cannot credibly argue that Plaintiff waived its right to recover supplemental damages during the "gap period" between B&N's latest sales data and the jury verdict. *See Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 333, 349-51 (E.D.N.Y. 2011) (finding no waiver of patentee's right to a supplemental accounting for *three years* of pre-verdict infringing sales). Accordingly, the supplemental damages award should run from the latest sales data produced by B&N before trial.

**B. The New Nook Devices Released After the Original Trial Are Not More than Colorably Different from the Devices Found to Infringe the Patent-In-Suit**

In general, a patentee seeking to include a new product version in post-verdict relief must show that the new product is "no more than a colorable variation of the adjudicated product." *I/P Engine, Inc. v. AOL Inc.*, No. 2:11-cv-512, 2014 U.S. Dist. LEXIS 7876, at *10-11 (E.D. Va. Jan. 21, 2014), *rev'd on other grounds*, 576 F. App'x 982 (Fed. Cir. 2014). This can be achieved

---

[2] *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1212-13 (Fed. Cir. 2010) ("[T]he district court should have awarded compensation for any infringement prior to the injunction.").

[3] *See TiVo, Inc. v. Echostar Commc'ns Corp.*, No. 2:04-cv-1, 2006 U.S. Dist. LEXIS 64291, at *6 (E.D. Tex. Aug. 17, 2006) ("The patentee is entitled to damages for the entire period of infringement and should therefore be awarded supplemental damages for any periods of infringement not covered by the jury verdict."); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-cv-248, 2011 WL 4899922, at *4 (E.D. Va. Oct. 14, 2011), *aff'd*, 694 F.3d 1312 (Fed. Cir. 2012) (collecting cases where "courts have found that such supplemental damages may take into account pre-verdict infringing sales that were not covered by the jury verdict due to deficiencies in the discovery production"); *see also Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 642 (E.D. Tex. 2011) (awarding supplemental damages for pre-verdict infringing sales because "[w]hen the jury awarded damages in this case, it did not have before it sales data for the first and second quarter of 2011"); *Mikohn Gaming,* 2001 U.S. Dist. LEXIS 23416, at *63 ("Damages suffered as a result of infringement include those for the entire period of infringement. The fact that the damages experts employed by both sides were provided with information covering [defendant]'s sales only through June 1999 does not reduce the period for which [defendant] must compensate [patentee].").

by "making a comparison between the original product, the modified product, and the claims." *Id.* at *11. Such a comparison can be made using product literature. *See Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1371 (Fed. Cir. 2014) ("[E]ven if Innova did make some small changes to the product's software, a comparison of the User Manuals demonstrates that the two products are functionally identical. Thus, we agree with the district court that the ADSA product is not more than colorably different from the infringing OSA product.").

All Nook devices sold by B&N before June 30, 2014 were considered by the jury and found to infringe the patent-in-suit at the original trial. Subsequently, B&N released several new versions of the Nook product, including: (i) Samsung Galaxy Tab 4 Nook (released late August 2014); (ii) Samsung Galaxy Tab A Nook (released August 2016); (iii) Samsung Galaxy Tab E (released October 2015); (iv) Samsung Galaxy Tab S2 Nook (released September 2015); (v) Nook Tablet (released November 2016); and (vi) Nook Glowlight Plus (released October 2015). Like the adjudicated Nook products, each of these new Nook devices includes the same infringing "Shop" feature, which the Court summarized as follows:

> The infringing device, the B&N Nook, is an ereader that allows readers to shop online for books, download them, and read them on a handheld electronic device. The Nook connects to home internet networks, and readers browse the Nook's online bookstore by pressing a "Shop" button on the device which retrieves a bookstore shopfront website from a server.

Dkt. No. 201 (Feb. 24, 2016 Order) at 3.

As shown below, the new Nook devices include a "Shop" button on the home screen that, when pressed by the user, retrieves a bookstore shopfront webpage and displays product recommendations for use on the device. In fact, an online simulator for the Galaxy Tab S2 Nook (cross-promoted by B&N and Samsung) shows the same functionality used in the older devices when a user press the "NOOK Shop" button: it initiates the retrieval of content, including

product recommendations, and displays that content on the shopfront page.[4]   The following images highlight the "Shop" button on the home screen of the new Nook devices, as well as the product recommendations displayed in the "Shop" storefront.

| Galaxy Tab 4 NOOK[5] | |
|---|---|
| **Home Screen** | **Storefront** |



[4] Simulator *available at* http://publish.samsungsimulator.com/simulator/d4d4526c-2cf5-43a4-940a-b54d17bc62f2/#!topic/nook/purchase_a_book_in_the_nook_shop.

