UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADREA, LLC, | ) |
| Plaintiff, | ) ) ) ) |
| - against - | ) ECF Case ) |
| BARNES & NOBLE, INC., BARNESANDNOBLE.COM LLC, and NOOK MEDIA LLC, | ) 13-CV-4137 (JSR) ) ) ) |
| Defendants. | ) ) ) |

## **DEFENDANTS' OBJECTIONS TO PLAINTIFFS' BILL OF COSTS**

Defendants Barnes & Noble, Inc., barnesandnoble.com LLC, and NOOK Media LLC (collectively "B&N"),¹ pursuant to Local Rule 54.1(b), hereby respectfully submit their Objections to the Bill of Costs filed by Plaintiff Adrea LLC ("Adrea") on February 13, 2017 (Dkt. No. 253).  As discussed below, the Clerk should not award any of the costs claimed by Adrea, for the following reasons.

    **I.**    **Adrea Is Not Entitled to Recover Costs, as It Is Not a Prevailing Party**

As an initial matter, the Clerk should not tax any costs in favor of Adrea, since Adrea is not a prevailing party for purposes of a costs award.  Federal Rule 54(d) allows costs to be taxed only against the "prevailing party" in federal court litigation.  However, the mere fact that a judgment was entered in Adrea's favor does not make it the prevailing party for these purposes. In fact, after nearly three years of litigation, Adrea has been successful only as to a minute

---

[1] NOOK Media LLC is now Barnes & Noble Education, LLC, a subsidiary of Barnes & Noble Education, Inc., and a separately traded company.  barnesandnoble.com LLC is the predecessor in interest to Nook Digital, LLC, a subsidiary of Barnes & Noble, Inc.

portion of its claims, while B&N has now succeeded on nearly all of its defenses and legal positions. Accordingly, as a matter of law, Adrea cannot be considered a prevailing party for purposes of Rule 54(d), and no costs should be taxed in its favor. Indeed, if anyone is the prevailing party in this case, it is B&N.

Thus, as demonstrated in the accompanying Declaration of Louis S. Ederer ("Ederer Decl."), Adrea initially alleged that B&N was infringing a total of twenty-three individual patent claims in three separate patents, and sought to recover money damages in the amount of $12.4 million. Ederer Decl. ¶¶4, 8. However, following B&N's successful dismissal of several of Adrea's asserted claims on summary judgment (Dkt. No. 85), the jury at the first trial in this action found B&N to have infringed only two of the three asserted patents (Dkt. No. 145). *Id.* ¶¶5-6, 11. Further, following B&N's successful exclusion of Adrea's damages expert, Stephen Magee, during his cross-examination at trial, the jury awarded only $1.33 million in damages, rather than the $6 million sought by Adrea at trial (Dkt. No. 145). *Id.* ¶¶8-9, 11.

But Adrea's defeats — and B&N's victories — did not stop there. Following the conclusion of the first trial, the District Court granted B&N's motion to invalidate one of the two remaining patents the jury found to have been infringed, thereby nullifying the jury's verdict with respect to that patent (Dkt. No. 182). *Id.* ¶12. As a result, at that point Adrea had succeeded with respect to only *one* of the three patents it originally claimed to be infringed. *Id.*

Thereafter, the Court ordered a new trial on damages as to the one remaining infringed patent (Dkt. No. 201). *Id.* At that trial, while Adrea sought to recover $1.059 million in damages, the Court awarded only $266,832, a mere fraction of the damages to which Adrea originally claimed it was entitled (Dkt. No. 248). *Id.* ¶¶14-15. In addition, the Court rejected Adrea's claim for an award of enhanced damages, finding that B&N's conduct was not willful or

egregious. *Id.* ¶15. Accordingly, at the end of the day, Adrea failed not only on two of its three infringement claims, but its original claim for multi-millions of dollars in damages had been whittled down by over ninety-seven percent. *Id.*

