```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- :
ADREA, LLC,                            :
                                       :
              Plaintiff,               :
                                       :
         -v-                           :   13 Civ. 4137(JSR)
                                       :
BARNES & NOBLE, INC.,                  :   AMENDED ORDER AND FINAL
BARNESANDNOBLE.COM LLC, and NOOK       :          JUDGMENT
MEDIA LLC,                             :
                                       :
              Defendants.              :
-------------------------------------- :
```

JED S. RAKOFF, U.S.D.J.

  Before the Court is the motion of plaintiff Adrea, LLC ("Adrea") for supplemental damages for pre-judgment infringement and ongoing royalties for post-judgment infringement by defendants Barnes and Noble, Inc., BarnesandNoble.com LLC, and Nook Media LLC (collectively, "B&N"). For the reasons set forth below, the Court finds that Adrea is entitled to supplemental damages for sales of Nook devices that were found to infringe at the first trial (the "Old Devices"), but denies supplemental damages and ongoing royalties for Nook devices introduced by B&N concurrently with or after the first trial (the "New Devices"), because Adrea has not shown that these latter devices infringe Adrea's patented intellectual property.

  The details of this case are discussed in greater detail in Adrea, LLC v. Barnes & Noble, Inc., No. 13 CIV. 4137(JSR), 2017 WL 44954 (S.D.N.Y. Jan. 3, 2017), familiarity with which is here presumed. In brief, Adrea filed suit in 2013 accusing B&N of infringing three U.S. patents: U.S. Patent No. 7,620,703 ("the '703

1

Patent"); U.S. Patent No. 7,299,501 ("the '501 Patent"); and U.S. Patent No. 7,298,851 ("the '851 Patent"). The following year, a jury found B&N liable for infringing the '703 and '501 Patents and awarded Adrea $1.33 million in damages. Subsequently, however, the Court granted B&N's post-trial motion, holding as a matter of law that the '501 Patent was invalid. The Court accordingly ordered a limited new trial to determine damages on the '703 Patent.

Prior to the second trial, Adrea moved to compel B&N to disclose sales data for Old and New devices sold after the first verdict so that the Court could rule on the issue of supplemental damages. The Court denied the motion but held that Adrea "may duly file a motion for post-verdict damages once the verdict from the first trial has been clarified." ECF No. 202, at 3. The parties subsequently agreed that their second trial should be a bench trial, and the Court consequently conducted a three-day trial in June and July 2016.

On January 3, 2017, the Court issued Amended Findings of Fact and Conclusions of Law awarding damages of $266,832.82 for what the Court found was B&N's non-willful infringement of Adrea's '703 Patent. The Court issued final judgment for Adrea in the amount $269,832.25, including pre-judgment interest, on January 12, 2017.

Thereafter, with the Court's permission, Adrea filed, and the parties briefed, Adrea's instant motion for supplemental damages and ongoing royalties.

Before turning to the merits of Adrea's motion, the Court must first address whether the motion is procedurally proper. Adrea brings

2

its motion under three rules: Fed. R. Civ. P. 52(b), to make additional factual findings in light of the availability of new evidence; Fed. R. Civ. P. 59(e), to alter or amend judgment; or, alternatively, Fed. R. Civ. P. 60(a) to correct an omission or oversight in the judgment. While the last rule is clearly inapplicable – because it was Adrea's error to fail to file its motion prior to the entry of final judgment – the Court finds that the motion is proper under Rule 52(b).[1]

Rule 52(b) gives "the district court an opportunity to correct manifest errors of law or fact at trial, or in some limited situations, to present newly discovered evidence." United States v. Local 1804-1, Int'l Longshoremen's Ass'n, 831 F. Supp. 167, 169 (S.D.N.Y. 1993), aff'd sub nom. United States v. Carson, 52 F.3d 1173 (2d Cir. 1995). These "limited situations" are generally where the newly proffered evidence is material to the outcome of the case. See 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2582 (2008). Here, B&N has produced new evidence, attached as an exhibit to its opposition papers, documenting its sales of Old and New Devices from July 1, 2014 to present. This evidence is

---

[1] Since the Court finds that Adrea's motion is procedurally proper under Rule 52(b), it does not reach the issue of whether the motion is also proper under Rule 59(e). It bears noting, however, that "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 (2008) (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810.1, pp. 127–128 (2d ed. 1995)).