[5] Images *available at* http://www.barnesandnoble.com/w/samsung-galaxy-tab-4-nook-7-inch-barnes-noble/1119732448.



| Galaxy Tab A NOOK[6] | |
|---|---|
| Home Screen | Storefront |
| | |
| Galaxy Tab E NOOK[7] | |
| Home Screen | Storefront |
| | |

[6] Images *available at* http://www.barnesandnoble.com/w/samsung-galaxy-tab-a-nook-7-inch-barnes-noble/1123826273?ean=9780594762157.

[7] Images *available at* http://www.barnesandnoble.com/w/samsung-galaxy-tab-e-nook-9-inch-barnes-noble/1122750330?ean=9781400697601.



[8] Images *available at* http://www.barnesandnoble.com/w/samsung-galaxy-tab-s2-nook-8-inch-barnes-noble/1122314016?ean=9780594699842.

[9] Images *available at* http://www.barnesandnoble.com/w/nook-tablet-7-inch-barnes-noble/1124589342?ean=9781400501656.



| Nook Glowlight Plus[10] | |
|---|---|
| **Home Screen** | **Storefront** |
|  | |

By comparison, the identical functionality was shown to the jury as part of a demonstrative used during the testimony of Plaintiff's expert to illustrate how the infringing technology operated on the Nook devices. The demonstrative images copied below were representative of the operation of all Nook devices considered by the jury at the original trial.

[10] Images *available at* http://www.barnesandnoble.com/w/piper-barnes-noble/1122314015;jsessionid=8AF69FA91E9B0E93E428FA15AD77C647.prodny_store02-atgap10.

The new Nook devices are functionally identical to the adjudged Nook products, at least with respect to the "Shop" feature determined to infringe the patent-in-suit. In denying B&N's motion for judgment as a matter of law on the issue of infringement, this Court recognized that "[t]he key limitation of Claim 1 is that a user does not need to access a web browser for the device to retrieve relevant data." Dkt. No. 201 (Feb. 24, 2016 Order) at 4. Indeed, B&N's non-infringement defense for claim 1 was that "the Shop application on the Nook is a web browser." *Id.* But even if the new Nook products included changes to the software underlying the Shop application, as B&N may argue, these new devices would still infringe claim 1. As this Court determined, sufficient evidence existed for a reasonable jury to conclude that "pressing the Nook's Shop button immediately initiates retrieval of data, namely, the storefront webpage, from the B&N server, and . . . therefore a user does not need to do anything with the Shop application after pressing the Shop button to initiate retrieval of data." *Id.* at 5. It simply does not matter for purposes of infringement whether the software underlying the Shop application in the new Nook devices includes code that could also be used in a "web browser."

Further, B&N's "web browser" defense does not apply to independent claim 13 because, unlike claim 1, claim 13 does not include a limitation prohibiting the use of a web browser. Like the devices adjudged to infringe the patent-in-suit, the new Nook devices enable the user to send a request with a "single user input"—namely, by pressing the "Shop" button. *See id.* at 7 (finding sufficient evidence such that "a reasonable jury could have concluded that pushing the Nook's Shop button is a 'single user input' that initiates a request to a remote serve[r]"). Similarly, B&N's other defense to claim 13 failed in view of B&N's 30(b)(6) deposition testimony, which related to the general operation of the server used by all Nook devices, as opposed to evidence directed to the operation of any specific device. *Id.* at 7-8.

In sum, the new Nook devices are no more than colorable variations of the infringing products. The product literature for the new Nook devices shows the "Shop" feature operating in the same manner described during the original trial. *See* Dkt. No. 154, Trial Tr. (Berg) at 673:13-676:2 (summarizing the relevant functionality of the "Shop" application on all Nook devices and how the application interacts with B&N's server). These new devices must be included in the accounting of supplemental damages and remain subject to ongoing royalties.

**C. The Court Should Set an Ongoing Royalty for Prospective Infringement that Reflects the Changed Status of the Parties Following the Judgment**

"[A]bsent egregious circumstances, when injunctive relief is inappropriate, the patentee remains entitled to an ongoing royalty." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332–33 (Fed. Cir. 2015), *cert. granted*, 136 S. Ct. 1824 (2016).