Under these circumstances, as a matter of law Adrea cannot be considered a "prevailing party" for purposes of Rule 54(d), and is not entitled to recover costs. Since this case involves claims for patent infringement, the law of the Federal Circuit governs the determination whether a party has "prevailed" within the meaning of Rule 54(d). *Shum v. Intel Corp.*, 629 F.3d 1360, 1366 (Fed. Cir. 2010) ("Federal Circuit law defines 'prevailing party' for the purposes of patent litigation."). Under Federal Circuit law, "[a]scertaining the 'prevailing party' [under FRCP 54(d)] requires us to 'look to the substance of the litigation to determine whether an applicant has *substantially* prevailed in its position, and not merely the technical disposition of the case or motion. In effect, substance should prevail over form." *Schultz v. United States*, 918 F.2d 164, 166 (Fed. Cir. 1990) (emphasis in original). District courts applying Federal Circuit law have consistently followed this reasoning. *See, e.g.*, *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, No. 1:13CV0740 (AJT/TCB), 2015 WL 7283108, at *2 (E.D. Va. Nov. 17, 2015) ("In determining which of these two parties should be deemed the 'prevailing party', the Court must consider (1) whether the success of one party surpasses the other, and (2) whether that success aligns itself with the central issue of litigation."); *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:06-CV-1105, 2015 WL 1470710, at *8 (M.D. Pa. Mar. 31, 2015) ("[T]he essential inquiry in mixed judgment cases is whether one party's successes surpass the other's with respect to the 'central issue[s]' in the suit.").

Second Circuit law is in agreement. Particularly in cases where the result or outcome of the case is "mixed," the Second Circuit has consistently held that even if judgment has been

entered in plaintiff's favor, it may not be a prevailing party for purposes of a Rule 54(d) costs award. *See ARP Films. Inc. v. Marvel Entm't Group, Inc.*, 952 F.2d 643, 651 (2d Cir. 1991) ("In view of the mixed outcome of this litigation, the district court was well within its discretion in concluding that plaintiffs were not prevailing parties within the meaning of . . . Fed. R. Civ. P. 54(d), and accordingly were not entitled to costs or attorneys' fees."); *RBC Nice Bearings, Inc. v. SKF USA Inc.*, 513 Fed. Appx. 61, 62 (2d Cir. 2013) (holding that even if the district court was in error in finding that a party was not "prevailing" for purposes of Rule 54(d), it did not exceed the bounds of its discretion in refusing to award costs to either party).

The case of *JA Apparel Corp. v. Abboud*, 2010 WL 1488009 (S.D.N.Y. 2010), is directly on point. In that case, after the Clerk had taxed costs in favor of plaintiff JA Apparel, the district court found — even though JA Apparel had obtained limited relief — that it was not a "prevailing party" in the litigation, given that "[t]he judgment was 'mixed', with Abboud prevailing on the issue most seriously in contention, and JA Apparel prevailing on other issues." *Id.* at *4. Accordingly, following the law of the Second Circuit and other circuits regarding "mixed outcome" cases, the Court, in the exercise of its discretion, denied the plaintiff's request for costs, instead ordering that "[e]ach party shall bear its own costs."[2] *Id.*

---

[2] This is only one of many cases where federal courts around the country have declined to award costs under Rule 54(d)(1) when the result or outcome was "mixed". *See, e.g.*, *Rebel Distributors Corp. v. Devos, Ltd.*, 376 F. App'x 772, 775 (9th Cir. 2010) ("In the event of a mixed judgment, as here, it is within the discretion of a district court to require each party to bear its own costs.") (internal quotations omitted); *HTC Corp. v. Tech. Properties Ltd.*, No. 5:08-CV-00882-PSG, 2014 WL 3706617, at *6 (N.D. Cal. July 21, 2014) ("Here, the judgment is mixed. HTC prevailed with respect to the '148 and '749 patents, neither party prevailed with respect to the '584 and '890 patents and TPL prevailed with respect to the '336 patent. In light of the mixed judgment, and cognizant of the prolonged litigation between the parties spanning five accused patents, the equitable result is for each side to bear its own costs. However unsatisfying, the law treats such draws as group stage play: no winner may be declared."); *Interthal v. State Farm Fire & Cas. Co.,* 52 Fed. App'x 582, 583-84 (3d Cir. 2002) ("The results here were mixed. [Plaintiff] achieved only partial success on his claims. For that reason, the District Court did not abuse its discretion in holding that each party should be responsible for its own costs."); *Amarel v. Connell,* 102 F.3d 1494, 1523 (9th Cir. 1996) ("In the event of a mixed judgment, however, it is

Footnote continued on next page

Here, given that B&N's victories far outnumbered Adrea's with respect to the key issues in contention — including whether Adrea's patents were valid and infringed, and whether its damages should be in the multi-millions, or $266,832 — the question whether the results were "mixed" is not even a close call.  Having lost two of its three claims for patent infringement (and having had one of those patents invalidated), and having been awarded less than three percent of its claimed damages, Adrea did not come close to substantially prevailing on its key positions, and cannot be considered a "prevailing party" for purposes of Rule 54(d).  Put another way, to the extent Adrea prevailed on some small portion of its case, so did B&N — but to a much greater extent, such that any award of costs that could conceivably be justified in Adrea's favor would be far offset by the costs that would be due B&N.