3

proprietary to B&N,[2] is material to the issues of liability and damages, and is a proper basis for the Court to amend its final judgment under Rule 52(b).[3]

The Court accordingly turns to the merits of Adrea's motion and, first, whether Adrea is entitled to supplemental damages for infringement by the Old Devices.[4] B&N does not dispute that Adrea is entitled to supplemental damages from the date of the jury's verdict in the first trial (October 27, 2014) to the Court's entry of final judgment (January 12, 2017). B&N disputes, however, that Adrea is entitled to supplemental damages for sales during the four months prior to the jury's verdict (beginning on June 30, 2014).

Adrea argues that the jury did not award damages for this period because B&N failed to produce corresponding sales information for these four months. B&N responds that since the Court instructed the

---

[2] B&N filed the sales information under seal pursuant to the protective order entered by the Court on September 10, 2013. See ECF No. 30; Defendants' Memorandum in Opposition to Plaintiff's Motion for Supplemental Damages and Ongoing Royalties ("Defs.' Opp.") at Ex. 1, ECF No. 255; ECF No. 256.

[3] B&N's reliance on Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) is misplaced. There, the Second Circuit affirmed the denial of the plaintiffs' Rule 52(b) motion to amend the trial court's findings of fact to credit certain trial testimony because the record provided only a "weak foundation" for the amendment. This is materially different than the present motion, which is brought under Rule 52(b)'s newly discovered evidence prong.

[4] Adrea is not entitled ongoing royalties for infringement by the Old Devices because B&N ceased selling them prior to the Court's issuance of final judgment on January 12, 2017. See Defs.' Opp. at 12; see also Memorandum of Law in Support of Plaintiff's Motion for Supplemental Damages and Ongoing Royalties ("Pl.'s Br."), ECF No. 252, at 15 (seeking ongoing royalties for infringement following the Court's issuance of final judgment).

4

jury that "damages should run from March 29, 2012 through the date of your verdict," ECF No. 143 at 19-20, it "must therefore be assumed that in arriving at its damages award, the jury made provision for the period for which sales had not been reported."

The jury instructions were more nuanced than B&N suggests. The Count instructed the jury that for the purposes of their damages award, they should use the "corresponding figure in evidence for the number of NOOK Device units sold during the 'relevant periods.'" ECF No. 143 at 21. The "corresponding figure in evidence" was a stipulated fact that read, "From March 29, 2012 through June 30, 2014, B&N has sold 5,232,016 units of the NOOK Devices in the United States." ECF No. 140 at 10. Thus, while the Court instructed the jury to award damages "through the date of your verdict," the relevant date was June 30, 2014 (the last day of reported sales information) rather than the date of the verdict's entry.[5]

The Court accordingly awards Adrea supplemental damages in the amount of $4,578.68 for the disputed four-month period from June 30, 2014 to October 27, 2014, and supplemental damages of $8,027.15 for the undisputed period running from October 28, 2014 to the entry of

---

[5] B&N's reliance on Apple Inc. v. Samsung Electronics. Co., Ltd., 926 F. Supp. 2d 1100 (N.D. Cal. 2013), which is not binding on this Court, is unconvincing. There, the plaintiff sought supplemental damages because sales numbers presented to the jury only ran through June 30, 2012, and the jury returned its verdict on August 25, 2012. Judge Koh rejected an additional award, reasoning that "nothing precluded [plaintiff] from arguing that the jury should consider sales from June 30 through August 24, or from presenting evidence on how to estimate such sales." Id. at 1005. Here, Adrea was precluded from making such an argument (due to the Court's jury instructions), and Adrea had no means of estimating sales during the missing period.

final judgment.

The Court lastly turns to whether Adrea is entitled to supplemental damages and ongoing royalties for infringement by the New Devices. In order to be entitled to such damages, Adrea must show (1) that "the new version is not more than colorably different from the product found to infringe"; and (2) "that the newly accused product actually infringes." XpertUniverse, Inc. v. Cisco Sys., Inc., No. CV 09-157-RGA, 2013 WL 6118447, at *10-11 (D. Del. Nov. 20, 2013), aff'd, 597 F. App'x 630 (Fed. Cir. 2015).[6]

In support of its position, Adrea includes a series of images downloaded from the Internet, purporting to show that the New Devices have a feature that - from the perspective of the user - looks like the infringing "Shop" feature on the Old Devices. B&N responds that "the Shop feature has been redesigned to communicate with and retrieve information from the B&N cloud, and to render the Shop web page, in a completely different manner," Ederer Decl. ¶ 4, ECF No. 257, and that Adrea cannot meet its burden by simply relying on pictures.