The Court should set an ongoing royalty for future infringement by B&N because (i) permanent injunctive relief is not appropriate here; and (ii) the original jury verdict did not award a lump-sum amount to compensate Plaintiff through the expiration of the patent-in-suit in 2026. Dkt. No. 143 (Jury Instructions) at 18-20 (instructing the jury to calculate compensatory damages based on a per-unit royalty).

In *Tomita*, this Court awarded ongoing royalties for future sales to be paid by the infringer on a quarterly basis. No. 11-cv-4256-JSR, 2013 WL 6504394, at *1-2 (S.D.N.Y. Dec. 11, 2013). In fact, the Court increased the royalty rate for past infringement, acknowledging that "courts routinely increase the implied royalty rate of a verdict after a finding of infringement because the status of the parties has changed, as would the result of the hypothetical negotiation between them." *Id.* at *2.

The Federal Circuit, for example, has held that "an assessment of prospective damages for ongoing infringement should 'take into account the change in the parties' bargaining

positions, and the resulting change in economic circumstances, resulting from the determination of liability.'" *ActiveVideo*, 694 F.3d at 1343 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1361-62 (Fed. Cir. 2008) (recognizing "a substantial shift in the bargaining position of the parties" following entry of a judgment of validity and infringement). The Federal Circuit has been clear that "[t]here is a fundamental difference . . . between a reasonable royalty for pre-verdict and damages for post-verdict infringement." *Amado*, 517 F.3d at 1362. This remains true regardless of whether a permanent injunction is warranted. *See ActiveVideo*, 694 F.3d at 1343 (stating the holding of *Amado* "applies with equal force in the ongoing royalty context"). Put simply, "[f]ail[ure] to consider the parties' changed legal status would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 628 (E.D. Tex. 2009).

For these reasons, district courts routinely exercise their discretion to award higher royalty rates for post-verdict infringement. *Telcordia Techs. v. Cisco Sys.*, No. 014-cv-876, 2014 U.S. Dist. LEXIS 51076, at *13 (D. Del. Apr. 14, 2014) ("[C]ourts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial for past infringement."). In *Arctic Cat Inc. v. Bombadier Recreational Products, Inc.*, for example, the court set an enhanced ongoing royalty rate at twice the amount determined by the jury, running from the date of judgment through the expiration of the patent-at-issue. No. 14-cv-62369, 2017 U.S. Dist. LEXIS 1607, at *4-10 (S.D. Fla. Jan. 3, 2017). Other courts have increased the ongoing royalty rate by a wide range of amounts.[11] Like this Court in *Tomita*, numerous district

[11] *E.g.*, *Paice*, 609 F. Supp. 2d at 630-31 (increasing effective royalty rate of $25 per vehicle to an ongoing rate of $98); *Telcordia*, 2014 U.S. Dist. LEXIS 51076, at *12-16 (increasing effective royalty rate from 0.64% to an ongoing rate of 1%); *I/P Engine, Inc. v. AOL Inc.*, No.

courts have enhanced the ongoing royalty rate by 33% over the rate for past infringement.  *See*,

*e.g.*, *Affinity Labs of Texas, LLC v. BMW N. Am., LLC*, 783 F. Supp. 2d 891, 899 (E.D. Tex.

2011) (enhancing the ongoing royalty rate by 33%); *Syntrix Biosystems, Inc. v. Illumina, Inc.*,

No. 10-cv-5870, 2013 U.S. Dist. LEXIS 85781, at *6-8 (W.D. Wash. Jun. 18, 2013) (increasing

ongoing rate from 6% to 8%); *see also Tomita*, 2013 WL 6504394, at *2 (setting an ongoing

royalty rate by increasing the implied royalty rate by "one-third").

   The post-verdict economic circumstances in this case also support an increase in the

ongoing royalty.  While the Court previously found that B&N's pre-verdict infringement was not

willful,[12] there is no longer any question regarding the willfulness of B&N's conduct following

the jury's verdict of infringement and no invalidity.  *See Affinity Labs.*, 783 F. Supp. 2d at 899

("Following a jury verdict and entry of judgment of infringement and no invalidity, a defendant's

continued infringement will be willful absent very unusual circumstances.").  Moreover, to the

extent the distinction between B&N's pre- and post-verdict infringement affects any of the *Read*

factors for enhancement—*e.g.*, the duration of B&N's post-verdict conduct and the lack of any

---

2:11-cv-512, 2014 U.S. Dist. LEXIS 10533, at *12-18 (E.D. Va. Jan. 28, 2014) (increasing the ongoing royalty rate by 40%); *Morpho Detection, Inc. v. Smiths Detection, Inc.*, No. 2:11-cv-498, 2013 U.S. Dist. LEXIS 150376, at *26-30 (E.D. Va. Oct. 17, 2013) (increasing ongoing royalty rate by 25%).