Accordingly, in circumstances such as these, before any costs are taxed, at a minimum the District Court should be given the opportunity to exercise its broad discretion to deny costs to Adrea, as this may obviate the need for the Clerk to take any action.[3]

---

Footnote continued from previous page
within the discretion of a district court to require each party to bear its own costs."); *Testa v. Village of Mudelein, Ill.,* 89 F.3d 443, 447 (7th Cir. 1996) ("[T]he prevailing party is the party who prevails as to the *substantial* part of the litigation. . . .  Considering the mixed outcome . . . the decision requiring each party to bear its own costs is within [the court's] discretion.") (internal citations and quotation marks omitted); *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 783 (10th Cir. 1990) ("The court was within its discretion to refuse to award costs to a party which was only partially successful."); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1015 (7th Cir. 1985) ("[T]his court has held that under Rule 54(d) the 'prevailing party' is the party who prevails 'as to the substantial part of the litigation'.").

[3] In this regard, even where a party is technically considered the "prevailing party" within the meaning of Rule 54(d), district courts in this and other circuits still have broad discretion to apply regional circuit law and determine whether an award of costs is fair and reasonable, especially in cases where a party has achieved only partial success.  *See Shum*, 629 F.3d at 1370 ("Whether an award of costs is reasonable is determined under the law of the regional circuit.").  In the Second Circuit, as Judge Rakoff, who presided over the instant case, has explained, "Courts [] have recognized several grounds upon which it is appropriate to deny costs to the prevailing party in an action.  Key among these is the court's appraisal as to whether awarding costs would be 'inequitable' or 'unfair'."  Accordingly, "fairness requires each party to bear its own costs where," for example, the litigation was "complex and protracted," and where the

Footnote continued on next page

## II. The Bill of Costs Is Premature, and Should be Held in Abeyance Until Judgment is Final and the Time to Appeal Has Expired

B&N further submits that the Clerk should not tax costs at this time because now is not the appropriate time to consider Adrea's Bill of Costs. Under Local Civil Rule 54.1(a), costs are to be taxed under Federal Rule 54(d)(1), if at all, only after a final judgment has been entered, that is, a judgment not subject to further District Court review, reconsideration, or amendment. *See* Local Rule 54.1(a). Here, following the Court's entry of judgment on January 12, 2017 (Dkt. No. 249), Adrea moved for supplemental damages pursuant to Rules 52(b), 59(e), and 60(a), seeking to amend, modify, or correct the Court's judgment (Dkt. No. 251). That motion remains pending, and accordingly the District Court's judgment is effectively non-final.

In similar circumstances, the Second Circuit, in *Weyant v. Okst*, 198 F.3d 311 (2d Cir. 1999), considered an application for attorney's fees under Federal Rule 54(d)(2). The Court, however, found that a pending postjudgment motion under Rule 59 had rendered the judgment non-final, and therefore the attorney's fees application could not be heard:

> [C]ertain types of postjudgment motions interrupt the judgment's finality because judicial efficiency is improved by postponing appellate review of the judgment "until the District Court has had an opportunity to dispose of all motions that seek to amend or alter what otherwise might appear to be a final judgment," *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989). The timely filing of a postjudgment motion pursuant to Fed. R. Civ. P. 50(b), 52(b), or 59 automatically "affect[s] the finality of the judgment," Fed. R. Civ. P. 59 Advisory Committee Note (1995), because such a motion seeks to alter the judgment or reverse decisions embodied in it. *See, e.g.*, *Browder v. Director, Department of Corrections*, 434 U.S. 257, 267, 98 S. Ct. 556, 54 L. Ed. 2d 521 (1978) ("A timely petition for rehearing tolls the running of the [appeal] period because it operates to suspend the finality of the . . . court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties.") (internal quotation marks omitted); 12 Moore's Federal Practice §59.12[1], at 59-38 (3d ed. 1999) (a "timely motion under Rule 59 destroys the finality of the judgment").