---

[6] While the Federal Circuit treats these two "prongs" differently, the analysis is one-and-the-same. Under the first prong, the Court looks to whether "one or more of those elements previously found to infringe has been modified, or removed," and if it has, "whether that modification is significant." TiVo Inc. v. EchoStar Corp., 646 F.3d 869, 882-83 (Fed. Cir. 2011) (en banc). While "[d]etermining the requisite level of difference" under the first prong "is a question of fact," see id., the only reasonable method of doing so is by looking at whether the new product actually infringes (the "second" prong). See R-BOC Representatives, Inc. v. Minemyer, No. 07 C 1763, 2017 WL 543045, at *23 (N.D. Ill. Feb. 10, 2017) ("[If] a device that is no more than colorably different from a device also found to infringe, why then does TiVo require a second step of analysis after the 'no more than colorably different' finding? The answer is, we don't know.").

6

While B&N is notably vague about the nature of these modifications, the Court agrees that Adrea's reliance on pictures is insufficient to show infringement given the technical nature of the claims. For example, claim 1 of the '703 Patent covers:

> 1. A consumer appliance, comprising: an input component responsive to a user-input for initiating retrieval of data by the consumer appliance from a server based on a predetermined URL or an identifier associated with the consumer appliance, the data representing content information about the context of usage of the consumer appliance, wherein the consumer appliance does not require a user to access a web browser or other device in order for the consumer appliance to initiate retrieval of the data.

Adrea, LLC v. Barnes & Noble, Inc., No. 13 CIV. 4137(JSR), 2016 WL 859685, at *2 (S.D.N.Y. Feb. 24, 2016). Accordingly, one of the key issues at the first trial was whether the Shop application was a web browser, and, in order to make this showing, Adrea presented evidence that the Shop application did not permit users to enter a URL to navigate the wider Internet. Id.[7] Adrea presents no such evidence here.

Claim 13 requires an equally technical infringement analysis. In particular, the claim reads:

> 13. A method of enabling a service provider to provide a service via the Internet to a user of a consumer appliance having a predetermined identifier, the identifier being stored on a home network that includes the consumer appliance, the method comprising: enabling the user by a single user input to the consumer appliance to have the consumer appliance initiate sending a request with the

---

[7] Adrea misinterprets the Court's ruling on B&N's Rule 50 motion to hold that the Shop application may still infringe claim 1 even if it is a web browser. The Court's Memorandum Order held no such thing, and such an argument runs counter to the clear language of the claim. Id. at *2.

7

> identifier representative of a type of the consumer
> appliance to a server on the Internet through the home
> network; and based on the identifier, the server initiating
> access to a web page with content information about a
> context of using the consumer appliance.

Id. at *3. At the first trial, the parties disputed whether the Old Devices sent "a request with the identifier representative of a type of the consumer appliance to a server on the Internet" and that, "based on the identifier, the server initiat[e] access to a web page." Id. Adrea argued that when a user pressed the Shop button, the Nook would transmit a model number to B&N's servers that would initiate access to the Nook storefront webpage, while B&N responded that the model number was used only for "logging and analytics purposes." Id. Based on disputed deposition testimony, the jury ultimately sided with Adrea. Id. Here, however, the pictures proffered by Adrea cast no light on whether the New Devices use a similar process for accessing information from B&N's webpage.

The Court accordingly finds that Adrea is not entitled to supplemental damages or ongoing royalties for New Devices because it has not shown that the New Devices are "not more than colorably different" or actually infringe.[8]

For the foregoing reasons, the Court holds that Adrea is entitled to supplemental damages for infringement by B&N's Old Devices in the amount of $12,605.83, but otherwise denies Adrea's motion, without prejudice to Adrea filing a new action alleging that B&N's New Devices

---

[8] The Court does not address the remaining claims of the '703 Patent because they are dependent on either claim 1 or claim 13 having been infringed.

8

infringe the '703 Patent. The Court accordingly hereby amends its Order and Final Judgment dated January 12, 2017, ECF No. 249, and issues final judgment for Adrea holding that plaintiff Adrea LLC shall recover from defendants Barnes and Noble, Inc., BarnesandNoble.com LLC, and Nook Media LLC, jointly and severally, in the amount of $282,438.08. The Clerk of Court is directed to close the docket at number 251.

SO ORDERED.

Dated: New York, NY
March 22, 2017

JED S. RAKOFF, U.S.D.J.