[12] *See* Dkt. No. 248 (Amended Findings of Fact and Conclusions of Law).  The Court's analysis relied on the Federal Circuit's decision in *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016), which issued on September 21, 2016, after the parties submitted post-trial briefing on the issue of enhanced damages.  *Id.* at 15-16.  Prior to the Federal Circuit's decision in *WesternGeco*, it was not clear that any part of the *Seagate* test for willful infringement survived the Supreme Court's decision in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016), or that a finding of willful infringement remained a prequisite for enhanced damages.  *See Halo*, 136 S. Ct. at 1927 ("Section 284 gives district courts the discretion to award enhanced damages against those guilty of patent infringement."); *id.* at 1935 (limiting the award of enhanced damages to "egregious cases of misconduct beyond typical infringement;" concluding, "The *Seagate* test, in contrast, unduly confines the ability of district courts to exercise the discretion conferred on them.").

remedial action by B&N during that time—the post-verdict circumstances only further support an increased ongoing royalty rate. *See generally Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992).

Given the change in the parties' status following judgment, Plaintiff respectfully requests that the Court exercise its discretion to set an ongoing royalty rate of $0.102 per unit, an amount that is twice the effective per-unit rate previously awarded. The ongoing royalty should apply to all Nook devices presently sold by B&N, as well as any Nook devices that B&N may introduce, that are not more than colorably different from those devices adjudged to infringe. *See Bianco v. Globus Med., Inc.*, 53 F. Supp. 3d 929, 942 (E.D. Tex. 2014) (Bryson, J.) (holding, "[a]n order basing ongoing royalty payments on future sales . . . implicitly extends to any products that are not colorably different from those products"); *Mondis Tech., Ltd. v. Chimei Innolux Corp.*, No. 2:11-cv-378, 2012 U.S. Dist. LEXIS 60004, at *3 (E.D. Tex. Apr. 30, 2012) ("For the purpose of determining ongoing royalties . . . Infringing Products are herein defined as those computer monitors and televisions that were accused at trial, and those that are not colorably different from the computer monitors and televisions that were accused at trial.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court: (i) order B&N to produce updated sales data for all Nook devices sold from June 30, 2014 through the date of judgment on January 12, 2017; (ii) award supplemental damages for pre-judgment sales of Nook devices at a per-unit rate of $0.051; and (iii) set an ongoing royalty rate of $0.102 per device for post-judgment sales.

Dated:  February 2, 2017                    Respectfully submitted,


                                            /s/ Colin Cabral
                                            Steven M. Bauer
                                            Brendan Cox (*pro hac vice*)
                                            PROSKAUER ROSE LLP
                                            One International Place
                                            Boston, Massachusetts 02110
                                            (617) 526-9600 (telephone)
                                            (617) 526-9800 (facsimile)
                                            sbauer@proskauer.com
                                            bcox@proskauer.com

                                            Colin Cabral
                                            PROSKAUER ROSE LLP
                                            2049 Century Park East, Suite 3200
                                            Los Angeles, CA 90067
                                            (310) 284-5611 (telephone)
                                            (310) 557-2193 (facsimile)
                                            ccabral@proskauer.com

                                            *Attorneys for Plaintiff ADREA, LLC*

**CERTIFICATE OF SERVICE**

I certify that on February 2, 2017, I caused a copy of the foregoing document to be served upon counsel of record for Barnes & Noble, Inc., barnesandnoble.com llc, and Nook Media LLC by electronic mail.

Louis S. Ederer
Susan Lee Shin
Maxwell Charles Preston
ARNOLD & PORTER LLP
399 Park Avenue
New York, NY 10022-4690
Telephone: (212) 715-1000
Facsimile: (212) 715-1399
louis.ederer@aporter.com
susan.shin@aporter.com
maxwell.preston@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc., barnesandnoble.com llc, and Nook Media LLC*

/s/ Colin Cabral