---

Footnote continued from previous page
action presented "close and difficult legal issues." *AXA Versicherung AG v. N.H. Ins. Co.*, 769 F. Supp. 2d 623, 625-26 (S.D.N.Y. 2011).

*Weyant*, 198 F.3d at 314-15. Other courts in this district have similarly held that post-trial motions brought under Rule 59 suspend the finality of judgments for purposes of taxing costs. *See Marchisotto v. City of NY*, No. 05 Civ. 2699 (RLE), 2009 WL 2229695, at *3 (S.D.N.Y. July 27, 2009) (post-trial motions suspend the finality of motions for attorney's fees and taxation of costs); *Weyerhaeuser Co. v. UBAF Arab Am. Bank*, 139 F.R.D. 38, 40 (S.D.N.Y. 1991) (finding that a party had waived its objection to a request for taxation of costs because it never raised the issue of the pending Rule 59(e) motion).

Further, all of the Rules under which Adrea has moved for supplemental damages have the effect of tolling the time to file a Notice of Appeal, so it is not yet known whether the District Court's judgment will be appealed to the Federal Circuit; indeed, this question will not be answered until that motion is decided. In addition, while styled as a "Motion to Amend a Judgment," Rule 59(e) is widely viewed by the federal courts as the equivalent of a motion for reconsideration of a judgment previously entered by the district court.[4] Under Local Rule 54.1(a), the Clerk may not tax costs while a motion for reconsideration is pending ("Costs will not be taxed during the pendency of any appeal, motion for reconsideration, or motion for a new trial."). For these additional reasons, the Clerk should hold Adrea's Bill of Costs in abeyance until the supplemental damages motion is decided, and either the time to appeal has run, or a Notice of Appeal has been filed.

---

[4] *See Apex Employee Wellness Servs., Inc. v. APS Healthcare Bethesda, Inc.*, 2017 WL 456466, at *6 (S.D.N.Y. Feb. 1, 2017 )("Rule 59(e) is 'a device to relitigate the original issue decided by the district court, and [it is] used to allege legal error'.") (quoting *United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003).

### III. Adrea's Bill of Costs Includes Numerous Expenses Which It Is Not Entitled to Recover

Finally, even if the Clerk were to consider Adrea's Bill of Costs at this time, virtually all of Adrea's proposed expenses should be rejected. It is the burden of the party who filed the Bill of Costs to show that the expenses for which it is seeking reimbursement were justified. *Advanced Video Techs., LLC v. HTC Corp.*, No. 11-CV-6604 (CM)(RLE), 2016 WL 1253899, at *3 (S.D.N.Y. Feb. 23, 2016). Particularly with respect to trial and deposition transcripts, which make up approximately $90,000 of Adrea's claimed costs of $110,000, Adrea must show that the transcripts and other associated expenses were "necessarily obtained"; in other words, if costs were incurred for anything other than a single copy of the transcript on regular turnaround, it is Adrea's burden to show that such additional costs were necessary, and were not incurred for the convenience of counsel. Local Rule 54.1(c)(1) and (c)(2).

Adrea has completely failed to carry its burden here. Rather than making any attempt whatsoever to justify the transcript-related expenses it is seeking, much less give any explanation as to why those costs were necessary, Adrea instead merely submits its entire set of transcript invoices without explanation, most of which relate to expenses that are not taxable on their face. In the case of deposition transcripts, all of Adrea's invoices include costs for turnaround periods of three days or less (and many were on daily turnaround), as well as Real-Time transcription, diskettes and minuscripts, rough transcripts, scanning and hyperlinking of exhibits, and videographer fees; indeed, some of its transcript invoices totaled nearly $6000 for a single deposition. The same is true of Adrea's trial transcript invoices, all of which were ordered on daily turnaround, and included charges for Real-Time transcription and other services.

In addition, Adrea seeks to recover other costs for which it cannot possibly have good reason. These include, for example, expenses incurred in connection with the second trial on

8

damages, which it essentially lost; subsistence charges for its damages expert, who was excluded at the first trial; and the entire lodging bill for one expert for 14 days leading up to trial. None of these, or any of Adrea's other costs, should be awarded, for the following reasons:

### 1. Adrea Is Not Entitled to Trial Transcript Costs

Adrea seeks to recover $20,118.24 in expenses for what it summarily describes as "original trial transcripts necessarily obtained for use in this case." Dkt. No. 253-2. B&N objects to these expenses on the grounds that they far exceed the cost of the "original trial transcript," as contemplated by Local Rule 54.1(c). That rule provides that the cost of the "original trial transcript" is taxable only if it was "necessarily obtained" for use in Court, and not merely for the convenience of counsel. Local Rule 54.1(c). Notwithstanding this rule, Adrea seeks reimbursement for far more than simply the cost of the "original trial transcript," including expenses for: (1) expedited, same-day transcription, (2) diskettes and minuscripts, and (3) real-time transcription. Dkt. No. 254-1.

Adrea has provided no justification for why it needed expedited, same-day transcription of the trial proceedings — particularly since it had five to seven people in the courtroom at all times, including multiple attorneys and technical personnel, all with Internet connections, and many taking notes (*see* Ederer Decl. ¶18) — aside from the obvious explanation that same-day turnaround was most convenient for its counsel. Similarly, Adrea has articulated no reason why it needed to obtain diskette and minuscript versions of the transcript, or real-time transcription, none of which is taxable under Local Rule 54.1. Absent explanation, as a matter of law Adrea is not entitled to reimbursement for these costs.[5]

---

[5] *See Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, No. 12CV7405 HB, 2014 WL 1979875, at *2 (S.D.N.Y. May 15, 2014) ("[T]he costs of extra services in addition to the transcripts, such as RealTime transcription, are not taxable."); *In re Omeprazole Patent Litig.*,
Footnote continued on next page

Further, Adrea's request for costs associated with the parties' pretrial *Daubert* hearing on October 10, 2014 should be denied outright. Local Rule 54.1 allows reimbursement for transcripts of such proceedings only where the court has authorized such expenses in advance, or ordered that the transcript be obtained. *Burchette v. Abercrombie & Fitch Stores, Inc.*, No. 08 CIV.8786 RMB THK, 2010 WL 3720834, at *6 (S.D.N.Y. Sept. 22, 2010) (denying costs for pretrial proceeding transcripts where the party "did not seek or obtain advance approval for the cost of securing the transcript, nor was there a Court order directing that the transcript be obtained"). Since neither occurred in this case, Adrea's request for such costs is unfounded.

Finally, Adrea should not be entitled to recover trial transcript costs for the second trial on damages. At that 2016 trial, Adrea sought damages of $1.059 million, while B&N took the position that damages should not exceed $104,000. Ederer Decl. ¶14. Since the Court's award of $266,832 was far closer to B&N's number, Adrea should be considered the losing party at this trial, and all trial transcript expenses it incurred in 2016 should not be taxed.

### 2. Adrea is Not Entitled to Deposition Transcript Costs

Adrea seeks to recover the inflated amount of $69,527.90 for what it claims were "deposition transcripts necessarily obtained for use in this case." Dkt. No. 253-2. B&N objects to this request on the grounds that for every single deposition, Adrea paid far more than the cost

---

Footnote continued from previous page
No. 00 CIV. 6749 BSJ, 2012 WL 5427849, at *3 (S.D.N.Y. Nov. 7, 2012) (denying costs for minuscript and diskette charges despite the fact that such services were "useful" given that the case was "particularly complex" and involved testimony from non-English speakers); *Nat. Organics, Inc. v. Nutraceutical Corp.*, No. 01 CIV. 0384 GBD RLE, 2009 WL 2424188, at *3-4 (S.D.N.Y. Aug. 6, 2009) (denying costs for expedited daily transcripts on grounds that "daily transcripts are not customary" and that the prevailing party failed to meet the "heightened showing of the unique circumstances that demanded" an expedited transcription); *Close-Up Int'l, Inc. v. Berov*, No. 02 Civ. 2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007) (rejecting request for cost of daily transcripts because "plaintiffs' attorneys could have taken adequate notes during trial to prepare for cross-examination, follow the court's evidentiary rulings and prepare an effective summation").

of a single transcript on regular turnaround; to the contrary, all transcripts were requested on three day turnaround or less (including several on daily turnaround), and in addition Adrea seeks recovery for numerous additional services. B&N further objects to this request on the grounds that, as required by Local Rule 54.1(c)(2), Adrea has not demonstrated that each deposition transcript it obtained was used or admitted at trial, or was used by the Court in ruling on a dispositive substantive motion. In addition, B&N objects to this request to the extent it seeks reimbursement for costs related to the deposition transcript of Stephen Magee, Adrea's damages expert whose testimony was excluded at the first trial, and the transcripts of other witnesses who testified only as to patents that were found to have been invalid, or not to have been infringed.

Local Rule 54.1(c)(2) provides that the cost of "the original transcript of a deposition, plus one copy" is taxable only if it was "used or received in evidence at the trial" or was "used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion." Not only does Adrea make no such showing here, but for each and every transcript, Adrea seeks reimbursement for far more than "the original transcript [] plus one copy." Rather, in each instance, Adrea submits its entire invoice from the reporting service, and seeks to recover the costs for, among other things: (1) expedited turnaround of deposition transcripts (none more than three days, and several on daily or one-day turnaround), (2) rough transcripts, (3) real-time transcription, (4) scanning and hyperlinking of exhibits, (5) court reporter appearance fees, (6) videographer fees, (7) evening rates for reporters and videographers, and (8) videosynch/tape fees. All these expenses are improper, and none are recoverable. Further, since it was Adrea's choice to order these extraneous services, it, and only it, should be required to pay for them.[6]

---

[6] *See Omeprazole Patent Litig.*, 2012 WL 5427849, at *4 ("[C]ourts in this District have determined that court reporter appearance fees, delivery fees, ASCII and rough ASCII fees are not taxable."); *id.* (denying videographer fees where prevailing party made no showing that the
Footnote continued on next page

Further, Adrea is not entitled to recover costs in connection with the transcript of the deposition of its damages expert Magee ($3631.60), since the District Court struck Magee's trial testimony during cross-examination, and the jury was instructed to disregard his testimony in its entirety.  Dkt. No. 143 at 12; *see also* Dkt. No. 253-2 at 2.  Stated another way, in effect Magee did not testify at trial, so under Local Rule 54.1(c)(2) B&N should not be required to pay Adrea's costs associated with his deposition transcript.  *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03CIV.1548(GHDAJP), 2008 WL 4613752, at *13-14 (S.D.N.Y. Oct. 17, 2008) (deducting fees and costs related to witnesses who were excluded from testifying at trial).[7]

### 3. Adrea is Not Entitled to Recover Witness Fees, Subsistence or Travel Costs

Adrea also seeks to recover, under Local Rule 54.1(c)(3), the excessive amount of $15,920.74 for witness fees and travel/subsistence costs.  Dkt. No. 253-3.  B&N objects to this request to the extent Adrea seeks reimbursement for: (1) costs incurred for lodging any witness for a period of time other than those days necessary for that witness to testify at trial; (2) subsistence expenses in excess of the maximum per diem allowed by 28 U.S.C. §1821; (3) travel costs other than those incurred by its witnesses in traveling to and from the witness's residence by the shortest practical route at the most economical rate reasonably available; and (4) $4624.70 for subsistence and travel costs related to Stephen Magee, Adrea's damages expert whose testimony was excluded at trial.

---

Footnote continued from previous page
parties reasonably expected that "the video of the testimony might be presented at trial"); *Gottlieb v. Simon*, 1999 WL 993700, at *1 (denying costs for expedited daily transcripts on grounds that expedited transcripts were unnecessary given trial schedule).

[7] In addition, B&N submits that it should not be required to pay for transcript costs associated with the depositions of John Hendricks, Bahrath Kalyan, and Susan Lally, since those witnesses testified at deposition only with respect to patents that either were found invalid, or not to have been infringed.  Ederer Decl. ¶19; *see also* Dkt. No. 253-2 at 1.

12

Local Rule 54.1(c)(3) provides for reimbursement of subsistence costs authorized by 28 U.S.C. §1821 if a witness testifies at trial, and if it is not practical for the witness to return to his or her residence from day to day. Under §1821(d)(1), a witness may receive a "subsistence allowance . . . in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services . . . for official travel in the area of attendance by employees of the Federal Government." 28 U.S.C. §1821(d)(1).

Ignoring these requirements, Adrea seeks the following reimbursements: (1) $3344 for eleven days of lodging/subsistence for Stephen Magee, whose testimony was stricken at trial; (2) $2736 for nine days of lodging/subsistence for Brian Berg, who testified at trial for less than two days; (3) $1216 for four days of lodging/subsistence for Eugene Shteyn, who testified at trial for less than one day, and who lives in the New York area; and (4) $4256 for 14 days of lodging/subsistence for Xin Wang, an expert who testified at trial for less than forty minutes. Among other things, Adrea has offered no explanation as to why it was necessary for these witnesses to be lodged for so many days in excess of the number of days each actually testified, nor has it indicated why it was not practical for Shteyn to return to his New York residence each evening. And, Adrea has provided no reason why it should be entitled to recover more than the per diem rates authorized by §1821(d)(1) and the Administrator of General Services for the months of September and October 2014 ($303 and $304, respectively). Absent such explanation, Adrea is entitled to no more in subsistence than for those days on which these witnesses actually testified, and only at the per diem rates authorized by §1821(d)(1).[8]

---

[8] *See Advanced Video Techs.*, 2016 WL 1253899, at *6 (explaining that the party moving for taxation of costs must illustrate a "good reason why these witnesses needed to stay overnight"); *Browne v. Greensleeves Records, Ltd.*, No. 03 CIV.7696 MGC, 2005 WL 2716568, at *2 (S.D.N.Y. Oct. 21, 2005) (reducing witness' eight-day subsistence costs to a single day of costs on grounds that witness testified for only part of one day).

As for travel-related expenses, §1821(c)(1) provides that a witness may be reimbursed for travel costs "to and from such witness's residence by the shortest practical route in going and returning from the place of attendance," provided the witness has traveled via "a common carrier at the most economical rate reasonably available." 28 U.S.C. §1821(c)(1). Adrea, however, has requested travel expenses for *two* round trip airline fares for its expert witness Brian Berg, who apparently flew back and forth between New York and California twice during trial, and ended up testifying for less than two days. While Berg's travel itinerary may have been most convenient for him and Adrea's counsel, B&N should not have to pay for what was clearly not "the shortest practical route" to attend trial. 28 U.S.C. §1821(c)(1).

Finally, as discussed above, Adrea is not entitled to reimbursement for any of the $4624.70 in subsistence and travel expenses incurred in connection with the trial testimony of its damages expert Magee, whose testimony the Court struck at the first trial, and who, accordingly, effectively did not appear as a witness at trial. *See J.S. Nicol, Inc.*, 2008 WL 4613752, at *13-14; Dkt. No. 253-2 at 2.

### 4.   Adrea is Not Entitled to Costs for Copies

Adrea seeks to recover $2856.43 in costs for exemplification and copies of documents it maintains were "necessarily obtained for use in the case." Dkt. No. 253-4. B&N objects to this request on grounds that the invoices submitted by Adrea suggest that it is seeking reimbursement not only for copies of documents it used at trial, but other unidentified documents and copies, as well as facially unnecessary products and services. B&N further objects to this request on

14

grounds that Adrea has given no indication that such copies were necessary, that is, the original documents were not available for Adrea's use and entry into evidence.[9]

Local Rule 54.1(c)(5) allows for reimbursement of costs related to copies of documents that are "used or received in evidence," provided the originals were not available for such use and entry into evidence. The Rule further specifically exempts "copies used for the convenience of counsel." *Id.* Notwithstanding these requirements, Adrea has made no attempt to demonstrate that the unidentified copies referred to in its invoices were actually used or admitted into evidence, or that the original documents were not available for the same purpose. Absent such showing, Adrea is not entitled to reimbursement for these expenses.[10] In addition, under no circumstances should Adrea be reimbursed for costs incurred in connection with unnecessary products and services, such as custom-made folders and tabs, or three-ring binders.[11]

## 5. Adrea is Not Entitled to Costs for Clerk's Fees

Pursuant to Local Rule 54.1(c)(10), Adrea next seeks to recover $1400 in fees it paid to the clerk. Dkt. No. 253-5. B&N objects to this request to the extent that the invoices submitted by Adrea indicate that Intertrust Technologies Corp., not Adrea, is the party which incurred certain of these fees. *Id.* at 2. B&N further objects to this request to the extent it seeks

---

[9] *See Omeprazole Patent Litig.*, 2012 WL 5427849, at *8 (explaining that, for copying costs to be taxable, a prevailing party must provide documentation of "what documents were copied, the number of copies made, the cost per page of copying, and an explanation of why the copies were necessary"); *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 285 F.R.D. 225, 238 (E.D.N.Y. 2012) (denying reimbursement for copy costs where prevailing party submitted "no evidence to show that the original exhibits were not available and the copies were needed to be used at the trial").

[10] *See India.com, Inc. v. Dalal*, No. 02 CIV 0111 DLC, 2010 WL 2758567, at *4 (S.D.N.Y. July 13, 2010) (denying costs for copying where invoices submitted by prevailing party did not "indicate which documents were being copied, or differentiate between copies made for the convenience of counsel and those used or received in evidence at trial").

[11] *See Hogan v. Novartis Pharm. Corp.*, No. CIV.A. 06-260 BMC, 2012 WL 5898473, at *5 (E.D.N.Y. Nov. 20, 2012) ("[T]he costs of items such as binders and tabs are not taxable under Local Rule 54(c)(5).").

reimbursement for $1000 in fees paid for *pro hac vice* admission of Adrea's out-of-district counsel. *Id.* at 4. Local Rule 54.1(c)(10) allows for reimbursement for "the reasonable and actual fees of the Clerk . . . ." Adrea incurred these expenses, however, not out of reasonable necessity, but for its own convenience, since it chose to select trial counsel not admitted to practice before the District Court.[12]

### 6. Adrea is Not Entitled to Costs for Service Fees

Finally, Adrea seeks to recover $592.40 in costs for fees related to its service of a summons on B&N. Dkt. No. 253-6. Local Rule 54.1(c)(10) allows for reimbursement for "the reasonable and actual fees of . . . a marshal, sheriff, and process server . . .". B&N objects to this request to the extent it seeks reimbursement for $182.40 in fees paid for Adrea's unsuccessful attempt to serve process at a location where no person was authorized to accept service on B&N's behalf. Absent some explanation as to how this failed attempt constitutes a "reasonable" fee for service of process, Adrea is not entitled to recover for this portion of its service expenses.[13]

---

[12] *See LaBombard v. Winterbottom*, No. 814CV00071MADCFH, 2015 WL 9450838, at *2 (N.D.N.Y. Dec. 23, 2015) ("In light of the absence of *pro hac vice* filing fees being specifically listed as a recoverable cost, coupled with the Supreme Court's recent cautioning of expanding upon the scope of enumerated items listed in §1920, the Court declines to extend the costs recoverable pursuant to Rule 54(d)(1) to include *pro hac vice* filing fees."); *Document Sec. Sys., Inc. v. Coupons.com, Inc.*, No. 11-CV-6528 CJS, 2015 WL 1189551, at *2 (W.D.N.Y. Mar. 16, 2015) (ruling that pro hac vice admission fees and related expenses are not taxable as costs).

[13] *See New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 312 (E.D.N.Y. 1998) ("[T]he $440.00 fee for process servers is taxable, as long as plaintiffs can make a sufficient showing . . . that this amount represents 'the reasonable and actual fee' of the process server."); *Sim v. N.Y. Mailers' Union No. 6*, No. 97 CIV. 2929 HB, 1999 WL 674447, at *4 (S.D.N.Y. Aug. 30, 1999) ("[A]lthough the language of the new rule reflects that parties may be recompensed for the 'actual' process server fees, there is no indication that 'actual' process server fees must be awarded.").

## IV.  Conclusion

For all the foregoing reasons, B&N respectfully requests that the Clerk (1) reject Adrea's Bill of Costs in its entirety, or (2) hold the Bill of Costs in abeyance until the district court has decided all pending post-judgment motions, and has determined whether Adrea is entitled to costs, that is, whether it is a prevailing party, or if, in any event, it is reasonable for Adrea to recover costs given the mixed outcome of the case.

Dated:  February 27, 2017

**ARNOLD & PORTER
KAYE SCHOLER LLP**

*/s/ Louis S. Ederer*
Louis S. Ederer
Maxwell C. Preston
399 Park Avenue
New York, NY 10022-4690
Telephone:  (212) 715-1000
Facsimile:  (212) 715-1399
louis.ederer@aporter.com
maxwell.preston@aporter.com

*Attorneys for Defendants Barnes & Noble, Inc., barnesandnoble.com LLC, and Nook Media LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2017, copies of the Defendants' Objections to Plaintiffs' Bill of Costs was caused to be served upon the following via ECF:

Colin Cabral, Esq.
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
Los Angeles, CA 90067

                                                  */s/ Maxwell C. Preston*
                                                  Maxwell C. Preston